**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

```
                                      )
IN RE EASTMAN KODAK ERISA             )
LITIGATION                            )
                                      )   MASTER FILE NO. 6:12-CV-06051-DGL
                                      )
THIS DOCUMENT RELATES TO:             )
ALL ACTIONS                           )
```

**BRIEF IN SUPPORT OF BNY MELLON'S**
**MOTION TO DISMISS CONSOLIDATED COMPLAINT**

James O. Fleckner, Esq.
Alison V. Douglass, Esq.
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

Attorneys for The Bank of New York Mellon

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF FACTS ...................................................................................2

ARGUMENT .....................................................................................................6

I.     Standard of Review...................................................................................6

II.    Plaintiffs Cannot State a Claim under Count I against BNY Mellon because It Had No ERISA Fiduciary Responsibility With Respect to the SIP's Holdings in Kodak Stock .......................................................................7

     A.     BNY Mellon Is a Directed Trustee with No Discretionary Authority with Respect to Investments in the Kodak Stock Fund. ...............................8

          1.     BNY Mellon Is an ERISA Directed Trustee under the Governing Plan Documents. ...........................................8

          2.     Plaintiffs Fail to Allege, and Cannot Allege, any Discretionary Actions Taken by BNY Mellon with Respect to the Kodak Stock Fund, and they Misread the Governing Plan Documents. ...........................................9

     B.     Plaintiffs Cannot State a Claim for Breach of ERISA Fiduciary Duty against BNY Mellon Because, as a Directed Trustee, BNY Mellon Properly Followed Direction with Respect to Investments in the Kodak Stock Fund.....................................................12

          1.     As a Directed Trustee, BNY Mellon's Duties Are Narrow and It Is Not Responsible for Determining "Suitable and Appropriate Investments" for the SIP...........................12

          2.     The Complaint Fails to Allege Clear and Compelling Public Indicators Giving Rise to any Duty on the Part of BNY Mellon to Act Contrary to Directions to Invest in Kodak Stock. ...........................................13

III.     Plaintiffs Cannot State a Claim under Count III against BNY Mellon, Which Cannot Be Liable under ERISA's Co-Fiduciary Provisions.................................18

CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................................7

*Beddall v. State Street Bank & Trust Co.,*
  137 F.3d 12 (1st Cir. 1998).....................................................................................8

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).............................................................................................6, 7

*Brandt v. Grounds,*
  687 F.2d 895 (7th Cir. 1982) ................................................................................19

*Bradwell v. GAF Corp.,*
  954 F.2d 798 (2d Cir. 1992)..................................................................................10

*Burnham v. Guardian Life Ins. Co. of Am.,*
  873 F.2d 486 (1st Cir. 1989)................................................................................10

*Coleman v. Nationwide Life Ins. Co.,*
  969 F.2d 54 (4th Cir. 1992) ...................................................................................8

*Conley v. Gibson,*
  355 U.S. 41 (1957)..................................................................................................6

*Crowley ex rel. Corning, Inc. Inv. Plan v. Corning, Inc.,*
  234 F. Supp. 2d 222 (W.D.N.Y. 2002) ................................................................16

*Davis v. Am. Optical Corp.,*
  No. 11 Civ. 562S, 2012 WL 639698 (W.D.N.Y. Feb. 27, 2012) ...........................2

*DiFelice v. U.S. Airways, Inc.,*
  397 F. Supp. 2d 735 (E.D. Va. 2005) ............................................. 8, 11, 12, 15-18

*Dillon v. Metro. Life Ins. Co.,*
  No. 09 Civ. 7958 (SHS), 2011 WL 6825252 (S.D.N.Y. Dec. 28, 2011)................10

*Dobson v. Hartford Fin. Servs. Group,*
  389 F.3d 386 (2d Cir. 2004)..................................................................................10

*F.W. Webb Co. v. State Street Bank and Trust Co.,*
  No. 09 Civ. 1241(RJH), 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) ........... 12-13

*Fay v. Oxford Health Plan*,
   287 F.3d 96 (2d Cir. 2002)................................................................................10

*Fowlkes v. Rodriguez*,
   584 F. Supp. 2d 561 (E.D.N.Y. 2008) .............................................................7

*Herman v. NationsBank Trust Co. (Ga.)*,
   126 F.3d 1354 (11th Cir. 1997) .....................................................................13

*Holley v. Empire State Carpenters Pension Plan*,
   --- F.Supp.2d ----, 2012 WL 2016236 (W.D.N.Y. June 5, 2012) ............2

*In re Cardinal Health, Inc. ERISA Litig.*,
   424 F. Supp. 2d 1002 (S.D. Ohio 2006) .............................................8, 11, 12, 15

*In re General Motors ERISA Litig.*,
   No. 05-71085, 2006 WL 897444 (E.D. Mich. Apr. 6, 2006) ..........................11, 16

*In re RadioShack Corp. ERISA Litig.*,
   547 F. Supp. 2d 606 (N.D. Tex. 2008) ...........................................................16

*In re RCN Litig.*,
   No. 04 Civ. 5068, 2006 WL 1273834 (D.N.J. Mar. 22, 2006) ....................16, 18, 19

*In re WorldCom ERISA Litig.*,
   263 F. Supp. 2d 745, 761 (S.D.N.Y. 2003)......................................................13

*In re WorldCom ERISA Litig.*,
   354 F. Supp. 2d 423 (S.D.N.Y. 2005).......................................................12, 15-19

*Keach v. U.S. Trust Co.*,
   240 F. Supp. 2d 840 (C.D. Ill. 2002) ............................................................18

*LaLonde v. Textron, Inc.*,
   369 F.3d 1 (1st Cir. 2004).............................................................................15

