# EXHIBIT A

**BENEFIT PLAN 1C.01**
**Savings and Investment Plan**
**Effective Date:  January 1, 2010**
**As Amended:  December 16, 2009**
**No. of Pages: 95 plus**
**Appendix A**

**Eastman Kodak Employees' Savings and Investment Plan**

| Section | | Page |
|---|---|---|

| 1. | INTRODUCTION | 1 |
| | 1.01 Purpose | 1 |
| | 1.02 Restatement | 1 |
| 2. | DEFINITIONS | 1 |
| | 2.01 Account | 2 |
| | 2.02 Affiliated Company | 2 |
| | 2.03 Authorized Absence | 2 |
| | 2.04 Board | 2 |
| | 2.05 Catch-Up Contributions | 2 |
| | 2.06 Code | 3 |
| | 2.07 Company | 3 |
| | 2.08 Contract | 3 |
| | 2.09 Contribution | 3 |
| | 2.10 Designated Catch-Up Contributions | 3 |
| | 2.11 Divested Participant | 3 |
| | 2.12 Domestic Partner | 4 |
| | 2.13 Elective Contribution | 5 |
| | 2.14 Elective Contribution Account | 5 |
| | 2.15 Employee | 5 |
| | 2.16 Employer Securities | 7 |
| | 2.17 Financial Institution | 7 |
| | 2.18 Fiscal Year | 8 |
| | 2.19 Investment Manager | 8 |
| | 2.20 Kodak Ambassador | 8 |
| | 2.21 Limited Service Employee | 8 |
| | 2.22 Match Eligible Participant | 8 |
| | 2.23 Matching Contribution | 8 |
| | 2.24 Matching Contribution Account | 9 |
| | 2.25 Participant | 9 |
| | 2.26 Plan | 9 |

2.27     Plan Year ................................................................................................... 9
2.28     Qualified Domestic Relations Order ......................................................... 9
2.29     Qualifying Compensation ........................................................................ 9
2.30     Retirement Eligible Participant ............................................................... 11
2.31     Rollover Account .................................................................................... 12
2.32     Share ...................................................................................................... 12
2.33     SIPCO ..................................................................................................... 12
2.34     Trust ........................................................................................................ 12
2.35     Trustee .................................................................................................... 12
2.36     Valuation Date ........................................................................................ 12
2.37     Wage Dividend ....................................................................................... 13

3.   ADMINISTRATION ............................................................................................... 13

3.01     General Operation of SIPCO ................................................................. 13
3.02     Named Fiduciary and Plan Administrator ............................................... 13
3.03     Powers and Duties of SIPCO ................................................................. 14
3.04     Operation of SIPCO ............................................................................... 19
3.05     Claims Review Procedure ...................................................................... 19
3.06     Limitations on Actions ............................................................................ 23
3.07     Miscellaneous ........................................................................................ 27
3.08     Power to Appoint Advisers ..................................................................... 27
3.09     Expenses ................................................................................................ 27
3.10     Duties of Fiduciaries .............................................................................. 28
3.11     Liability of Members ............................................................................... 28
3.12     Allocation of Responsibility .................................................................... 28
3.13     Receipt of Forms .................................................................................... 29

4.   ELIGIBILITY AND PARTICIPATION ..................................................................... 29

4.01     Eligibility ................................................................................................. 29
4.02     Participation ............................................................................................ 29

5.   CONTRIBUTIONS ................................................................................................. 30

5.01     Elective Contributions ............................................................................ 30
5.02     Matching Contributions .......................................................................... 32
5.03     Rollovers ................................................................................................. 34
5.04     Catch-up Contributions .......................................................................... 37
5.05     Vesting .................................................................................................... 40

6.   LIMITS ON CONTRIBUTIONS .............................................................................. 40

6.01     Aggregate Percentage Limit on Elective Contributions ......................... 40
6.02     Dollar Limit on Elective Contributions ................................................... 40
6.03     Limit on Elective Contributions for "Highly-Compensated Employees." ...... 41

|  | 6.04 | Limit on Matching Contributions for "Highly-Compensated Employees." | 42 |
|  | 6.05 | Definitions, Rules of Construction and Other Provisions Applicable to Sections 6.03 and 6.04 | 43 |
|  | 6.06 | Maximum "Annual Additions." | 45 |
|  | 6.07 | Compliance with Applicable Limits. | 45 |
|  | 6.08 | Multiple Use of Alternative Limitations | 49 |
| 7. | INVESTMENT OF FUNDS | | 51 |
|  | 7.01 | The Funds | 51 |
|  | 7.02 | Liquid Investments | 54 |
|  | 7.03 | Value of the Funds | 54 |
|  | 7.04 | Individual Account Valuation For Unitized Funds | 54 |
|  | 7.05 | Individual Account Valuation For Non-Unitized Funds | 55 |
|  | 7.06 | Payment of Expenses | 55 |
|  | 7.07 | Transfer Among Funds | 55 |
|  | 7.08 | Participant as Named Fiduciary | 56 |
|  | 7.09 | Special Provisions | 56 |
| 8. | WITHDRAWALS AND LOANS | | 57 |
|  | 8.01 | Withdrawals On or After Age 59-1/2 | 57 |
|  | 8.02 | Hardship Withdrawals | 57 |
|  | 8.03 | Loans | 60 |
|  | 8.04 | Notice and Waiver of Notice | 65 |
|  | 8.05 | Valuation Date | 66 |
|  | 8.06 | Withdrawals of ESOP Dividends | 66 |
| 9. | DISTRIBUTIONS AFTER TERMINATION OF EMPLOYMENT OR AFTER AGE 70-1/2 | | 67 |
|  | 9.01 | Timing of Payment | 67 |
|  | 9.02 | Method of Payment | 69 |
|  | 9.03 | Form of Payment | 73 |
|  | 9.04 | Minimum Distribution Requirements | 73 |
|  | 9.05 | Consultation and Consent | 78 |
|  | 9.06 | Valuation of Distributions | 79 |
|  | 9.07 | Termination of Employment | 79 |
| 10. | DEATH BENEFITS, QUALIFIED DOMESTIC RELATIONS ORDERS AND DIRECT ROLLOVERS | | 79 |
|  | 10.01 | Death Benefits | 79 |
|  | 10.02 | Qualified Domestic Relations Orders | 80 |
|  | 10.03 | Direct Rollover | 81 |
|  | 10.04 | Notice and Waiver of Notice | 83 |

10.05   Loan Rollovers by Divested Participants ................................................. 83

11. AMENDMENT ........................................................................................... 85

11.01   Power to Amend ......................................................................... 85
11.02   Necessary Amendments ............................................................ 85
11.03   Amendments Required by IRS .................................................. 85

12. TERMINATION OF THE PLAN ................................................................. 86

12.01   Right to Terminate Plan or Discontinue Contributions ............... 86
12.02   Automatic Termination ............................................................... 86

13. LIMITATION OF RIGHTS ........................................................................ 86

13.01   Rights to Trust Assets ............................................................... 86
13.02   Accounts are Nonalienable ....................................................... 87
13.03   Participants' Accounts ............................................................... 88

14. CONSTRUCTION AND INTERPRETATION ........................................... 88

14.01   Governing Law ........................................................................... 88
14.02   No Reversion to Company .......................................................... 88
14.03   Return of Erroneous Contributions ............................................ 88
14.04   Correction .................................................................................. 88
14.05   Return of After-Tax Contributions .............................................. 89

15. INCLUSION AND EXCLUSION OF SUBSIDIARY AND AFFILIATED
    COMPANIES ........................................................................................... 89

16. MISCELLANEOUS .................................................................................. 89

16.01   No Employment Rights Created ................................................. 89
16.02   Plan Assets ............................................................................... 89
16.03   Top-Heavy Requirements ........................................................... 90
16.04   Military Service .......................................................................... 92
16.05   State Tax Withholding ................................................................ 93
16.06   Transfers from an Affiliated Company 401(k) Plan ..................... 93
16.07   Missing Payees .......................................................................... 94

**Appendix**

A.   Subsidiary and Affiliated Companies of Eastman Kodak Company Included
     in the Plan

## 1.   INTRODUCTION

### 1.01   Purpose

The purpose of the Eastman Kodak Employees' Savings and Investment Plan is to assist Employees of the Company in an orderly and systematic savings and investment program by giving them an opportunity to defer receipt of a portion of Qualifying Compensation and a portion or all of such Wage Dividends as may hereafter be declared, and to elect to have such deferred amounts invested in accordance with the provisions herein.  Certain Employees also are eligible to receive a Matching Contribution from the Company on amounts they defer.  The Plan is also intended to offer Participants the opportunity to invest in Employer Securities, and for this purpose includes an employee stock ownership plan component known as the Kodak Stock Fund. Participants may, but need not, invest some or all of their Plan Account balances in the Kodak Stock Fund.

### 1.02   Restatement

The Plan was established in 1960 by the Company and was amended and restated in its entirety effective with respect to Participants with Accounts on or after December 31, 1993, except as noted otherwise, to conform to the relevant provisions of the Internal Revenue Code of 1986 ("Code") and the Employee Retirement Income Security Act of 1974 ("ERISA").  The Plan was further amended and restated in its entirety effective with respect to Participants with Accounts on or after January 1, 2002, except as noted otherwise.  Such amendment is intended as good faith compliance with the requirements of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA") and is to be construed in accordance with EGTRRA and guidance issued thereunder.  This amendment shall supersede the provisions of the Plan to the extent those provisions are inconsistent with the provisions of this amendment.  The Plan as further amended from time to time is hereby set forth in full.

## 2.   DEFINITIONS

The terms used in this Plan will have the meanings set forth in this Article unless a different meaning is clearly required by the context.  As used herein, the masculine and feminine, and the singular and plural, may be interchangeable, unless the context requires otherwise.  As used here, the helping verb "will" is intended to indicate action that is required or mandatory (in the sense of "shall") as opposed to action that merely is to occur in the future.  As used herein, the words "include," "includes," and "including" mean "include without limitation," "includes without limitation," and "including without limitation," respectively.

SIP20100101

**2.37   Wage Dividend**

"Wage Dividend" will mean such payment designated by that name as may be
authorized by the Company to be paid to Employees and former Employees out of
current or accumulated profits which the Company is obligated to make as of December
30 of the Fiscal Year with respect to which the Wage Dividend relates, and which is, if
not contributed to the Plan pursuant to Section 5.01(b) (wage dividend deferrals), paid
in the succeeding Fiscal Year. Notwithstanding any other provision of the Plan, the sum
of the Qualifying Compensation and Wage Dividend taken into account with respect to a
Participant for a Plan Year will not exceed $150,000 (as adjusted by the Secretary of
the Treasury or his delegate pursuant to section 401(a)(17) of the Code); provided,
however, that the sum of the annual Qualifying Compensation and Wage Dividend of
each Participant taken into account in determining allocations for any Plan Year
beginning after December 31, 2001, shall not exceed $200,000, as adjusted for cost-of-
living increases in accordance with section 401(a)(17)(B) of the Code.  The sum of
annual Qualifying Compensation and Wage Dividend means compensation during the
Plan Year or such other consecutive 12-month period over which compensation is
otherwise determined under the Plan (the determination period).  The cost-of-living
adjustment in effect for a calendar year applies to the sum of the annual Qualifying
Compensation and Wage Dividend for the determination period that begins with or
within such calendar year.


**3.     ADMINISTRATION**

**3.01   General Operation of SIPCO**

SIPCO will control and manage the operation and administration of the Plan and Trust as
and to the extent set forth in the Plan and Trust.  The members of SIPCO will not be
entitled to compensation from the Trust for their services as members of SIPCO.  The
persons named to SIPCO will acknowledge in writing that they are fiduciaries under the
Plan.  Any member may resign by delivering his written resignation to the Chairperson of
SIPCO, which may act notwithstanding any vacancies.

**3.02   Named Fiduciary and Plan Administrator**

SIPCO will be the Named Fiduciary and Plan Administrator as those terms are used in
ERISA.  SIPCO will be the agent for the service of legal process with respect to the Plan.

**3.03   Powers and Duties of SIPCO**

(a)   **Definitions.** For purposes of this Section and Sections 3.05-3.07, the
following definitions will apply:

(1)   "Action" means a dispute resolution process of any kind, other than
the claims and appeals process described in Section 3.05, including,
without limitation, judicial or administrative proceedings, arbitration
or mediation;

(2)   "Agreement" means any contract or agreement of any kind,
including, without limitation, administrative services agreements,
trust agreements, investment-related agreements, releases, waivers
and employment agreements;

(3)   "Appeal Letter" means the written decision by SIPCO with respect to
the review described in Section 3.05(**d**) of a Claim denial;

(4)   "Claim" means a Routine Claim for Payment of Benefits or an Other
Claim;

(5)   "Claimant" means a person who files a Claim;

(6)   "Court" means the person or persons with the authority to resolve
the dispute underlying an Action, including, without limitation, a judge
or arbitrator;

(7)   "Damages" means benefits under the Plan and any remedy of any
kind, whether legal, equitable or otherwise, arising under any Law,
including, without limitation, restitution, attorneys' fees, penalties,
and any loss, interest, liability, claim, damage, charge, cost or
expense;

(8)   "Law" means any statute, law, ordinance, rule, regulation, code,
order, judgment, injunction, decree, judicial or administrative ruling
or doctrine, or any other source of authority;

(9)   "Original Claim" means a Claim that has been denied or deemed
denied;

SIP20100101

(10)   "Original Claim Appeal Deadline" means the date that is 60 days after receipt of the notice of denial for the Original Claim or a deemed denial;

(11)   "Other Claim" means any claim for Damages arising under the Plan or any Law that is not a Routine Claim for Payment of Benefits, and includes, without limitation, Claims with respect to Plan amendments that reduce or eliminate Company contributions or Plan participation, or that relate to the Plan's investment performance;

(12)   "Plaintiff" means any and all persons and entities seeking Damages from a Plan Party, whether or not pursuant to an Action;

(13)   "Plan Party" means the Plan, SIPCO and its individual members, the Company, its Affiliates and any employee, officer or director of the Company or an Affiliate, and any employee, officer or director of the Company or an Affiliate to whom SIPCO, the Company or an Affiliate has delegated responsibility related to the Plan;

(14)   "Related Claim" means a Claim related in any way to a Claim for which a written or electronic notice of denial has been issued or which has been deemed denied; and

(15)   "Routine Claim for Payment of Benefits" means a claim that a specific Benefit is owed to the Claimant under the terms of the Plan.

(b)   **General Authority.**  SIPCO will administer the Plan in accordance with its terms and will have all the powers necessary to carry out the provisions of the Plan, except such powers as are specifically reserved to the Director, Human Resources or some other person.  In addition to any implied powers and duties that may be necessary or appropriate to the conduct of its affairs, and without limitation by reason of enumeration, SIPCO will have the power, the duty, and the complete and exclusive discretion:

(1)   to make, publish and apply such rules and regulations as it may deem necessary to carry out the provisions of the Plan, including rules and regulations for determining the qualified status of domestic relations orders in accordance with Code section 414(p), and for administering distributions pursuant to Qualified Domestic Relations Orders;

SIP20100101

(2)     to construe, interpret, and administer the terms of the Plan, to remedy any possible ambiguities in the terms of the Plan, and to determine conclusively, for all parties, all questions arising out of the interpretation or administration of the Plan;

(3)     to determine conclusively the right of any person to benefits under the Plan and the amount of such benefits, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits;

(4)     to issue instructions to a Trustee to make disbursements from the Trust, and to make any other arrangement necessary or appropriate to provide for the orderly payment and delivery of disbursements from the Trust;

(5)     to decline to implement, with respect to any person, elections and directions when it deems appropriate, including, without limitation, those related to investments and transfers in the event of excessive trading by Participants or otherwise;

(6)     to impose, with respect to any person, restrictions of any kind when it deems appropriate, including, without limitation, those related to investments and transfers in the event of excessive trading by Participants or otherwise;

(7)     to administer the Plan and, except as expressly set forth herein, to select, monitor and administer investment options, and implement investment option and Plan changes, as it deems appropriate, including, without limitation:

    (A)     suspending any or all account activity;

    (B)     restricting deferrals, transfers and reallocations; and

    (C)     directing deferrals and account balances to investment options other than those elected;

(8)     to allocate income of any kind, other than Elective, Matching, Designated Catch-Up and Catch-Up Contributions and rollovers, as it deems appropriate, including, without limitation, proceeds from litigation or demutualization;

(9)     to allocate expenses of any kind as it deems appropriate, including, without limitation, those related to litigation;

(10)   to decide any Routine Claim for Payment of Benefits or Other Claim;

(11)   to construe and interpret, after conferring with legal counsel as appropriate, the Law applicable to any Claim, including, without limitation:

    (A)     Routine Claims for Payment of Benefits, Claims relating to eligibility for Plan participation and/or Claims relating to breach of fiduciary duty under ERISA Section 502 and any other Claims;

    (B)     ERISA Section 510;

    (C)     common law doctrines, including, without limitation, unjust enrichment, equitable estoppel, detrimental reliance and prejudice;

    (D)     penalties under any Law;

    (E)     the Age Discrimination In Employment Act of 1967, Americans with Disabilities Act, Racketeer Influenced and Corrupt Organizations Act and the vesting and accrual provisions of the Internal Revenue Code; and

    (F)     whether attorneys' fees are warranted;

(12)   to determine whether or not any person or entity is a fiduciary with respect to the Plan;

(13)   to construe and interpret, with respect to provisions related to the Plan, Agreements, to remedy any possible ambiguities in such provisions, and to determine conclusively, for all parties, all questions arising out of the interpretation or application of such provisions;

(14)   to determine conclusively the right of any person to, and the amount of, Damages with respect to any Claim or otherwise, subject to applicable Law, the Plan's terms, and the following:

(A)     a Claimant must provide conclusive, unambiguous proof of detrimental reliance to receive amounts to which he or any other person would otherwise not be entitled under the Plan's terms; and

(B)     absent the proof described in (A), award or payment of any such amounts, including, without limitation, compensatory and extracontractual damages is prohibited;

(15)   to make factual findings related to carrying out the provisions of the Plan, including, without limitation, those necessary:

(A)     to interpret or apply any Law;

(B).    to interpret or implement the provisions of any Agreement; and

(C)     to interpret or implement the provisions of the Plan, including, without limitation, determining dates and other facts for purposes of applying time limits with respect to the claims and appeals process and Actions;

(16)   to bind any Plan Party with such Plan Party's consent;

(17)   to determine, without limitation:

(A)     whether detrimental reliance has been established for purposes of Section 3.03(b)(14);

(B)     whether a Claim is a Related Claim for purposes of Sections 3.05(d)(1) and (2), and 3.06(b);

(C)     whether a Plaintiff has raised in litigation anything not raised in his appeal request for purposes of Section 3.06(e); and

(D)     the amount of attorneys' fees and other expenses for purposes of Section 3.06(g).

