UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARK GEDEK, individually and on behalf of all others
similarly situated,

                                    Plaintiff,

                                                            DECISION AND ORDER

                                                            12-CV-6051L

                    v.

ANTONIO M. PEREZ, et al.,

                                    Defendants.

_____

THOMAS W. GREENWOOD, individually and on
behalf of all others similarly situated,

                                    Plaintiff,

                    v.                                       12-CV-6056L

ANTONIO M. PEREZ, et al.,

                                    Defendants.

_____

BARRY BOLGER, individually and on behalf of
all others similarly situated,

                                    Plaintiff,

                    v.                                       12-CV-6067L

ANTONIO M. PEREZ, et al.,

                                    Defendants.

_____

---

JULIUS COLETTA, individually and on behalf of
all others similarly situated,

                Plaintiff,

        v.                            12-CV-6071L

ANTONIO M. PEREZ, et al.,

                Defendants.

---

ANDREW J. MAUER, on behalf of himself, the
Eastman Kodak Employees' Savings and
Investment Plan and a class of persons similarly situated,

                Plaintiff,

        v.                            12-CV-6078L

THE EASTMAN KODAK SAVINGS AND INVESTMENT
PLAN COMMITTEE, et al.,

                Defendants.

---

Plaintiffs DALE TOAL and CLAUDE MATTE,
individually and on behalf of all others similarly situated,

                Plaintiffs,

        v.                            12-CV-6080L

ANTONIO PEREZ, et al.,

                Defendants.

---

ALLEN E. HARTTER, individually and on behalf of all others
similarly situated,

                Plaintiff,

        v.                            12-CV-6146L

ANTONIO PEREZ, et al.,

                Defendants.

---

**INTRODUCTION**

These seven cases, which have been consolidated for all purposes under Rule 42(a) of the Federal Rules of Civil Procedure, have been brought by participants and beneficiaries of the Savings and Investment Plan ("SIP") of Eastman Kodak Company ("Kodak") and the Eastman Kodak Stock Ownership Plan ("ESOP") (collectively "the Plans"), against the administrators and fiduciaries of the Plans.

Plaintiffs allege that the Plans are subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and that defendants have violated ERISA by failing to prudently manage the Plans' assets. Plaintiffs allege that defendants have done so principally by continuing to invest those assets in Kodak stock even after it became obvious that Kodak was headed for bankruptcy and that its stock was going to plummet in value.

The actions have been brought as a Rule 23 class action, with a proposed class consisting of all participants in the Plans for whose individual accounts the Plans invested primarily in Kodak stock at any time from January 1, 2010 through and including the date of liquidation of the Plans ("the class period"). Consolidated Complaint (Dkt. #48) ¶ 41.[1]

Two sets of defendants have appeared in this action. The "Kodak defendants" include the Kodak Savings and Investment Plan Committee ("SIPCO") and the Kodak Stock Ownership Plan Committee ("SOPCO"), which are the plan administrators for the SIP and ESOP, respectively, as well as various individuals who held positions on those committees during the class period. The other defendant, BNY Mellon Financial Corporation ("Mellon") is the successor in interest to Boston Safe Deposit and Trust ("Boston"), which was the trustee of the SIP during the class period.[2]

---

[1] The complaint does not appear to allege any specific end date for the class period. It does allege that Kodak announced in February 2012 that it was discontinuing the ESOP. Dkt. #48 ¶ 201.

[2] The complaint also names as a defendant T. Rowe Price Trust Company ("T. Rowe Price"), as the trustee of ESOP, Dkt. #48 ¶ 39, but T. Rowe Price has never been served or appeared in this action.

Both the Kodak defendants and Mellon have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, the motions are denied.

## BACKGROUND

The facts as alleged in the complaint, the truth of which is accepted for purposes of the motions to dismiss, are as follows.  At all times relevant to the complaint, the Plans were employee benefit plans within the meaning of ERISA; *see* 29 U.S.C. §§ 1002(2)(A), 1002(3).

Both the SIP and ESOP are defined-contribution plans under ERISA.  Each participant has an individual account, and the participant's benefits are based on the amount that the participant contributes to his or her account, as increased or diminished by the performance of the investments selected for that account.[3]  Thus, both the SIP and ESOP qualify as "eligible individual account plans" ("EIAPs") under 29 U.S.C. § 1107(d)(3)(A).[4]

The ESOP is funded entirely by Kodak.  The plan document states that "[n]o participant shall be required or permitted to make contributions to the Plan or Trust."  ESOP Doc. (Dkt. #74-2)

---

[3]Under ERISA, the term "defined contribution plan"

means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.

29 U.S.C. § 1002(34).

[4]The term "eligible individual account plan" means

an individual account plan which is (i) a profit-sharing, stock bonus, thrift, or savings plan; (ii) an employee stock ownership plan; or (iii) a money purchase plan which was in existence on September 2, 1974, and which on such date invested primarily in qualifying employer securities. Such term excludes an individual retirement account or annuity described in section 408 of Title 26.

29 U.S.C. § 1107(d)(3)(A).

- 4 -

§ 5.01(d).  Virtually all Kodak employees are eligible to participate in the ESOP.  *Id.* § 4.01.  The ESOP is administered by SOPCO, which consists of Kodak's chief financial officer ("CFO"), general counsel, director of human resources, treasurer, and director of "Worldwide Total Compensation."  *Id.* § 2.36.

> The ESOP plan document states that the purpose of the ESOP is
>
> to enable eligible Employees of Eastman Kodak Company and certain Affiliated Companies to share in the future of the Company, to provide Employees with an opportunity to accumulate capital for their future economic security, and to enable Employees to acquire stock ownership interests in Eastman Kodak Company.  Consequently, Company contributions to the Plan will be invested primarily in Employer Securities.

