**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EASTMAN KODAK ERISA LITIGATION | **MASTER FILE NO. 6:12-CV-06051-DGL** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................. iv

I.     INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 1

      A.     Factual Allegations ................................................................................. 1

      B.     Investigation and Commencement of Action ......................................... 3

      C.     Motions to Dismiss, Discovery and Discovery Disputes ....................... 3

      D.     The *Parties'* Mediation & Settlement .................................................... 4

III.     SUMMARY OF THE SETTLEMENT TERMS .................................................. 5

      A.     The Class ................................................................................................. 5

      B.     The Settlement Fund and its Distribution .............................................. 6

      C.     Notice of the *Settlement* to *Settlement Class* Members ......................... 6

      D.     Dismissal and Release of Claims ........................................................... 7

      E.     Plaintiffs' Case Contribution Awards and Attorneys' Fees and Costs ................. 7

IV.     CLASS ACTION SETTLEMENT PROCEDURE .......................................... 8

V.     ARGUMENT ....................................................................................................... 9

      A.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............ 9

      B.     The *Settlement* is Fair, Adequate, and Reasonable .............................. 11

      C.     The *Settlement* is the Product of Informed, Non-Collusive Negotiations and Does Not Present Any Grounds to Question Its Fairness ..................................... 13

i

D.     Application of the *Grinnell* Factors Supports Preliminary Approval .................. 15

     1.     Litigation Through Trial Would be Complex, Costly & Long
(*Grinnell* Factor 1) .................................................................. 15

     2.     The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) .......... 16

     3.     Sufficient Discovery Allows Responsible Case Resolution
(Grinnell Factor 3) .................................................................. 17

     4.     *Plaintiffs* Face Real Risk if the Case Proceeded
(*Grinnell* Factors 4 &5) ........................................................... 18

     5.     Maintaining the Class Through Trial ........................................ 19

     6.     *Defendants'* Ability to Withstand a Greater Judgment
(*Grinnell* Factor 7) .................................................................. 19

     7.     The Settlement Fund is Substantial, Even in Light of the Best Possible
Recovery and the Attendant Risks of Litigation
(Grinnell Factors 8 & 9) ........................................................... 20

VI.     CONDITIONAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS  IS
APPROPRIATE ............................................................................. 21

     A.     The *Settlement Class* is Sufficiently Numerous .................................... 22

     B.     The *Settlement Class* Seeks Resolution of Common Questions ........................... 23

     C.     The Claims of the Proposed *Class Representatives* are Typical of the
*Settlement Class* ..................................................................... 24

     D.     The Proposed *Class Representatives* Have and Will Adequately Represent the
*Settlement Class* ..................................................................... 25

     E.     The Requirements of Rule 23(b)(1) or (b)(2) Are Satisfied ................................ 26

VII.     INTERIM CO-LEAD CLASS COUNSEL SHOULD BE APPOINTED ....................... 28

VIII.   THE COURT SHOULD APPROVE THE NOTICE AND APPOINT A SETTLEMENT
        ADMINISTRATOR ......................................................................................................... 29

IX.     CONCLUSION ................................................................................................................. 30

# TABLE OF AUTHORITES

**Cases**                                                                    **Page(s)**

*In re 2014 RadioShack ERISA Litig.,*
  Master File No. 14-cv-959 (N.D. Tex.) ...............................................................19

*Alpern v. UtiliCorp United, Inc.,*
  84 F.3d 1525 (8th Cir. 1996) .............................................................................24

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)............................................................................................25

*In re American International Group, Inc. Securities Litig.,*
  689 F.3d 229 (2d Cir. 2012)................................................................................22

*In re Austrian & German Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............................................................16, 17

*Banyai v. Mazur,*
  205 F.R.D. 160 (S.D.N.Y. 2002) .......................................................................26

*In re Beacon Assocs. Litig.*
  282 F.R.D. 315 (S.D.N.Y. 2012) .......................................................................26

*In re Broadwing, Inc. ERISA Litig.,*
  252 F.R.D. 369 (S.D. Ohio 2006) ......................................................................27

*Cagan v. Anchor Sav. Bank FSB,*
  No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)............................20

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974)....................................................................... *passim*

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
  100 F.3d 1041 (1st Cir. 1996) ............................................................................10

*Consolidated Rail Corp. v. Town of Hyde Park,*
  47 F.3d 483 (2d Cir. 1995)..................................................................................23

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977) ............................................................................12

*D.S. v. N.Y.C. Dep't of Educ.,*
  255 F.R.D. 59 (E.D.N.Y. 2008) .........................................................................20

*Daniels v. City of New York,*
  198 F.R.D. 409 (S.D.N.Y. 2001) .......................................................................23

*Davis v. J.P. Morgan Chase & Co.*,
  775 F. Supp. 2d 601 (W.D.N.Y. 2011) ...........................................................................9, 10

*Evans v. U.S. Pipe & Foundry Co.*,
  696 F.2d 925 (11th Cir. 1983) ......................................................................................23

*In re EVCI Vehicleer Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................................13

*Fifth Third Bancorp v. Dudenhoeffer*,
  134 S. Ct. 2459 (2014) ...............................................................................................18

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ...............................................................................10, 21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...........................................................................................22

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ...................................................................................................23

*Hernandez v. Anjost Corp.*,
  No. 11-cv-1531, 2013 U.S. Dist. LEXIS 116048 (S.D.N.Y. Aug. 14, 2013) .........................14

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969) ..................................................................................18

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ...........................................................................................9

*Jones v. NovaStar Financial, Inc.*,
  257 F.R.D. 181 (W.D. Mo. 2009) ....................................................................................26

*Baby Neal ex rel. Kanter v. Casey*,
  43 F.3d 48 (3d. Cir. 1994) ............................................................................................22

*Krueger v. Ameriprise Financial, Inc.*,
  304 F.R.D. 559 (D. Minn. 2014) .....................................................................................26

*Langbecker v. Electronic Data Systems Corp.*,
  476 F.3d 299 (5th Cir. 2007) .........................................................................................27

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ........................................................................................12

*Lovaglio v. W &E Hospitality, Inc.*,
  No. 10 Civ. 7351, 2012 U.S Dist. LEXIS 72645 (S.D.N.Y. Mar. 12, 2012) ..........................10

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)..........................................................................23, 24

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................24, 26

*Matamoros v. Starbucks Corp.*,
    699 F.3d 129 (1st Cir. 2012)..............................................................................25

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)...............................................................................9

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) .........................................................................29

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)...........................................................................................29

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) .........................................................................10

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011).........................................................................27

*Newbridge Networks Sec. Litig.*,
    No. 94-1678, 1998 WL 765724 (D.D.C. Oct. 23, 1998) .....................................12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982).............................................................................20