*Maniace v. Commerce Bank of Kansas City, N.A.*,
   40 F.3d 264 (8th Cir. 1994) ..........................................................................19

*Moench v. Robertson*,
   62 F.3d 553 (3d Cir. 1995).............................................................................13

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) .......................................................................................12

*Starr v. Sony BMG Music Entm't*,
   592 F.3d 314 (2d Cir. 2010)............................................................................7

*Zang v. Paychex*,
  728 F. Supp. 2d 261 (W.D.N.Y. 2010) ............................................................ 17-18

**STATUTES AND RULES**

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ........................................................ 12

ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) .......................................................... 2

ERISA § 403(a), 29 U.S.C. § 1103(a) ................................................................... 8

ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1) ...................................................... 8, 11

ERISA § 404, 29 U.S.C. § 1104 ........................................................................... 14

ERISA § 404(a), 29 U.S.C. § 1104(a) ................................................................... 1

ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) ........................................................ 19

ERISA § 405, 29 U.S.C. § 1105 ........................................................................... 19

ERISA § 405(a), 29 U.S.C. § 1105(a) ...................................................... 1, 6, 18, 19

ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) ......................................................... 18

ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2) ......................................................... 19

ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3) ......................................................... 18

Fed R. Civ. P. 12(b)(6) ..................................................................................... 6, 15

**OTHER AUTHORITIES**

U.S. Dep't of Labor, Field Assistance Bulletin 2004-03
  (Dec. 17, 2004) ......................................................................................... 8, 12-17

Defendant The Bank of New York Mellon submits this memorandum in support of its motion to dismiss.[1]

## PRELIMINARY STATEMENT

Plaintiffs participate in a 401(k) plan and an employee stock ownership plan offered by their employer, the Eastman Kodak Company ("Kodak" or the "Company").  Their claims against BNY Mellon, as directed trustee, allege breach of fiduciary and co-fiduciary obligations under sections 404(a) and 405(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), arising from the 401(k) plan's investments in Kodak stock.  Plaintiffs fail to state a claim against BNY Mellon because the document establishing the 401(k) plan requires that Kodak stock would be an available investment option under the 401(k) plan and the trust agreement between Kodak and BNY Mellon requires BNY Mellon to act at the direction of Kodak's Savings and Investment Plan Committee in making Kodak stock available for participant investments.  Accordingly, BNY Mellon, as a directed trustee, had no discretion with respect to making that investment available.  Well-established caselaw and guidance issued by the United States Department of Labor are clear that, under these facts—where BNY Mellon neither possessed material non-public information about Kodak, nor knew of any clear and compelling public indicators that called into serious question Kodak's viability as a going concern—BNY Mellon was entitled (and perhaps required) to continue accepting directions to invest 401(k) plan contributions in Kodak stock.  Accordingly, the claims against BNY Mellon should be dismissed.

---

[1] Plaintiffs have incorrectly named an entity identified as BNY Mellon Financial Corporation as a defendant in their Consolidated Complaint ("Complaint" or "Compl.").  The entity that initially served as trustee for the relevant plan was newly-added defendant Boston Safe Deposit and Trust Company ("Boston Safe"), which is no longer an existing entity, and, in any event, has not been served.  Boston Safe was succeeded by The Bank of New York Mellon as trustee.  For purposes of this motion, "BNY Mellon" shall mean The Bank of New York Mellon.

## STATEMENT OF FACTS

Plaintiffs allege that they participate in the Eastman Kodak Employees' Savings and Investment Plan (the "SIP").  Compl. ¶¶ 14-22.  As SIP participants, they made a voluntary decision to participate in the plan (which was not mandatory) and they could choose to invest their voluntary contributions among the investment options that are made available under the plan.  SIP §§ 1.01, 7.01;[2] Compl. ¶¶ 55, 56, 59.  The SIP also allowed participants to direct the investment of employer matching contributions among those options.  SIP §§ 4.02, 5.01.

***The SIP Vests Discretionary Decision-Making Authority over Plan Investments with the Named Fiduciaries and Requires that the Kodak Stock Fund Be Available for Investment.***

The SIP was established by, and maintained pursuant to, a written plan document, as required by ERISA § 402(a)(1).  Under that document, the Savings and Investment Plan Committee ("SIPCO") is identified as the SIP's "Named Fiduciary and Plan Administrator."  SIP §§ 3.01, 3.02.  In that capacity, the SIPCO is responsible "to select, monitor and administer investment options, and implement investment option and Plan changes, as it deems appropriate."  SIP § 3.03(b)(7); *accord* SIP § 3.12.  The SIP further requires that participants be offered a "range of investment alternatives selected by SIPCO."  SIP § 7.01(b); Compl. ¶ 60.  The SIPCO's authority includes "suspending any or all account activity; . . . restricting deferrals, transfers and reallocations; and . . . directing deferrals and account balances to investment options other than those elected."  SIP § 3.03(b)(7).

---

[2] Unless otherwise noted, the references to the SIP are to the version of that plan as amended December 16, 2009, effective January 1, 2010.  This is the version cited in the Complaint.  Compl. ¶ 27.  A true and accurate copy of the SIP is attached as Exhibit A to the accompanying Declaration of Alison V. Douglass in Support of BNY Mellon's Motion to Dismiss Consolidated Complaint ("Douglass Declaration").  It is proper for the Court to take the plan documents into account on this motion to dismiss without converting the motion to one for summary judgment.  Further, both the SIP document and the Trust Agreement are cited throughout the Complaint and are therefore incorporated by reference.  *See, e.g.,* Compl. ¶¶ 27, 37, 53, 74-76, 81-83; *Holley v. Empire State Carpenters Pension Plan*, --- F. Supp .2d ----, 2012 WL 2016236, at *2 (W.D.N.Y. June 5, 2012) (Larimer, J.) (considering plan documents in granting motion to dismiss where documents "incorporate[d] by reference" into complaint); *Davis v. Am. Optical Corp.*, No. 11–CV–562S, 2012 WL 639698, at *3 (W.D.N.Y. Feb. 27, 2012) (considering plan document in granting motion to dismiss because the document was "clearly essential to this Court's analysis").