(18)   to compel either binding or non-binding arbitration or mediation with respect to any Claim for Damages (including either individual or class action arbitration); in such case, the arbitrator or mediator will be bound by the terms of the Plan;

(19)     subject to Section 3.12, to delegate some or all of its authority under
         the Plan to any person or persons.

(20)     to determine whether a Claim is a Routine Claim for Payment of
         Benefits or an Other Claim.

## 3.04   Operation of SIPCO

SIPCO will act by a majority of its members at the time in office, and such action may be
taken either by a vote at a meeting or without a meeting. Any action taken without a
meeting will be reflected in a written instrument signed by a majority of the members of
SIPCO. A member of SIPCO who is also a Participant will not vote on any question
relating specifically to himself. Any such question will be decided by the majority of the
remaining members of SIPCO. SIPCO may authorize any one or more of its members to
execute any document or documents on behalf of SIPCO, in which event SIPCO will
notify the Trustee in writing of such action and the name or names of its member or
members so designated. The Trustee will be provided with such reasonable assurances
as it may require. The Trustee thereafter will accept and rely upon any document
executed by such member or members as representing action by SIPCO until SIPCO will
file with the Trustee a written revocation of such designation. SIPCO may adopt such by-
laws or regulations as it deems desirable for the conduct of its affairs. SIPCO will keep
minutes, records and other data as may be necessary for the proper administration of the
Plan, and may rely upon such records and the records of the Company for all purposes.
A person asserting facts not supported or shown in the Plan's or Company's records
shall have the burden of producing documentation of such facts.

## 3.05   Claims Review Procedure

The provisions of this Section will apply notwithstanding anything in the Plan to the
contrary.

(a)      **Prerequisite.** All Claims must be reviewed under, and satisfy the
         requirements of, the claims and appeals procedures described in this
         Article as a prerequisite for bringing an Action with respect to a Claim.
         Notwithstanding any provision of the Plan to the contrary, the claims and
         appeals procedures set forth in this Article will apply to all Claims that arise
         on or after, or were in existence on or before, August 1, 2006, except that
         with respect to Claims in existence before August 1, 2006, any applicable
         deadline will be the earlier of (i) the deadline that would have applied under
         the Plan as in effect prior to August 1, 2006; or (ii) the deadline described in
         this Article calculated by treating August 1, 2006 as the date on which the

by telephone, or by any other method approved by SIPCO.  All elections to defer will remain in effect until revoked or modified.

(b)     An eligible Employee may not defer any portion of Qualifying Compensation due and owing to the Employee after the pay date for the last pay period during which the Employee had his severance from service.

(c)     The right of an eligible Employee to defer a percentage of Wage Dividend will cease upon his severance from service with a Company.

(d)     In the case of an eligible Employee who received a hardship distribution under a plan of Eastman Kodak Company or any Affiliated Company other than this Plan pursuant to the deemed necessary safe harbor hardship distribution rules of Treas. Reg. Section 1.401(k)-1(d)(3)(iv)(E), such eligible Employee's elections to defer a percentage of Qualifying Compensation or Wage Dividend pursuant to Sections 5.01 (Elective Contributions) or 5.04 (Catch-Up Contributions) will be suspended and limited in accordance with the provisions of Section 8.02(c)(2) (hardship withdrawal deferral limitations).

(e)     In the case of a Participant who receives a hardship distribution in accordance with Section 8.02 of this Plan (Hardship Withdrawals), such Participant's elections to defer a percentage of Qualifying Compensation or Wage Dividend pursuant to Sections 5.01 (Elective Contributions) or 5.04 (Catch-Up Contributions) will be suspended and limited in accordance with the provisions of Section 8.02(c)(2) (hardship withdrawal deferral limitations).

## 5.   CONTRIBUTIONS

## 5.01   Elective Contributions

(a)     Deferrals of Qualifying Compensation.

(1)     Deferrals of Qualifying Compensation Other Than Global Variable Pay Plan Payments.

(A)     Subject to the limits in Article 6, each eligible Employee may elect to have the Company contribute to the Trustee on his behalf any whole percentage or none of Qualifying

Compensation which is not paid under the Global Variable Pay Plan, not to exceed 75% thereof.

(B)  An election to defer Qualifying Compensation which is not paid under the Global Variable Pay Plan, or to modify or revoke a current election, will be effective as soon as administratively practicable after such election is communicated to SIPCO in accordance with this Section.

(2)  Deferrals of Qualifying Compensation Consisting of Global Variable Pay Plan Payments.

(A)  Subject to the limits in Article 6, each eligible Employee may elect to have the Company contribute to the Trustee on his behalf any whole percentage or none of Qualifying Compensation which is paid under the Global Variable Pay Plan, not to exceed 75% thereof.

(B)  An election to defer Qualifying Compensation which is paid under the Global Variable Pay Plan, or to modify or revoke a current election, will be effective as soon as administratively practicable after such election is communicated to SIPCO in accordance with this Section.

(3)  Elective Contributions attributable to Qualifying Compensation will be paid over to the Trustee as soon as practicable after such amounts would have been paid to the Participants and will be credited to the Participants' Elective Contribution Accounts.

(b)  Deferrals of Wage Dividend.

(1)  Subject to the limits in Article 6, each eligible Employee may elect to have the Company contribute to the Trustee on his behalf any whole percentage up to 75% or none of the amount of any Wage Dividend allocated to him and not attributable to amounts deferred under any plan other than this Plan.

(2)  An election to defer any Wage Dividend otherwise payable during any Plan Year is effective if communicated to SIPCO on or before the date established by SIPCO each Plan Year for making such election and, after such date, is irrevocable for such Wage Dividend. A previously communicated and effective election to

SIP20100101

defer any Wage Dividend may be revoked or modified with respect to the Wage Dividend to be paid during any subsequent Plan Year by communicating a new election to SIPCO on or before the deadline for making such election as established by SIPCO.

(3)   The Elective Contribution attributable to any Wage Dividend for a Fiscal Year will be paid over to the Trustee in the next succeeding Fiscal Year as soon as practicable after such amounts would have been paid to the Participants and will be credited to the Participants' Elective Contribution Accounts.

(4)   Without limitation of the powers granted to SIPCO under Article 3 and Section 6.07 (Compliance With Applicable Limits), SIPCO may adopt a policy limiting or prohibiting Wage Dividend deferrals by "highly-compensated employees."

## 5.02   Matching Contributions

(a)   Matching Contributions with Respect to Deferrals of Qualifying Compensation.

(1)   Each Participant who is accruing a cash balance benefit under Appendix N of the Kodak Retirement Income Plan during a payroll period and who has elected under Section 5.01 (Elective Contributions) to defer a percentage of Qualifying Compensation that would otherwise have been paid to him during that payroll period will be eligible to receive a Matching Contribution with respect to his Elective Contribution attributable to such deferral.

(2)   Subject to the limits in Article 6, the amount of the Matching Contribution with respect to an Elective Contribution attributable to a deferral of Qualifying Compensation for a payroll period will equal the aggregate of :

(A)   100 percent  of the Elective Contribution as does not exceed one (1) percent  of  the Qualifying Compensation that would otherwise have been paid to the Participant during that payroll period, and

(B)   Fifty (50) percent  of the Elective Contribution as exceeds one (1) percent, but does not exceed five (5) percent, of the

Qualifying Compensation that would otherwise have been paid to the Participant during that payroll period.

In the case of a Participant who is eligible for a Matching Contribution for a Plan Year under paragraph (1) above, who reaches the dollar limit on Elective Contributions under Section 6.02(a) (402(g) limits) before the end of the Plan Year solely on account of his Elective Contributions to the Plan, and who is an Employee on December 30 of the Plan Year, the sum of his Matching Contributions for the Plan Year will not be less than three (3) percent of the sum of his Qualifying Compensation for, and Wage Dividend paid in, the Plan Year.

(3)    The Company will pay the Matching Contributions due under this subsection (a) for each payroll period in cash to the Trustee as soon as practicable after the close of the payroll period, except that the Matching Contribution described in the last sentence of paragraph (2) above will be paid as soon as practicable after the close of the Plan Year. Such Matching Contributions will be credited to the Participant's Matching Contribution Account.

(4)    No Participant is eligible for Matching Contributions with respect to any Elective Contributions attributable to Qualifying Compensation that would otherwise have been paid to him before January 1, 2000.

(b)    Matching Contributions with Respect to Deferrals of Wage Dividend.

(1)    Each Participant who is accruing a cash balance benefit under Appendix N of the Kodak Retirement Income Plan during a Plan Year and who has elected under Section 5.01 (Elective Contributions) to defer a percentage of his Wage Dividend paid during such Plan Year will be eligible to receive a Matching Contribution with respect to his Elective Contribution attributable to such deferral.  Notwithstanding the preceding sentence, a Participant is eligible for the Matching Contribution described in the last sentence of paragraph 5.02(a)(2) above with respect to his Wage Dividend regardless of whether he elects under Section 5.01 to defer a percentage of such Wage Dividend.

(2)    Subject to the limits in Article 6, the amount of the Matching Contribution with respect to an Elective Contribution attributable to

a deferral of a Wage Dividend during a Plan Year will equal the aggregate of :

    (A)    100 percent of the Elective Contribution as does not exceed one (1) percent  of  the Wage Dividend that would otherwise have been paid to the Participant during such Plan Year, and

    (B)    Fifty (50) percent of the Elective Contribution as exceeds one (1) percent, but does not exceed five (5) percent , of the Wage Dividend that would otherwise have been paid to the Participant during such Plan Year.

    (3)    The Company will pay the Matching Contributions due under this subsection (b) in cash to the Trustee as soon as practicable after the undeferred portion of the Wage Dividend is paid to the Participant. Such Matching Contributions will be credited to the Participant's Matching Contribution Account.

    (4)    No Participant is eligible for a Matching Contribution with respect to an Elective Contribution attributable to a Wage Dividend earned before January 1, 2000.

(c)    Match Eligible Participant. A Participant eligible to receive a Matching Contribution with respect to a deferral pursuant to this Section 5.02 is referred to as a "Match Eligible Participant" with respect to such deferral.

(d)    Contingent on Deductibility. Matching Contributions are made on the condition that they are deductible under section 404 of the Code for the taxable year with respect to which the contributions are made.

(e)    The terms and conditions of this Section 5.02 are subject to the terms and conditions of Section 5.04 (Catch-up Contributions) of the Plan.

## 5.03   Rollovers

Notwithstanding the limitations on contributions under Articles 5 and 6, the Trustee may, in accordance with uniform rules adopted by SIPCO, receive on behalf of any:

(a)    Employee, any eligible rollover distribution (as defined in Code section 401(a)(31)(C)); provided, however, that:

(1)     the amount to be rolled over is in the form of cash or a cash equivalent;

(2)     the Trustee receives the amount to be rolled over:

    (A)     through a direct transfer at the Employee's election; or

    (B)     within 60 days after direct receipt by the Employee;

(3)     the amount to be rolled over is the portion of a distribution from an individual retirement account or annuity described in section 408(a) or 408(b) of the Code (excluding distributions of after-tax contributions and the earnings thereon) that is eligible to be rolled over and would otherwise be includible in gross income, or the amount to be rolled over is attributable solely to employer contributions and the earnings thereon (including elective contributions under a Code section 401(k) arrangement) under one of the following:

    (A)     a qualified plan described in section 401(a) or 403(a) of the Code;

    (B)     an annuity contract described in section 403(b) of the Code; or

    (C)     an eligible plan under section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state;

(4)     SIPCO must be satisfied that the rollover cannot adversely affect the qualification of the Plan under Code section 401(a) or of the Trust under Code section 501(a); and

(5)     Notwithstanding the above, after-tax employee contributions, and the earnings thereon, to any plan or contract described in Sections 4(A), 4(B) or 4(C) above are not eligible to be rolled over into this Plan.

(b)     Retirement Eligible Participant whose employment terminates in accordance with Section 9.07 (Termination of Employment) on or after October 31, 1997, any eligible rollover distribution (as defined in Code

section 401(a)(31)(C)) from the Kodak Retirement Income Plan; provided, however, that:

(1)     the Participant's election to make a rollover contribution in accordance with the terms of this Section 5.03(b) is made prior to the date his employment terminates or as soon as practicable thereafter;

(2)     the Participant's Account is at least $1 during the entire period that begins on the date his employment terminates and ends on the date the amount to be rolled over is received by the Trustee;

(3)     the amount to be rolled over is in the form of cash or a cash equivalent;

(4)     the amount to be rolled over is received by the Trustee within six months of the Participant's termination of employment;

(5)     the Trustee receives the amount to be rolled over through a direct transfer at the Participant's election (as provided in Code section 401(a)(31)); and

(6)     SIPCO must be satisfied that the rollover cannot adversely affect the qualification of the Plan under Code section 401(a) or of the Trust under Code section 501(a).

(c)     Participant other than a Retirement Eligible Participant whose employment terminates (in accordance with Section 9.07 (Termination of Employment)) on or after January 31, 1998, any eligible rollover distribution (as defined in Code section 401(a)(31)(C)) from the Kodak Retirement Income Plan; provided, however, that:

(1)     the Participant is not required to receive a distribution in accordance with Section 9.01(a)(2) (mandatory cash outs), and he has an Account of at least $1 during the entire period beginning on the date his employment terminates and ending on the date the amount to be rolled over is received by the Trustee;

(2)     the Participant's election to make a rollover contribution in accordance with the terms of this Section 5.03(c) is made prior to the first day of the fourth month after his termination is processed;

(3)     the amount to be rolled over is in the form of cash or a cash equivalent;

(4)     the amount to be rolled over is received by the Trustee within six months of the date the Participant's termination of employment is processed;

(5)     the Trustee receives the amount to be rolled over through a direct transfer at the Participant's election (as provided in Code section 401(a)(31)); and

(6)     SIPCO must be satisfied that the rollover cannot adversely affect the qualification of the Plan under Code section 401(a) or of the Trust under Code section 501(a).

## 5.04   Catch-up Contributions

(a)     Catch-Up Contribution rules.  The following catch-up contribution rules shall be effective January 1, 2002.

(1)     Subject to the terms of this Section 5.04 and in addition to any Elective Contributions made pursuant to Section 5.01 (Elective Contributions) of the Plan, each eligible Employee who is projected to attain the age of 50 before the close of the calendar year may elect to have the Company contribute to the Trustee on his behalf Designated Catch-Up Contributions in an amount equal to any whole percentage of Qualifying Compensation, excluding Qualifying Compensation paid under the Global Variable Pay Plan..

(2)     An eligible Employee may not make Designated Catch-Up Contributions unless such Employee has elected to make Elective Contributions pursuant to Section 5.01 (Elective Contributions) of the Plan; provided, however, that to the extent such Employee is not able to make Elective Contributions due to legal or Plan limits (other than the restriction on contributions following a hardship distribution), such Employee shall be eligible to make Designated Catch-Up Contributions.

(3)     An election to defer Qualifying Compensation other than Qualifying Compensation paid under the Global Variable Pay Plan and thereby make Designated Catch-Up Contributions pursuant to this Section 5.04, or to modify or revoke a current election, will be effective as

(d)   Notwithstanding anything in the Plan to the contrary, the multiple use test described in section 1.401(m)-2 of the Treasury Regulations (as they appeared prior to the issuance of the new Treasury Regulations under Code section 401(m) in December 2004) and in this Section 6.08 shall not apply for Plan Years beginning after December 31, 2001.

## 7.   INVESTMENT OF FUNDS

### 7.01   The Funds

(a)   The funds representing Contributions into the Plan will be placed with the Trustee in accordance with the terms of the Trust.  An election to participate or defer amounts under Articles 4 or 5 must direct that the Company Contribution to be paid to the Trustee on the Participant's behalf be allocated to one or more of the Funds identified in Section 7.01(b) below or selected by SIPCO to be investment options (the Funds) in multiples of one (1) percent.  If the Participant is a Match Eligible Participant, any Matching Contribution to be paid to the Trustee will be allocated to one or more of the Funds in the same manner as the Participant's Elective Contributions are (or would be) allocated on the date the Matching Contribution is received.  A single investment election shall govern the investment of the Participant's Elective Contributions, Designated Catch-Up Contributions, Catch-Up Contributions and any Matching Contributions.

(b)   The Trustee will maintain within the Trust:

(1)   an investment option that consists primarily of Employer Securities known as the Kodak Stock Fund, and any provisions herein with respect to such Fund shall apply;

(2)   a range of investment alternatives selected by SIPCO; and

(3)   if SIPCO selects an investment option that consists primarily of one or more Contracts with one or more Financial Institutions; pursuant to which, the return of principal and interest thereon will be guaranteed by the Financial Institution and/or by investments in one or more investment-grade, fixed-income securities, it shall be known as the Fixed Income Fund, and any provisions herein with respect to such Fund shall apply.

(c)     Kodak Stock Fund.  The Kodak Stock Fund is a portion of the Plan that is a stock bonus plan designated as an employee stock ownership plan under section 4975(e)(7) of the Code and section 407(d)(6) of ERISA. Although the Kodak Stock Fund must be made available for investment, no Participant or beneficiary is required to invest in the Kodak Stock Fund. SIPCO will at all times ensure that the Plan maintains a menu of other investment options sufficient to satisfy the diversification requirements of Code section 401(a)(35), and that Participants and beneficiaries are permitted to reduce or discontinue investment in the Kodak Stock Fund in accordance with Code section 401(a)(35).