*Id.* § 1.02.  The document goes on to state that "[t]he Plan is also designed to provide a method of corporate finance to the Company ... ."  *Id.*

Once a participant has reached age 55 and has completed at least ten years of service, the participant may choose to take some of his account in cash.  *Id.* §§ 9.01, 9.02.  While the participant could, on his own, reinvest that cash elsewhere, the participant cannot reallocate his ESOP account itself into a different fund or into different investments.  Rather, the ESOP document states that "[t]he Trust Fund [*i.e.*, the plan assets] will be invested primarily in Employer Securities," that "[a]ll investments ... will be made by the Trustee only upon the direction of SOPCO," and that "SOPCO may direct that the entire Trust Fund assets be invested and held in Employer Securities."  Kodak's Motion (Dkt. #56) Ex. B, § 6.01.  The trustee does have some limited discretion, however, to "invest the Trust Fund in savings accounts, certificates of deposit, high-grade short-term securities, equity stock, bonds or other investments desirable for the Trust," and the plan document further states that "the Trust Fund may be held in cash."  *Id.*

The SIP is administered by SIPCO, which consists of the same individuals as SOPCO.  As stated, during the class period, Mellon's predecessor in interest, Boston, was the SIP trustee.

The SIP is partially funded by the participants themselves.  The SIP plan document states that one purpose of the SIP is to give Kodak employees an opportunity to defer some of their pre-tax

wages.  Dkt. #56-2 Ex. A § 1.01.  At least some participants are also eligible to receive matching funds from Kodak on such deferred amounts.  *See id.* and § 5.02.

The plan document states that the SIP is also intended to "offer Participants the opportunity to invest in Employer Securities," *i.e.*, shares of Kodak common stock.  *Id.* §§ 1.01, 2.16.  It further states that "Participants may, but need not, invest some or all of their Plan Account balances in the Kodak Stock Fund."  *Id.*  The Kodak Stock Fund is "an employee stock ownership plan component" of the SIP  that "consists primarily of Employer Securities ... ."  *Id.* §§ 1.01, 7.01(b)(1).  The SIP document expressly provides that "the Kodak Stock Fund must be made available for investment," but that "no Participant or beneficiary is required to invest in the Kodak Stock Fund," and  that "a range of [other] investment alternatives" must be maintained at all times.  *Id.* § 7.01(c) and (b)(2).

The factual allegations of the consolidated complaint are lengthy, but the gist of plaintiffs' claims is fairly straightforward.  According to plaintiffs, throughout the class period, defendants knew or should have known that Kodak's financial condition was poor, that its long-term prospects were not good, and that as a result, its stock price was going to continue to decline, which it in fact did.  By the end of the class period, Kodak stock was trading for a small fraction of its earlier levels.  Eventually, on January 19, 2012, Kodak filed for bankruptcy protection under Chapter 11.  In short, then, plaintiffs allege that it was imprudent of defendants to continue to permit the Plans to offer Kodak funds to participants, or to continue to purchase or hold Kodak stock.  As a result of that alleged imprudence, the Plans, and the participants, suffered losses.

Count I of the complaint alleges that defendants (other than T. Rowe Price and SOPCO) failed to prudentially manage the SIP and its assets, in violation of their fiduciary duties under ERISA, and that defendants are therefore liable to restore the losses to the Plans caused by those breaches, pursuant to 29 U.S.C. §§ 1109, 1132(a)(2), and 1132(a)(3).  Count II alleges a similar claim as to the ESOP, against all defendants other than SIPCO, Boston and Mellon.  Count III asserts a claim of co-fiduciary liability against all defendants.  Plaintiffs seek a monetary payment to the Plans to

make good the losses they suffered due to defendants' breaches, unspecified injunctive relief, and attorney's fees.

## DISCUSSION

### I. Kodak Defendants

As the Second Circuit has stated, "ERISA's central purpose is to protect beneficiaries of employee benefits plans.  In pursuit of this goal, ERISA imposes a 'prudent man standard of care' on fiduciaries entrusted with the administration of these plans." *St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 715 (2d Cir. 2013) (additional internal quote omitted).

That standard is set forth in 29 U.S.C. § 1104.  That section provides, *inter alia*, that in general, "a fiduciary shall discharge his duties ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[, including] by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so ... ."  29 U.S.C. § 1104(a)(1).  That section goes on to provide, however, that "in the case of an eligible individual account plan ..., the diversification requirement ... and the prudence requirement (only to the extent that it requires diversification)  ... is [sic] not violated by acquisition or holding of qualifying employer real property or qualifying employer securities ... ."  *Id.*

The prudent-man standard, and the general diversification requirements, have given rise in recent years to a spate of cases alleging imprudence based on plans' investments in employer stock; *see White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 981 (7th Cir. 2013) ("This case is one in a series alleging that fiduciaries of employee retirement savings plans acted imprudently by allowing employees to choose to buy and hold an employer's stock while it declined significantly in price") (citing cases).

Such cases have met with mixed results, however.  That is not surprising, since the standard of proof is high.  It is not enough to show that a fiduciary's investment decisions turned out badly; to prevail, a plaintiff must show that those decisions were objectively imprudent at the time they were made.  *See St. Vincent*, 712 F.3d at 716 ("ERISA's fiduciary duty of care requires prudence, not prescience") (internal quote and alteration omitted); *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011) ("The test of prudence is ... one of conduct rather than results"), *cert. denied*, 133 S.Ct. 475 (2012).