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................18, 19

*Pashchal v. Child Development, Inc.*,
    No. 4:12-CV-0184, 2014 WL 112214 (E.D. Ark. Jan. 10, 2014) .........................26

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) .........................................................................26

*In re Puerto Rican Cabotage Antitrust Litig.*,
    269 F.R.D. 125 (D.P.R. 2010) ......................................................................10, 19

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) .............................................................................13

*Rinehart v. Lehman Bros. Holdings Inc.*,
    No. 15-2229, 2016 WL 1077009 (2d Cir. Mar. 18, 2016)...............................18, 19

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ...............................................................12

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)...........................................................................24

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009)...........................................................................27

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
   157 F. Supp. 2d 561 (E.D. Pa. 2001) .............................................................13

*Tiro v. Pub. House Investments, LLC*,
   No. 11 Civ. 7679, 2013 WL 22545541 (S.D.N.Y. May 22, 2013)...........................9

*In re Train Derailment Near Amite Louisiana*,
   MDL No. 1531, 2006 WL 1561470 (E.D. La. May 24, 2006) .................................20

*Valley Drug Co. v. Geneva Pharm., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ......................................................................25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................9, 15

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)...........................................................................17

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
   No. 11-cv-864, 2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) .............14

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12 Civ. 3693, 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013)......................9, 11

**Statutes**

Employee Retirement Income Security Act ........................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a) ................................................................................ *passim*

Fed. R. Civ. P. 23(b) ................................................................................ *passim*

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................29

Fed. R. Civ. P. 23(e) ...........................................................................8, 21, 30

Fed. R. Civ. P 23(g) .......................................................................................28

FED. R. CIV. P. 23(h) ..................................................................................................................... 7

FED. R. CIV. P. 54(d)(2) ................................................................................................................. 7

# I.      INTRODUCTION

Subject to the *Court's*[1] approval, *Plaintiffs* and *Defendants* have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1000, *et seq.,* ("ERISA") class action for a cash payment of $9,700,000.  Should the *Court* grant final approval, every eligible member of the *Settlement Class*[2] will receive their portion of the net settlement fund according to an agreed-upon plan of allocation.

The proposed settlement satisfies all of the criteria for preliminary approval.  Counsel believe that the *Parties'* *Settlement Agreement* provides an excellent resolution for *Plaintiffs* and the *Settlement Class*.  *Plaintiffs* respectfully request that the *Court*: (a) certify the proposed *Settlement Class* and appoint Izard Nobel, LLP and Connolly Wells & Gray, LLP as Co-Lead Class Counsel; (b) grant preliminary approval of the *Settlement Agreement*, attached to the Declaration of Gerald Wells III (the "Wells Declaration") as Exhibit 1; (c) approve the proposed *Class Notice* set forth in the *Settlement Agreement*; and (d) appoint AB Data  as the *Settlement Administrator*.  *Defendants* do not oppose this motion.

# II.      FACTUAL AND PROCEDURAL BACKGROUND

## A.      FACTUAL ALLEGATIONS

*Plaintiffs* (Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni and Sue Toal), and members of the proposed *Settlement Class* were participants in the Eastman Kodak Employees' Savings and Investment Plan (the "SIP") and/or the Kodak Employee Stock Ownership Plan (the "ESOP") (the SIP and ESOP are collectively referred to

---

[1] All italicized words shall have the same meaning as set forth in the *Parties' Settlement Agreement.*

[2] The settlement class (the "Settlement Class" or the "Class") is defined as "all Persons who, at any time during the Class Period, (a) were participants in or beneficiaries of the Kodak Employee Stock Ownership Plan (the "ESOP"), and/or (b) were participants in or beneficiaries of the Eastman Kodak Savings and Investment Plan (the "SIP"), and whose SIP Plan accounts included investments in the Kodak Stock Fund."

herein as the "*Plans*"), retirement plans sponsored by the Eastman Kodak Company ("Kodak"). The *Plans* were managed by the *Defendants*,[3] who were ERISA fiduciaries of the *Plans*. Defendant SIPCO was the Plan Administrator and named fiduciary of the SIP Plan.  Defendant SOPCO was the Plan Administrator and named fiduciary of the ESOP.  The members of both SIPCO and SOPCO were some of Kodak's highest ranking executives.[4]

Plaintiffs allege that the Defendant-fiduciaries violated ERISA by permitting the *Plans* to offer Kodak stock as an investment option after objective information revealed that Kodak was in extreme financial distress and that Kodak stock was an extremely risky investment that was imprudent for retirement asset investment because: (a) Kodak depended on a dying technology and the sale of antiquated products; (b) it was unable to generate sufficient cash-flow from its short term business strategy of initiating lawsuits that would garner settlements; (c) it was suffering from a severe lack of liquidity; and (d) its bonds – which take priority of stock in bankruptcy – had been downgraded to "junk" status, and its stock price collapsed due to these circumstances.  *See* Wells Declaration at ¶10.  *Plaintiffs* allege that *Defendants* failed to act to protect the *Plans* and their participants from inevitable losses.

Count I (concerning the SIP) and Count II (concerning the ESOP) of the Consolidated Complaint for Breach of ERISA's Fiduciary Duties (Dkt. No. 48) (the "*Complaint*") allege that

---

[3] *Defendants* are the Savings and Investment Plan Committee ("SIPCO"), the Stock Ownership Plan Committee ("SOPCO"), Frank S. Sklarsky ("Sklarsky"), Antoinette P. McCorvey ("McCorvey"), Robert L. Berman ("Berman"), William G. Love ("Love"), Patricia A. Obstarczyk ("Obstarczyk"), Joyce P. Haag ("Haag"), Laura G. Quatela ("Quatela"), Boston Safe Deposit & Trust Company ("Boston Trust"), BNY Mellon Financial Corporation ("BNY").  In addition, T. Rowe Price Trust Company ("T. Rowe Price") served as the trustee for the ESOP.  T. Rowe Price was never served with the *Complaint* and is thus not a party to this *Settlement*.

[4] Kodak's Chief Financial Officer ("CFO"), Defendant Sklarsky, chaired the SIPCO for a portion of the Class Period, and his replacement as CFO, Defendant McCorvey, later served as SIPCO chair. Defendants Berman (Chief Human Resource Officer), Love (Treasurer), Obstarczyk, (Director of Kodak's Global Benefits and Vice President of Human Resources), Haag (General Counsel pre-2011), Quatela (General Counsel for 2011), all served on both the SIPCO and SOPCO during the Class Period. *BNY Mellon Defendants* were the trustees of the SIP.

the *Defendants* who were obligated to prudently and loyally manage the *Plans* violated ERISA Sections 409 and 502, 29 U.S.C. §§ 1109, 1132 when they breached these fiduciary duties. Count III alleges co-fiduciary liability for all *Defendants*.