Not only does the SIP allocate to the SIPCO the decision as to what investment options to make available for plan participants—and gives it the authority to make restrictions to investments as necessary—but up until March 16, 2012, it also specifically required that one investment option "must be" an employer stock fund (the "Kodak Stock Fund") consisting "primarily" of Kodak stock ("Kodak Stock").  SIP §§ 7.01(b)(1), 7.01(c); Compl. ¶ 60.  Indeed, the SIPCO's responsibility for "selecting[,] monitoring and administering investment options" had been expressly "subject to the requirement that the Kodak Stock Fund be an available investment option."  SIP § 3.12.  This effectuated one of the stated purposes of the pre-2012 SIP, which was "to offer Participants the opportunity to invest in [Kodak Stock]."  SIP § 1.01.[3] However, "no Participant or beneficiary [was] required to invest in the Kodak Stock Fund."  SIP § 7.01(c); Compl. ¶ 61.  Instead, the plan document spelled out that prior to its March 2012 elimination, Participants were "permitted to reduce or discontinue investment in the Kodak Stock Fund."  SIP § 7.01(c); Compl. ¶ 61.  It is up to participants to allocate their SIP contributions among the several investment options available under the SIP.  SIP § 7.07.

***Under the SIP and the Trust Agreement, SIPCO Has the Responsibility to Appoint and Direct the Trustee.***

The SIP also allocated to the SIPCO responsibility "for appointing and removing the Trustee," who is to hold SIP investments in a trust.  SIP §§ 2.34, 3.12, 7.01.  The SIP contemplates that Kodak will enter into a trust agreement with that Trustee.  SIP § 2.34.  Accordingly, Kodak entered into the Eastman Kodak Employees' Savings and Investment Plan

---

[3] On February 24, 2012, Kodak amended the SIP to provide that:

> The Kodak Stock Fund is eliminated effective March 16, 2012, and all Kodak stock within the Fund shall be liquidated in an orderly manner prior to that date to the extent permitted under applicable law, and as soon as practicable thereafter otherwise. A Participant's Account balance in the Kodak Stock Fund on March 16, 2012, if any, will be transferred into the applicable target date funds.

*See* SIP as amended February 24, 2012, effective March 16, 2012, § 7.01(c).  A true and accurate copy of the SIP as amended February 24, 2012, effective March 16, 2012, is attached as Exhibit C to the Douglass Declaration.

Trust Agreement (2002 Restatement) (the "Trust Agreement" or "TA")[4] with BNY Mellon's predecessor, Boston Safe.  Under that agreement, Kodak may remove the Trustee at any time with or without cause.  TA § 7.02.

Like the SIP, the Trust Agreement identifies the SIPCO as the "named fiduciary."  TA § 1.04.  Under both the SIP and the Trust Agreement, BNY Mellon acts at the direction of SIPCO.  For example, the SIPCO must "designat[e] the person or person empowered to give the Trustee directions" and the Trustee "will accept and rely upon any document executed by" the SIPCO.  TA § 1.05; SIP § 3.04.

BNY Mellon has certain duties under the Trust Agreement with respect to administering the Trust, such as determining the fair market value of the Trust, rendering periodic statements for Trust property, and other administrative functions.  *See, e.g.*, TA § 3.01.  However, it has no discretionary authority as to the investments to be made available to plan participants. The Trust Agreement authorizes BNY Mellon to invest the Trust's assets only "upon the direction of [the SIPCO] or an Investment Manager."  TA § 4.03.  It further specifies that BNY Mellon must "invest the assets in accordance with the directions as received."  TA § 4.02.  The Trust Agreement requires BNY Mellon to "rely upon" directions from the SIPCO with respect to Trust investments, and establishes that BNY Mellon "shall be under no duty to make an investigation or inquiry" as to such direction.  TA § 6.02(b).

### *The SIP and the Trust Agreement Required BNY Mellon to Make the Kodak Stock Fund Available to Participants.*

Not only do the Trust Agreement and the SIP document narrowly circumscribe BNY Mellon's role with respect to the investment of the plan's assets generally, but those governing plan documents further restrict BNY Mellon's discretion with respect to investments in the

---

[4] A true and accurate copy of the Trust Agreement is attached as Exhibit B to the Douglass Declaration.

Kodak Stock Fund in particular.  Under the Trust Agreement, investments in Kodak Stock are

"[s]ubject to . . . such directions as may be provided by [SIPCO]."  TA § 4.04(a); *see also* TA

§ 4.04(b) ("At [SIPCO]'s directions, the Trustee shall purchase or sell [Kodak Stock] on the

open market or from or to the Company.").  Prior to March 16, 2012, the SIP required of SIPCO

that "the Kodak Stock Fund must be made available for investment."  SIP § 7.01(c).  Indeed,

SIPCO's authority under the SIP "to impose restrictions on transfers" specifically did "not . . .

extend to the removal of the Kodak Stock Fund as a Fund available under the Plan."  SIP § 7.07.

The SIP also specifically directed "[t]he Trustee [to] maintain within the Trust . . . an investment

option that consists primarily of [Kodak Stock]."  SIP § 7.01(b)(1).

### Plaintiffs' Claims Against BNY Mellon.

Against this backdrop, Plaintiffs assert claims for breach of ERISA fiduciary duty and co-

fiduciary liability against BNY Mellon with respect to the SIP's holding of Kodak Stock.