(1)     Retroactive Amendment. To the extent permitted by Treas. Reg. Section 54.4975-11(a)(4), the Plan may be amended retroactively to meet the requirements applicable to a stock bonus plan within the meaning of section 401(a) of the Code and an employee stock ownership plan within the meaning of section 4975(e)(7) of the Code.

(2)     ESOP Diversification Requirements.  The Kodak Stock Fund satisfies the diversification requirements of section 401(a)(28) of the Code because a Participant may transfer all or any portion of his interest in the Kodak Stock Fund to another investment fund pursuant to Section 7.07 (Transfer Among Funds).

(3)     ESOP Distribution Requirements.  The Kodak Stock Fund satisfies the distribution requirements of section 4975(e)(7) of the Code (and the Code provisions incorporated therein) by providing for a lump sum distribution of a Participant's Account under Sections 9.01(a) (termination of employment), 9.02(a) (method of payment), and 10.01(a) (death benefits), and by providing for, if the Participant so elects, a distribution in stock under Section 9.03 (Form of Payment).

(4)     Voting and Tendering of Securities of the Company

(A)     A Participant or beneficiary shall have the right to direct the Trustee as to the voting of his Allocated Securities with regard to any matter presented for a vote of the stockholders of the Company.   The Trustee shall timely provide or cause to be provided to the Participant or beneficiary such information and instruments (including but not limited to

proxy solicitation material) as are generally provided to members of the public, if any, who hold securities which entitle them to participate in the vote. The Trustee shall not vote any Allocated Securities with respect to which no voting instructions are received.

(B)     In the event that a bona fide offer (such as a tender offer or exchange offer) shall be made to acquire any securities of the Company held by the Trustee in the Kodak Stock Fund, each Participant and beneficiary shall be entitled to direct the Trustee as to the disposition of his Allocated Securities (including fractional shares) and to direct the Trustee to take other solicited action on his behalf (excluding the voting of such Allocated Securities) with respect to his Allocated Securities.  The Company, with the cooperation of the Trustee, shall use its best efforts to provide each Participant and beneficiary to whom this subsection (B) may apply with a copy of any offer solicitation material generally available to members of the public, if any, who hold securities affected by the offer, or with such other written information as the offeror may provide and to do so in a timely fashion.  Upon receipt of such instructions from the Participant or beneficiary, the Trustee shall respond to the offer in accordance with such instructions.  The Trustee shall not respond to any such offer with respect to Allocated Securities for which no instructions are received.

(C)     The proceeds received upon the acceptance of any offer described in subsection (B), above, shall be invested by the Trustee as directed by SIPCO.

(D)     "Allocated Securities" shall mean securities of the Company which are attributable to the Account of a Participant or beneficiary.

(E)     To the extent not inconsistent with the foregoing provisions of this Section 7.01(c)(4), securities held by the Kodak Stock Fund shall be voted in accordance with the terms of the Trust.

## 7.02   Liquid Investments

In addition, the Trustee is authorized to keep any portion of any of the Funds as it may deem advisable from time to time in cash or liquid investments.

## 7.03   Value of the Funds

The Trustee will determine as of the Valuation Date the value of each Fund for which pricing is not generally available.  In the case of the Funds described in Section 7.01 (The Funds) other than the Fixed Income Fund and any Fund for which pricing is generally available, such value will be equal to the market value of the securities, mutual fund shares, participation interests in commingled trust funds, limited partnerships, and other investments in such Fund, cash, interest, dividends, and other sums received and accrued but not yet invested.  Securities and assets which in the opinion of the Trustee cannot be fairly valued by any of the above methods will be valued by such means as the Trustee deems appropriate taking into consideration all factors usually considered in valuing such assets such as book value and earnings statements.

In the case of a Fund for which pricing is generally available, the value shall be determined by the Plan's recordkeeper as of the Valuation Date and shall be equal to the fair market value of the Shares in such Fund.

In the case of each Contract described in (i) of the definition of "Contract" that is held by the Trustee in the Fixed Income Fund, and unless directed otherwise by SIPCO, the Trustee will assign a value to such Contract on each Valuation Date equal to the amount of principal and accrued interest thereunder.  In the case of each Contract described in (ii) of the definition of "Contract" that is held by the Trustee in the Fixed Income Fund, and unless otherwise directed by SIPCO or an Investment Manager, the Trustee will value such Contract pursuant to such procedures as are established and directed by the Investment Manager for the Fixed Income Fund that has been delegated discretionary authority in respect of such Contract.  In the case of any other asset delivered to and held by the Trustee in the Fixed Income Fund, the Trustee will value such assets on each Valuation Date as specified in the first paragraph of this Section 7.03.

## 7.04   Individual Account Valuation For Unitized Funds

    (a)    The value of a Participant's Account's investment in a Fund for which pricing is not generally available will be expressed in units of participation. The value of each unit will be determined as of the Valuation Date by dividing the total market value of each Fund by the total number of units and fractional units in such Fund as of that date.

(b)      The number of units and fractional units to be credited to a Participant's
Account in any Fund for which pricing is not generally available on any day
on which additional sums are deposited in such Fund for such Participant
will be determined by dividing the amount of such sums by the value of a
unit in such Fund on the Valuation Date immediately preceding such day.
The value of any units in a Fund for which pricing is not generally available
in a Participant's Account on any day on which units are to be liquidated
for such Participant will be determined by multiplying the number of units
and fractional units to be liquidated in any of the Funds by the value of a
unit in such Fund on the Valuation Date.

(c)      Calculations of the value of a unit whenever made pursuant to the
provisions of this Plan will be carried to the fourth decimal place.
Calculations of any number of units whenever made pursuant to the
provisions of this Plan will be carried to the third decimal place.

## 7.05   Individual Account Valuation For Non-Unitized Funds

(a)      The value of a Participant's Account's investment in a Fund for which
pricing is generally available shall be expressed in terms of the total
number of Shares and fractional Shares in the Fund credited to the
Participant's Account under the Plan.  The value of each Share and/or
fractional Share will be the fair market value of the Share and/or fractional
Share as of the Valuation Date.

(b)      The number of Shares and fractional Shares to be credited to a
Participant's Account on a day on which additional deposits are made and
the value of Shares or fractional Shares to be liquidated for such
Participant will be determined based upon fair market value as of the
applicable Valuation Date.

## 7.06   Payment of Expenses

Individual Account valuations will be adjusted as necessary to reflect payment of
expenses in accordance with Section 3.09 (Expenses) and any administrative or
brokerage fees associated with a Participant's investment in a self-directed brokerage
account.

## 7.07   Transfer Among Funds

Subject to any restrictions imposed by SIPCO, each Participant may elect to have all or
any portion of his Account in any Funds liquidated and transferred to any other Fund or

Funds; provided, however, that, except as required under Code section 401(a)(28), if the Participant has an outstanding loan balance attributable to a loan made pursuant to Section 8.03 (Loans) before January 1, 1994, no transfer from the Kodak Stock Fund or the Smaller Stock Fund (or any successor thereto) will be permitted which would reduce the combined amounts held in those Funds to less than twice the amount of the outstanding balance attributable to such loans.  By way of clarification, SIPCO's authority to impose restrictions on transfers shall not be deemed to extend to the removal or effective removal of the Kodak Stock Fund as a Fund available under the Plan. An election to transfer may be communicated to SIPCO, on or before any Valuation Date, provided that the manner and timing of such communication is in accordance with uniform rules adopted by SIPCO.  Any transfer made pursuant to such an election will be effective as of the close of business on such Valuation Date and will be implemented as soon as possible after such Valuation Date

## 7.08   Participant as Named Fiduciary

To the extent that a Participant is entitled to direct the Trustee as to the investment of all or a portion of his Account among the investment funds available under the Plan, or as to the exercise of voting, tender, or other rights appurtenant to the ownership of securities attributable to his Account, the Participant shall be acting as a "named fiduciary" within the meaning of section 403(a)(1) of ERISA.  Notwithstanding anything in the Plan to the contrary, if, by reason of the Participant's exercise of independent control over the assets in his Account, a particular transaction satisfies the requirements for relief under section 404(c) of ERISA, the Participant shall not be deemed to be a fiduciary, named or otherwise, with respect to such transaction, and no other person who is otherwise a fiduciary shall be liable for any loss, or by reason of any breach, that results from the Participant's exercise of independent control pursuant to such transaction.

## 7.09   Special Provisions

Effective December 1, 2003, the Putnam Investors, PBHG Growth, Putnam OTC & Emerging Growth, SSgA Emerging Markets Index, Matthews Pacific Tiger and Scudder Latin America Funds will not be investment options available under the Plan.  A Participant's balances in the Funds on November 30, 2003, if any, will be transferred into the Fixed Income Fund, effective December 1, 2003.  Effective March 1, 2004, the MSIF Trust High Yield and Time Horizon Funds will not be investment options available under the Plan.  A Participant's balances in the Funds on February 29, 2004, if any, will be transferred into the Fixed Income Fund, effective March 1, 2004.

# EXHIBIT B

BENEFIT PLAN 1C.02
Kodak Employee Stock Ownership Plan
Effective Date:  August 1, 2009
As Amended:  July 15, 2009
No. of Pages:  60 plus
Appendix I and II

## Kodak Employee Stock Ownership Plan

**Article**                                                                  **Page**

1.   INTRODUCTION ................................................................................... 1
2.   DEFINITIONS ...................................................................................... 2
3.   PLAN ADMINISTRATION.................................................................... 12
4.   PARTICIPATION .................................................................................. 28
5.   CONTRIBUTIONS ............................................................................... 28
6.   INVESTMENT OF TRUST ASSETS ................................................. 30
7.   EXEMPT LOANS................................................................................. 31
8.   ALLOCATIONS TO PARTICIPANTS' ACCOUNTS........................... 34
9.   DIVERSIFICATION AND DIVIDEND DISTRIBUTIONS ................... 37
10.  PLAN DISTRIBUTIONS....................................................................... 40
11.  TENDERS AND VOTING .................................................................... 45
12.  TRUST AND TRUSTEE ...................................................................... 50
13.  AMENDMENT AND TERMINATION .................................................. 51
14.  AFFILIATED COMPANIES AND SUBSIDIARIES ............................. 53
15.  GENERAL PROVISIONS .................................................................... 53
16.  TOP-HEAVY PROVISIONS................................................................. 58

**APPENDIX I**

**APPENDIX II**

1299IIs

## 1.    INTRODUCTION

### 1.01   Name

The name of the Plan is the Kodak Employee Stock Ownership Plan.

### 1.02   Purpose

The purpose of the Kodak Employee Stock Ownership Plan is to enable eligible Employees of Eastman Kodak Company and certain Affiliated Companies to share in the future of the Company, to provide Employees with an opportunity to accumulate capital for their future economic security, and to enable Employees to acquire stock ownership interests in Eastman Kodak Company.  Consequently, Company contributions to the Plan will be invested primarily in Employer Securities.  The Plan is also designed to provide a method of corporate finance to the Company.  Accordingly, it may be used to accomplish the following objectives:

   a)    To meet general financing requirements of the Company, including capital growth and transfers in the ownership of Employer Securities;

   b)    To provide Employees with beneficial ownership of Employer Securities, substantially in proportion to their relative Compensation; and

   c)    To receive loans (or other extensions of credit) to finance the acquisition of Employer Securities, with such loans (or credit) secured primarily by a commitment by the Company to pay (subject to the limitations in Section 8.04) Company contributions to the Trust in amounts sufficient to enable principal and interest on such loans to be repaid.

### 1.03   Effective Date

The effective date of the Plan is January 1, 1976.

### 1.04   Qualification

The Plan is a stock bonus plan intended to be qualified under section 401(a) of the Code and, as amended and restated effective as of January 1, 1989, shall constitute an employee stock ownership plan under section 4975(e)(7) of the Code and section 407(d)(6) of ERISA.

1299118

**2.36   SOPCO**

"SOPCO" means the Stock Ownership Plan Committee, or any successor thereto, which consists of the Eastman Kodak Company employees with the following, or successor, titles: Chief Financial Officer; General Counsel; Director, Human Resources; Treasurer; and Director, Worldwide Total Compensation.

**2.37   Trust**

"Trust" means the arrangement established by the Trust Agreement between the Company and a Trustee.

**2.38   Trust Agreement**

"Trust Agreement" means the agreement entered into by and between the Company and the Trustee or successor Trustee designated therein, establishing the Trust and specifying the duties of the Trustee.

**2.39   Trust Fund**

"Trust Fund" means all money, securities and other property held under the Trust Agreement.

**2.40   Trustee**

"Trustee" means the trustee or trustees, whether corporate or individual, at any time appointed and acting hereunder with respect to the assets held by such trustee.

**2.41   Valuation Date**

"Valuation Date" means each day the New York Stock Exchange is open for trading, or such other date as shall be determined by SOPCO.

**3.       PLAN ADMINISTRATION**

**3.01   Appointment of SOPCO**

SOPCO will control and manage the operation and administration of the Plan and Trust as and to the extent set forth in the Plan and Trust.  The members of SOPCO may be Employees.  Employees shall not, however, be entitled to compensation from the Trust

for their services as members of SOPCO.  The persons named to SOPCO shall
acknowledge in writing that they are fiduciaries under the Plan.  Any member may resign
by delivering his written resignation to the Chairperson of SOPCO, which may act
notwithstanding any vacancies.

**3.02   Named Fiduciary and Plan Administrator**

SOPCO shall be the "named fiduciary" and "plan administrator" as those terms are used
in ERISA.  SOPCO shall be the agent for the service of legal process with respect to the
Plan.

**3.03   Powers and Duties of SOPCO**

a)   **Definitions.**  For purposes of this Section and Sections 3.05-3.07, the
following definitions will apply:

1)   "Action" means a dispute resolution process of any kind, other than
the claims and appeals process described in Section 3.05, including,
without limitation, judicial or administrative proceedings, arbitration
or mediation;

2)   "Agreement" means any contract or agreement of any kind,
including, without limitation, administrative services agreements,
trust agreements, investment-related agreements, releases, waivers
and employment agreements;

3)   "Appeal Letter" means the written decision by SOPCO with respect
to the review described in Section 3.05(d) of a Claim denial;

4)   "Claim" means a Routine Claim for Payment of Benefits or an Other
Claim;

5)   "Claimant" means a person who files a Claim;

6)   "Court" means the person or persons with the authority to resolve
the dispute underlying an Action, including, without limitation, a judge
or arbitrator;

7)   "Damages" means benefits under the Plan and any remedy of any
kind, whether legal, equitable or otherwise, arising under any Law,
including, without limitation, restitution, attorneys' fees, penalties,

and any loss, interest, liability, claim, damage, charge, cost or expense;

8) "Law" means any statute, law, ordinance, rule, regulation, code, order, judgment, injunction, decree, judicial or administrative ruling or doctrine, or any other source of authority;

9) "Original Claim" means a Claim that has been denied or deemed denied;

10) "Original Claim Appeal Deadline" means the date that is 60 days after receipt of the notice of denial for the Original Claim or a deemed denial;

11) "Other Claim" means any claim for Damages arising under the Plan or any Law that is not a Routine Claim for Payment of Benefits, and includes, without limitation, Claims with respect to Plan amendments that reduce or eliminate Company contributions or Plan participation, or that relate to the Plan's investment performance;

12) "Plaintiff" means any and all persons and entities seeking Damages from a Plan Party, whether or not pursuant to an Action;

13) "Plan Party" means the Plan, SOPCO and its individual members, the Company, its Affiliates and any employee, officer or director of the Company or an Affiliate, and any employee, officer or director of the Company or an Affiliate to whom SOPCO, the Company or an Affiliate has delegated responsibility related to the Plan;

14) "Related Claim" means a Claim related in any way to a Claim for which a written or electronic notice of denial has been issued or which has been deemed denied; and

15) "Routine Claim for Payment of Benefits" means a claim that a specific Benefit is owed to the Claimant under the terms of the Plan.

b) **General Authority.**  SOPCO shall administer the Plan in accordance with its terms and shall have all powers necessary to carry out the provisions of the Plan, except such powers as are specifically reserved to the Director, Human Resources, Eastman Kodak Company, or some other person.  In addition to any implied powers and duties that may be necessary or

BENEFIT PLAN 1C.02
Kodak Employee Stock Ownership Plan
Effective Date:  August 1, 2009
As Amended:  July 15, 2009
Page 15

appropriate to the conduct of its affairs, and without limitation by reason of enumeration, SOPCO will have the power, the duty, and the complete and exclusive discretion:

1) to make, publish and apply such rules and regulations as it may deem necessary to carry out the provisions of the Plan, including rules and regulations for determining the qualified status of domestic relations orders in accordance with Code section 414(p), and for administering distributions pursuant to Qualified Domestic Relations Orders;

2) to construe, interpret, and administer the terms of the Plan, to remedy any possible ambiguities in the terms of the Plan, and to determine conclusively, for all parties, all questions arising out of the interpretation or administration of the Plan;

3) to determine conclusively the right of any person to benefits under the Plan and the amount of such benefits, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits;

4) to issue instructions to a Trustee to make disbursements from the Trust, and to make any other arrangement necessary or appropriate to provide for the orderly payment and delivery of disbursements from the Trust;

5) to decide any Routine Claim for Payment of Benefits or Other Claim;

6) to construe and interpret, after conferring with legal counsel as appropriate, the Law applicable to any Claim, including, without limitation:

A) Routine Claims for Payment of Benefits, Claims relating to eligibility for Plan participation and/or Claims relating to breach of fiduciary duty under ERISA Section 502 and any other Claims;

B) ERISA Section 510;

    C)    common law doctrines, including, without limitation, unjust enrichment, equitable estoppel, detrimental reliance and prejudice;

    D)    penalties under any Law;

    E)    the Age Discrimination In Employment Act of 1967, Americans with Disabilities Act, Racketeer Influenced and Corrupt Organizations Act and the vesting and accrual provisions of the Internal Revenue Code; and

    F)    whether attorneys' fees are warranted;

7)    to determine whether or not any person or entity is a fiduciary with respect to the Plan;

8)    to construe and interpret, with respect to provisions related to the Plan, Agreements, to remedy any possible ambiguities in such provisions, and to determine conclusively, for all parties, all questions arising out of the interpretation or application of such provisions;

9)    to determine conclusively the right of any person to, and the amount of, Damages with respect to any Claim or otherwise, subject to applicable Law, the Plan's terms, and the following:

    A)    a Claimant must provide conclusive, unambiguous proof of detrimental reliance to receive amounts to which he or any other person would otherwise not be entitled under the Plan's terms; and

    B)    absent the proof described in (A), award or payment of any such amounts, including, without limitation, compensatory and extracontractual damages is prohibited;

10)    to make factual findings related to carrying out the provisions of the Plan, including, without limitation, those necessary:

    A)    to interpret or apply any Law;

B)      to interpret or implement the provisions of any Agreement; and

C)      to interpret or implement the provisions of the Plan, including, without limitation, determining dates and other facts for purposes of applying time limits with respect to the claims and appeals process and Actions;

11)    to bind any Plan Party with such Plan Party's consent;

12)    to determine, without limitation:

A)      whether detrimental reliance has been established for purposes of Section 3.03(b)(9);

B)      whether a Claim is a Related Claim for purposes of Sections 3.05(d)(1) and (2), and 3.06(b);

C)      whether a Plaintiff has raised in litigation anything not raised in his appeal request for purposes of Section 3.06(e); and

D)      the amount of attorneys' fees and other expenses for purposes of Section 3.06(g).