With respect to investments in employer stock, several courts of appeals, including the Second Circuit, had until recently adopted what has come to be known as "the *Moench* presumption," which is a presumption of compliance with ERISA when a fiduciary invests assets in the employer's stock. *See Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995); *Citigroup*, 662 F.3d at 138 (adopting *Moench* presumption).   Under the *Moench* presumption, "a fiduciary's decision to invest an employer's retirement plan in the employer's own stock–or to offer plan participants the option to so invest–is a presumptively prudent decision in compliance with ERISA, and thus the decision to invest in the employer's stock is reviewed only for an abuse of discretion."  *Taveras v. UBS AG*, 708 F.3d 436, 443 (2d Cir. 2013).  The Second Circuit has also held that "a fiduciary's failure to divest from company stock is less likely to constitute an abuse of discretion if the plan's terms require–rather than merely permit–investment in company stock."  *Citigroup*, 662 F.3d at 138.

Earlier this year, however, the United States Supreme Court changed the legal landscape.  In *Fifth Third Bancorp v. Dudenhoeffer*, ___ U.S. ___, 134 S.Ct. 2459 (2014), the Supreme Court rejected the *Moench* presumption, and held that "the law does not create a special presumption favoring ESOP fiduciaries.  Rather, the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings."  *Id.* at 2467.  In other words, whereas ERISA places a general duty on plan fiduciaries to "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so," 29 U.S.C. § 1104(a)(1)(C), "an ESOP fiduciary is

- 8 -

exempt from § 1104(a)(1)(C)'s diversification requirement and also from § 1104(a)(1)(B)'s duty of prudence, but '*only to the extent that it requires diversification*.'" *Id.* (quoting 29 U.S.C. § 1104(a)(2)) (alteration in original).   Otherwise, the general duty of prudence applies.

The Court in *Dudenhoeffer* went on to "consider more fully one important mechanism for weeding out meritless claims, the motion to dismiss for failure to state a claim." *Id.* at 2471. Applying the now-familiar "plausibility" standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Court held that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." 134 S.Ct. at 2471. "In other words, a fiduciary usually 'is not imprudent to assume that a major stock market ... provides the best estimate of the value of the stocks traded on it that is available to him.'" *Id.* (quoting *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 408 (7th Cir. 2006)).

The Supreme Court did not state what might constitute "a special circumstance affecting the reliability of the market price ... that would make reliance on the market's valuation imprudent." *Id.* at 2472.   The Court simply held that because "[t]he Court of Appeals did not point to any special circumstance rendering reliance on the market price imprudent[, t]he court's decision to deny dismissal ... appears to have been based on an erroneous understanding of the prudence of relying on market prices" as a measure of a stock's "true" value. *Id.*[5]   Nor did the Court address the situation presented by the plaintiffs' factual allegations here, *i.e.*, allegations that a company's downward path was so obvious and unstoppable that, regardless of whether the market was "correctly" valuing the stock, the fiduciaries should have halted or disallowed further investment in it.

_____

[5]The Court also held that to the extent that the lower court's reversal of the district court's dismissal of the complaint was based on the theory that the duty of prudence required the fiduciary to sell the ESOP's holdings of employer stock, based on inside information, that reversal was erroneous, since "ERISA's duty of prudence cannot require an ESOP fiduciary to perform an action–such as divesting the fund's holdings of the employer's stock on the basis of inside information–that would violate the securities laws." 134 S.Ct. at 2472.   The instant case does not involve any allegations concerning inside information, however.

In assessing the effect of *Dudenhoeffer* on the case at bar, it is important to consider that the facts there were considerably different from those here. In *Dudenhoeffer*, the allegation was that the fiduciaries knew or should have known that the company's stock was overvalued. The plaintiffs there alleged that publicly available information had provided ample warning signs that subprime lending, which formed a large part of the company's business, was excessively risky, because the housing market was headed for collapse and many subprime borrowers would soon become unable to pay off their mortgages.

In contrast, plaintiffs in the case at bar allege that

[d]efendants knew or should have known that Kodak stock was an imprudent investment for the Plans because the Company: (a) depended on a dying technology and the sale of antiquated products no longer sought by the consumer; (b) was unable to bring new products to the market to counter the rapidly declining profits from the sales of its antiquated products; (c) was unable to generate sufficient cash-flow from its short term business strategy of initiating lawsuits, which would presumably garner settlements, to maintain the Company's cash flow; (d) was suffering from a severe lack of liquidity; and (3) its stock price collapsed because of the above dire circumstances.

Amended Complaint (Dkt. #48) ¶ 100.

Plaintiffs do not allege, then, that Kodak stock was overvalued, and that the metaphorical bubble was about to burst. Rather, they allege that Kodak stock was on a steady decline due to fundamental problems with the company itself. In other words, plaintiffs allege that the price of Kodak stock, far from being inflated, accurately tracked the company's steadily worsening fortunes, which had no reasonable chance of improving. Plaintiffs further allege that at some point, defendants should have stepped in and, notwithstanding the directives in the plan documents, ceased to maintain the Funds' investments in Kodak stock.

Given these allegations, the fact that the market, on any given date, may have provided the best available estimate of the "value" of Kodak stock, does not necessarily reveal much about whether defendants acted prudently in continuing to invest in that stock. *See In re Ceinture*, 516 F.3d 1095, 1102 (9th Cir. 2008) (noting that a "myriad of circumstances" surrounding investments in company stock could support a violation of the prudence requirement). The question is not whether defendants paid an artificially inflated price for Kodak stock, but whether they should have realized that Kodak

stock represented such a poor long-term investment that they should have ceased to purchase, hold, or offer Kodak stock to plan participants.