### B.   INVESTIGATION AND COMMENCEMENT OF ACTION

Before filing this case, *Plaintiffs' Counsel* conducted thorough investigations which included extensive interviews, as well as legal, factual, financial and corporate research on the underlying merits of the claims.   On January 27, 2012, Plaintiff Mark Gedek initiated these proceedings by filing his complaint (Dkt. No. 1) asserting claims against the Defendant fiduciaries, individually, as a representative of the *Plans*, and as a representative of a class of all Plan participants whose accounts invested in Kodak stock funds from January 1, 2010 through the date of Plan liquidation.   Subsequently, eight (8) other individuals who were participants in the *Plans* filed similar complaints in 2012.   On May 10, 2012, the *Court* designated the *Gedek* action as the lead case and consolidated it with the similar cases against the same *Defendants*. (Dkt. No. 39).   The *Court* appointed Izard Nobel, LLP and Faruqi and Faruqi LLP as Interim Co-Lead Counsel on August 29, 2012 (Connolly Wells & Gray, LLP took the place of Faruqi and Faruqi in the leadership structure on April 10, 2015).   On September 14, 2012, *Plaintiffs* filed their *Complaint*.   (Dkt. No. 48).

### C.   MOTIONS TO DISMISS, DISCOVERY AND DISCOVERY DISPUTES

From the start, the parties engaged in highly adversarial litigation.   *Defendants* filed Motions to Dismiss the *Complaint* on October 29, 2012, which, following extensive briefing and oral argument, the *Court* denied on December 27, 2014.   (Dkt. No. 75).   On February 16 and 17, 2015, *Defendants* answered the *Complaint* (Dkt. Nos. 80 and 81), after which discovery commenced in earnest.   Discovery in this case was particularly hard fought and contentious. Both *Plaintiffs* and the *Kodak Defendants* served detailed document requests and

interrogatories.[5]   In addition, the *Kodak Defendants* propounded requests for admissions. Although all *Parties* produced a significant amount of documents during discovery, both *Plaintiffs* and the *Kodak Defendants* objected to the opposing side's discovery requests, resulting in each of these parties filing a motion to compel discovery responses.  *See* Wells Declaration at ¶13.  Oral argument on the *Kodak Defendants'* motion was heard by the *Court* on November 5, 2015 and *Plaintiffs'* motion was fully briefed and scheduled for oral argument before the *Action* was stayed pending mediation between the *Parties*.

Despite these discovery disputes, *Defendants* produced numerous key documents, including information regarding the inner workings of the *Plans* and transactional data regarding the *Plans'* purchases and sales of *Company Stock* during the *Class Period*.  As such, *Plaintiffs* had sufficient information necessary in order to ascertain a comprehensive and thorough understanding of the strengths and weaknesses of their case, as well as develop a comprehensive damages model.  *See* Wells Declaration at ¶¶16-17.

### D.   THE *PARTIES'* MEDIATION & SETTLEMENT

After receiving and analyzing detailed information from *Defendants* concerning the investment performance of all of the SIP Plan investment alternatives, *Plaintiffs* were in a position to discuss possible resolution of the litigation with counsel for *Defendants*.   In December 2015, counsel for *Plaintiffs* and the *Kodak Defendants* met and conferred and agreed to pursue private mediation, and after further discussion agreed to retain David Geronemus of JAMS, a highly experienced mediator.  After an initial conference with the mediator, the parties exchanged detailed mediation statements.  *See* Wells Declaration at ¶18.  In preparation for the mediation, *Plaintiffs' Counsel* also retained Cynthia Jones, CFA, a Vice President of

---

[5] *Plaintiffs* were able to procure certain documents from the *BNY Mellon Defendants* through informal discovery.

Management Planning, Inc., to perform an analysis of class-wide damages, taking into account transactional information on the daily purchases and sales of Kodak stock by the *Plans* as well as the performance of all of the other investment options. *See* Wells Declaration at ¶17.

On February 24, 2016, counsel for *Plaintiffs* and the *Kodak Defendants* participated in a full-day, in-person mediation session in New York City. *See* Wells Declaration at ¶19. After extensive arms' length negotiations, and with the assistance of the mediator, the parties agreed to settle the case. At the conclusion of the mediation, the parties executed a preliminary term sheet. Over the several weeks that followed, the *BNY Mellon Defendants* agreed to participate in the proposed settlement and all *Parties* negotiated modifications to the term sheet, a revised version of which was executed on March 14, 2016. *See* Wells Declaration at ¶20. Then the *Parties* negotiated the terms of the final *Settlement Agreement*, as well as the exhibits attached to the agreement (draft orders and draft class notices). The *Settlement Agreement* was executed by all *Parties* on April 22, 2016.

The Settlement as set forth in the *Parties' Settlement Agreement* offers significant advantages over the continued prosecution of this case. Indeed, the *Settlement Class* will receive significant financial compensation and will avoid the risks inherent in the continued litigation.

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A.   THE CLASS

The *Settlement Agreement* provides that the *Settlement Class* includes all *Persons* who, at any time during the *Class Period*, (a) were participants in or beneficiaries of the ESOP, and/or (b) were participants in or beneficiaries of the SIP, and whose SIP Plan accounts included investments in the Kodak Stock Fund.    Settlement Agreement ¶1.47. Excluded from the Settlement Class are *Defendants*. There are over 21,000 class members, each of whom will be

fully advised of this *Settlement* through the *Class Notice,* which includes direct mail and publication notice.  These forms of notice are attached to the *Settlement Agreement*.

### B.    THE SETTLEMENT FUND AND ITS DISTRIBUTION

The *Settlement Agreement* creates a common fund of $9.7 million ($9,700,000.00).  Settlement Agreement ¶¶ 1.13, 2.5.  This is an all-in Settlement, with a portion of the $9.7 million fund intended to cover the costs of notice and settlement administration, any *Court*-approved service payments to the *Class Representatives*[6]; and *Court*-approved attorneys' fees and costs.  In general terms, net of these costs, the balance of the fund will be allocated to *Settlement Class* members based upon the losses attributable to their holdings of Kodak stock in the ESOP and SIP.  Importantly, *Settlement Class* members do not need to do anything in order to receive their portion of the proceeds of the *Settlement*.  Rather, their portion of the *Settlement* will be based on individual transactional data provided by the *Plans*.