Plaintiffs allege that during the putative class period (January 1, 2010 until the SIP was

divested of Kodak Stock) BNY Mellon knew or should have known from various pieces of

public information that Kodak's financial condition was "dire."  Compl. ¶¶ 5-6, 100.  They point

to Kodak's attempts to "combat its decline," including multi-year turnaround plans, the

development of new technologies, and intellectual property transactions.  Compl. ¶¶ 113-126.

Plaintiffs cite publicly-available information concerning Kodak's financials, the decline in its

stock price, and its January 2012 filing for Chapter 11 reorganization.  Compl. ¶¶ 129-197.  The

Complaint contains no fact allegation that BNY Mellon possessed any non-public information

regarding Kodak or its stock.

In Count I, Plaintiffs allege that BNY Mellon (as well as some of the other defendants)

acted as an ERISA fiduciary with respect to the management and control of SIP assets.  They

allege that BNY Mellon and other defendants knew or should have known that Kodak Stock was

not a suitable and appropriate investment for the SIP during the Class Period because of Kodak's financial condition.  Accordingly, Plaintiffs allege that BNY Mellon and others violated ERISA's fiduciary duties of prudence and loyalty by (i) permitting the SIP to offer the Kodak Stock Fund as an investment option; (ii) permitting the SIP to invest in the Kodak Stock Fund; and (iii) permitting the Kodak Stock Fund to invest in, and remain invested in, Kodak Stock. Compl. ¶¶ 5, 81-83, 216-231.[5]

The only other count directed to BNY Mellon is Count III.  In it, Plaintiffs allege that BNY Mellon (as well as all other defendants) is liable under ERISA § 405(a) for its co-fiduciaries' breaches because it (i) knew of the other fiduciaries' breaches and failed to remedy them, (ii) knowingly participated in such breaches; and/or (iii) enabled such breaches through its own actions/inactions.  Compl. ¶¶ 9, 247-255.

Plaintiffs purport to bring their claims as representatives of the SIP and on behalf of a putative class of all participants in the SIP for whose individual accounts the SIP invested in the Kodak Stock Fund, "from January 1, 2010 through and including the date of liquidation of the [SIP] (sic)."  Compl. ¶ 2.

## ARGUMENT

## I.     Standard of Review.

To survive dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  This

---

[5] Paragraphs 216-231 do not contain any allegation specific to BNY Mellon, but instead lump BNY Mellon together with the SIPCO and other defendants.

requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action.  *Id*. at 556.  Meeting this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*).  Allegations need not be credited if they are contradicted by documents relied upon in the complaint or the public record.  *See Fowlkes v. Rodriguez*, 584 F. Supp. 2d 561, 574-575 (E.D.N.Y. 2008) (discrediting allegations contradicted by matters of public record).

## II. Plaintiffs Cannot State a Claim under Count I against BNY Mellon because It Had No ERISA Fiduciary Responsibility With Respect to the SIP's Holdings in Kodak Stock.

BNY Mellon cannot be liable for breach of ERISA fiduciary duty as to the SIP's purchase and holdings of Kodak Stock.  BNY Mellon is a directed trustee under the SIP and the Trust Agreement.  The Complaint contains no allegation that BNY Mellon possessed material non-public information about Kodak or its stock that would give rise to any duty to disregard the SIP's and the SIPCO's directions to continue making the Kodak Stock Fund available for participant investments, and the public information that is alleged triggered no such duty.  Accordingly, under the applicable legal standards, BNY Mellon had no fiduciary obligation with respect to purchasing and holding Kodak Stock in the SIP.  Count I should therefore be dismissed as to BNY Mellon for failure to state a claim.

A.      **BNY Mellon Is a Directed Trustee with No Discretionary Authority with Respect to Investments in the Kodak Stock Fund.**

BNY Mellon serves the SIP in strictly a directed trustee capacity under ERISA and the governing plan documents with respect to the SIP's investments in Kodak Stock.

1.      **BNY Mellon Is an ERISA Directed Trustee under the Governing Plan Documents.**

ERISA requires that "all assets of an employee benefit plan shall be held in trust by one or more trustees."  ERISA § 403(a), 29 U.S.C. § 1103(a).  However, the statute does not treat all trustees equally.  It specifically provides that an employer establishing a plan may, through the plan document, allocate the obligation to manage plan assets to someone other than the trustee, such as a fiduciary named in the plan document.  In such case, "the trustee[] shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this chapter."  29 U.S.C. § 1103(a)(1).  "[S]ection 403(a)(1) . . . significantly limits such a trustee's responsibilities . . . ."  U.S. Dep't of Labor, Field Assistance Bulletin 2004-03 (Dec. 17, 2004), at 1 (hereinafter "FAB 2004-03").[6]

"[A] party's status as a 'trustee,' directed or otherwise, must be determined by reference to the Plan, the Trust Agreements, and [any] Service Agreements."  *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1035 (S.D. Ohio 2006); *see also DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 735, 744-745 (E.D. Va. 2005) (same); *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 19-21 (1st Cir. 1998) ("The starting point for a reasoned analysis of the Bank's fiduciary status is the Agreement"); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) ("The discretionary authority or responsibility which is pivotal to the statutory definition of 'fiduciary' is allocated by the plan documents themselves.").  The SIP and the Trust Agreement are clear that BNY Mellon is a directed trustee with respect to the Kodak Stock Fund

---

[6] A copy of the FAB 2004-03 is attached hereto as Appendix A.

and possessed no relevant discretionary authority concerning investing SIP assets in the Kodak

Stock Fund:

*First*, BNY Mellon had no discretionary authority with respect to *any* investment option

offered under the SIP.  The SIPCO—not BNY Mellon—had "the power, the duty, and the

complete and exclusive discretion . . . to select, monitor and administer investment options, and

implement investment option and [SIP] changes, as it deems appropriate."  SIP § 3.03(b)(7).