13)    to compel either binding or non-binding arbitration or mediation with respect to any Claim for Damages (including either individual or class action arbitration); in such case, the arbitrator or mediator will be bound by the terms of the Plan;

14)    subject to Section 3.12, to delegate some or all of its authority under the Plan to any person or persons;

15)    to determine whether a Claim is a Routine Claim for Payment of Benefits or an Other Claim; and

16)    to allocate expenses of any kind as it deems appropriate, including, without limitation, those related to litigation.

1299IIs

### 3.04   Operation of SOPCO

SOPCO shall act by a majority of its members at the time in office, and such action may be taken by a vote at a meeting or without a meeting. Any action taken without a meeting shall be reflected in a written instrument signed by a majority of the members of SOPCO. A member of SOPCO who is also a Participant shall not vote on any question relating personally and uniquely to himself. Any such question shall be decided by the majority of the remaining members of SOPCO. SOPCO may authorize any one or more of its members to execute any document or documents on behalf of SOPCO, in which event SOPCO shall notify the Trustee in writing of such action and the name of its member so designated. The Trustee will be provided with signature cards and such other reasonable assurances as it may require. The Trustee thereafter shall accept and rely upon any document executed by such member as representing action by SOPCO until SOPCO shall file with the Trustee a written revocation of such designation. SOPCO may adopt such by-laws or regulations as it deems desirable for the conduct of its affairs.  SOPCO shall keep minutes, records, and other data as may be necessary for the proper administration of the Plan, and may rely upon such records and the records of the Company for all purposes.  A person asserting facts not supported or shown in the Plan's or Company's records shall have the burden of producing documentation of such facts.

### 3.05   Claims Review Procedure

The provisions of this Section will apply notwithstanding anything in the Plan to the contrary.

a)      **Prerequisite.**  All Claims must be reviewed under, and satisfy the requirements of, the claims and appeals procedures described in this Article as a prerequisite for bringing an Action with respect to a Claim. Notwithstanding any provision of the Plan to the contrary, the claims and appeals procedures set forth in this Article will apply to all Claims that arise on or after, or were in existence on or before, August 1, 2006, except that with respect to Claims in existence before August 1, 2006, any applicable deadline will be the earlier of (i) the deadline that would have applied under the Plan as in effect prior to August 1, 2006; or (ii) the deadline described in this Article calculated by treating August 1, 2006 as the date on which the applicable time period for taking action began; provided that appeals for the review described in Section 3.05(d) that were pending as of August 1, 2006 will be considered timely if filed by the deadline as in effect prior to August 1, 2006.

4.    **PARTICIPATION**

4.01    **Eligibility Requirements**

Each individual who is an Employee on the last scheduled workday of the Company's fiscal year ending within the Plan Year for which a contribution will be made to the Trust and who, prior to such Plan Year, was credited with at least one Hour of Service is eligible for an allocation of any contribution made for the Plan Year.

4.02    **Service with Affiliates**

For purposes of determining eligibility, each Employee shall receive credit for periods of employment with either an Affiliated Company or a subsidiary of the Company which is not included in this Plan, for periods of service as a "Leased Employee" within the meaning of section 414(n) of the Code, and for periods which would have been worked as a "Leased Employee" but for the requirement that services be performed on a substantially full-time basis for a period of at least one year.

4.03    **Termination**

An Employee's service shall terminate upon severance of employment with the Company except as indicated for transfers in Section 10.05, but such Employee's participation in the Plan shall not terminate until the date upon which the last distribution is made from such Employee's account pursuant to the Plan.

4.04    **Participation Upon Reemployment**

Any former Employee who is reemployed will receive credit for prior Hours of Service in determining eligibility under Section 4.01.

5.    **CONTRIBUTIONS**

5.01    **Company Contributions.**

        a)    For each Plan Year, Company contributions may be paid to the Trust in such amounts (or under such formula) and at such times as may be determined by the Board; provided that, if and to the extent necessary, a Company Contribution shall be made for a Plan Year in an amount sufficient to comply with the allocation requirement of Section 8.03(c).  Company contributions under the Plan for a Plan

Year may be paid during the Plan Year and shall in any event be paid not later than the due date for filing the Company's federal income tax return for that year, including any extensions of such due date.  Except as otherwise permitted under section 404(a)(9) of the Code, Company contributions under the Plan for any Plan Year shall not be paid to the Trust in amounts which would exceed 25% of the Compensation of all Participants entitled to share in allocations thereof for that Plan Year, including any carryover amount for previous Plan Years allowable by section 404(a)(3)(A) of the Code. In no event shall Company contributions in any Limitation Year exceed an amount which would cause Annual Additions to the accounts of any Participant to exceed the Maximum Permissible Amount for that Limitation Year (except as provided in Section 8.04).

b) Company contributions may be paid to the Trust in cash or in shares of Employer Securities, as determined by the Board; provided that Company contributions shall be paid in cash in such amounts, and at such times (subject to the limitations described in Section 8.04), as needed to provide the Trust with funds sufficient to pay in full when due any principal and interest payments required by a Loan incurred by the Trustee pursuant to Article VII to finance the acquisitions of Employer Securities, except to the extent such principal and interest payments have been satisfied by the Trustee from cash dividends paid to it with respect to Employer Securities.

c) All Company contributions for a Plan Year shall be allocated to the Company Contribution Account when paid.  As of the close of the last day of each Plan Year, amounts in the Company Contribution Account, including amounts contributed after such last day under subsection (a) above shall be allocated to Participants' Accounts as provided in Article VIII.

d) No Participant shall be required or permitted to make contributions to the Plan or Trust.

e) All Company contributions made under the Plan are conditioned upon the qualification of the Plan under section 401(a) of the Code and upon the deductability of the contribution under section 404 of the Code.

## 5.02   Exclusive Benefit of Employees

All contributions made pursuant to the Plan shall be held by the Trustee in accordance with the terms of the Trust Agreement for the exclusive benefit of those Employees who are Participants under the Plan, including former Employees, and their Beneficiaries, and shall be applied to provide benefits under the Plan and to pay expenses of administration of the Plan and the Trust, to the extent that such expenses are not otherwise paid.  At no time shall any part of the Trust Fund (other than such part as may be required to pay administration expenses and taxes) be used for, or diverted to, purposes other than for the exclusive benefit of such Employees and their Beneficiaries.  Without regard to the provisions of this Section, however:

      a)    If a contribution is conditioned upon the deductability of the contribution under section 404 of the Code, then to the extent the deduction is disallowed, the Trustee shall upon written request of the Company, return the contribution (to the extent disallowed) and any increment thereon to the Company within one year after the date the deduction is disallowed; and

      b)    If a contribution or any portion thereof is made by the Company by a mistake of fact, the Trustee shall, upon written request of the Company, return the contribution or such portion and any increment thereon to the Company within one year after the date of payment to the Trustee.

## 6.   INVESTMENT OF TRUST ASSETS

### 6.01   Investments

The Trust Fund will be invested primarily in Employer Securities.  SOPCO may direct the Trustee to incur Debt from time to time to finance the acquisition of Employer Securities by the Trust or otherwise.  The Trust Fund may be used to acquire shares of Employer Securities from Company shareholders (including former Participants) or from the Company.  The Trustee may also invest the Trust Fund in savings accounts, certificates of deposit, high-grade short-term securities, equity stock, bonds, or other investments desirable for the Trust, or the Trust Fund may be held in cash.  All investments, except those made in the course of short-term cash management, will be made by the Trustee only upon the direction of SOPCO.  SOPCO may direct that the entire Trust Fund assets be invested and held in Employer Securities.

12991l8

## 6.02   Employer Securities

All purchases of Employer Securities by the Trust will be made at a price which does not exceed the fair market value of such Employer Securities, as determined in good faith by SOPCO.  Employer Securities purchased with the proceeds of a Loan shall be held in the Loan Suspense Account pending release to other accounts as the Loan is paid.  SOPCO may direct the Trustee to sell or resell shares of Employer Securities to any person, including the Company, provided that any such sales to any disqualified person, including the Company, will be made in conformance with section 408(e) of ERISA at no less than fair market value as determined under this Section and no commission shall be charged.

## 7.   EXEMPT LOANS

### 7.01   Loans

Eastman Kodak Company may direct the Trustee to obtain Loans.  Any such Loan will meet all requirements necessary to constitute an "exempt loan" within the meaning of section 4975(d)(3) of the Code and Treasury Regulations section 54.4975-7(b)(1)(iii) and shall be used primarily for the benefit of the Participants and Beneficiaries.  The proceeds of any such Loan shall be used, within a reasonable time after the Loan is obtained, only to purchase Employer Securities, repay the Loan, or repay any prior Loan.  Any such Loan shall provide for no more than a reasonable rate of interest (as determined under Treasury Regulation section 54.4975-7(b)(7)) and must be without recourse against the Plan.  The number of years to maturity under the Loan must be definitely ascertainable at all times.  The only assets of the Plan that may be given as collateral on a Loan are shares of Employer Securities acquired with the proceeds of the Loan and shares of Employer Securities that were used as collateral on a prior Loan repaid with the proceeds of the current Loan.  Such Employer Securities, whether or not pledged, shall be placed in a Loan Suspense Account.  No person entitled to payment under a Loan shall have recourse against the Trust Fund, other than such collateral, contributions (other than contributions of Employer Securities) that are available under the Plan to meet obligations under the Loan, and earnings attributable to such collateral and the investment of such contributions.  A Loan shall not be payable on demand except in the event of default.  In the event of default of a Loan, the value of Plan assets transferred in satisfaction of the Loan shall not exceed the amount of default.  Any Employer Securities in the Loan Suspense Account must provide for the release of shares upon the payment of any portion of the Loan.  The number of shares to be released will be determined in the following manner:

8.    ALLOCATIONS TO PARTICIPANTS' ACCOUNTS

8.01   Separate Accounts

Separate Participant Accounts will be established to reflect each Participant's interest under the Plan, which shall be maintained as units.

8.02   KESOP Accounts

The KESOP Account maintained for each Participant will consist of two accounts:  the "Kodak Convertible Preferred Stock Account" which will hold the shares of Convertible Preferred Stock  acquired with the proceeds of a Loan that have been released from the Loan Suspense Account pursuant to Article VII; and the "Kodak Stock Account" which will hold the shares of Kodak Stock acquired with the proceeds of a Loan that have been released from the Loan Suspense Account  pursuant to Article VII, and which will hold Company Contributions made or invested in shares of Kodak Stock.  The Kodak Convertible Preferred Stock Account and the Kodak Stock Account maintained for each Participant will be credited with his allocable share determined under Section 8.03 of Employer Securities (including fractional shares) purchased and paid for by the Trust or contributed in kind to the Trust and with any stock dividends on Employer Securities allocated to such Accounts.  Units representing Employer Securities acquired by the Trust with the proceeds of a Loan obtained pursuant to Article VII shall be allocated to such Accounts according to the method set forth in Section 8.03, as the Employer Securities are released from Suspense Accounts as provided for in Section 7.01.

8.03   Allocation of Company Contributions

Units representing Employer Securities and any other investments held in the Company Contribution Accounts, and any units representing Employer Securities released from encumbrance pursuant to Section 7.01, shall be allocated as of the close of the last day of each Plan Year (even though receipt of the Company contributions by the Trustee may take place after the close of each Year) among the KESOP Accounts of eligible Participants as follows:

    a)    Contributions shall be allocated to each individual who is an Employee on the last scheduled workday of the Company's fiscal year ending within the Plan Year for which a contribution will be made to the Trust and who, prior to such Plan Year, was credited with at least one Hour of Service.

b)   All allocations pursuant to subsection (a) above shall be made on the basis of the ratio of each eligible Employee's Compensation to the total Compensation of all eligible Employees entitled to share in the allocation for such Plan Year, provided that in no case shall less than one share of Employer Securities be allocated to any Participant Account in any year in which a Company Contribution is made.

c)   Notwithstanding the foregoing, to the extent dividends on Employer Securities allocated to a Participant's Account are used to make a loan payment, Employer Securities with a fair market value not less than the amount of the dividend that would have been allocated to the Participant's Account but for the loan payment shall, as a minimum, be allocated to the Participant's Account in accordance with Section 8.03(b) above in the Plan Year in which the dividend would otherwise have been allocated.

d)   Notwithstanding the foregoing, in no event shall an allocation of Annual Additions be made to the Participant Account of any Participant for any Limitation Year which would cause Annual Additions to the Participant Account of such Participant to exceed the Maximum Permissible Amount for that Year (except as permitted in Section 8.04).

**8.04   Maximum Allocation**

a)   The amount of the Annual Addition which may be credited to any Participant's Account under the Plan as of any allocation date shall not exceed the Maximum Permissible Amount reduced by the sum of any credits of Annual Additions accrued to the Participant's Account as of any preceding allocation date within the Limitation Year under all defined contribution plans maintained by the Company and any other entity required to be aggregated with the Company under sections 414(b) or 414(c) (as modified by Code sections 415(h)) or 414(m) (hereinafter a "related company").  If an allocation date of this Plan coincides with an allocation date of any other qualified defined contribution plan maintained by the Company, the allocation date of this Plan shall be deemed to fall after the allocation date of the other plan.

b)   If the limitations of this Section 8.04 would be exceeded for any Participant for any Limitation Year because of the combined Annual Additions under this Plan and/or one or more other plans of the Company and/or a related company, Annual Additions under this Plan shall be reduced first; provided, that, for the avoidance of doubt, amounts will be recharacterized as catch-

up contributions and thus excluded from Annual Additions to the extent possible before Annual Additions under this Plan will be reduced.

c)   If at any time during the Limitation Year, a Limitation Account is in existence pursuant to this Section, investment gains and losses and other income shall be allocated to the Limitation Account, and the entire amount allocated to the Participants from such Limitation Account shall be considered an Annual Addition. Upon termination of the Plan, any amounts in a Limitation Account at the time of such termination shall revert to the Company.

d)   This Section shall be interpreted and applied in a manner consistent with the applicable provisions of Code section 415 and the regulations thereunder, including, but not limited to, the computation of all contributions and benefits made by, on behalf of, or provided for a person. If any provision of this Plan, including this Section, is inconsistent with Code section 415 and such regulations, the provisions of Code section 415 and the regulations shall control.

## 8.05   Vesting

Each Participant shall at all times be 100% vested in his KTRASOP Account and his KESOP Account.

## 8.06   Valuation of Accounts

As of each Valuation Date, SOPCO shall determine the value of a unit in each account by dividing the fair market value (as determined by the Trustee) of all property in each such account as of such Valuation Date (after deducting any expenses or other amounts including distributions properly chargeable against such account) by the number of units then outstanding to the credit of all Participants in each such account. In the discretion of SOPCO, units may be split or combined to facilitate the administration of accounts with similar type investments. Calculations of the value of a unit and of any number of units whenever made pursuant to the provisions of this Plan shall be carried to the third decimal place.

## 8.07   Accounting for Allocations

SOPCO shall adopt accounting procedures for the purpose of making the allocations, valuations and adjustments to Participants' Accounts provided for in this Article. Except as provided in Treasury Regulation section 54.4975-11(d), Employer Securities acquired

by the Plan shall be accounted for as provided under Treasury Regulation section 1.402(a)-1(b)(2)(ii) and the Committee shall maintain adequate records of the cost basis of all shares of Employer Securities allocated to each Participant's Accounts.  From time to time, SOPCO may modify the accounting procedures for the purpose of achieving equitable and nondiscriminatory allocations among Participant Accounts in accordance with the general concepts of the Plan and the provisions of this Section.  Valuations of Trust Assets shall be made at fair market value, as described in Section 8.06.

## 8.08   Special Valuation Provisions

Notwithstanding anything to the contrary expressed or implied herein, SOPCO (with the consent of the Trustee) may direct on a nondiscriminatory basis a special valuation date in order to avoid prejudice either to continuing Participants or to terminating Participants. Such special valuation date shall be deemed equivalent to a regular valuation date.