Given its very different fact pattern, *Dudenhoeffer* provides little explicit guidance on this question.  What it does make clear, though, is that (1) there is no presumption that a fiduciary acted prudently, regardless of the type of fund at issue; and (2) as stated in ERISA, an ESOP fiduciary is exempt from § 1104(a)(1)(B)'s duty of prudence, but only to the extent that the statute requires diversification.  In all other respects, then, an ESOP fiduciary's duty of prudence is no different or less stringent than that of any other ERISA fiduciary.

With respect to the ESOP, then, the initial decision to invest primarily, if not entirely, in Kodak stock is virtually unassailable, and indeed is not challenged here.  For that matter, diversification, in the sense of assembling a portfolio of funds so as to minimize risk, was never truly an option for the administrator.  The ESOP document expressly states that "[t]he Trust Fund will be invested primarily in Employer Securities ... ."  As *Dudenhoeffer* makes clear, the administrator cannot be deemed imprudent merely for putting most or all of the plan's eggs in the Kodak basket, at least at the outset.  Plaintiffs do not suggest otherwise.

That does not answer the question, however, whether at some point Kodak stock became such an obviously poor investment, not just in hindsight but prospectively, that continued investment in Kodak stock was rendered objectively imprudent.  At such a point, the issue would no longer have been one of diversification, but of whether the plan should continue to invest in Kodak stock at all.  That is what plaintiffs allege happened here. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1276-77 (11th Cir. 2012) (since plaintiffs' claim was that, even putting aside diversification concerns, employer's stock was an imprudent investment and for that reason the defendants had a duty to divest the plan of the stock and stop purchasing it, plaintiffs' claim did not fall within the § 1104(a)(2) exemption for failure to diversify).

While the stated purposes of the ESOP include enabling Kodak employees "to acquire stock ownership" in Kodak, and "to provide a method of corporate finance to the Company,"  ESOP Plan

§ 1.02, those could not be the fiduciaries' primary concerns, either by law or by the terms of the governing document.  The ESOP document provides at § 5.02 that "[a]ll contributions made pursuant to the Plan shall be held by the Trustee ... for the exclusive benefit of those Employees who are Participants under the Plan" and their beneficiaries.  It further states (in language tracking ERISA, 29 U.S.C. § 1104(a)(1)(B)) that,

> [n]otwithstanding any other provision of this Plan, and the Trust Agreement, the Trustee, SOPCO and the Company shall exercise their powers and discharge their duties under this Plan and the Trust Agreement for the exclusive purpose of providing benefits to Employees and their Beneficiaries, and shall act with the care, skill, prudence and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

ESOP Doc. § 15.09.

Furthermore, "ERISA's primary purpose is to protect beneficiaries of employee retirement plans."  *Kopp v. Klein*, 722 F.3d 327, 334 (5th Cir. 2013) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987)).  Whatever the purposes of the ESOP were stated to be, they had to yield to that paramount purpose.  *See also Kopp*, 722 F.3d at 334 (ERISA's "duty of loyalty requires fiduciaries to act 'solely in the interest' of plan participants and beneficiaries") (quoting 29 U.S.C. § 1104(a)(1)).

In addition, even before the Supreme Court's decision in *Dudenhoeffer*, rejecting the *Moench* presumption, plaintiffs could state a facially valid claim against an ESOP fiduciary based on allegations that publicly available information showed that the company in question was in "dire circumstances," or on the brink of collapse.  *See Citigroup*, 662 F.3d at 140; *see also Quan v. Computer Sciences Corp.*, 623 F.3d 870, 882 (9th Cir. 2010) ("To overcome the presumption of prudent investment, plaintiffs must ... make allegations that clearly implicate the company's viability as an ongoing concern or show a precipitous decline in the employer's stock combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement") (internal quotes and alterations omitted).  Put another way, a plaintiff could attempt to rebut the presumption through evidence that the challenged investments "would defeat or substantially impair the accomplishment of the purposes of the trust," *i.e.*, that "the ERISA fiduciary could not have believed

- 12 -

reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate." *Kopp*, 722 F.3d at 336 (quoting *Moench*, 62 F.3d at 571) (additional citations omitted).

Even were the *Moench* presumption still controlling in this circuit, the allegations in the complaint might well be sufficient to withstand a motion to dismiss. *A fortiori*, the complaint is sufficient, given the Supreme Court's rejection of that presumption. The complaint recites a history not just of Kodak's inexorable slide toward bankruptcy, but of publicly available information contemporaneously documenting that slide, step by painful step, and accurately forecasting Kodak's bleak future. Given those allegations, the Court cannot rule, at the pleading stage, that plaintiffs have failed to make out a claim that defendants should either have ceased offering the ESOP as an investment option, sooner than they did, or stopped investing the plan's assets in Kodak stock.

In regard to the publicly available information that allegedly made clear how unwise it would be to maintain long-term investments in Kodak, the complaint alleges that during the class period, Kodak stock's rating, as assessed by independent entities such as Moody's, went from "highly speculative" to "extremely speculative" to "in default with little prospect for recovery." Dkt. #48 ¶ 134. News articles likewise documented Kodak's declining fortunes, sometimes using photography-inspired metaphors, such as, "Eastman Kodak Co. is struggling to stay in the picture," *id.* ¶ 164. Other metaphors were less photographically inspired, but no less blunt: Kodak was "selling the family silver to keep the lights on," *id.* ¶ 165 (referring to Kodak's sale of intellectual property to raise cash); Kodak was "jumping from one buggy whip business to another," *id.* ¶ 187 (referring to Kodak's belated entry into the inkjet printer business, just as that business was becoming antiquated); and Kodak was "putting the last logs on the fire" (referring to Kodak's efforts to pledge assets for new financing), *id.* ¶ 191.