### C.    NOTICE OF THE *SETTLEMENT* TO *SETTLEMENT CLASS* MEMBERS

The *Settlement Agreement* provides the fairest and most practicable procedure for notifying *Settlement Class* members of the terms of and their respective rights and obligations under the *Settlement Agreement* – direct mail or email.  With the assistance of the *Kodak Defendants*, within ten (10) days after the *Court's Preliminary Approval Order*, the *Settlement Administrator* will be provided a list of the names, last known addresses, last known telephone numbers, last known email addresses and social security numbers of all of the *Settlement Class* members for the purpose of providing notice of the proposed settlement.  Settlement Agreement ¶2.1.4.  Within twenty (20) days after the *Court's Preliminary Approval Order*, the *Settlement Administrator* will mail the *Court*-approved *Mail Notice* to *Settlement Class* members.  Notice

---

[6] The *Class Representatives* include the *Plaintiffs* (Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni and Sue Toal) and Sandy Paxton.

disseminated to *Settlement Class* members will provide these individuals with all information relating to the *Settlement*, and will inform the *Settlement Class* members of the procedures required to object to the certification of the *Settlement Class*, the *Settlement*, the *Case Contribution Awards*, and the attorneys' fees, costs and expenses sought by *Plaintiffs' Counsel*. Settlement Agreement ¶2.1.4. The *Settlement Administrator* is authorized to use reasonable devices to obtain forwarding addresses after the initial mailing and will resend notices to those forwarding addresses.

Under the proposed schedule, *Settlement Class* members will have over two months from the time the notice is mailed to object to the *Settlement*. *Settlement Class* members do not need to submit a claim form to participate and will automatically receive their portion of the *Settlement Proceeds.*

### D.   DISMISSAL AND RELEASE OF CLAIMS

Upon the *Effective Date*, the Court will dismiss the *Complaint* against the *Defendants* with prejudice and will forever release all claims that were or could have been asserted under ERISA against all *Defendants*. All of the applicable releases for both *Plaintiffs* and *Defendants* are set forth in Section 3 of the *Settlement Agreement*.

### E.   PLAINTIFFS' CASE CONTRIBUTION AWARDS AND ATTORNEYS' FEES AND COSTS

Pursuant to FED. R. CIV. P. 23(h) and 54(d)(2), *Plaintiffs' Counsel* will move for an amount not to exceed one third of the settlement fund as attorneys' fees plus reimbursement of their out-of-pocket costs, when they file their motion for attorneys' fees and costs. Settlement Agreement ¶10.1. The *Plaintiffs* and/or *Class Representatives* will apply for *Case Contribution Awards* of $5,000.00 in recognition of the services that they rendered on behalf of the *Settlement Class* as class representatives. Settlement Agreement ¶10.2.

## IV.    CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps: (1) preliminary approval of the proposed settlement after submission to the *Court* of a written motion for preliminary approval; (2) dissemination of notice of settlement to all class members; and (3) a final settlement approval hearing at which class members may be heard, and at which argument concerning the fairness of the settlement may be presented. *See* FED. R. CIV. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions ("Newberg")*, §§ 11.22, *et seq.* (4th ed. 2002). *Plaintiffs* respectfully request that the *Court* take the first step now – granting the accompanying proposed order preliminarily approving the *Settlement Agreement*, conditionally certifying the *Settlement Class*, approving *Plaintiffs'* proposed *Class Notice*, and authorizing *Plaintiffs* to disseminate the *Class Notice*. The *Parties* respectfully submit the following proposed schedule of events for final resolution of this *Action* for the *Court's* consideration and approval:

| Event | Timing |
|---|---|
| Settlement Administrator provided with class list and Class contact information | Within ten (10) days after Preliminary Approval Order |
| Mail Class Notice | Within twenty-one (21) days after Preliminary Approval Order |
| Publication Notice | Within thirty-five (35) days after Preliminary Approval Order |
| Plaintiff's motions for final approval and for award of attorneys' fees and expenses, and for Service Awards for Named Plaintiff | Forty-five days (45) before the date of the Fairness Hearing |
| Objections to the Settlement and notice of intention to appear at Fairness Hearing | Twenty-one days (21) before the date of the Fairness Hearing |
| Independent Fiduciary report (if hired) | Thirty days (30) before Final Approval Hearing |
| Responses to any Objections and/or to the Report of the Independent Fiduciary | Ten (10) days prior to Final Approval Hearing |
| Final Approval Hearing | At the Court's convenience (not less than 90 days after mailing of Class Notice) |

## V.     ARGUMENT

### A.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-177 (2d Cir. 2005) (noting the strong judicial policy in favor of settlements, particularly in the class action context); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (there is a "strong judicial policy in favor of settlements, particularly in the class action context").  Although approval of a class action settlement is a matter of discretion, "[i]n exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).

As the first step in the settlement process, preliminary approval simply determines whether notice of the proposed settlement should be issued to the class.  To grant preliminary approval, the *Court* must find that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." *Joel A. v. Giuliani,* 218 F.3d 132, 138 (2d Cir. 2000).  Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679, 2013 WL 22545541, at *1 (S.D.N.Y. May 22, 2013).  The *Court* need only find there is "probable cause" to submit the settlement to the class members and to hold a fairness hearing. *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607-08 (W.D.N.Y. 2011) (quoting *Menkes v. Stolt–Nielsen S.A.,* 270 F.R.D. 80, 101 (D. Conn. 2010) and *In re Traffic Exec. Ass'n E. R. Rs,* 627 F.2d 631, 634 (2d Cir. 1980)).

"A proposed settlement of a class action should … be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious

deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Davis*, 775 F. Supp. 2d at 607. "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).

The *Court's* analysis should begin with the presumption that the settlement is fair. *See, e.g.*, *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *Lovaglio v. W &E  Hospitality, Inc.*, No. 10 Civ. 7351, 2012 U.S Dist. LEXIS 72645, *2 (S.D.N.Y. Mar. 12, 2012) (granting preliminary approval where settlement was "the result of extensive, arm's length negotiations by counsel well-versed in the prosecution and defense of" applicable law). "At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

Thus, so long as the settlement falls into the range of possible approval — giving deference to the result of the parties' arms'-length negotiations and the judgment of experienced

counsel following sufficient investigation and discovery — the settlement should be preliminarily approved and a final fairness hearing scheduled. *Yuzary*, 2013 WL 1832181, at *1 ("If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement.").

### B.   THE *SETTLEMENT* IS FAIR, ADEQUATE, AND REASONABLE

The proposed *Settlement* meets the standards for preliminary approval.   *See* Wells Declaration at ¶¶32, 36.  The *Settlement* provides substantial cash compensation to the *Settlement Class* in the aggregate amount of $9.7 million which is guaranteed to be allocated to the *Settlement Class* members, after all *Court*-approved fees, awards, and expenses are deducted. Under the proposed *Plan of Allocation* each *Settlement Class* member will be paid in proportion to their losses in either (or both) the ESOP or the SIP's Kodak Stock Fund during the *Class Period*.