*Second*, with respect to the one investment challenged in this action, the Kodak Stock

Fund, the SIP specifically *required* that the Kodak Stock Fund be offered to participants as an

investment option.  *See* SIP § 7.01(c) ("the Kodak Stock Fund must be made available for

investment").  Indeed, offering the Kodak Stock Fund was necessary to achieve one of the

express purposes of the SIP prior to March 16, 2012, "to offer Participants the opportunity to

invest in [Kodak Stock]."  SIP § 1.01.  BNY Mellon was directed to maintain the Kodak Stock

Fund.  SIP § 7.01(b)(1).

*Third*, purchases and sales of Kodak Stock were specifically "[a]t [SIPCO]'s directions,"

TA § 4.04(b), which itself was subject to the SIP mandate that Kodak Stock be available for

investment.

> **2.      Plaintiffs Fail to Allege, and Cannot Allege, any Discretionary Actions
>          Taken by BNY Mellon with Respect to the Kodak Stock Fund, and
>          they Misread the Governing Plan Documents.**

The Complaint contains no allegation that, contrary to the clear allocation of

responsibility with respect to the Kodak Stock Fund contained in the provisions of the SIP and

Trust Agreement, BNY Mellon took any discretionary action with respect to that fund.  Nor does

it contain any allegation at all relating specifically to BNY Mellon.  Most of the allegations in

Count I clearly relate only to the SIPCO, even though the Complaint is addressed generally to

"Defendants."  *See, e.g.*, Compl. ¶¶ 209-231.  Instead, the Complaint attempts to establish that

9

BNY Mellon possessed discretion with respect to the Kodak Stock Fund based on general language in the SIP and Trust Agreement that BNY Mellon: (i) is "responsible for the management and control of the [SIP] assets to the extent provided in the Trust," Compl. ¶ 81 (quoting SIP § 3.12); (ii) "is authorized to keep any portion of any of the Funds as it may deem advisable from time to time in cash or liquid investments," Compl. ¶ 82 (quoting SIP § 7.02); and (iii) is authorized to "take all action, whether or not expressly authorized, which the Trustee may deem necessary or desirable for the fulfillment of its duties . . . ."  Compl. ¶ 83 (quoting TA § 3.01(p)).  None of these provisions address investment option selection.

Plaintiffs' attempt to override the specific provisions of the SIP documents pertaining to the Kodak Stock Fund by referring to generalized provisions of the same documents would turn the relationship between the parties on its head.  The Second Circuit has directed that plan terms must be construed in accordance with the reasonable expectations of the parties reflected in "the language of the [plan] and other indicia of the intent of the [plan]'s creator."  *Fay v. Oxford Health Plan,* 287 F.3d 96, 104 (2d Cir. 2002) (quoting *Bradwell v. GAF Corp.*, 954 F.2d 798, 800 (2d Cir. 1992)).  Provisions in ERISA plans must be construed "within the context of the entire agreement."  *Dillon v. Metro. Life Ins. Co.*, No. 09 Civ. 7958 (SHS), 2011 WL 6825252, at *7 (S.D.N.Y. Dec. 28, 2011).  "When the . . . 'interpreting court can discern from the contract as a whole what the parties must have intended, it should enforce that intention . . . .'"  *Id.* at *7 (quoting *Dobson v. Hartford Fin. Servs. Group,* 389 F.3d 386, 399 (2d Cir. 2004)).  "Notwithstanding the ennobling purposes which prompted passage of ERISA, courts have no right to torture language in an attempt to force particular results or to convey delitescent nuances the contracting parties neither intended nor imagined."  *Burnham v. Guardian Life Ins. Co. of Am.*, 873 F.2d 486, 489 (1st Cir. 1989).

These fundamental principles of contract interpretation apply here, where the SIP and the Trust Agreement establish that BNY Mellon is a directed trustee with respect to the Kodak Stock Fund. Courts consistently hold, in construing similar provisions addressing authority with respect to investment in company stock (as opposed to general powers), that the trustee qualifies as a directed trustee within the meaning of ERISA § 403(a)(1) in these circumstances.

For example, in *In re General Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444 (E.D. Mich. Apr. 6, 2006), the trust agreement provided that the trustee "shall maintain" an employer stock fund for investment by the plan. *Id.* at *17. The court held that trustee therefore "did not have discretion to divest the Plans of [employer] stock in lieu of more favorable investments," and could not be liable for breach of fiduciary duty in connection with such investments. *Id.* *20 (dismissing claims against directed trustee). Similarly, in *Cardinal Health*, the court held that a trustee who was "bound by the terms of the Trust Agreement to follow [the named fiduciary]'s directions [as] . . . a 'directed trustee'" could not be subject to suit over continued plan holding of that stock. 424 F. Supp. 2d at 1036 (dismissing claims against directed trustee). It came to this conclusion notwithstanding attempts by plaintiffs (who were represented by the same attorneys as Plaintiffs here) to use generalized language in plan documents to override specific language in the same documents with respect to the holding of employer stock. *Id.* at 1036-1037. *See also DiFelice*, 397 F. Supp. 2d at 745 (rejecting plaintiff's attempt to distort trust agreement language to avoid dismissal of directed trustee).

Because BNY Mellon is bound by the specific terms of the SIP and the Trust Agreement relating to the selection of investment options, and in particular the inclusion of the Kodak Stock Fund, it is a directed trustee within the meaning of ERISA § 403(a)(1) with respect to the availability of, and the investments held within, the Kodak Stock Fund.