## 9.   DIVERSIFICATION AND DIVIDEND DISTRIBUTIONS

## 9.01   Diversification Distributions

a)   Each Participant who has attained age 55 and who has completed at least ten (10) years of participation in the Plan (a "Qualified Participant") may direct the Plan to distribute an amount determined under subsection (b) below from the Participant's Account after the close of each Plan Year in the six Plan Year period commencing with the later of:

1)   The first Plan Year in which the Participant becomes a Qualified Participant or

2)   The first Plan Year in which the fair market value of the Employer Securities treated under Code section 401(a)(28) as acquired after 1986 and allocated to the Participant's Account exceeds $500 (the "Election Period").

b)   A Qualified Participant may direct the Plan to distribute

1)   After each Plan Year in the Election Period other than the last such Plan Year, cash equal to the value of 25% of the total number of shares of Employer Securities treated under section 401(a)(28) of the Code as acquired after 1986 (minus any amount to which a prior election applied) and allocated to the Participant's Account; and

    2)    After the last Plan Year in the Election Period, cash equal to the value of 50% of the total number of shares of Employer Securities treated under section 401(a)(28) of the Code as acquired after 1986 (minus any amount to which a prior election applied) and allocated to the Participant's Account, reduced by the number of shares of Employer Securities previously distributed pursuant to this Section 9.01.

c)    The Participant's direction shall be provided to SOPCO during the 90-day period after the close of the Plan Year, shall be provided in a manner approved by SOPCO, and may be modified or revoked at any time during such 90-day period.  This Section 9.01 shall apply notwithstanding any other provision of the Plan other than such provisions as require the consent of the Participant.

d)    SOPCO shall direct the Trustee to make payment of the Adjusted Balance of the Participant's Account specified by the Participant pursuant to subsection (c) above, and the Trustee shall complete such distribution, within the 90-day period following the 90-day period described in subsection (c).  Notwithstanding Section 10.04, which gives the Participant the right to demand distributions in Employer Securities, distributions under this Section shall be in cash.

e)    For purposes of distributions under this Section, the Participant's Account shall be valued as of the Valuation Date immediately preceding the distribution.

## 9.02   Dividend Distributions

a)    A Participant may, in a manner approved by SOPCO, elect to receive entirely in cash dividends paid with respect to Employer Securities held under the Plan which are allocated to the Accounts of such Participants and which are not applied to the repayment of a Loan pursuant to Section 7.02. Such election may be made even if the Participant is not otherwise eligible to receive a distribution from the Plan.  The Company may pay such dividends directly to Participants, or may pay such dividends to the Trustee. If such dividends are paid to the Trustee, the Trustee shall pay such dividends to Participants by the 90th day after the end of the Plan Year in which the dividends are paid by the Company.

b)    Any election (whether actual or deemed) made pursuant to this Section 9.02 remains in effect until changed by a Participant.  Elections can be made or revoked at any time, subject to administrative practicality.  SOPCO may establish a cut-off date for any particular dividend, such that elections made or revoked after the cut-off date will not be effective with respect to such dividend.

c)    Unless a Participant elects, in a manner approved by SOPCO, to receive dividends entirely in cash under subsection (a), dividends attributable to the Participant's interest in Employer Securities held by the Plan will be reinvested in Employer Securities under the Plan on behalf of the Participant.

d)    Unless otherwise determined by SOPCO, the amount of dividends paid to or reinvested on behalf of a Participant under this Section 9.02 will be proportionate to the Participant's interest in the Employer Securities on which such dividends were paid on the day before the ex-dividend date, or as of such other date as established by SOPCO.

e)    Without limiting the authority provided by Article 3, SOPCO shall have the authority under this Section 9.02 to establish a separate account to hold dividends paid with respect to Employer Securities held by the Plan for the period of time before such dividends are distributed under subsection (a) or reinvested under subsection (b).  Any investment income attributable to such account will from time to time be credited to and considered income of the Plan, to the extent not used to pay Plan expenses.

f)    Regardless of when dividend payments are actually made to a Participant's Account or to the Participant in cash, in no event will the Plan, SOPCO or the Company be liable for interest, investment returns or any other amount relating to the timing of a payment.

g)    This Section 9.02 is intended to satisfy the requirements provided in section 404(k)(2)(A)(iii) of the Code, as in effect after December 31, 2001, regarding the deductibility of dividends paid with respect to employer securities held by an employee stock ownership plan.  This Section shall be administered and construed accordingly.  Any modification or amendment of the Plan may be made retroactively, as necessary or appropriate, to meet any requirement of section 404(k) of the Code. The election provided under this Section 9.02 is available only to the extent that the Company may deduct dividends subject to such an election and paid with respect to

Employer Securities held by the Plan under section 404(k) of the Code.  In the event that dividends subject to such an election cease to be deductible, dividends will be distributed in cash pursuant to subsection (a) unless applied to repayment of a Loan pursuant to Section 7.02.

## 10.    PLAN DISTRIBUTIONS

### 10.01 Distribution Date

The amount allocated to each Participant's Account is fully vested.  Upon the Participant's severance of service in accordance with Section 10.5, distribution of a Participant's benefits shall be made:

a)    if the Participant does not consent to an earlier distribution, the April 1st of the calendar year after the calendar year in which the Participant turns 70½;  or

b)    if earlier, as soon as administratively practicable after the date specified by the Participant in a manner approved by SOPCO.

Notwithstanding any provision of the Plan to the contrary, distribution shall be made no later than the April 1st of the calendar year following the later of the year in which the Participant attains age 70½ or the year in which the Participant has severed service in accordance with Section 10.05, except that distribution for a Participant who is a 5-percent owner (as defined in Code section 416) shall be made no later than April 1 of the calendar year following the calendar year in which such Participant attains age 70 ½. Distributions that would normally be made on April 1, 2010 will be made notwithstanding the suspension of required minimum distributions for 2009 pursuant to the Worker, Retiree and Employer Recovery Act of 2009, but amounts which would normally be required minimum distributions for the 2009 distribution calendar year will be treated as eligible for rollover to the extent the requirements of Section 10.08 are otherwise satisfied.

If a Participant is eligible to share in any contribution to be made after distribution of his Account, distribution of the Participant's interest in such contribution will be made as soon as practicable after his interest is allocated to his Account.  In the event a Participant is not living as of any such Distribution Date, distribution will be made to the person designated or determined in accordance with Section 10.02.

## 11.03  Options and Rights

Notwithstanding any other provision of this Plan to the contrary, SOPCO shall have the right and responsibility to exercise any options appurtenant to Employer Securities for the conversion thereof into other Employer Securities.

## 12.    TRUST AND TRUSTEE

## 12.01  Trust Agreement

Eastman Kodak Company and a Trustee shall enter into a Trust Agreement in such form and containing such provisions as Eastman Kodak Company deems appropriate, providing for the administration of the Trust Fund, and including provisions with respect to the powers and authority of the Trustee, the authority of SOPCO to amend or terminate the Trust Agreement and to change the Trustee, and the settlement of the accounts of the Trustee on behalf of all persons having an interest in the Trust Fund.  No person who receives full-time pay from any Affiliated Company shall receive compensation paid by the Trust Fund except for reimbursement of expenses properly incurred.

## 12.02  Trust Contribution

All contributions under the Plan will be paid into the Trust.  From time to time the Trustee will accept, hold, invest and dispose of Trust Funds, acting in accordance with the Trust Agreement.  All benefits payable under the Plan will be paid from the Trust Fund.

## 12.03  Trust Fund Investments

The Trustee will invest all cash contributions and all cash income, other than cash dividends on Employer Securities which are to be distributed pursuant to Section 9.02 or used to repay a Loan pursuant to Section 7.02, in Employer Securities as provided herein and retain such Employer Securities in the Trust Fund for distribution as provided herein.  All cash dividends which are received by the Trustee on Employer Securities held for the Plan and which are to be distributed to Participants or Beneficiaries or used to make Loan payments shall be retained in the form of liquid investments pending distribution pursuant to Section 9.02 or payment pursuant to Section 7.02.  To meet the Trust's administrative requirements, as determined by the Trustee, the Trustee may retain some part of the Trust Fund in liquid investments (including interest-bearing accounts and certificates of deposit within its own banking department) or may sell Employer Securities.  The Trustee may purchase or sell Kodak Stock from or to any

1299Ils

party, including itself or Eastman Kodak Company.  Any other Employer Securities must be purchased from, or sold to, Eastman Kodak Company.

## 12.04  Annual Summary

Within ninety (90) days following the close of each calendar year, and within sixty (60) days after the removal or resignation of the Trustee, the Trustee shall file with SOPCO a written account setting forth all receipts and disbursements of the Trust Fund and all investments and other transactions effected by it during the previous year or during the period accounted for, including the value of the Trust as of the last business day of the Plan Year.

## 13.   AMENDMENT AND TERMINATION

## 13.01  Power to Amend

Subject to the provisions hereinafter set forth, the Director, Human Resources, Eastman Kodak Company has the right, at any time and from time to time, to modify or amend by written action in whole or in part any or all the provisions of the Plan; provided that

    (a)    the Director, Human Resources, Eastman Kodak Company shall not make any such modification or amendment which:

        (1)    shall cause a forfeiture or deprive any Participant of any amounts credited to him under the Plan, or

        (2)    shall make it possible for any part of the corpus or income of the Trust to be used for, or diverted to, purposes other than for the exclusive benefit of the Participants or their beneficiaries prior to the satisfaction of all liabilities with respect to such Participants or their beneficiaries under the Trust established pursuant to the Plan; and

    (b)    the Director, Human Resources, Eastman Kodak Company shall make no such modification or amendment which is likely to result in annual increased cost or liability to the Company or the Plan of $50 million or more.

Any amendment by Director, Human Resources, Eastman Kodak Company shall be on behalf of and shall be binding on all the corporations participating in the Plan.

c)   SOPCO may continue to function, but if it fails to do so, its records, books of account and other necessary data shall be turned over to the Company and the Company shall act on its own motion as hereinafter provided.

d)   The value of the Trust and the shares of all Participants and Beneficiaries shall be determined as of the date of termination or discontinuance.

e)   Distribution to Participants and Beneficiaries shall be made at such time after termination of or discontinuance of contributions to the Plan and by such of the methods provided in Sections 10.03 and 10.04, as SOPCO (or the Company if SOPCO is not then acting) in its discretion shall determine (except that distribution shall be made not later than the time specified in Section 10.01).

## 14.   AFFILIATED COMPANIES AND SUBSIDIARIES

### 14.01  Affiliated Companies and Subsidiaries

The name of each Affiliated Company and subsidiary which was included in this Plan as of December 31, 1988 is set forth in Appendix I.  The name of each Affiliated Company and subsidiary which will be included in this Plan as of January 1, 1989 is set forth in Appendix II.  The Director, Human Resources, Eastman Kodak Company may at any time provide for inclusion in the Plan of any other Affiliated Company or subsidiary of the Company and may provide for the exclusion from the Plan of any Affiliated Company or subsidiary of the Company.  Any Affiliated Company or subsidiary of the Company which is included in the Plan after January 1, 1989 shall be listed in Appendix II.

## 15.   GENERAL PROVISIONS

### 15.01  Duty to Furnish Information and Documents

Participants and their Beneficiaries must furnish to SOPCO or the Trustee such evidence, data or information as SOPCO considers necessary or desirable for the purpose of administering the Plan, and the provisions of the Plan for each person are dependent upon the condition that he will furnish promptly full, true and complete evidence, data, and information requested by SOPCO.  All parties to, or claiming any interest under, the Plan must perform any and all acts, and to execute any and all documents and papers, necessary or desirable for carrying out the Plan and the Trust.

## 15.02 SOPCO's Periodic Statements and Available Information

The Company shall advise Employees of the eligibility requirements and benefits under the Plan. At such times as SOPCO may determine, but no less frequently than is required by law, SOPCO shall provide each Participant, and each former Participant and Beneficiary with respect to whom an account is maintained, with a statement reflecting the current status of his Account, including the Adjusted Balance thereof. No Participant, except a member of SOPCO, shall have the right to inspect the records reflecting the Account of any other Participant. SOPCO shall make available for inspection at reasonable times by Participants and Beneficiaries copies of the Plan, any amendments thereto, Plan summary, and all reports of Plan and Trust operations required by law.

## 15.03 No Enlargement of Employment Rights

Nothing contained in the Plan shall be construed as a contract of employment between the Company and any person, nor shall the Plan be deemed to give any person the right to be retained in the employ of the Company or limit the right of the Company to employ or discharge any person with or without cause, or to discipline any Employee.

## 15.04 Governing Law

All questions pertaining to the validity, construction and administration of the Plan shall be determined in conformity with the laws of the State of New York to the extent that such laws are not preempted by ERISA and valid regulations published thereunder.

## 15.05 No Guarantee

The Trustee, SOPCO, and the Company do not in any way guarantee the Trust Fund from loss or depreciation nor guarantee the payment of any money or other assets which may be or become due to any person from the Trust Fund. No Participant or other person shall have any recourse against the Trustee, the Company or SOPCO if the Trust Fund is insufficient to provide Plan benefits in full. Nothing herein contained shall be deemed to give any Participant, former Participant, or Beneficiary an interest in any specific part of the Trust Fund or any other interest except the right to receive benefits out of the Trust Fund in accordance with the provisions of the Plan and Trust.

## 15.06 Unclaimed Benefits

If any benefit payable to or on behalf of a Participant is not claimed before the later of one year from the date of entitlement or 90 days from the date of notice sent by SOPCO to the last known address of the Participant or Beneficiary entitled to such payment, such

benefit shall be used to reduce Company contributions made under Article V, if any.  Any amount remaining after Company contributions have been paid will be used to reduce administrative expenses of the Plan and Trust.  Any amount remaining after administrative expenses have been paid will be reallocated among the other Participants. If a claim is made at any future date by the Participant or Beneficiary entitled thereto, the amount payable to such Participant or Beneficiary will be distributable from the next Company contribution in accordance with the terms of the Plan or, if none, from the income of the Trust.

**15.07  Merger or Consolidation of Plan**

Any merger or consolidation of the Plan with another plan, or transfer of Plan assets or liabilities to any other plan, shall be effected in accordance with such regulations, if any, as may be issued pursuant to section 208 of ERISA, in such a manner that each Participant in the Plan would receive, if the merged, consolidated or transferee plan were terminated immediately following such event, a benefit which is equal to or greater than the benefit he would have been entitled to receive if the Plan had terminated immediately before such event.  Notwithstanding the foregoing, no merger or consolidation of this Plan with another plan shall be accepted if the proposed transferor plan is a defined benefit plan, a defined contribution plan subject to Code section 412 or a defined contribution plan subject to Code sections 401(a)(11) and 417, without first amending this Plan to comply with the provisions of Code sections 401(a)(11) and 417.

**15.08  Accounts are Nonalienable**

(a)    **In General.**  No benefit under this Plan shall be subject in any manner to voluntary or involuntary alienation, anticipation, sale, transfer, assignment, pledge or encumbrance, nor to seizure, attachment or other legal process for the debts of a Participant or a beneficiary, except that;

(1)    the Trustee shall have a first lien on the interests in the Plan of Participants executing notes pursuant to the Plan;

(2)    the Trustee shall  honor Qualified Domestic Relations Orders; and

(3)    the Trustee shall honor a Federal tax levy pursuant to Code section 6331 or a collection by the United States on a judgment resulting from an unpaid Federal tax assessment if and to the extent that SOPCO has determined that compliance with such levy or judgment is required under any applicable Federal law.

(b)     **Special rule for certain judgments and settlements.**  Section 15.08(a) shall not apply to any offset of a Participant's benefits provided under the Plan against, and such benefits shall be reduced by, an amount that the Participant is ordered or required to pay to the Plan, if:

    (1)     the order or requirement to pay arises

        (i)     under a judgment of conviction for a crime involving the Plan,

        (ii)    under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA, or

        (iii)   pursuant to a settlement agreement between the Secretary of Labor and the Participant in connection with a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA by a fiduciary or any other person, and

    (2)     the judgment, order decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the Plan against the Participant's benefits provided under the Plan.

**15.09  Prudent Man Rule**

Notwithstanding any other provision of this Plan, and the Trust Agreement, the Trustee, SOPCO and the Company shall exercise their powers and discharge their duties under this Plan and the Trust Agreement for the exclusive purpose of providing benefits to Employees and their Beneficiaries, and shall act with the care, skill, prudence and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

**15.10  Limitations on Liability**

Notwithstanding any of the preceding provisions of the Plan but without limitation of the protections extended to the Plan, the Company and its Affiliates, SOPCO and its members, and their employees and agents under Article III, none of the trustee, the Company, SOPCO and each individual acting as an employee or agent of any of them shall be liable to any Participant, former Participant or Beneficiary for any claim, loss,

1299lls

liability or expense incurred in connection with the Plan, except when the same shall have been judicially determined to be due to the gross negligence or willful misconduct of such person.

## 15.11  Federal and State Security Law Compliance

a) SOPCO will take all necessary steps to comply with any applicable registration or other requirements of federal or state securities laws from which no exemption is available.

b) Stock certificates distributed to Participants may bear such legends concerning restrictions imposed by federal or state securities laws, and concerning other restrictions and rights under the Plan, as the Board, the Senior Vice President and Director, Human Resources, Eastman Kodak Company or SOPCO may, jointly or severally, determine to be necessary or appropriate.

## 15.12  Headings

The headings in this Plan are inserted for convenience of reference only and are not to be considered in construction of the provisions hereof.

## 15.13  Gender and Number

Throughout this Plan, the masculine gender shall include the feminine, and the singular shall include the plural.

## 15.14  ERISA and Approval Under Internal Revenue Code

This Plan is intended to constitute an employee stock ownership plan and meet the requirements of sections 401(a), 409, 501(a) and 4975(d)(3) and (e)(7) of the Code, and sections 407(d)(6) and 408(b)(3) of ERISA, to the extent applicable, as now in effect or hereafter amended, so that the income of the Trust Fund may be exempt from taxation under section 501(a) of the Code, contributions of the Company under the Plan may be deductible for federal income tax purposes under section 404 of the Code, and loans to the Trustee will be exempt under section 4975(d)(2) of the Code and section 408(b)(3) of ERISA from the prohibited transaction provisions of section 4975(c) of the Code and section 406 of ERISA, all as now in effect or hereafter amended.  Any modification or amendment of the Plan may be made retroactively, as necessary or appropriate, to establish and maintain such qualification and to meet any requirement of the Code or ERISA.