Other news reports were less imaginatively phrased, but equally clear: a July 2010 Bloomberg article titled, "Kodak's Turnaround Story Getting Old," was skeptical of Kodak's repeated, but unfulfilled predictions of future profitability, *id.* ¶ 142; in January 2011, a Deutsche Bank analyst

reported, under the headline, "Fundamentals deteriorate further," that Kodak's "core business [was] challenged," and that Kodak was burning through cash at an alarming rate. *Id.* ¶ 151.

Eventually, analysts began to predict trouble for Kodak in terms that were more specific, both as to the nature of the impending harm and its imminence. In or about August 2011, an analyst with KDP Investment Advisors stated that Kodak "could run out of cash in early 2012." *Id.* ¶ 166. In September, Reuters reported that KDP predicted that Kodak "could file for bankruptcy 'between now and 2012.'" *Id.* ¶ 169. At about the same time, Motley Fool opined that Kodak had "been living paycheck to paycheck for a very long time," and that "its paychecks and patent-trolling days are numbered." *Id.* ¶ 170. Fitch Ratings likewise stated that "default of some kind appears probable." *Id.* ¶ 173.

The complaint alleges additional facts concerning similar reports and predictions, but they need not be recited here. The point is that, according to plaintiffs, over the course of the class period it became clear to all but the willfully blind that Kodak was headed for bankruptcy, and that its stock price had no reasonable hope of turning around. The company announced on January 19, 2012 that it and its U.S. subsidiaries had filed voluntary petitions under Chapter 11 in bankruptcy court, and in the following month Kodak announced that it was discontinuing the ESOP. According to the complaint, at no point prior to that did defendants take action to preserve or protect ESOP participants' investments.

Given these allegations, and particularly without the *Moench* presumption of prudence, I find that plaintiffs have stated a facially valid claim against the Kodak defendants, with regard to the ESOP. Accepting the truth of plaintiffs' allegations, a reasonable factfinder could conclude that at some point during the class period, the ESOP fiduciary should have stepped in and, rather than blindly following the plan directive to invest primarily in Kodak stock, shifted the plan's assets into more stable investments, as permitted by the plan document, and as consistent with the plan's and ERISA's purposes. *See Peabody v. Davis*, 636 F.3d 368, 375 (7th Cir. 2011) (upholding district court's finding "that a prudent investor would not have remained so heavily invested in [the company]'s stock as the

company's fortunes declined precipitously over a five-year period for reasons that foretold further and continuing declines").

In reaching this holding, the Court finds support in Circuit Judge Chester J. Straub's dissent in *Citigroup*, in which he to a great extent anticipated the Supreme Court's later rejection of the *Moench* presumption. Stating that he "[fou]nd the underpinnings of the *Moench* presumption to be fundamentally unsound," 662 F.3d at 147, Judge Straub stated that he would have subjected the defendants' decisions at issue in that case to plenary review. *Id.* at 154.

Judge Straub would further have held, under that plenary standard, that the plaintiffs had stated a claim against the plan administrator for breach of the duty of prudence, based on the plaintiffs' allegations that, in Judge Straub's view, "render[ed] it plausible that [the defendants] knew about Citigroup's massive subprime [mortgage] exposure," which rendered continued investment in Citigroup imprudent. *Id.* at 155. Stating that the plaintiffs' allegations, if true, would support a finding that the defendants acted imprudently, Judge Straub added, "That, however, is a fact-intensive inquiry ill-suited for resolution at the pleading stage." He would therefore have vacated the district court's dismissal of the complaint and remanded for further proceedings. *Id.* at 167.[6]

Again, in contrast to *Citigroup*, this case does not involve allegations that Kodak appeared on the surface to be a healthy company, and that its relatively high stock price masked some deep-seated problems that were about to be exposed. If anything, the allegations here paint an even more damning picture, of a company that was widely viewed among knowledgeable investors and analysts as headed toward default, bankruptcy, or worse, yet defendants chose to remain invested in Kodak stock. Kodak did not appear to be a healthy company, on the surface or otherwise.

In short, plaintiffs do not contend that the price of Kodak stock was headed for a sudden, precipitous decline that defendants should have seen coming. They allege that Kodak stock was on

---

[6]While its adoption of the *Moench* presumption has been overturned by the Supreme Court, I also note that in *Pfeil v. State Street Bank and Trust Co.*, 671 F.3d 585 (6th Cir.), *cert. denied*, 133 S.Ct. 758 (2012), the Sixth Circuit held that lower courts should generally "consider the presumption in the context of a fuller evidentiary record rather than just the pleadings and their exhibits." *Id.* at 596.

a long, steady, virtually unstoppable downhill slide, and that no prescience or inside knowledge was needed to realize that it would continue to do so.  That, in my view, states a claim under ERISA, as to the ESOP.  *Cf. Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098 (9th Cir. 2004) (applying *Moench* presumption and affirming district court's dismissal of plaintiff's prudence claim, where published accounts of company's financial data showed that company "was, in fact, profitable and paying substantial dividends throughout" the relevant period).

As to the SIP, its governing document provides that the SIP must include, as one investment option, the Kodak Stock Fund, which "consists primarily of Employer Securities," and that the ESOP trust fund must likewise "be invested primarily in Employer Securities ... ."  Participants were provided with a range of options, and were not required to invest in the Kodak Stock Fund.