The *Settlement* was carefully negotiated based on discovery and review of publicly available documents and information obtained from *Defendants*.  *Plaintiffs* retained a damages expert who, utilizing plan-wide transactional data provided by *Defendants* detailing the purchases and sales of Kodak stock during the *Class Period*, prepared a comprehensive damages model that considered the price of Kodak stock at numerous dates, including dates prior to, and after Kodak had retained counsel specializing in bankruptcy.   *Plaintiffs'* damages model considered, *inter alia*, *Defendants'* arguments with respect to what, if any, effect the announcement of forced liquidation might have on stock price.

The *Class Settlement Amount* is based on an analysis of *Plans*' information during the relevant time period.  Indeed, based on *Plaintiffs'* damage model and depending on the alleged date of imprudence, the *Settlement* represents a recovery of between approximately twenty to fifty percent of the total damages suffered.  Stated another way, had *Plaintiffs* been able to

demonstrate imprudence from the start of the *Class Period*, the *Settlement* represents approximately twenty percent (20%) of the total damages suffered. *See* Wells Declaration at ¶34. However, had *Plaintiffs* been able to prove imprudence only a few months before Kodak filed for bankruptcy, then the *Settlement* represents approximately fifty percent (50%) of the total damages suffered. In short, the $9.7 million dollar payment is an excellent result for *Settlement Class* members, especially considering the risks of continued litigation. Although *Plaintiffs* believe their case is very strong, it would require significant complex financial analysis and expert testimony and factual development. Additionally, any verdict at trial could be delayed by the appellate process.

A class settlement need not recover the maximum damages that would be provable after establishing liability at trial; recovery of a fraction of that amount is reasonable, particularly in a complex and risky case such as the one at bar. Recoveries representing small percentages of a defendant's maximum exposure may be found to be fair, adequate and reasonable. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2. (2d Cir. 1974)[7] ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Here, the proposed *Settlement*

---

[7]   *Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"). Nor must a proposed settlement be measured against a hypothetical ideal result that might have been achieved. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("This court has aptly held that it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'").

represents a quite reasonable recovery of the total possible damages alleged, especially in light of the significant differences in damage paradigms between the *Parties*.

Under the circumstances presented here, where the proposed *Settlement Class* faces numerous opportunities for defeat, including denial of class certification, summary judgment, trial, and appeal, not to mention the years of delay should there be protracted appeals, the *Settlement* represents the best realistic recovery for all *Settlement Class* members and it is well within the range of possible approval. As the case law establishes, the *Court* should not second guess that determination at this stage so long as the proposed *Settlement* falls within a reasonable range of possible approval and was the product of arm's length negotiations and vigorous investigation, as was the case here.

Here, the proposed *Settlement* clearly traverses that threshold.

### C. THE *SETTLEMENT* IS THE PRODUCT OF INFORMED, NON-COLLUSIVE NEGOTIATIONS AND DOES NOT PRESENT ANY GROUNDS TO QUESTION ITS FAIRNESS

In determining whether a proposed settlement should be preliminarily approved, courts may consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations." *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001). Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. *See, e.g.*, *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiation at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried.") "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Vehicleer Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). Importantly, "the Second Circuit has noted that a 'mediator's

involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.'" *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 11-cv-864, 2015 U.S. Dist. LEXIS 73276, at *19 (E.D.N.Y. Apr. 17, 2015) (citing *D'Amato v. Deutsche Bank*, 236 F.3d at 85 (2d Cir. 2001)); *see also Hernandez v. Anjost Corp.*, No. 11-cv-1531, 2013 U.S. Dist. LEXIS 116048, at *7 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive.").

The present *Settlement* was achieved through extensive, arm's length settlement negotiations under the guidance of David Geronemus, a long-time JAMS mediator, who is experienced in mediating complex class actions, including several ERISA class actions involving fiduciary breach claims. Counsel for *Plaintiffs* and the *Kodak Defendants* attended a full day of mediation with Mr. Geronemus where their respective positions and arguments were subjected to vigorous questioning and analysis by the mediator. Eventually, they reached an agreement in principle. After the agreement was reached, the *Parties* continued to engage in extensive negotiations about the *Settlement's* terms, finalizing and executing the agreement on April 22, 2016.

The negotiations followed the filing of various complaints that were each the product of numerous hours of extensive and careful research and analysis, as well as the preparation and filing of the *Complaint*, a very detailed consolidated pleading with hundreds of paragraphs and citations to original source material concerning the condition of Kodak and the *Plans*. The negotiations also took place after the *Parties* had prepared, briefed and thoroughly argued *Defendants*' motions to dismiss the *Complaint*. Moreover, the mediation did not occur until after *Plaintiffs'* defeated *Defendants'* motions to dismiss and engaged in significant discovery,

including the production of thousands of pages of documents and exchange of interrogatory responses and other information.  As the *Court* is well aware, this discovery was, at times, contentious.  Indeed, the *Parties* were continuing to litigate motions to compel further production of documents and interrogatory responses when the mediation took place. Further, *Plaintiffs' Counsel* are experienced and respected class action litigators.  There is and can be no suggestion that the *Parties* colluded in this case.

Given the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery," the *Court* should find that the proposed *Settlement* was fair.  *See Wal-Mart Stores,* 296 F.3d at 116; *Karic*, 2012 WL 9433847 at *9.

### D.   APPLICATION OF THE *GRINNELL* FACTORS SUPPORTS PRELIMINARY APPROVAL

In evaluating whether to grant final approval to a class action settlement, courts in the Second Circuit consider the nine factors[8] set forth in *City of Detroit v. Grinnell Corp.* 495 F.2d at 463.  Although the *Court* need not apply *Grinnell* to its initial preliminary approval inquiry, the *Settlement* satisfies the criteria on which this *Court* will ultimately judge it.

### 1.   Litigation Through Trial Would be Complex, Costly & Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to summary judgment and trial, *Plaintiffs* seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the *Settlement Class*.  "Most class actions are inherently complex and settlement avoids the costs, delays and

---

[8] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 462.  All of these factors favor of approval of the Settlement.

multitude of other problems associated with them" *In re Austrian & German Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This ERISA case with thousands of *Settlement Class* members, complex corporate, financial and fiduciary issues is no exception.

Further litigation here would cause massive amounts of additional expense, delay and uncertainty. *See* Wells Declaration at ¶40. The *Parties* were on the precipice of engaging in voluminous deposition discovery. Moreover, given the cross-motions to compel discovery, it is likely that had this case proceeded, every step forward would have been hard fought and contentious. The *Parties* would have likely expended considerable additional resources establishing liability and proving and contesting damages. Indeed, during the mediation, the *Kodak Defendants* apprised *Plaintiffs* that their damage model varied significantly from *Plaintiffs*, asserting that their damage model demonstrated significantly less damages suffered by the proposed *Settlement Class*.