**B.      Plaintiffs Cannot State a Claim for Breach of ERISA Fiduciary Duty against BNY Mellon Because, as a Directed Trustee, BNY Mellon Properly Followed Direction with Respect to Investments in the Kodak Stock Fund.**

As a directed trustee, BNY Mellon is not liable to Plaintiffs.  To support their breach of

ERISA fiduciary duty claim against BNY Mellon, Plaintiffs allege that, in light of "widely

available public information" about Kodak's financial condition, BNY Mellon "knew or should

have known that Kodak Stock was no longer a suitable and appropriate investment for the SIP."

Compl. ¶¶ 216-231.  This, however, is not the legal standard that governs directed trustee

actions.  Under the correct legal standard, Plaintiffs fail to state a claim against BNY Mellon.

**1.      As a Directed Trustee, BNY Mellon's Duties Are Narrow and It Is Not Responsible for Determining "Suitable and Appropriate Investments" for the SIP.**

Plaintiffs are incorrect that BNY Mellon was responsible for determining whether Kodak

Stock was a "suitable and appropriate investment for the SIP."  Compl. ¶ 223.

"The duties of a directed trustee under [ERISA] are . . . *significantly narrower* than the

duties generally ascribed to a discretionary trustee under common law trust principles."  FAB

2004-03, at 1-2 (emphasis added).[7]  "Since a person is a fiduciary to a plan only 'to the extent'

the person functions as a fiduciary . . . the fiduciary obligations of directed trustees are

circumscribed by the parameters of their duties . . . ."  *WorldCom*, 354 F. Supp. 2d at 444-445

(quoting definition of a fiduciary, codified at 29 U.S.C. § 1002(21)(A)); *see also F.W. Webb Co.

v. State Street Bank and Trust Co.*, No. 09 Civ. 1241 (RJH), 2010 WL 3219284, at *13

(S.D.N.Y. Aug. 12, 2010) (bank's "duties as directed trustee with regard to the Plan's investment

---

[7] FAB 2004-03 expresses the views of the DOL "on the responsibilities of directed trustees under ERISA, particularly with respect to directions involving employer securities."  FAB 2004-03, at 1.  Courts that have considered FAB 2004-03 routinely give it deference as persuasive authority under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), because it is supported by sound reasoning and is consistent with existing law.  *See Cardinal Health*, 424 F. Supp. 2d at 1038 n.36; *DiFelice*, 397 F. Supp. 2d at 751 n.25; *In re WorldCom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423, 446 (S.D.N.Y. 2005).

decisions were extremely narrow")); *Moench v. Robertson*,  62 F.3d 553, 571 (3d Cir. 1995)

(directed trustees are "essentially" "immune from judicial inquiry").

Accordingly, the standard applicable to a directed trustee is not, as Plaintiffs allege,

whether an investment option is "suitable and appropriate."  That is a decision for the employer

sponsoring the plan (who may codify such a decision in the plan documents) or for the named

fiduciary with actual discretionary authority over plan investments.  However, it is not the

relevant legal standard for a directed trustee, which "does not . . . have an independent obligation

to determine the prudence of every transaction."  FAB 2004-03, at 2.  A directed trustee also has

no obligation "to duplicate or second-guess the work of the plan fiduciaries that have

discretionary authority over the management of plan assets."  *Id.* (citing *In re WorldCom ERISA

Litig.*, 263 F. Supp. 2d 745, 761 (S.D.N.Y. 2003) and *Herman v. NationsBank Trust Co. (Ga.)*,

126 F.3d 1354, 1361-1362 (11th Cir. 1997) (directed trustee does not have a direct obligation of

prudence under ERISA)).  Under the actual standards that apply to a directed trustee, as

discussed below, Plaintiffs fail to state a claim.

> **2.      The Complaint Fails to Allege Clear and Compelling Public
> Indicators Giving Rise to any Duty on the Part of BNY Mellon to Act
> Contrary to Directions to Invest in Kodak Stock.**

The Department of Labor, after carefully considering the proper role for directed trustees

with respect to the holding of employer stock in employee benefit plans, concluded that, "absent

material non-public information, a directed trustee, given its limited fiduciary duties as

determined by statute, will rarely have an obligation under ERISA to question the prudence of a

direction to purchase publicly traded securities at the market price solely on the basis of publicly

available information."  FAB 2004-03, at 3.[8]  Such obligation only arises in "limited,

---

[8] The reason a directed trustee rarely has a duty to act based on public information is threefold:  "(1) markets
generally are assumed to be efficient so that stock prices reflect publicly available information and known risks; (2)

extraordinary circumstances, where there are clear and compelling public indicators . . . that call

into serious question a company's viability as a going concern." *Id.*  Plaintiffs fail to state a

claim that BNY Mellon breached its limited obligations as a directed trustee with respect to the

holding of Kodak Stock in the SIP under this standard because they do not, and cannot, plead

that there were clear and compelling public indicators that called into serious question Kodak's

viability as a going concern during the class period.