12991ls

**EXHIBIT C**

# Eastman Kodak Employees' Savings and Investment Plan

## *Summary Plan Description*
### *January 2010*

| SIP-LINE SERVICE CENTER | |
|---|---|
| Toll-Free ………..………… | 800-SIP-4YOU (800-747-4968) |
| Website ……………………. | rps.troweprice.com |

**Kodak**

# **Table of Contents**

SAVINGS AND INVESTMENT PLAN ................................................................ 1
   Introduction ........................................................................................ 1
   Terms To Know .................................................................................... 1
   Prospectus .......................................................................................... 2
   Eligibility .............................................................................................. 3
   Coverage and Contributions ................................................................ 3
   Vesting ................................................................................................ 3
   SIP Deferrals and Limits ...................................................................... 3
   SIP Company Match ............................................................................ 5
   The Funds ........................................................................................... 6
   Fund Values ........................................................................................ 8
   Deferral Elections, Transfers and Reallocations .................................. 9
   Plan Expenses .................................................................................... 10
   SIP Account Statements ....................................................................... 11
   Loans .................................................................................................. 11
   Hardship Withdrawals .......................................................................... 12
   Claims and Payment of Benefits .......................................................... 13
   Survivor Benefits ................................................................................. 14
   Taxes .................................................................................................. 15
   Benefit Limitations ............................................................................... 17
   Plan Modifications and Termination ...................................................... 17
   Plan Identification ................................................................................ 18

PROCEDURE FOR PLAN CLAIMS AND APPEALS ..................................... 19
   Introduction ......................................................................................... 19
   Filing Claims ....................................................................................... 19
     Steps to Take .................................................................................. 20
     Type of Claim .................................................................................. 20
     Deadlines for Filing Claims .............................................................. 21
   Initial Claims Determination .................................................................. 26
     Routine Claims ................................................................................ 26
     Other Claims ................................................................................... 29
   Appeals .............................................................................................. 29
     How to File an Appeal ...................................................................... 29
     Claims Reviewer .............................................................................. 30
     Appeals Involving Routine Claims .................................................... 31
     Appeals Involving Other Claims ....................................................... 33
   Limits on Legal Actions ........................................................................ 34
   Claims and Appeals Transition Rules ................................................... 35

GLOSSARY OF TERMS ............................................................................... 36

---

*This Summary Plan Description of the Eastman Kodak Employees' Savings and Investment Plan constitutes part of a prospectus covering securities that have been registered under the Securities Act of 1933. Some of the information contained in the summary applies only to current employees of Eastman Kodak Company. This summary does not contain the complete text of the plan document. The plan document serves as the final authority in all matters relating to plan interpretation. Any conflict or ambiguity between this document and the plan shall be resolved in favor of the plan. The Company reserves the right to change, modify, discontinue, or terminate these benefits at any time for any reason.*

*January 1, 2010*

# SAVINGS AND INVESTMENT PLAN

## Introduction

The Eastman Kodak Employees' Savings and Investment Plan (SIP) is an Internal Revenue Code section 401(k) retirement plan for eligible Employees of Participating Companies. These Employees may elect to contribute a portion of their pay and/or any Wage Dividend or Global Variable Pay (GVP), if one is paid, to the plan.

At your request, a SIP account will be established in your name. Then you determine how much you wish to contribute. You may change your contributions as described in this benefits summary. When you elect to contribute to SIP, you agree to defer the cash receipt of a portion of your pay (and/or Wage Dividend or GVP) and, instead, have the Company contribute the money to your SIP account.

An important advantage of SIP is that it is a tax-deferred plan. Contributions made to your SIP account and earnings are not immediately subject to federal and/or most state and local income taxes. However, contributions are subject to Social Security (FICA/FICA MD) tax withholding. Income taxes are due as payments are made to you from the plan.

To qualify for this tax-deferred status, SIP withdrawals are limited. You may withdraw funds from SIP after you reach age 59 1/2 or when you retire or leave the Company. You may take loans or hardship withdrawals under strict conditions.

If you are a Cash Balance Participant, you may also receive a company match on your SIP salary deferrals. These funds cannot be used for loan or hardship withdrawal purposes.

## Terms To Know

*In addition to the terms defined in this handbook's "Glossary of Terms", this benefit summary regularly uses several terms that have very specific meanings. The terms that are used frequently are defined below. Other less frequently used terms are defined in the part of this summary where they apply. Defined terms may or may not be capitalized, or may be singular or plural, when they are used.*

**Catch-Up Contribution:** A "Catch-Up Contribution" is that portion of a Participant's designated catch-up deferrals for a calendar year that, when combined with the Participant's salary deferrals for the calendar year, exceeds the limits imposed on such deferrals by the plan or federal tax law.

**Company Match:** A "Company Match" is the amount that the Company will contribute to a Cash Balance Participant's SIP account for every dollar the participant contributes, up to a certain limit. The match formula is described later in "SIP Company Match". There will be no company match paid during times where the company has suspended the match.

**Deferrals:** Your "Deferrals" include salary deferrals (including sales and non-sales variable pay), Global Variable Pay (GVP) deferrals or Wage Dividend deferrals. For purposes of this summary, any references to deferrals include salary and GVP or Wage Dividend, unless otherwise specified.

**Designated Catch-Up Deferral:** The SIP contribution amount that a Participant who will be age 50 or more before the close of a calendar year elects to defer from his or her pay, in addition to salary and Wage Dividend or GVP deferrals, is the Participant's "Designated Catch-Up Deferral" for that calendar year. Designated Catch-Up Deferrals include catch-up contributions.

**Global Variable Pay (GVP) Deferrals:** A "Global Variable Pay Deferral" is the amount that you elect to defer from your GVP award, if eligible, for contribution to your SIP account.

**Mutual Fund:** A "Mutual Fund" is a type of investment that pools the money of many individual investors and uses it to buy stocks, bonds and other assets.

**Participating Company:** A "Participating Company" is Kodak and/or any of its subsidiaries or other affiliates participating in a plan. Unless this term is otherwise defined in a plan's benefit summary, participating subsidiaries or affiliates consist of the Eastman Gelatine Corporation.

**Plan:** The Eastman Kodak Employees' Savings and Investment Plan is at times referred to in this benefit summary as the "Plan".

**Prospectus:** A "Prospectus" is a written legal document provided to interested purchasers of certain securities registered under the Securities Act of 1933 or mutual funds including such securities, which describes the history, terms and financial risks of the security or fund.

**Redemption Fees:** "Redemption Fees" are charged by some Mutual Fund managers for transfers out of a fund if the fund shares are not held for a specific amount of time. The fees are usually charged as a percentage of the transfer amount and are paid directly to the Mutual Fund. In some cases, the Redemption Fees could apply even if money is removed from a fund as a result of a distribution, hardship withdrawal, automatic rebalancing or some other transaction.

**Salary Deferrals:** A "Salary Deferral" is the amount that you elect to defer from your pay for contribution to your SIP account other than a designated catch-up deferral.

**SIP Account:** A "SIP Account" refers to an account comprised of an Employee's deferrals, company match, if applicable, and catch-up contributions under SIP.

**SIPCO:** "SIPCO" is the Savings and Investment Plan Committee who manages the operation and administration of the plan.

**Trustee:** The plan's "Trustee" is The Bank of New York Mellon.

**Wage Dividend Deferrals:** A "Wage Dividend Deferral" is the amount that you elect to defer from your Wage Dividend, if eligible, for contribution to your SIP account.

## Prospectus

This benefit summary, titled "Savings And Investment Plan," constitutes part of a prospectus covering securities that have been registered under the Securities Act of 1933.  Additional copies of the prospectus are available upon request, at no charge, by contacting the Director, Global Benefits Organization, Eastman Kodak Company, 343 State Street, Rochester, New York 14650-0901 (telephone 585-724-4800).

Kodak will provide to you, upon request and without charge, a copy of its most recent annual and quarterly reports filed with the Securities and Exchange Commission and a copy of the annual report for SIP's most recent fiscal year. Kodak will also provide, to all SIP Participants who do not otherwise receive such material, copies of its annual report to security holders for its latest fiscal year and copies of all reports, proxy statements, and other communications distributed to its security holders. Requests for these documents should be directed to the Coordinator, Shareholder Services, Eastman Kodak Company, 343 State Street, Rochester, New York 14650-0208 (telephone 585-724-5492). There is no charge.

THE SECURITIES OFFERED PURSUANT TO THIS PROSPECTUS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

## Eligibility

*The terms used below to describe who is eligible for plan coverage are detailed in the applicable definitions included in the "Glossary of Terms".*

**Employees:** You are eligible to make deferrals if you are a Regular Employee or a Conditional Employee of a Participating Company and have completed at least one hour of service with the Company. Special Program Employees and Cooperative Interns are not eligible. Resident aliens and non-resident aliens working in the United States, but whose home country for employment purposes is not considered to be the United States, are not eligible to participate in SIP.

You are eligible for a company match if you are a Cash Balance Participant who is actively employed by a Participating Company.

**Rehired Employees:** If you are re-employed by a Participating Company as a Regular Employee or a Conditional Employee, you will be eligible to make deferrals into SIP when you return to work.  If you were receiving payments from SIP during the time you were not employed, the payments will stop and the balance will remain in your SIP account until your employment is again terminated. If you are age 59 1/2 or older, you have the option of requesting a total cash distribution of your account. If you are age 70 1/2 or older, you have the option of beginning or continuing minimum distribution payments.

If you are rehired as a Special Program Employee or Cooperative Intern, you are not eligible to participate in SIP.  If you were receiving payments from SIP during the time you were not employed, you may continue to receive payments.

**Retirees and LTD Recipients:**  You are not eligible to make contributions to SIP after you leave the Company, unless you are rehired by a Participating Company as a Regular or Conditional Employee.

## Coverage And Contributions

**Coverage:** Your coverage under SIP begins when you enroll in the plan by making an election to defer funds into your SIP account. Additional information on enrolling in SIP is provided later in the "Enrollment" section under "SIP Deferrals and Limits".

**Contributions:** SIP is funded by Participant contributions consisting of salary and Wage Dividend or GVP deferrals and catch-up contributions and by any company contributions consisting of the company match for Cash Balance Participants who make salary deferrals.

All contributions are paid to a Trustee for investment according to Participant instructions until such time as the funds are applied toward the payment of plan benefits or used for plan loans. All administrative expenses of the plan are paid by the Participant, unless paid directly by Kodak. In all cases, the Trustee is custodian of the assets and maintains the related financial records.

## Vesting

Once you defer or contribute funds into SIP, your interest in the plan is fully vested. If you receive a company match under the plan, you are also fully vested in those contributions.  In other words, the full value of your SIP account will always be payable to you or your beneficiary when eligible for a distribution.

## SIP Deferrals And Limits

**Types of Deferrals:** You may invest in SIP by making one or both of two deferral options—salary deferrals and Wage Dividend or GVP deferrals. You may also be eligible to make designated catch-up deferrals.

January 2010

*Salary Deferrals:* You may defer up to 75% of "qualifying compensation" into your SIP account.  In most cases, qualifying compensation means your pay and certain other payments, such as sales and non-sales variable pay. It also includes your pre-tax contributions under the Kodak Flexible Benefits Plan. On the other hand, qualifying compensation does not include, for example, pay in lieu of unused vacation after you terminate employment, tuition aid payments, awards, moving expenses (including tax allowance), and termination benefits payments. Your qualifying compensation may not exceed the IRS annual compensation limit ($245,000 in 2010). Your salary deferral election may be in one percent increments ranging from 1% to 75%.

*Wage Dividend or GVP Deferrals:* You may defer up to 75% of your anticipated Wage Dividend or GVP, assuming one is paid. Your deferral election may be in one percent increments ranging from 1% to 75%.

Your deferrals will be invested as described in "The Funds".

**Limitations on Deferrals:** Deferrals to SIP are limited to 75% of your "total earnings" for a calendar year. Your total earnings includes all of your qualifying compensation, plus 75% of any Wage Dividend, and cannot exceed the IRS annual compensation limit ($245,000 in 2010). If you will be age 50 or older by the end of the year, you can also make designated catch-up deferrals as described below in "Catch-Up Contributions".

Under federal law, your total deferrals, not including any SIP company match, any rollover deferrals or catch-up contributions described below, are subject to an annual limit ($16,500 in 2010). The limit applies to your salary deferrals and your Wage Dividend or GVP deferrals during the same calendar year.  Your deferrals payable during the same calendar year will be stopped automatically when the limit is reached.

In addition, your deferrals to all plans like SIP are limited each calendar year. If you participate in SIP and another 401(k) plan offered through another employer or a Kodak subsidiary, it is your responsibility to remain within the established limit each year for all such plans. (See "Benefit Limitations" later for additional limits on SIP deferrals.)

**Catch-Up Contributions:** To help Participants nearing retirement supplement their retirement income, the plan allows extra contributions to be made under certain conditions. If you will be age 50 or more before the end of a year, you can make designated catch-up deferrals to the plan for that year. If you do not maximize your salary deferrals for the year, some or all of your designated catch-up deferrals will be re-characterized as salary deferrals. Your designated catch-up deferrals in excess of the plan's salary deferral limit will be treated as your catch-up contribution for the applicable year and cannot exceed the annual maximum catch-up contribution ($5,500 in 2010).

Designated catch-up deferrals (including those re-characterized as salary deferrals) are not eligible for the SIP company match. Catch-up contributions are not taken into account when the plan's applicable deferral limits are calculated. Your designated catch-up deferrals will be invested as described later in "The Funds".

**Enrollment:** To make deferrals, you must enroll in SIP by calling the SIP-Line or by accessing the SIP website. When calling the SIP-Line, you may enter your Personal Identification Number ("PIN") to utilize the automated system or you may say "representative" to be connected with a SIP-Line representative.  When accessing the SIP website, log in to rps.troweprice.com and choose "Register". Follow the prompts to create your own user name and password.

**Military Leave:** After a military leave, if you are re-employed as described in the Uniform Services Employment and Reemployment Rights Act of 1994, you may elect to make up deferrals to SIP for the period of your leave.

**Employee Rollovers Into SIP:** You can make rollover deferrals to SIP from other qualified plans or IRAs at any time after you enroll in the plan. "Other qualified plans" include retirement plans qualified under Section 401(a) of the Internal Revenue Code (such as defined benefit, profit sharing, 401(k) and employee stock ownership plans), Section 403 of the Internal Revenue Code (such as "tax deferred-annuities" or "403(b) plans") or Section 457 of the Internal Revenue Code. "IRAs" include individual retirement accounts that are described in section 408(a) or 408(b) in the Internal Revenue Code. Distributions of after-tax contributions, and the earnings thereon, are not eligible to be rolled over to this plan.

**If You Transfer to a Subsidiary or Affiliate:** If you transfer to a Kodak Subsidiary or Affiliate that does not participate in SIP, salary deferrals to SIP will end when the transfer becomes effective. If you elected a Wage Dividend or GVP deferral, no deferral will be made after your transfer date, unless the transfer date occurs after the payment date.

**If You Leave the Company:** If you leave the Company, salary deferrals to SIP will end. If you elected a Wage Dividend or GVP deferral, no deferral will be made after your leaving date, unless the termination date occurs after the payment date.

**KRIP to SIP Rollovers:** If you are a Retirement-Eligible Participant, you can elect to roll over a KRIP lump-sum distribution to SIP.  Your election must be made prior to your termination date or as soon as practicable thereafter, you must have at least $1 in your SIP account at all times prior to the date your rollover is received, and the amount to be rolled over must be received by SIP's Trustee through a direct transfer from KRIP within 6 months of your termination date.

If you are a Participant other than a Retirement-Eligible Participant, you can elect to roll over a KRIP lump-sum distribution to SIP. Your election must be made prior to the first day of the fourth month after your termination is processed. Your SIP account must exceed $1,000 on the date you terminate, you must have at least $1 in your SIP account at all times and the amount to be rolled over must be received by SIP's Trustee through a direct transfer from KRIP within 6 months of your termination date.

## SIP Company Match

When a Cash Balance Participant contributes by salary deferral up to 5% of his or her pay per pay period to SIP, the Company will contribute up to 3% of the Participant's pay for that period to his or her SIP account. The Company will match dollar-for-dollar on the first 1% contributed to SIP and $.50 for each dollar on the next 4% contributed. There will be no company match paid during times where the company has suspended the match.

The following table illustrates how the company match works:

| Participant's Deferral | Company Match |
|---|---|
| First 1% | 1.0% |
| 2% | 1.5% |
| 3% | 2.0% |
| 4% | 2.5% |
| 5% | 3.0% |
| More than 5% | 3.0% |

The company match is only contributed for pay periods in which salary deferral is made and is invested in the same manner as the Participant's deferrals (i.e., the same investment funds and same percentages). The company match is not made on designated catch-up deferrals (including those re-characterized as salary deferrals).

The Company will also match a Cash Balance Participant's Wage Dividend or GVP deferral made to SIP. The company match will be calculated in accordance with the above chart and will be invested in the same manner as the Participant's deferrals.

**Reaching the Annual Deferral Limit:** The company match is in addition to the annual limit applicable to deferrals by federal law (see the limit amounts provided above in "Limitations on Deferrals"). As a result, even if your salary deferrals are stopped before the end of a calendar year because of this limit, you will still receive the full 3% company match based on your salary through the end of the year if you are employed on December 30th of that year.  The company match will be made in January of the following year.

~~Reaching Maximum Benefits Under SIP: If you reach the IRS annual compensation limit described~~ above in "Limitations on Deferrals" or you participate in the Executive Deferred Compensation Plan, part of your benefit in lieu of a company match may be earned in a non-qualified plan.

## The Funds[*]

When you make your SIP deferral election, you will be asked to designate the fund(s) into which your deferrals should be deposited. You will also designate the percentage (in whole percent increments) of your deferral that you want deposited in each fund. For example, you might choose 50% in one fund, 25% in another and 25% in a third fund.  Be sure the percentages add up to 100%. You may change your investment elections daily; your change takes effect the next business day.

A SIP Annual Report that includes a description of the funds available under SIP and information concerning the funds' past performance is available to all SIP participants. By this reference, the information contained in the SIP Annual Report is made a part of this summary. Remember, past performance is no guarantee of future returns.

**Available Funds:** The investment funds available under the plan are allocated into 3 "tiers": Tier 1 includes Retirement Trusts, Tier 2 includes Core Funds and Tier 3 is a brokerage window (known as *TradeLink®***) connecting you with hundreds of mutual funds.