At the same time, however, the trustee was not required to invest the Kodak Stock Fund entirely in Kodak stock; the SIP provided only that the trustee would maintain "an investment option that consists primarily of Employer Securities known as the Kodak Stock Fund ... ."  SIP § 7.01(b)(1).  As the Court of Appeals for the Eleventh Circuit noted in *Lanfear*, 679 F.3d at 1277, the plan thus "did provide the defendants with some discretion.  Although it required [an employer] Stock Fund as an investment option, it did not require that fund to be invested exclusively in [employer] stock."  So long as the fund remained primarily invested in employer stock, "the defendants had discretion to sell [employer] stock or to stop investing in it.  Their exercise of that discretion, or failure to exercise it, is subject to judicial review to determine if they violated their duty of prudence."[7]

---

[7]Although the court in *Lanfear* went on to affirm the district court's dismissal of the plaintiffs' complaint, it did so based in large part on the now-inapplicable *Moench* presumption. *See* 679 F.3d at 1280-81.

I also note that while some courts have "interpreted the phrase 'invested primarily in' as a grant of limited discretion to forgo investment in company stock entirely," others have construed it as "requir[ing] fiduciaries to invest most of the fund's assets in company stock, while granting them discretion to determine precisely where within a limited range the allotment should fall." *Gearren v. McGraw-Hill Companies*, 690 F.Supp.2d 254, 264 (S.D.N.Y. 2010) (footnote and citations omitted), *aff'd*, 660 F.3d 605 (2d Cir. 2011), *cert. denied*, 133 S.Ct. 476 (2012).  On

(continued...)

True, SIP participants were free to decide in which funds they wished to invest. The Kodak Stock Fund was only one of a range of investment alternatives available to participants, who were also free to transfer the amounts in their individual accounts from one fund to another, at virtually any time.

"The availability of other options does not necessarily excuse offering one imprudent investment," however. *White*, 714 F.3d at 996. While the availability of other investment options is a relevant factor for the court to consider, "a fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds, which individuals may *or may not* elect to combine with a company stock fund, could theoretically, in combination, create a prudent portfolio." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007); *accord Lanfear*, 679 F.3d at 1277. Rather, "a fiduciary must initially determine, and continue to monitor, the prudence of *each* investment option available to plan participants." *DeFelice*, 497 F.3d at 423. *See also Gearren v. McGraw-Hill Companies*, 690 F.Supp.2d 254, 265 (S.D.N.Y. 2010) ("the language of the plan agreement cannot extinguish fiduciary status altogether, since a named fiduciary retains the ability to ignore the terms of the plan, at least under certain circumstances").

I recognize that ERISA does not require defendants "to act as personal investment advisers to plan participants ... ." *White*, 714 F.3d at 994. In addition, as courts have long noted, fiduciaries of these types of plans are often pulled in two directions, since they are charged both under ERISA with protecting participants' assets and under the plan (as permitted by § 1104(a)(2)) with investing in employer stock. *See*, *e.g.*, *Kopp*, 722 F.3d at 334. Fiduciaries may also be put in a precarious position in the sense that, if they dump a company's stock just as it bottoms out, they could be exposed to liability if it later rebounds, with the result that they deprived the participants of the opportunity to profit from that rebound. *See White*, 714 F.3d at 987.

---

[7](...continued)
this motion to dismiss, however, the Court need not choose between those two alternatives, since even under the latter, more deferential standard, I find that plaintiffs have stated a facially valid claim.

Nevertheless, there are countervailing considerations as well. While it is true that fiduciaries are generally obligated to follow plan documents, that is so only insofar as the terms of those documents are consistent with ERISA. *White*, 714 F.3d at 997 (citing 29 U.S.C. § 1104(a)(1)(D)). The requirements of the statute control.

In addition, notwithstanding the general preference for investments in employer stock, the defendants here were required to act with care, skill, prudence and diligence, for the benefit of the plan participants. *Kopp*, 722 F.3d at 334. That is particularly so considering the very real possibility that "many employees will not understand the riskiness of an employer stock fund." *White*, 714 F.3d at 993 (citing research showing that most employees do not appreciate the risks associated with undiversified employer stock).

It is also worth noting that *Moench* itself did not impose an insuperable burden on plaintiffs. The *Moench* presumption did not save the defendants there. In fact (as summarized by the Fifth Circuit), "*Moench* concluded it might have been imprudent for the fiduciaries to continue investing in company stock that steadily lost ninety-eight percent of its value over two years, falling from $18.25 per share to $0.25 per share. It was also relevant that the fiduciaries were aware of the company's impending collapse, and the employer ultimately filed for Chapter 11 bankruptcy protection." *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 255 (5th Cir. 2008) (citing *Moench*, 62 F.3d at 557). The court in *Moench* therefore vacated the district court's grant of summary judgment for the plan committee and remanded for further proceedings. *Moench*, 62 F.3d at 572.

Defendants are correct that plaintiffs have not identified any specific date during the class period on which it became imprudent to continue holding Kodak stock. That alone does not defeat plaintiffs' claim, however. That plaintiffs have not pinpointed some moment at which defendants' actions went from prudent to imprudent does not mean that they have not stated a facially valid claim; all it means is that these are issues that remain for discovery and later resolution, either at trial or on a motion for summary judgment. *Cf. Beesley v. International Paper Corp.*, No. 06-703, 2009 WL 260782, at *3 (S.D.Ill. Feb. 4, 2009) (denying defendants' motion for more definite statement based

- 18 -

on their contention that plaintiffs had failed to allege specific dates on which plan's investment options became imprudent, and stating that defendants could obtain that information through discovery). To hold otherwise would be akin to saying that a sea captain could not be found negligent for not issuing an abandon-ship order, merely because the ship sank slowly rather than suddenly.