Had this *Action* not settled, the *Parties* would likely file additional motions for discovery and merits determinations, and *Plaintiffs* would file a motion for class certification. There is no certainty as to the outcome of those motions for either side. And had the case not been resolved at the summary judgment stage, a fact-intensive trial, requiring numerous expert witnesses, would have likely followed. This would all constitute a costly and extensive process. The proposed *Settlement*, on the other hand, makes monetary relief available to *Settlement Class* members in a prompt and efficient manner. Therefore, the first *Grinnell* factor heavily favors approval.

## 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

The eight members of the *Settlement Class* who have been driving the litigation, including all of the surviving named *Plaintiffs* or their heirs or successors in interest, have expressed their approval of the *Settlement* terms. *See* Wells Declaration at ¶41. Beyond that, the

*Court* cannot more fully analyze this factor until after notice of the *Settlement* has been provided to *Settlement Class* members and they have had the opportunity to respond.

### 3. Sufficient Discovery Allows Responsible Case Resolution (Grinnell Factor 3)

The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank*, 80 F. Supp. 2d at 176. The *Parties'* discovery meets this standard. This case has been pending for four years. During that time, the *Parties* have engaged in substantial adversarial litigation, exchanging thousands of pages of discovery and financial information and moving to compel additional information. The *Parties* have also conducted analysis of the claims based on publicly-available materials. The *Complaint* in this case was not based on allegations that *Defendants* fraudulently concealed negative inside information about the *Company* or misrepresented its condition to the *Plans'* participants and beneficiaries (the very individuals comprising the *Settlement Class*); instead, it was based solely on the claim that Kodak stock was an objectively imprudent investment for the *Plans* in light of publicly-available information. During the course of the mediation, the *Kodak Defendants* provided *Plaintiffs* with significant material that countered their claims that all analysts and market participants objectively thought Kodak was doomed from the start of the *Class Period*. As such, the *Parties* were well-equipped to evaluate the strengths and weaknesses of the case. This factor also favors preliminary approval.

17

### 4.   *Plaintiffs* **Face Real Risk if the Case Proceeded** (*Grinnell* **Factors 4 &5)**

As previously discussed, although *Plaintiffs* believe that their case is strong, it is not without significant risk. Indeed, the *Defendants* maintain that they would have ultimately prevailed had this *Action* proceeded. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).   Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).   *Plaintiffs' Counsel* are experienced and realistic, and understand that the substantive and damage issues either at summary judgment or at trial and the inevitable appeals process are inherently uncertain in terms of outcome and duration.   The instant settlement alleviates these concerns as *Settlement Class* members would all be compensated proportionally for their losses.

Although the facts in the case are largely a matter of public record, the governing law is unsettled and changing.   While the Supreme Court' recent decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), eliminated the so-called "presumption of prudence" argument, certain language in that decision raises issues regarding the viability of an ERISA action regarding claims of imprudent investment in company stock based upon publicly available information, and thus have have lent support to arguments by defendant-fiduciaries in similar circumstance in other cases.   Indeed, the Second Circuit recently affirmed dismissal of a suit against the fiduciaries of the Lehman Brothers retirement plan based on the *Dudenhoeffer* language. *Rinehart v. Lehman Bros. Holdings Inc.,* No. 15-2229, 2016 WL 1077009, at *2 (2d Cir. Mar. 18, 2016).   *Lehman* would no doubt feature prominently in *Defendants'* briefs and arguments at summary judgment and trial in this case.   Consequently, had this *Action*

18

proceeded, the *Parties* would have engaged in significant briefing regarding the precise parameters of *Dudenhoffer* and *Lehman*.

Further, given the fact that several other courts have relied on *Dudenhoffer* in determining that defendants in analogous actions are not liable under ERISA, *see, e.g., In re 2014 RadioShack ERISA Litig.,*[9] it is likely that the relatively new legal landscape of a post-*Dudenhoffer* world would have meant the inevitable appeal.  Of course, this assumes that *Plaintiffs* would have been victorious at trial.  *Class Counsel* are aware of at least four analogous cases where plaintiffs have lost at trial where their claims were based on breaches of fiduciary duty under ERISA.  This *Settlement* alleviates these concerns as well.

### 5. Maintaining the Class Through Trial

*Plaintiffs* are convinced that they would prevail on the issue of class certification. Nevertheless, *Plaintiffs* anticipate that *Defendants* would dispute class certification, should the case continue, and that the *Court* would make a determination on class certification only after extensive briefing and, possibly, interlocutory appeal. Indeed, there is no guarantee that any favorable class certification decision would be for the entire period proposed in the *Complaint*. As set forth above, a shortening of the *Class Period* dramatically cuts *Plaintiffs'* claim for damages.  The proposed *Settlement* eliminates all of the risks and delays that permeate that process. Therefore, this factor also favors approval.  *See* Wells Declaration at ¶45.

### 6. *Defendants'* Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

This factor can be relevant to a court's decision to approve a settlement.  *In re PaineWebber*, 171 F.R.D. 104.   However, "a defendant's ability to pay more than provided through the settlement cannot undercut the overall assessment of fairness, reasonableness, and

---

[9] *In re 2014 RadioShack ERISA Litig.,* Master File No. 14-cv-959 (N.D. Tex.) (Dkt. No. 153)(opinion and order granting dismissal of plaintiffs' complaint based on *Dudenhoffer* but allowing plaintiffs to replead).

adequacy of a proposed settlement." *D.S. v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59, 78 (E.D.N.Y. 2008), *citing In re PaineWebber*, 171 F.R.D. at 129.  While there is no dispute that *Defendants* had significant insurance coverage available to settle any claim, that fact is not dispositive.  As noted above, *Plaintiffs* faced numerous hurdles (including demonstrating imprudence from the inception of the *Class Period*).  Given the changing and uncertain nature of ERISA litigation, the *Settlement* in this case is fair, reasonable and adequate, and is an excellent result for the *Class Members*.  As one court aptly noted, a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."  *In re Train Derailment Near Amite Louisiana*, MDL No. 1531, 2006 WL 1561470, at *24 (E.D. La. May 24, 2006) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)).  Here, this *Settlement* does just that, albeit with a substantial portion of the maximum possible damages recovered for the *Settlement Class*.  *See* Wells Declaration at ¶47.

      **7.**     **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 & 9)**

As previously discussed, *Defendants* have agreed to pay a substantial amount, $9.7 million to the *Settlement Class*.  This amount represents considerable value given the attendant risks of establishing damages.   Weighing the benefits of the *Settlement* against the risks associated with proceeding in the litigation, the *Class Settlement Amount* is more than reasonable. "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982);  *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class

settlement over objections that the "best possible recovery would be approximately $121 million").