The Complaint relies heavily on allegations that changes in the photography industry

beginning decades before the class period threatened the market for film—Kodak's "longtime

product."  Compl. ¶¶ 108-110 (quotation omitted).  Indeed, much of the public information upon

which Plaintiffs rely concerning Kodak's purported inability to adapt to a changing market

occurred before the putative class period began on January 1, 2010 and merely points to long-

term trends and challenges in the photography market.  *See* Compl. ¶¶ 102-128 (describing

Kodak corporate activity from 1930 to 2009).  Even with respect to allegations concerning public

information during the putative class period, the Complaint merely pleads the slow decline of

Kodak's stock price and the fact that public information indicated that Kodak faced product and

earnings challenges and incurred losses while making repeated attempts to adapt to a changing

market.  Compl. ¶¶ 137, 143, 161, 190.  The Complaint also pleads facts suggesting that Kodak

retained value:  that it was a likely leveraged buyout target, that it continued to show positive

earnings in 2010, and that a large institutional investor continued to hold shares through

---

in the case of employer securities, the securities laws impose substantial obligations on the company, its officers, and its accountants to state their financial records accurately; and (3) ERISA § 404 requires the instructing fiduciary to adhere to a stringent standard of care."  FAB 2004-03, at 3.  Plaintiffs do not allege that BNY Mellon possessed any material non-public information about Kodak or its stock.  Their attempt to lump all defendants together in alleging that "Defendants knew or should have known" of problems with in the company because of "their high ranking positions within the Company and/or their status as the Plans' fiduciaries," Compl. ¶ 209, pleads no fact sufficient to establish that BNY Mellon—an unaffiliated, outside service provider—possessed material non-public information.

November 2011.  Compl. ¶¶ 142, 148, 192.  Such allegations are insufficient to meet the high standards necessary to set forth a claim for directed trustee liability under governing law.

In *Cardinal Health*, for example, the court rejected allegations that publicly-available information concerning an employer's financial restatements, a government investigation of the company, and significant loss in stock value should have demonstrated to the directed trustee that the company was "in danger of imminent collapse."  The court held that under FAB 2004-03, such information was "insufficient to have triggered a duty to object to the direction to continue to include [company stock] as an investment option in the Plan."  424 F. Supp. 2d at 1040 (dismissing claims against directed trustee under Rule 12(b)(6)).  Similarly, in *LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004), the court affirmed dismissal under Rule 12(b)(6) of claims against a directed trustee because allegations that the directed trustee knew that the company's "stock price and profits were declining and that the company was undergoing a restructuring" were not sufficient to plead any breach of duty in connection with continued company stock investments, particularly where the directed trustee only learned of the company's condition "as the events were unfolding."  *Id.* at 7.

Likewise, in *DiFelice*, the company's public disclosure of $2 billion in net losses was not sufficient to impose duties on the directed trustee to act contrary to direction to invest in company stock.  *See* 397 F. Supp. 2d at 757 (dismissing claims against directed trustee).  Even "numerous red flags" concerning the company's condition, including a failed merger, did not trigger a duty "to countermand the named fiduciary's direction."  *Id.* at 753-756; *see also WorldCom*, 354 F. Supp. 2d at 449 (rejecting claim based on public information concerning adverse market conditions and precipitous decline in stock price because "[k]nowledge that a

company's fortunes are declining does not impose a duty" on a directed trustee).[9]  Even public

statements by the CEO that the company had incurred a "cataclysmic falloff in revenue" and the

company's subsequent bankruptcy filing were insufficient to state a claim against the directed

trustee.  *DiFelice*, 397 F. Supp. 2d at 741.  "[A] direction to retain company stock as a plan

investment option is not contrary to ERISA until the shares are worthless as a matter of fact, and

not as a matter of conjecture or investment judgment about the future."  *Id.* at 752.

And in *In re RCN Litig.*, No. 04-5068 (SRC), 2006 WL 1273834, at *7-8 (D.N.J. Mar.

22, 2006), the court dismissed claims against a directed trustee even where the company filed for

reorganization after losing 90% of its stock value.  Allegations of public information concerning

the company's "precipitous decline" did not constitute an "extraordinary circumstance" that

would impose any duty on the directed trustee to disregard directions.  *Id.* at *5-6 ("A directed

trustee who possesses the kinds of public information as alleged in the Plaintiffs' Complaint will

'rarely have an obligation under ERISA to question the prudence of a direction to purchase

publicly traded securities at the market price.'") (quoting FAB 2004-03); *see also WorldCom*,

354 F. Supp. 2d at 448 ("even in the case of a distressed company in bankruptcy, it might not be

imprudent for a directed trustee to follow a direction to purchase or hold stock in that

company"); *In re General Motors ERISA Litig.*, 2006 WL 897444, at *12-13 (dismissing claims

notwithstanding public speculation of a bankruptcy filing and that "Plaintiffs also fervently

contend that GM's dire financial straits and its serious mismanagement have put it at risk of

collapse").

---

[9] Even where claims are asserted against plan fiduciaries (as opposed to a directed trustee), courts routinely dismiss complaints that are, like here, premised on the allegations that company stock was an imprudent investment because the company was in a declining industry.  *See, e.g., In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 614-616 (N.D. Tex. 2008) (rejecting allegations based on losses due to obsolete inventory); *Crowley ex rel. Corning, Inc. Inv. Plan v. Corning, Inc.*, 234 F. Supp. 2d 222, 226, 227, 230 (W.D.N.Y. 2002) (same).  *See also* Kodak Defendants' Memorandum in Support of Motion to Dismiss.

Indeed, the DOL makes clear that filing for bankruptcy is, itself, insufficient to trigger a duty on the directed trustee to question a decision to continue company stock investment.  A duty to question directions only arises where the circumstances of the bankruptcy "make it unlikely that there would be any distribution to equity-holders, or [where the company] otherwise publicly stated that it was unlikely to survive the bankruptcy proceedings in a manner that would leave current equity-holders with any value."  FAB 2004-03, at 3.  Here, Plaintiffs plead no fact that, prior to February 24, 2012, when Kodak amended the SIP to eliminate Kodak Stock effective March 16, 2012, the company's prospects were so dire that it was likely there would be no distribution to equity-holders or that there was any public company statement that such holders would be left with no value; instead, the Complaint alleges that only seven months later, "liquidation might be necessary."  Compl. ¶ 206.