*Tier 1 Retirement Trusts:* The Retirement Trusts are T. Rowe Price Trusts made up of other selected T. Rowe Price Mutual Trusts. Each Retirement Trust provides a diversified portfolio of investments  made up of four commingled T. Rowe Price Trusts, each one representing a different market segment: U.S. equity, non-U.S. equity, fixed income and short-term income.  The Retirement Trusts are professionally-managed, periodically adjusted, one-step portfolios.

If you decide that the T. Rowe Price Retirement Trusts are right for you, one way to choose a Retirement Trust is to pick the one that most closely matches the year that you plan to retire.  Each Retirement Trust with a date automatically shifts to a more conservative asset allocation as the target retirement date draws near.  The Trusts continue to hold equities at the target retirement date and their portfolios continue to adjust for approximately 30 years after their target retirement dates before arriving at their final 20% stock/80% bond allocation ratios. Alternatively, the Retirement Income Trust is designed for retired investors who seek income and relative stability from bonds and capital appreciation potential from stocks; it invests in a diversified portfolio consisting of about 60% bonds and 40% stocks.

*Tier 2 Core Funds:* The Tier 2 Core Funds represent various categories of investments, or asset classes. With these funds, you can decide how to create your own portfolio to match your own

---

[*]These funds are part of a plan that is intended to qualify as an ERISA 404(c) plan.  Plan fiduciaries may be relieved of liability for losses directly and necessarily resulting from your investing instructions.
**TradeLink is offered through T. Rowe Price Investment Services, Inc., member FINRA/SIPC.

personal time horizon as well as your needs and comfort level with risk. The Tier 2 Core Funds include:

- Fixed Income Fund
- Kodak Stock Fund
- Barclays Capital U.S. Aggregate Bond Index Fund
- MSCI EAFE Equity Index Fund
- Russell 2000® Index Fund
- S&P 500 Index Fund

**Tier 3 TradeLink:** *TradeLink* is a brokerage service* for those who like lots of choice and are experienced with investing. With *TradeLink* you can expand and diversify your retirement plan account with mutual funds outside of the funds offered within SIP.** The service is offered to you through an arrangement SIP has with T. Rowe Price Investment Services, Inc. *TradeLink* investment choices may be subject to greater volatility and risk of loss than SIP's Tier 1 and 2 plan investments. Also, there are additional account and transaction fees associated with investing through *TradeLink*. Potential gains may be offset by account and transaction fees.

Transaction fees for no-load mutual funds range from $0 (for no transaction-fee funds) to $70 (for exchanges between different transaction-fee fund families). Additional fees may be charged for early redemption. Transactions involving load fees will charge you sales commissions at the time of the trade.

To request a *TradeLink* application kit or to obtain more information, please call the SIP-Line Service Center. Choosing to invest through *TradeLink* is strictly voluntary and recommended for experienced investors only.

*Brokerage services are offered by T. Rowe Price Investment Services, Inc., member FINRA/SIPC. TradeLink brokerage accounts are carried by Pershing, LLC, a subsidiary of The Bank of New York Mellon Corporation (member NYSE/FINRA/SIPC), which acts as a clearing broker for T. Rowe Price Investment Services.
**Some investments may be closed to new investors or otherwise not available. The TradeLink application kit provides details on these exceptions.*

**Making Your Selection:** You are not locked into any one tier.  You can invest in any combination of tiers and funds you want. For example, you can invest part of your SIP Deferrals in Tier 1 and invest the remaining Deferrals in Tier 2. Salary deferrals may not be directed into Tier 3 (*TradeLink*). You must first transfer funds from your current investments into *TradeLink* in order to invest in *TradeLink* funds.

If you request a fund transfer into any fund, you cannot transfer money out of that fund for 7 calendar days after the most recent transfer date nor request a fund reallocation involving any SIP funds for 7 calendar days after your most recent transfer.

If you choose to invest in the Kodak Stock Fund, you have the option to receive dividends in cash or to have the dividends reinvested in the Kodak Stock Fund and added to your SIP account. Unless you make a special election via the SIP-Line, any dividends from the Kodak Stock Fund will be reinvested. If you wish to receive cash dividends from the Kodak Stock Fund, you must call the SIP-Line and make an election.

Every dividend will have an election cut-off date, after which your elections will be effective beginning with the next dividend. Election cut-off dates for future dividends will be announced as they are known.

It is important to remember that the funds can change at any time. For example, new funds may be added and existing funds may be closed to new investments, or funds may be eliminated altogether. In the event a fund is eliminated, account balances will be transferred from such funds to one or more of those that remain. Also, your ability to transfer in or out of a particular fund, or take some other

action with respect to a fund, may be restricted at times by a fund manager, Kodak or SIPCO. Neither the plan, Kodak nor SIPCO is responsible for the consequences resulting from any such action.

# Fund Values

The amount of your account in each SIP fund is recorded in "units" or shares. A "unit" is a way to measure the portion of each fund credited to your account for those SIP funds that are not mutual funds.  You have no shares of stock or other securities in your own name.

The following funds are valued in units:
- Retirement Date Trusts
- Fixed Income Fund
- Barclays Capital U.S. Aggregate Bond Index Fund
- S&P 500 Index Fund
- Russell 2000® Index Fund
- Kodak Stock Fund
- MSCI EAFE Equity Index Fund

Each of these funds has a specific "unit value" determined as of the end of each business day (also called the "valuation date"*). To determine the unit value, the Trustee computes the value of each fund, net of expenses, and divides that value by the total number of units in the fund.

The number of units in your account in any fund will increase only when:
- any deferral is made to your account in accordance with your election;
- you transfer units to that fund from another fund; or
- you repay a SIP loan.

If you participate in the Kodak Stock Fund and do not elect to have your dividends paid to you in cash, the number of units in your account with respect to that fund will also increase whenever a dividend is paid on the shares in your fund.

The number of units in your account in any fund will decrease only when:
- you transfer out of that fund to another fund;
- any payments from a fund are made to you or your beneficiary; or
- you take a SIP loan.

The Tier 3 SIP funds are valued in shares. The share value is determined daily by the Mutual Fund company which manages the fund based on the value of the securities in that fund. The number of shares in your account will increase or decrease for the same reasons as the units in your account as indicated above. In addition, any dividends or capital gain distributions made by the Mutual Fund will also increase the shares in your account.

The unit and share values will increase or decrease based on the market prices of the securities held in each fund. These value fluctuations are influenced by business conditions over which neither the Trustee nor Kodak has any control. Kodak assumes no responsibility for future unit or share values.

Unit and share values are available by calling the SIP-Line or by accessing the SIP website. Historical changes in unit and share values are not necessarily indicative of future changes.

*Any qualified domestic relations order that requires the division of a Participant's SIP account prior to January 1, 2002, must value the account as of the last day of a calendar quarter.

**Calculating Your Account Value:** You can determine your account value for each fund by multiplying the number of units or shares you have in the fund by the unit or share value. The unit or share value for each fund—and your account balance—are available by calling the SIP-Line or by accessing the SIP website. This information is updated and available daily.

**Company Match:** When a company match is made to your account, the dollar amount to be deposited in each fund is divided by the unit or share value for that fund on the day before the deposit. The resulting number of units or shares is credited to your account.

# Deferral Elections, Transfers And Reallocations

To begin making deferrals to SIP, you will need to determine how much you wish to defer (your "deferral elections") into which funds (your "investment election"). You then make these elections via the SIP-Line or the SIP website. Be sure to have your Personal Identification Number (PIN) handy.

After your SIP account is established, you may make the following account transactions via the SIP-Line or the SIP website:

**Deferral Election:** This is the percentage you wish to contribute to your SIP account. You may contribute up to 75% of your annual pay, including up to 75% of any Wage Dividend or GVP paid. Your total deferral is limited to 75% of the total of your qualifying compensation (which includes any GVP payments) and Wage Dividend, if applicable.  Deferral elections can be made via the SIP-Line or the SIP website.  Separate deferral elections are required for Wage Dividend or GVP.

Salary deferral election changes are processed daily. Changes received on or before, 4:00 p.m. Eastern Time (or close of market, if earlier) of the Wednesday in the week prior to a pay week will be reflected in your next pay. You can stop or start deferrals at any time during the year. If you wish to stop deferrals, decrease the percentage to zero. If you wish to begin deferrals, increase the percentage from zero to the percentage you wish.

GVP deferral elections/changes received on or before 4:00 p.m. Eastern Time (or close of market, if earlier) of the Wednesday in the week prior to the GVP payment date, will be reflected in the next GVP payment, assuming one is paid and you are an Employee on the GVP payment date.

Wage Dividend deferral elections/changes received on or before 4:00 p.m. Eastern Time (or close of market, if earlier) on February 15 (or earlier if February 15 is not a business day), will be reflected in the next Wage Dividend payment, assuming one is paid and you are an Employee on the Wage Dividend payment date.

Once you make a deferral election, it remains in effect until you change it. In other words, the deferral percentage will remain in effect regardless of any changes in pay.  For example, if you elect a 10% deferral of your pay and your pay increases from $500 to $530, your SIP deferral will increase from $50 to $53.

**Investment Elections:** These are the percentages of your deferred monies you want invested in each fund.  For example, you may elect to have 25% invested in the Fixed Income Fund, 50% in the S&P 500 Index Fund and 25% in a Retirement Trust. All contributions to your account (including salary deferrals, GVP deferrals, Wage Dividend deferrals, designated catch-up deferrals and any matching contributions) will be invested in accordance with the investment election in effect at the time the contribution is made.

Investment election changes are processed daily. Changes will be effective on the next business day for all salary deferrals, Wage Dividend or GVP deferrals and repayment of loans that are deposited in your SIP account on or after that business day.

January 2010

**Fund Transfers:** A fund transfer is when you move a specific percentage or dollar amount directly from one investment fund to another.

| Take 24% (or, alternatively, $5,000) of my units currently in fund 1 . . . | ...and transfer them as follows: | => 25% into fund 2<br>=> 25% into fund 3<br>=> 50% into fund 4 |
|---|---|---|

Transfer requests are processed daily, however, you cannot transfer money out of a fund for 7 calendar days after the most recent transfer date nor request a fund reallocation for 7 calendar days after your most recent transfer into a fund. Transfers will be effective on the day you call the SIP-Line or by accessing the SIP website if it is a business day and you execute by 4:00 p.m. Eastern Time (or close of market, if earlier). Otherwise, transfers will be effective on the next business day.

To transfer from one fund to another, designate the percentage of the units or shares or the dollar amount you wish to have liquidated and transferred. You may transfer all or any portion of your account (in whole percent increments or whole dollar amounts) in that fund. The number of units or shares you wish liquidated and transferred is multiplied by that fund's unit or share value to determine a dollar amount. The dollar amount being transferred is, in turn, divided by the unit or share value of the fund into which you are transferring. The result is the number of units or shares to be credited to the new fund.

When your transfer request is processed, it will affect only the funds in your SIP account at the time the transfer is made. The transfer will not affect subsequent deferrals to SIP. If you wish to have future deferrals made to a different fund, you must make a separate investment election change.

Transfers in and out of certain funds may be subject to a Redemption Fee if shares in the fund are not held for a period of time required by the managers of those funds. For details on which funds charge Redemption Fees and the holding period for those funds, call the SIP-line or log on to the SIP website.

**Fund Reallocations:** This means moving your existing SIP account balance to funds in specified percents.

| Take my total (100%) account balance . . . | ...and reallocate it as follows: | => 10% into fund 2<br>=> 60% into fund 3<br>=> 30% into fund 4 |
|---|---|---|

Reallocations are processed daily and are subject to the same 7-day restriction as transfers. Reallocations will be effective on the day you call the SIP-Line or by accessing the SIP website if it is a business day and you execute the transaction by 4:00 p.m. Eastern Time (or close of market, if earlier). Otherwise, reallocating will be effective on the next business day. Like transfers, a reallocation will not affect subsequent deferrals to SIP. If you wish to have future deferrals made to a different fund, you need to make a separate investment election change for future deferrals.

## Plan Expenses

Plan expenses are paid out of the plan unless paid by the Company. If the Company pays any plan expense, it may later obtain reimbursement from the plan. Plan expenses include such things as Trustee, auditing, administrative and legal fees, recordkeeping, communications and expenses relating to investment managers and guaranteed interest contracts. SIP expenses vary based on costs incurred throughout the year. Expenses are deducted from your account monthly and total expenses will be reported annually in the *SIP-4-YOU* newsletter.

# EXHIBIT D

| Date | Close |
|------|-------|
| January 1, 2010 | 4.22 |
| January 4, 2010 | 4.29 |
| January 5, 2010 | 4.63 |
| January 6, 2010 | 4.62 |
| January 7, 2010 | 4.76 |
| January 8, 2010 | 4.67 |
| January 11, 2010 | 4.53 |
| January 12, 2010 | 4.39 |
| January 13, 2010 | 4.93 |
| January 14, 2010 | 5.07 |
| January 15, 2010 | 4.99 |
| January 18, 2010 | 4.99 |
| January 19, 2010 | 4.99 |
| January 20, 2010 | 4.88 |
| January 21, 2010 | 4.55 |
| January 22, 2010 | 4.36 |
| January 25, 2010 | 4.41 |
| January 26, 2010 | 4.5 |
| January 27, 2010 | 4.75 |
| January 28, 2010 | 5.92 |
| January 29, 2010 | 6.05 |
| February 1, 2010 | 6.08 |
| February 2, 2010 | 6.86 |
| February 3, 2010 | 6.83 |
| February 4, 2010 | 6.05 |
| February 5, 2010 | 6.08 |
| February 8, 2010 | 5.84 |
| February 9, 2010 | 6 |
| February 10, 2010 | 5.94 |
| February 11, 2010 | 5.98 |
| February 12, 2010 | 5.89 |
| February 15, 2010 | 5.89 |
| February 16, 2010 | 6.09 |
| February 17, 2010 | 6.05 |
| February 18, 2010 | 6 |
| February 19, 2010 | 5.99 |
| February 22, 2010 | 5.92 |
| February 23, 2010 | 5.6 |
| February 24, 2010 | 5.74 |
| February 25, 2010 | 5.77 |
| February 26, 2010 | 5.94 |
| March 1, 2010 | 5.97 |
| March 2, 2010 | 5.92 |
| March 3, 2010 | 6 |
| March 4, 2010 | 5.95 |
| March 5, 2010 | 6 |

| | |
|---|---|
| March 8, 2010 | 5.95 |
| March 9, 2010 | 6 |
| March 10, 2010 | 5.98 |
| March 11, 2010 | 5.97 |
| March 12, 2010 | 5.89 |
| March 15, 2010 | 6.12 |
| March 16, 2010 | 5.95 |
| March 17, 2010 | 6 |
| March 18, 2010 | 5.99 |
| March 19, 2010 | 5.86 |
| March 22, 2010 | 5.92 |
| March 23, 2010 | 6.05 |
| March 24, 2010 | 6.04 |
| March 25, 2010 | 5.89 |
| March 26, 2010 | 5.97 |
| March 29, 2010 | 6 |
| March 30, 2010 | 5.89 |
| March 31, 2010 | 5.79 |
| April 1, 2010 | 5.99 |
| April 2, 2010 | 5.99 |
| April 5, 2010 | 6.78 |
| April 6, 2010 | 6.72 |
| April 7, 2010 | 6.61 |
| April 8, 2010 | 7.67 |
| April 9, 2010 | 7.39 |
| April 12, 2010 | 7.5 |
| April 13, 2010 | 7.65 |
| April 14, 2010 | 7.81 |
| April 15, 2010 | 7.69 |
| April 16, 2010 | 7.39 |
| April 19, 2010 | 7.4 |
| April 20, 2010 | 7.48 |
| April 21, 2010 | 7.5 |
| April 22, 2010 | 7.85 |
| April 23, 2010 | 8 |
| April 26, 2010 | 8.9 |
| April 27, 2010 | 8.34 |
| April 28, 2010 | 8.35 |
| April 29, 2010 | 6.94 |
| April 30, 2010 | 6.13 |
| May 3, 2010 | 6.2 |
| May 4, 2010 | 5.78 |
| May 5, 2010 | 6.19 |
| May 6, 2010 | 5.65 |
| May 7, 2010 | 5.44 |
| May 10, 2010 | 5.88 |
| May 11, 2010 | 5.74 |

| | |
|---|---|
| May 12, 2010 | 6.29 |
| May 13, 2010 | 5.98 |
| May 14, 2010 | 5.85 |
| May 17, 2010 | 5.81 |
| May 18, 2010 | 5.66 |
| May 19, 2010 | 5.6 |
| May 20, 2010 | 5.27 |
| May 21, 2010 | 5.34 |
| May 24, 2010 | 5.24 |
| May 25, 2010 | 5.25 |
| May 26, 2010 | 5.51 |
| May 27, 2010 | 5.89 |
| May 28, 2010 | 5.64 |
| May 31, 2010 | 5.64 |
| June 1, 2010 | 5.34 |
| June 2, 2010 | 5.44 |
| June 3, 2010 | 5.45 |
| June 4, 2010 | 5.1 |
| June 7, 2010 | 4.77 |
| June 8, 2010 | 4.74 |
| June 9, 2010 | 4.77 |
| June 10, 2010 | 5.06 |
| June 11, 2010 | 5.11 |
| June 14, 2010 | 5.14 |
| June 15, 2010 | 5.29 |
| June 16, 2010 | 5.2 |
| June 17, 2010 | 5.21 |
| June 18, 2010 | 5.35 |
| June 21, 2010 | 5.15 |
| June 22, 2010 | 4.98 |
| June 23, 2010 | 5.03 |
| June 24, 2010 | 4.94 |
| June 25, 2010 | 4.9 |
| June 28, 2010 | 4.81 |
| June 29, 2010 | 4.46 |
| June 30, 2010 | 4.34 |
| July 1, 2010 | 4.37 |
| July 2, 2010 | 4.3 |
| July 5, 2010 | 4.3 |
| July 6, 2010 | 4.12 |
| July 7, 2010 | 4.17 |
| July 8, 2010 | 4.43 |
| July 9, 2010 | 4.55 |
| July 12, 2010 | 4.44 |
| July 13, 2010 | 4.72 |
| July 14, 2010 | 4.71 |
| July 15, 2010 | 4.73 |