The Court must also remain cognizant of the fact that this case is only at the pleading stage. In the aftermath of *Dudenhoeffer*, plaintiffs need no longer plead facts to overcome the *Moench* presumption. The question is whether, assuming the truth of plaintiffs' allegations, they have stated a plausible claim that defendants violated their duty to act prudently. I conclude that they have. *Cf. Pfeil v. State Street Bank and Trust Co.*, 671 F.3d 585 (6th Cir. 2012) (adopting *Moench* presumption, pre-*Dudenhoeffer*, but holding that "the better course is to permit the lower courts to consider the presumption in the context of a fuller evidentiary record rather than just the pleadings and their exhibits"). *See also Harris v. Amgen, Inc.*, 770 F.3d 865, 882 (9th Cir. 2014) (concluding, post-*Dudenhoeffer*, that plaintiffs had sufficiently alleged that defendants violated the duty of loyalty and care they owed as fiduciaries under ERISA, but emphasizing that a "determination whether defendants have actually violated their fiduciary duties requires fact-based determinations, such as the likely effect of the alternative actions available to defendants, to be made by the district court on remand, with the assistance of expert opinion as appropriate").

## II. BNY Mellon

According to the complaint, Mellon is the designated trustee of the SIP. Dkt. #48 ¶ 38. Under the SIP plan document, "the Trustee is responsible for the management and control of the Plan assets to the extent provided in the Trust." Dkt. #74-1 at 33 § 3.12. That document further states that "[t]he Trustee will maintain within the Trust" the Kodak Stock Fund, as well as "a range of investment alternatives selected by SIPCO ... ." *Id.* at 56 § 7.01(a).

Further details of the relationship between Kodak and Mellon are set forth in both the SIP document and the original trust agreement between Kodak and Mellon's predecessor, Boston (Dkt.

#55-4).  The trust agreement gives certain specified powers and duties to the trustee, and provides

that the trustee is authorized to "[g]enerally take all actions, whether or not expressly authorized,

which the Trustee may deem necessary or desirable for the fulfillment of its duties hereunder."  Dkt.

#55-4 at 9 § 3.01(p).

The SIP document also assigns "certain specified powers, duties, responsibilities and

obligations" to the Director of Human Resources, SIPCO, and the Trustee ... ."  The document states

that each of those entities shall "be responsible solely for the proper exercise of its own functions ...

."  Dkt. #74-1 at 33 § 3.12.  The document states that

> [g]enerally, the Director, Human Resources will be responsible for amending and terminating
> the Plan and Trust.  SIPCO is responsible for appointing and removing the Trustee, selecting
> monitoring and administering investment options (subject to the requirement that the Kodak
> Stock Fund be an available investment option), and administering the Plain as described
> herein; and the Trustee is responsible for the management and control of the Plan assets to
> the extent provided in the Trust.

*Id.*

In support of its motion, Mellon contends that it is a "directed trustee," meaning that it

operated at the direction of SIPCO.  As such, Mellon argues that it is essentially absolved of all

liability, because it exercised no fiduciary duties with respect to the alleged wrongs here.  It simply

did what it was directed to do.  In response, plaintiffs contend that they have alleged enough facts to

create an issue of fact in that regard.

Certain principles govern the Court's analysis.  The first relates to the general role of directed

trustees.  "Directed trustees are permitted by ERISA:  if an ERISA plan 'provides that the trustee or

trustees are subject to the direction of a named fiduciary ... who is not a trustee, ... the trustees shall

be subject to proper directions of such fiduciary which are made in accordance with the terms of the

plan and which are not contrary to [ERISA]."  *Summers*, 453 F.3d at 406 (quoting 29 U.S.C.

§ 1103(a)(1)).

Second, whenever the Court considers a claim for breach of fiduciary duty, a threshold

question is whether plaintiffs have sufficiently alleged the exercise of such duties.  It is not enough

merely to allege that the defendant was a fiduciary, in a general sense; plaintiffs must allege that the defendant both exercised and breached a particular fiduciary duty, causing harm to the plaintiffs.

Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i), contemplates "two discrete activities: (1) the exercise of discretionary management or discretionary control over the *plan*; and (2) the exercise of any authority or control over the management or disposition of *plan assets*." *Santomenno v. John Hancock Life Ins. Co.*, 768 F.3d 284, 293 (3d Cir. 2014). As the Third Circuit has explained,

> [b]ecause an entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan, [the court] must ask whether [the entity] is a fiduciary with respect to the particular activity in question. In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011) (internal quotes and citations omitted).

To the extent that a trustee exercises discretionary control over a plan or its assets, then, the trustee can act as a fiduciary, and can be held liable if it breaches its fiduciary duties. Whether a trustee has fiduciary status, or has acted as a fiduciary, is for the most part "a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss." *In re Regions Morgan Keegan ERISA Litig.*, 692 F.Supp.2d 944, 964 (W.D.Tenn. 2010); *see also In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F.Supp.2d 658, 665 (E.D.Tex. 2004) ("It is typically premature to determine a defendant's fiduciary status at a motion to dismiss stage of the proceedings.")