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Consequently, this *Grinnell* factor weigh heavily in favor of issuing preliminary approval of the proposed *Settlement*.   As discussed above, the *Settlement* represents approximately 20 percent of the total amount that *Plaintiffs* might obtain after a trial on the merits, assuming that they prevailed on liability completely, successfully defeated *Defendants'* affirmative defenses, and convinced the *Court* to accept their damages model.  *See* Wells Declaration at ¶¶47-48.  In light of the substantial risk that the *Settlement Class* wold have recovered less, or potentially nothing at all, this is an outstanding result.  Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the *Court* should grant preliminary approval.

## VI.    CONDITIONAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE

For settlement purposes, *Plaintiffs* respectfully request that the *Court* conditionally certify the proposed *Settlement Class* under Rule 23(e) for settlement purposes only.  Provisional settlement class certification and appointment of class counsel have several practical advantages, including avoiding the costs of litigating class status while facilitating a global settlement,

21

ensuring notification of all class members of the terms of the proposed settlement, and setting the date and time of the final approval hearing. *See In re Gen. Motors, Pick-Up Truck Fuel Tank Prodcs. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class).

In order to obtain class certification, a party must show that all four prerequisites of Rule 23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b). *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 55 (3d. Cir. 1994) (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d. Cir. 1975), *cert. denied*, 421 U.S. 1011 (1975)). The proposed *Settlement Class* satisfies the requirements of Rules 23(a) and 23(b)(1) or (b)(2) of the Federal Rules of Civil Procedure.

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied…Thus, the court must assess whether the proposed class satisfies Rule 23(a)'s four threshold requirements: (1) numerosity  ('the class is so numerous that joinder of all members is impracticable'); (2) commonality ('there are questions of law or fact common to the class'); (3) typicality ('the claims or defenses of the representative parties are typical of the claims or defenses of the class'); and (4) adequacy of representation ('the representative party will fairly and adequately protect the interests of the class')." *In re American International Group, Inc. Securities Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

## A.    THE *SETTLEMENT CLASS* IS SUFFICIENTLY NUMEROUS

The proposed *Settlement Class* satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. According to the *Defendants'* public filings during the *Class Period*, the ESOP alone had more than 15,000 participants  during the *Class Period*. *See* Wells Declaration at ¶54. The number of *Settlement Class* members is so

large that joinder of all its members is impracticable and thus, the numerosity element easily satisfied. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").  Moreover, courts have held that a lesser showing of numerosity may be required when the defendants' alleged conduct uniformly affects the entire class. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (adding that, in close situations, the balance should be struck in favor of finding the numerosity requirement satisfied).  Here, *Defendants'* alleged conduct affects the entire class on a uniform basis.  There can be no doubt that the numerosity requirement is satisfied.

B.      THE *SETTLEMENT CLASS* SEEKS RESOLUTION OF COMMON QUESTIONS

The proposed *Settlement Class* also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claim are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  "The commonality requirement is met if plaintiffs' greivances share a common question of law or of fact." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997).  It is also satisfied where the injuries complained of by the plaintiffs allegedly resulted from the same practice or policy that allegedly injured or will injure the proposed class members. *See Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001).  Courts construe the commonality requirement liberally, and generally hold that a single question of law or of fact will suffice. *See, e.g., Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

This case involves numerous questions of law or fact common to the *Settlement Class* and central to the case, including, but not limited to:

a.   Whether *Defendants* caused the *Plans* to offer, or failed to monitor or remove, the Kodak stock funds at issue;

23

b.   Whether *Defendants* were fiduciaries responsible for monitoring and making decisions with respect to the investments in the *Plans*;

c.   Whether *Defendants* were or should have been aware that Kodak was facing severe financial difficulties that were unlikely to be resolved, thereby rendering Kodak stock to be an imprudent retirement plan investment option;

d.   Whether *Defendants* breached their fiduciary duties to the *Plans* by causing the *Plans* to continue to invest assets in Kodak stock after it knew that Kodak was in serious financial troubles and on the brink of bankruptcy;

e.   Whether the *Plans* suffered losses as a result of *Defendants'* fiduciary breaches.

Accordingly, the *Settlement Class* clearly meets Rule 23(a)(2)'s standard for commonality.

## C.   THE CLAIMS OF THE PROPOSED *CLASS REPRESENTATIVES* ARE TYPICAL OF THE *SETTLEMENT CLASS*

Rule 23(a)(3) "requires that the claims of the class representatives be typical of those of the class and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marisol A.*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir. 1992)). "The burden is 'fairly easily met so long as other class members have claims similar to the named plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)(quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented," typicality is satisfied "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "The typicality requirement is often met in putative class actions brought for breaches of fiduciary duty under ERISA." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 143 (S.D.N.Y. 2010).

All members of the proposed *Settlement Class* were participants in one or more of the *Plans* and invested retirement assets in Kodak stock. Thus, *Defendants'* alleged misconduct harmed all *Settlement Class* members in the same way – they lost retirement savings because the

*Defendants* breached their fiduciary duties by failing to remove Kodak stock as an investment option of the *Plans* when they knew that Kodak stock was an imprudent retirement investment option due to Kodak's extreme financial distress. Thus, all *Settlement Class* members' claims, including the claims of each of the proposed *Class Representatives*, arise from the same course of conduct.

### D. THE PROPOSED *CLASS REPRESENTATIVES* HAVE AND WILL ADEQUATELY REPRESENT THE *SETTLEMENT CLASS*

"The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n. 13 (1982)). The requirement encompasses two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc*., 350 F.3d 1181, 1190 (11th Cir. 2003) (internal citations omitted). Moreover, "[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012).

The proposed *Class Representatives* all suffered losses as participants in one or more of the *Plans* and have no interests that are antagonistic to the interests of any of the members of the proposed *Settlement Class*. *See* Wells Declaration at ¶57. All *Settlement Class* members shared a common goal: participating in a well-run retirement plan that provided them with an array of prudent investment options. Here, all *Settlement Class* members will benefit from the substantial

relief obtained by the *Settlement*. The proposed *Class Representatives* thus stand in the same shoes as the other members of the proposed *Settlement Class* with the same incentives to pursue and consummate a fair and reasonable settlement.

### E. THE REQUIREMENTS OF RULE 23(B)(1) OR (B)(2) ARE SATISFIED

Rule 23(b)(1) provides that a class may be certified if the Rule 23(a) prerequisites are met and "prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). Similarly, under 23(b)(2) a class is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that the final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"[T]he Advisory Committee Notes to the 1966 Amendment of Rule 23(b)(1)(B) specifically state that certification is especially appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010). Courts routinely certify class actions alleging breach of ERISA fiduciary duties pursuant to Rule 23(b)(1). *See, e.g., Krueger v. Ameriprise Financial, Inc.*, 304 F.R.D. 559, 575-578 (D. Minn. 2014); *Pashchal v. Child Development, Inc.*, No. 4:12-CV-0184, 2014 WL 112214, at *6 (E.D. Ark. Jan. 10, 2014); *In re Beacon Assocs. Litig.* 282 F.R.D. 315, 341-42 (S.D.N.Y. 2012); *Jones v. NovaStar Financial, Inc.*, 257 F.R.D. 181, 192-194 (W.D. Mo. 2009); *In re Marsh ERISA Litig.*, 265 F.R.D. at 142-44; *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74-77 (S.D.N.Y. 2006); *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002) (same). *See*

*generally In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ("breach of fiduciary claims brought under 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held").