Plaintiffs' citation to negative analyst reports, Compl. ¶¶ 151, 182, also does not impose a duty on BNY Mellon to reject the SIPCO's direction to continue to make the Kodak Stock Fund available for participant investments as required by the SIP.  "Analyst recommendations to sell . . . do not represent reliable information regarding the company's viability."  *WorldCom*, 354 F. Supp. 2d at 449.  Kodak's downgraded debt ratings also did not impose a duty on BNY Mellon.  *See DiFelice*, 397 F. Supp. 2d at 741, 755-756 (no directed trustee duty with respect to company stock investments even where debt rating downgraded).

In short, Plaintiffs fail to plead the "extraordinary circumstances" necessary to give rise to any duty of BNY Mellon to disregard instructions to invest in Kodak Stock.  In other circumstances where a plaintiff also sought to impose ERISA fiduciary liability on a service provider for investment decisions made by the company sponsoring the plan, this Court dismissed all claims.  *See Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 270-271 (W.D.N.Y. 2010)

17

(Larimer, J.) (dismissing claim for alleged imprudence due to excessive fees).  Similarly, here,

Count I should be dismissed as to BNY Mellon.

### III.    Plaintiffs Cannot State a Claim under Count III against BNY Mellon, Which Cannot Be Liable under ERISA's Co-Fiduciary Provisions.

Plaintiffs also fail to state a claim against BNY Mellon in Count III for co-fiduciary

liability.

ERISA § 405(a) imposes liability on a fiduciary for the breach by another fiduciary of the

others' duties, if the defendant (1) knows of the breach and fails to remedy it, (2) knowingly

participates in the other's breach, or (3) enables the breach.  *See* 29 U.S.C. § 1105(a).  The

Complaint fails to establish such a claim against BNY Mellon.

*First*, BNY Mellon cannot be liable for co-fiduciary acts outside of the scope of its duty.

Courts consistently hold that a directed trustee cannot be found liable as a co-fiduciary for a

plan's investment in company stock where the directed trustee has no discretionary authority

over such investment.  *See DiFelice*, 397 F. Supp. 2d at 757; *RCN Litig.* 2006 WL 1273834, at

*7-8.  To hold otherwise would be an end run around the narrow limitations under which a

directed trustee could be liable, and would essentially read ERISA's limitation on the scope of a

directed trustee's duty out of the statutory framework.

*Second*, Plaintiffs have pleaded no facts to support a conclusion that BNY Mellon had the

requisite knowledge of any other fiduciary's breach that is necessary to establish a claim under

ERISA §§ 405(a)(1) or (3).  *See Keach v. U.S. Trust Co.*, 240 F. Supp. 2d 840, 844 (C.D. Ill.

2002) ("It is well-established that actual knowledge by a fiduciary is required in order for co-

fiduciary liability to attach under ERISA § 405(a).").  In *WorldCom*, for example, the directed

trustee was not liable under ERISA § 405(a) for investment of plan assets in company stock

because no facts supported that the directed trustee had any knowledge that the named fiduciary

had failed to act prudently with respect to continued investments in company stock.  354 F.

Supp. 2d at 449-450; *see also RCN Litig.*, 2006 WL 1273834, at *7 (a co-fiduciary claim fails

absent allegations that the directed trustee had knowledge of any breach).

 *Third*, it is axiomatic that there can be no liability under ERISA § 405(a) if there was no

breach of duty in the first instance.  *See Maniace v. Commerce Bank of Kansas City, N.A.*, 40

F.3d 264, 268-269 (8th Cir. 1994) (no co-fiduciary liability exists where plaintiffs "failed to

plead or offer facts" indicating that there was an underlying fiduciary breach).  As the Kodak

defendants demonstrate in their motion to dismiss, there was no underlying breach of any

fiduciary duty by any defendant as to investment of the SIP in Kodak Stock.

 *Fourth*, Plaintiffs cannot state a claim against BNY Mellon under ERISA § 405(a)(2)

because that provision requires a violation of § 404(a)(1) by BNY Mellon before liability can

attach under § 405(a)(2).  *See* 29 U.S.C. § 1105(a)(2) (imposing liability in connection with

"failure to comply with section [404(a)(1)]").  For the reasons set forth above, BNY Mellon

could not have co-fiduciary liability under § 405(a)(2) because it did not violate § 404(a)(1).  *See*

*RCN Litig.*, 2006 WL 1273834, at *7 (§ 405(a)(2) claim "unsustainable" where defendant "has

not breached [its] fiduciary duties as a directed trustee"); *see also generally Brandt v. Grounds*,

687 F.2d 895, 898-899 (7th Cir. 1982) (affirming dismissal of claim under § 405(a)(2) where

bank was not a fiduciary in the first instance, and did not breach § 404(a)(1)'s fiduciary duties).

 Because BNY Mellon cannot be liable under § 405, Plaintiffs' Count III should be

dismissed as to it.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety as to BNY

Mellon.

Dated:  October 29, 2012                  Respectfully Submitted,


                                          ____/s/ James O. Fleckner_____
                                          James O. Fleckner, Esq.
                                          Alison V. Douglass, Esq.
                                          GOODWIN PROCTER LLP
                                          Exchange Place
                                          Boston, MA  02109
                                          Telephone:  (617) 570-1000
                                          Facsimile:  (617) 523-1231
                                          jfleckner@goodwinprocter.com
                                          adouglass@goodwinprocter.com

                                          Attorneys for The Bank of New York Mellon



## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and

that paper copies will be sent to those indicated as non-registered participants on October 29, 2012.



                                          /s/ James O. Fleckner_____
                                          James O. Fleckner



LIBA/2343000