| | |
|---|---|
| July 16, 2010 | 4.4 |
| July 19, 2010 | 4.35 |
| July 20, 2010 | 4.3 |
| July 21, 2010 | 4.42 |
| July 22, 2010 | 4.7 |
| July 23, 2010 | 4.85 |
| July 26, 2010 | 5.06 |
| July 27, 2010 | 4.93 |
| July 28, 2010 | 4.18 |
| July 29, 2010 | 4.03 |
| July 30, 2010 | 3.97 |
| August 2, 2010 | 4.08 |
| August 3, 2010 | 4.02 |
| August 4, 2010 | 4.05 |
| August 5, 2010 | 3.99 |
| August 6, 2010 | 3.89 |
| August 9, 2010 | 4.05 |
| August 10, 2010 | 3.99 |
| August 11, 2010 | 3.78 |
| August 12, 2010 | 3.74 |
| August 13, 2010 | 3.7 |
| August 16, 2010 | 3.82 |
| August 17, 2010 | 3.84 |
| August 18, 2010 | 3.83 |
| August 19, 2010 | 3.75 |
| August 20, 2010 | 3.77 |
| August 23, 2010 | 3.7 |
| August 24, 2010 | 3.61 |
| August 25, 2010 | 3.72 |
| August 26, 2010 | 3.63 |
| August 27, 2010 | 3.69 |
| August 30, 2010 | 3.59 |
| August 31, 2010 | 3.5 |
| September 1, 2010 | 3.78 |
| September 2, 2010 | 4 |
| September 3, 2010 | 4.01 |
| September 6, 2010 | 4.01 |
| September 7, 2010 | 3.79 |
| September 8, 2010 | 3.74 |
| September 9, 2010 | 3.74 |
| September 10, 2010 | 3.87 |
| September 13, 2010 | 4.01 |
| September 14, 2010 | 3.85 |
| September 15, 2010 | 3.8 |
| September 16, 2010 | 3.9 |
| September 17, 2010 | 3.89 |
| September 20, 2010 | 3.99 |

| | |
|---|---|
| September 21, 2010 | 3.98 |
| September 22, 2010 | 3.87 |
| September 23, 2010 | 3.83 |
| September 24, 2010 | 4 |
| September 27, 2010 | 4.13 |
| September 28, 2010 | 4.26 |
| September 29, 2010 | 4.23 |
| September 30, 2010 | 4.2 |
| October 1, 2010 | 4.1 |
| October 4, 2010 | 3.96 |
| October 5, 2010 | 4.14 |
| October 6, 2010 | 4.1 |
| October 7, 2010 | 4.18 |
| October 8, 2010 | 4.32 |
| October 11, 2010 | 4.22 |
| October 12, 2010 | 4.26 |
| October 13, 2010 | 4.21 |
| October 14, 2010 | 4.13 |
| October 15, 2010 | 4.07 |
| October 18, 2010 | 4.17 |
| October 19, 2010 | 3.96 |
| October 20, 2010 | 4 |
| October 21, 2010 | 3.88 |
| October 22, 2010 | 3.93 |
| October 25, 2010 | 3.94 |
| October 26, 2010 | 3.91 |
| October 27, 2010 | 3.97 |
| October 28, 2010 | 4.58 |
| October 29, 2010 | 4.7 |
| November 1, 2010 | 4.52 |
| November 2, 2010 | 4.72 |
| November 3, 2010 | 4.73 |
| November 4, 2010 | 4.85 |
| November 5, 2010 | 4.83 |
| November 8, 2010 | 4.88 |
| November 9, 2010 | 4.7 |
| November 10, 2010 | 4.79 |
| November 11, 2010 | 4.79 |
| November 12, 2010 | 4.63 |
| November 15, 2010 | 4.79 |
| November 16, 2010 | 4.7 |
| November 17, 2010 | 4.74 |
| November 18, 2010 | 4.77 |
| November 19, 2010 | 4.81 |
| November 22, 2010 | 4.77 |
| November 23, 2010 | 4.67 |
| November 24, 2010 | 4.84 |

| | |
|---|---|
| November 26, 2010 | 4.67 |
| November 29, 2010 | 4.84 |
| November 30, 2010 | 4.71 |
| December 1, 2010 | 4.7 |
| December 2, 2010 | 4.74 |
| December 3, 2010 | 4.73 |
| December 6, 2010 | 4.67 |
| December 7, 2010 | 4.62 |
| December 8, 2010 | 4.77 |
| December 9, 2010 | 5.31 |
| December 10, 2010 | 5.12 |
| December 13, 2010 | 5.05 |
| December 14, 2010 | 5.22 |
| December 15, 2010 | 5.3 |
| December 16, 2010 | 5.35 |
| December 17, 2010 | 5.53 |
| December 20, 2010 | 5.83 |
| December 21, 2010 | 5.67 |
| December 22, 2010 | 5.92 |
| December 23, 2010 | 5.62 |
| December 27, 2010 | 5.62 |
| December 28, 2010 | 5.61 |
| December 29, 2010 | 5.5 |
| December 30, 2010 | 5.52 |
| December 31, 2010 | 5.36 |
| January 3, 2011 | 5.64 |
| January 4, 2011 | 5.55 |
| January 5, 2011 | 5.74 |
| January 6, 2011 | 5.65 |
| January 7, 2011 | 5.56 |
| January 10, 2011 | 5.62 |
| January 11, 2011 | 5.61 |
| January 12, 2011 | 5.6 |
| January 13, 2011 | 5.51 |
| January 14, 2011 | 5.54 |
| January 18, 2011 | 5.43 |
| January 19, 2011 | 5.23 |
| January 20, 2011 | 5.25 |
| January 21, 2011 | 5.15 |
| January 24, 2011 | 5.22 |
| January 25, 2011 | 4.52 |
| January 26, 2011 | 3.71 |
| January 27, 2011 | 3.81 |
| January 28, 2011 | 3.64 |
| January 31, 2011 | 3.66 |
| February 1, 2011 | 3.78 |
| February 2, 2011 | 3.66 |

| | |
|---|---|
| February 3, 2011 | 3.59 |
| February 4, 2011 | 3.64 |
| February 7, 2011 | 3.67 |
| February 8, 2011 | 3.75 |
| February 9, 2011 | 3.7 |
| February 10, 2011 | 3.65 |
| February 11, 2011 | 3.63 |
| February 14, 2011 | 3.57 |
| February 15, 2011 | 3.59 |
| February 16, 2011 | 3.66 |
| February 17, 2011 | 3.72 |
| February 18, 2011 | 3.71 |
| February 22, 2011 | 3.61 |
| February 23, 2011 | 3.57 |
| February 24, 2011 | 3.64 |
| February 25, 2011 | 3.47 |
| February 28, 2011 | 3.4 |
| March 1, 2011 | 3.22 |
| March 2, 2011 | 3.19 |
| March 3, 2011 | 3.21 |
| March 4, 2011 | 3.19 |
| March 7, 2011 | 3.15 |
| March 8, 2011 | 3.18 |
| March 9, 2011 | 3.37 |
| March 10, 2011 | 3.22 |
| March 11, 2011 | 3.12 |
| March 14, 2011 | 3.07 |
| March 15, 2011 | 2.99 |
| March 16, 2011 | 2.96 |
| March 17, 2011 | 3.03 |
| March 18, 2011 | 3.29 |
| March 21, 2011 | 3.27 |
| March 22, 2011 | 3.24 |
| March 23, 2011 | 3.02 |
| March 24, 2011 | 3.13 |
| March 25, 2011 | 3.4 |
| March 28, 2011 | 3.58 |
| March 29, 2011 | 3.4 |
| March 30, 2011 | 3.47 |
| March 31, 2011 | 3.23 |
| April 1, 2011 | 3.3 |
| April 4, 2011 | 3.35 |
| April 5, 2011 | 3.4 |
| April 6, 2011 | 3.45 |
| April 7, 2011 | 3.43 |
| April 8, 2011 | 3.43 |
| April 11, 2011 | 3.3 |

| Date | Value |
|------|-------|
| April 12, 2011 | 3.3 |
| April 13, 2011 | 3.32 |
| April 14, 2011 | 3.24 |
| April 15, 2011 | 3.37 |
| April 18, 2011 | 3.34 |
| April 19, 2011 | 3.31 |
| April 20, 2011 | 3.29 |
| April 21, 2011 | 3.22 |
| April 25, 2011 | 3.28 |
| April 26, 2011 | 3.16 |
| April 27, 2011 | 3.17 |
| April 28, 2011 | 2.85 |
| April 29, 2011 | 2.78 |
| May 2, 2011 | 2.78 |
| May 3, 2011 | 2.88 |
| May 4, 2011 | 2.81 |
| May 5, 2011 | 2.85 |
| May 6, 2011 | 2.88 |
| May 9, 2011 | 2.84 |
| May 10, 2011 | 2.89 |
| May 11, 2011 | 2.82 |
| May 12, 2011 | 2.85 |
| May 13, 2011 | 3 |
| May 16, 2011 | 3.09 |
| May 17, 2011 | 3.12 |
| May 18, 2011 | 3.6 |
| May 19, 2011 | 3.68 |
| May 20, 2011 | 3.7 |
| May 23, 2011 | 3.64 |
| May 24, 2011 | 3.57 |
| May 25, 2011 | 3.64 |
| May 26, 2011 | 3.57 |
| May 27, 2011 | 3.4 |
| May 31, 2011 | 3.34 |
| June 1, 2011 | 3.26 |
| June 2, 2011 | 3.26 |
| June 3, 2011 | 3.22 |
| June 6, 2011 | 3.15 |
| June 7, 2011 | 3.14 |
| June 8, 2011 | 3.1 |
| June 9, 2011 | 3.17 |
| June 10, 2011 | 3.29 |
| June 13, 2011 | 3.22 |
| June 14, 2011 | 3.36 |
| June 15, 2011 | 3.35 |
| June 16, 2011 | 3.33 |
| June 17, 2011 | 3.37 |

| | |
|---|---|
| June 20, 2011 | 3.37 |
| June 21, 2011 | 3.44 |
| June 22, 2011 | 3.5 |
| June 23, 2011 | 3.57 |
| June 24, 2011 | 3.42 |
| June 27, 2011 | 3.43 |
| June 28, 2011 | 3.44 |
| June 29, 2011 | 3.59 |
| June 30, 2011 | 3.58 |
| July 1, 2011 | 3.07 |
| July 5, 2011 | 2.93 |
| July 6, 2011 | 2.82 |
| July 7, 2011 | 2.85 |
| July 8, 2011 | 2.83 |
| July 11, 2011 | 2.72 |
| July 12, 2011 | 2.76 |
| July 13, 2011 | 2.79 |
| July 14, 2011 | 2.76 |
| July 15, 2011 | 2.74 |
| July 18, 2011 | 2.52 |
| July 19, 2011 | 2.31 |
| July 20, 2011 | 2.34 |
| July 21, 2011 | 2.5 |
| July 22, 2011 | 2.5 |
| July 25, 2011 | 2.33 |
| July 26, 2011 | 2.39 |
| July 27, 2011 | 2.42 |
| July 28, 2011 | 2.52 |
| July 29, 2011 | 2.4 |
| August 1, 2011 | 2.37 |
| August 2, 2011 | 2.26 |
| August 3, 2011 | 2.47 |
| August 4, 2011 | 2.49 |
| August 5, 2011 | 2.28 |
| August 8, 2011 | 1.86 |
| August 9, 2011 | 1.96 |
| August 10, 2011 | 1.77 |
| August 11, 2011 | 1.99 |
| August 12, 2011 | 2.07 |
| August 15, 2011 | 2.15 |
| August 16, 2011 | 2.14 |
| August 17, 2011 | 2.69 |
| August 18, 2011 | 3.05 |
| August 19, 2011 | 3.04 |
| August 22, 2011 | 2.78 |
| August 23, 2011 | 2.62 |
| August 24, 2011 | 2.58 |

| | |
|---|---|
| August 25, 2011 | 2.67 |
| August 26, 2011 | 2.87 |
| August 29, 2011 | 3.04 |
| August 30, 2011 | 3.4 |
| August 31, 2011 | 3.18 |
| September 1, 2011 | 3.17 |
| September 2, 2011 | 3.24 |
| September 6, 2011 | 3.19 |
| September 7, 2011 | 3.12 |
| September 8, 2011 | 2.99 |
| September 9, 2011 | 2.87 |
| September 12, 2011 | 3.05 |
| September 13, 2011 | 2.82 |
| September 14, 2011 | 2.88 |
| September 15, 2011 | 2.84 |
| September 16, 2011 | 2.77 |
| September 19, 2011 | 2.69 |
| September 20, 2011 | 2.61 |
| September 21, 2011 | 2.55 |
| September 22, 2011 | 2.36 |
| September 23, 2011 | 2.38 |
| September 26, 2011 | 1.74 |
| September 27, 2011 | 1.82 |
| September 28, 2011 | 1.55 |
| September 29, 2011 | 1.69 |
| September 30, 2011 | 0.78 |
| October 3, 2011 | 1.34 |
| October 4, 2011 | 1.12 |
| October 5, 2011 | 1.22 |
| October 6, 2011 | 1.45 |
| October 7, 2011 | 1.39 |
| October 10, 2011 | 1.41 |
| October 11, 2011 | 1.41 |
| October 12, 2011 | 1.24 |
| October 13, 2011 | 1.28 |
| October 14, 2011 | 1.24 |
| October 17, 2011 | 1.3 |
| October 18, 2011 | 1.31 |
| October 19, 2011 | 1.27 |
| October 20, 2011 | 1.24 |
| October 21, 2011 | 1.32 |
| October 24, 2011 | 1.28 |
| October 25, 2011 | 1.25 |
| October 26, 2011 | 1.23 |
| October 27, 2011 | 1.22 |
| October 28, 2011 | 1.23 |
| October 31, 2011 | 1.11 |

| | |
|---|---|
| November 1, 2011 | 1.16 |
| November 2, 2011 | 1.2 |
| November 3, 2011 | 1.12 |
| November 4, 2011 | 1.16 |
| November 7, 2011 | 1.19 |
| November 8, 2011 | 1.14 |
| November 9, 2011 | 1.11 |
| November 10, 2011 | 1.14 |
| November 11, 2011 | 1.12 |
| November 14, 2011 | 1.1 |
| November 15, 2011 | 1.16 |
| November 16, 2011 | 1.27 |
| November 17, 2011 | 1.19 |
| November 18, 2011 | 1.21 |
| November 21, 2011 | 1.1 |
| November 22, 2011 | 1.16 |
| November 23, 2011 | 1.15 |
| November 25, 2011 | 1.1 |
| November 28, 2011 | 1.14 |
| November 29, 2011 | 1.1 |
| November 30, 2011 | 1.08 |
| December 1, 2011 | 1.06 |
| December 2, 2011 | 1.02 |
| December 5, 2011 | 1.05 |
| December 6, 2011 | 1.11 |
| December 7, 2011 | 1.03 |
| December 8, 2011 | 0.95 |
| December 9, 2011 | 0.89 |
| December 12, 2011 | 0.84 |
| December 13, 2011 | 0.8 |
| December 14, 2011 | 0.82 |
| December 15, 2011 | 0.83 |
| December 16, 2011 | 0.83 |
| December 19, 2011 | 0.66 |
| December 20, 2011 | 0.68 |
| December 21, 2011 | 0.62 |
| December 22, 2011 | 0.63 |
| December 23, 2011 | 0.69 |
| December 27, 2011 | 0.69 |
| December 28, 2011 | 0.66 |
| December 29, 2011 | 0.65 |
| December 30, 2011 | 0.65 |
| January 3, 2012 | 0.65 |
| January 4, 2012 | 0.47 |
| January 5, 2012 | 0.42 |
| January 6, 2012 | 0.37 |
| January 9, 2012 | 0.4 |

| | |
|---|---|
| January 10, 2012 | 0.6 |
| January 11, 2012 | 0.82 |
| January 12, 2012 | 0.67 |
| January 13, 2012 | 0.52 |
| January 17, 2012 | 0.53 |
| January 18, 2012 | 0.55 |
| January 19, 2012 | 0.36 |
| January 23, 2012 | 0.35 |
| January 24, 2012 | 0.36 |
| January 25, 2012 | 0.36 |
| January 26, 2012 | 0.34 |
| January 27, 2012 | 0.32 |
| January 30, 2012 | 0.35 |
| January 31, 2012 | 0.36 |
| February 1, 2012 | 0.39 |
| February 2, 2012 | 0.41 |
| February 3, 2012 | 0.49 |
| February 6, 2012 | 0.53 |
| February 7, 2012 | 0.43 |
| February 8, 2012 | 0.42 |
| February 9, 2012 | 0.41 |
| February 10, 2012 | 0.4 |
| February 13, 2012 | 0.42 |
| February 14, 2012 | 0.42 |
| February 15, 2012 | 0.4 |
| February 16, 2012 | 0.38 |
| February 17, 2012 | 0.38 |
| February 21, 2012 | 0.36 |
| February 22, 2012 | 0.37 |
| February 23, 2012 | 0.35 |
| February 24, 2012 | 0.34 |
| February 27, 2012 | 0.33 |
| February 28, 2012 | 0.35 |
| February 29, 2012 | 0.34 |
| March 1, 2012 | 0.32 |
| March 2, 2012 | 0.32 |
| March 5, 2012 | 0.31 |
| March 6, 2012 | 0.31 |
| March 7, 2012 | 0.3 |
| March 8, 2012 | 0.29 |
| March 9, 2012 | 0.28 |
| March 12, 2012 | 0.28 |
| March 13, 2012 | 0.27 |
| March 14, 2012 | 0.23 |
| March 15, 2012 | 0.31 |
| March 16, 2012 | 0.31 |
| March 19, 2012 | 0.29 |

| | |
|---|---|
| March 20, 2012 | 0.3 |
| March 21, 2012 | 0.31 |
| March 22, 2012 | 0.31 |
| March 23, 2012 | 0.31 |
| March 26, 2012 | 0.32 |
| March 27, 2012 | 0.32 |
| March 28, 2012 | 0.32 |
| March 29, 2012 | 0.32 |
| March 30, 2012 | 0.32 |