In general, "[d]irected trustees have extremely limited fiduciary duties over a plan's assets." *McCarty v. Holt*, No. 12-3279, 2013 WL 775531, at *5 (D.N.J. Feb. 27, 2013) (citing *Srein v. Frankford Trust Co.*, 323 F.3d 214, 222 (3d Cir. 2003). *See also In re Lehman Bros. Securities and ERISA Litig.*, No. 09 MD 2017, 2012 WL 6021097, at *2 (S.D.N.Y. Dec. 4, 2012) ("the fiduciary duties of a directed trustee are extremely narrow") (internal quote omitted). In short, a directed trustee's "liability is limited to instances in which it fails to follow ... proper directions or it complies

with directions that are improper, or contrary to the Plan or ERISA." *Id.* (quoting *DeFelice v. U.S. Airways, Inc.*, 397 F.Supp.2d 735, 746 (E.D.Va. 2005)).

As in many situations involving such plans, that standard is easier stated than applied. Courts have held, however, that "the duty of prudence of the directed trustee should be limited to what is 'plain,'" in other words, "where the directed trustee knows or should know (in his or her role as trustee) that a fiduciary's direction is imprudent, there is a duty to disobey the direction." *Chesemore v. Alliance Holdings, Inc.*, 770 F.Supp.2d 950, 974 (W.D.Wisc. 2011); *F.W. Webb Co. v. State Street Bank and Trust Co.*, No. 09 Civ. 1241, 2010 WL 3219284, at *13 (S.D.N.Y. Aug. 12, 2010) (directed trustee "had a duty of prudence, which required it to inquire into any investment instruction that it knew or should have known was imprudent, contrary to ERISA, or contrary to the terms of the Plan"); *In re Worldcom ERISA Litig.*, 354 F.Supp.2d 423, 445 (S.D.N.Y.2005) (directed trustee can be held liable for what he knows or "ought to know"). *See also Summers*, 453 F.3d at 407 ("The trustee physically controls the trust assets; knowingly to invest them imprudently or let them remain invested imprudently is irresponsible behavior for a trustee, whose fundamental duty is to take as much care with the trust assets as he would take with his own property"); *Chesemore*, 770 F.Supp.2d 950 (denying motion to dismiss where plaintiffs alleged facts suggesting that plan trustees should have known that direction to purchase employer's stock would be imprudent).

While the Court harbors serious doubts about the claim against Mellon, I will permit the claim to go forward at this time. Though a directed trustee should not be expected to second-guess every direction of a plan administrator, it should disobey instructions that are plainly imprudent. It cannot simply close its eyes and ignore what was there to be seen.

Based on the allegations here, I cannot say as a matter of law that plaintiffs have failed to make out a claim against Mellon under that standard. As explained above in connection with the claim against the Kodak defendants, public information allegedly made it obvious to all but the willfully blind that Kodak was headed toward bankruptcy. Assuming the truth of those allegations, plaintiffs have at least presented a plausible claim that Mellon should at some point have refused to

follow the Kodak defendants' directions to continue investing in Kodak stock, or at least questioned the wisdom of the Kodak defendants' directive to maintain the *status quo* concerning the purchase of company securities. *See Solis v. Webb*, 931 F.Supp.2d 936, 951 (N.D.Cal. 2012) (ruling that complaint presented a valid cause of action against plan trustees, even though they followed fiduciary's direction to purchase plan sponsor's stock, because they knew that carrying out the direction would cause the ESOP to pay more than adequate consideration for the stock in violation of ERISA and the plan document); *In re Sprint Corp. ERISA Litig.*, 388 F.Supp.2d 1207, 1236 (D.Kan. 2004) ("Because plaintiffs have alleged facts which, if proven, could lead a reasonable jury to conclude that [the directed trustee] followed directions that it knew to be contrary to ERISA, Fidelity's motion to dismiss is denied").

### III. Co-Fiduciary Liability

Plaintiffs have asserted a claim for co-fiduciary liability under 29 U.S.C. § 1105(a), which provides that a fiduciary can be held liable for a co-fiduciary's actions if the fiduciary knowingly participates in, tries to conceal, or enables the co-fiduciary's breach, or, knowing of the breach, does not attempt to remedy the breach. The Second Circuit has characterized this provision as providing "that a fiduciary is liable if the fiduciary's failure to exercise reasonable care leads to a co-fiduciary's breach." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2d Cir. 2002).

Both Mellon and the Kodak defendants have moved to dismiss this claim, but generally on the ground that plaintiffs have failed to allege a breach in the first place, or that they have not alleged defendants' knowledge of the breach. For the reasons stated with respect to plaintiffs' other claims, I find those arguments unpersuasive. If Kodak's future was as obviously bleak as plaintiffs allege, then a finder of fact could conclude that both sets of defendants knowingly participated in the breach of each other's duties. Defendants' motions to dismiss this claim are therefore denied. *See Slack v. International Union of Operating Engineers*, No. C-13-5001, 2014 WL 4090383, at *17 (N.D.Cal. Aug. 19, 2014) (finding that plaintiffs had stated claim for co-fiduciary liability based on allegations

that acquiesced to co-fiduciaries' "pressure" to approve investment  and failed to make any due diligence or reasonable investigation into the investment); *Chesemore v. Alliance Holdings, Inc.*, 948 F.Supp.2d 928, 949 (W.D.Wisc. 2013) (finding after bench trial that trustee defendants were liable for allowing ESOP to enter prohibited transaction without adequate investigation of fair market value), *amended on other grounds*, 2013 WL 6989526 (W.D.Wisc. Oct. 16, 2013).

Again, this is not meant to suggest that the Court believes that this claim has merit.  That is not the issue before me on these motions to dismiss.  The only question before me now is whether plaintiffs have stated a facially plausible claim, and, assuming the truth of plaintiffs' allegations, I conclude that they have.

**CONCLUSION**

Defendants' motions to dismiss the complaint (Dkt. #54, #56) are denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 17, 2014.