Further, because *Defendants* have acted or refused to act on grounds applicable to the *Settlement Class* as a whole, certification is also appropriate under Fed. R. Civ. P. 23(b)(2).  In *In re Elec. Data Sys. Corp. "ERISA" Litig.*, the court certified plaintiffs' prudence claim under Rule 23(b)(2) because "the monetary relief is for the Plan's losses" and was, thus, "in the nature of a group remedy."  224 F.R.D. 613, 629 (E.D. Tex. 2004), vacated on other grounds sub nom. *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007).  Similarly, in approving a settlement in an analogous case, the court in *Broadwing* held that certification was appropriate under Rule 23(b)(2) "because it cannot reasonably be disputed that the conduct was 'generally applicable to the class.'"  *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 379 (S.D. Ohio 2006)(quoting Fed. R. Civ. P. 23(b)(2)); *see also Neil v. Zell,* 275 F.R.D. 256, 269 (N.D. Ill. 2011)(finding certification also appropriate under Rule 23(b)(2) because "incidental damages sought can be calculated mechanically").

As an ERISA breach of fiduciary duty action, this *Action* is a typical 23(b)(1) or (b)(2) class action. Prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications. Thus, a class-wide settlement is the superior method for the fair and efficient resolution of this controversy. Joinder of all members of the proposed *Settlement Class* is impracticable. Moreover, *Defendants*, as alleged fiduciaries of the *Plans*, were obligated to treat all *Settlement Class* members similarly as the *Plans'* participants pursuant to written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications.

Given the nature of these allegations, no *Settlement Class* member has an interest in individually controlling the prosecution of the case, and *Plaintiffs* are not aware of any difficulties likely to be encountered in the management of the case as a class action.  Finally, it cannot be credibly disputed that *Defendants'* conduct was "generally applicable to the class," nor can it be argued that damages cannot be mechanically calculated.

Accordingly, *Plaintiffs* respectfully request that the *Court* provisionally certify the *Settlement Class* for settlement purposes.

## VII.   INTERIM CO-LEAD CLASS COUNSEL SHOULD BE APPOINTED

Interim Class Counsel Izard Nobel LLP and Connolly Wells & Gray, LLP should be appointed as *Class Counsel* under Rule 23(g), which governs the standards and framework for appointing class counsel.  Rule 23(g) sets forth four criteria: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. 23(g)(1)(A).

Proposed *Class Counsel* meet all relevant criteria.  *See* Wells Declaration at ¶¶63-65.  Both firms did substantial work identifying, investigating, prosecuting, and settling the claims.  Each firm is comprised of attorneys with great deal of experience prosecuting and settling complex, class action and ERISA cases and are well-versed in ERISA and class action law and are well-qualified to represent the interests of the class. Indeed, the *Court* has previously determined that the attorneys comprising *Class Counsel* are experienced and knowledgable ERISA litigators. *See* Dkt. No. 43, Dkt. No. 92.  Respectfully, there is no sound basis to now question that decision, especially in light of the significant *Settlement* achieved by *Class Counsel.*

## VIII.   THE COURT SHOULD APPROVE THE NOTICE AND APPOINT A SETTLEMENT ADMINISTRATOR

The proposed *Class Notice*, which is attached to the Settlement Agreement, complies with due process and Federal Rule of Civil Procedure 23, which requires that notice provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (viii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The United States Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed *Class Notice* satisfies each of these requirements. *See* Wells Declaration at ¶71.   The *Class Notice* also describes the terms of the *Settlement*, informs the *Settlement Class* about attorneys' fees, *Case Contribution Awards* and provides specific information regarding the date, time, and place of the final approval hearing.   Courts have approved class notices even when they only provided general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").   The detailed information in the *Class Notice* far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

Importantly, the *Class Notice* describes how a *Settlement Class* member can object to the *Settlement*.   The *Parties* have agreed, subject to *Court* approval, to a notice plan, which calls for individual mailed notice or emailed notice that will provide *Settlement Class* members with

29

sufficient information to make an informed decision about whether to object to the proposed *Settlement*. The notice informs *Settlement Class* of the nature of the *Action*, the litigation background and the terms of the *Settlement*, including the definition of the *Settlement Class*, the relief provided by the *Settlement Agreement*, the intent of *Plaintiffs' Counsel* to seek fees and costs and of the *Class Representatives* to seek *Case Contribution Awards*, and the scope of the release and binding nature of the *Settlement* on *Settlement Class* members. In addition, the *Class Notice* informs *Settlement Class* members that additional documents, including the *Settlement Agreement* and *Plaintiffs'* motion for award of attorneys' fees will be available via a dedicated website.    The *Class Notice* and the manner in which it will be disseminated to *Settlement Class* members satisfies Rule 23(e)(1) and constitutional due process concerns and should be approved.

Finally, the *Court* should approve *Class Counsel's* selection of a *Settlement Administrator* and appoint AB Data with undertaking the responsibilities described in the *Settlement Agreement*. *See generally,* Wells Declaration at ¶¶75-77.

## IX.    CONCLUSION

For the foregoing reasons, *Plaintiffs* respectfully request that the *Court* grant this Unopposed Motion for Preliminary Approval of the proposed settlement and issue an Order: (1) certifying the *Settlement Class* and appointing *Class Counsel*; (2) granting preliminary approval of the *Settlement*; (3) directing notice to *Settlement Class* members and approving the plan and form of notice; and (4) appointing AB Data as *Settlement Administrator*.

Dated: April 22, 2016                    **BLITMAN & KING, LLP**

By: ___/s/ Jules L. Smith_____
Jules L. Smith
The Powers Building, Suite 500
16 West Main Street

Rochester, New York 14614
Tel: (585) 232-5600
Fax: (585) 232-7738
jlsmith@bklawyers.com

Robert A. Izard
Mark P. Kindall
IZARD NOBEL LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile:  (860) 493-6290
Email: rizard@izardnobel.com
        mkindall@izardnobel.com

Gerald D. Wells, III
CONNOLLY WELLS & GRAY, LLP
2200 Renaissance Boulevard, Suite 308
King of Prussia, PA 19406
Telephone:  (610) 822-3700
Facsimile:   (610) 822-3800
Email:  gwells@cwg-law.com

***Interim Co-Lead Counsel for Plaintiffs***