**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EASTMAN KODAK ERISA LITIGATION _____ THIS DOCUMENT RELATES TO: ALL ACTIONS | MASTER FILE NO. 6:12-CV-06051-DGL |

**DECLARATION OF GERALD D. WELLS, III IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT**

I, Gerald D. Wells, III, declare as follows:

1.      I am a founding member of the law firm of Connolly Wells & Gray, LLP (the "Firm").  I am personally involved in all aspects of the prosecution of this matter.

2.      The Firm was founded in October, 2013.  Prior to this, I was with the law firm of Faruqi & Faruqi, LLP ("F&F").  I became a partner at F&F in January 2012.  While at F&F, I was either chair or co-chair of the firm's employment practices group.

3.      I have been involved in all aspects of this litigation from the initial investigation through its resolution.

4.      I make this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement ("Plaintiffs' Motion"), which seeks preliminary approval of the *Settlement Agreement*.[1]  A true and correct copy of the *Settlement Agreement* is attached hereto as Exhibit A.

---

[1] All italicized terms not otherwise defined in this declaration have the same meaning given them in the *Settlement Agreement*.

5.      The matters set forth herein are stated within my personal knowledge.  I am submitting this declaration to put before the *Court* certain documents and facts supporting preliminary approval of the *Settlement* and demonstrating that the requirements of Rule 23 are satisfied here for purposes of conditionally certifying the *Settlement Class*.

## FACTS AND PROCEDURAL BACKGROUND

6.      On January 27, 2012, following Kodak's filing for Chapter 11 bankruptcy, Plaintiff Mark Gedek filed the initial class action against certain *Defendants* alleging violations of ERISA.  Shortly thereafter, some six additional complaints all alleging violations of ERISA were also filed against Defendants.

7.      On May 10, 2012, the *Court* entered an order consolidating the cases.  Dkt. No. 39.  Thereafter, on August 1, 2012, the *Court* entered an order appointing Izard Nobel, LLP and Faruqi & Faruqi interim co-lead counsel.   Dkt. No. 43.  On May 5, 2015, the *Court* entered an order substituting Connolly Wells & Gray, LLP for Faruqi & Faruqi, LLP as interim co-lead counsel.  Dkt. No. 92.

8.      Plaintiffs filed their operative complaint on September 14, 2012.  Dkt. No. 48.  In this *Action*, *Plaintiffs* allege that *Defendants* were the fiduciaries of the Eastman Kodak Employees' Savings and Investment Plan (the "SIP") and/or the Kodak Employee Stock Ownership Plan (the "ESOP") (the SIP and ESOP are collectively referred to herein as the "Plans") who breached their ERISA-mandated duties by offering Kodak stock as a retirement investment when the stock was an imprudent retirement investment due to the company's dire financial condition and ultimate bankruptcy.

9.      *Plaintiffs* assert that the *Plans'* fiduciaries violated their statutory ERISA duties of prudence and care, through their management, oversight and administration of the *Plans'* continued investment in Kodak stock during the *Class Period*.

10.      *Plaintiffs* allege that *Defendants* knew or should have known that Kodak Stock was an imprudent retirement investment for the *Plans* during the *Class Period* because: (a) Kodak depended on a dying technology and the sale of antiquated products; (b) it was unable to generate sufficient cash-flow from its short term business strategy of initiating lawsuits that would garner settlements; (c) it was suffering from a severe lack of liquidity; and (d) its bonds – which take priority of stock in bankruptcy – had been downgraded to "junk" status, and it stock price collapsed due to these circumstances.

11.      Plaintiffs allege that the *Defendants*, who were obligated to prudently and loyally manage the Plans, violated ERISA Sections 409 and 502, 29 U.S.C. §§ 1109, 1132 when they breached these fiduciary duties.

12.      *Defendants* filed Motions to Dismiss the complaint on October 29, 2012.  After, extensive briefing, including submissions regarding supplemental authority, and oral argument, the *Court* denied *Defendants'* motions on December 27, 2014.

13.      Hard-fought discovery commenced in February 2015.  This included requests for documents, interrogatories, and admissions being served by the *Kodak Defendants* and *Plaintiffs* propounded document requests and interrogatories themselves.  In response to said discovery, both sides filed contested motions to compel discovery responses.

14.      Prior to the scheduled oral argument regarding *Plaintiffs'* motion to compel, in December of 2015, the *Plaintiffs* and the *Kodak Defendants* agreed to formally mediate the case

with David Geronemus, Esq., a well-respected mediator with significant experience mediating and resolving complex class actions including ERISA cases.

15.     The *Parties* scheduled their mediation for February 2016.

16.     *Plaintiffs* requested and received certain *Plan* related documents and data, including the purchase and sale of *Kodak* stock on a *Plan*-wide level, from *Defendants* prior to the mediation.  This information permitted *Plaintiffs* to make an informed decision regarding the relative strength of their claims, and to assist *Plaintiffs* in calculating damages.

17.     To prepare for the mediation, *Class Counsel* retained Cynthia Jones, CFA, a Vice President of Management Planning, Inc., to perform an analysis of class-wide damages, taking into account transactional information on the daily purchases and sales of Kodak stock by the *Plans* as well as the performance of all of the other investment options.

18.     Prior to mediating with Mr. Geronemus, *Plaintiffs* submitted a detailed presentation of the best evidence supporting *Plaintiffs'* claims and engaged in a telephonic pre-mediation session.

19.     The *Plaintiffs* and the *Kodak Defendants* engaged in an all-day mediation before Mr. Geronemus on February 24, 2016, in New York City.

20.     At the end of that all-day mediation session, the *Plaintiffs* and the *Kodak Defendants* had an agreement in principle and executed an initial term sheet.  Thereafter, *BNY Mellon Defendants* were contacted to determine whether they wished to participate in the proposed settlement.  Ultimately, after several weeks of further discussion, including multiple iterations of proposed revisions to the term sheet, a formal, finalized term sheet was executed by the parties on March 14, 2016.

21.     Thereafter, the *Parties* began to work on preparing a formal *Settlement Agreement*, and its ancillary documents.  These discussions led to conference calls and drafts being circulated by both sides.

22.     Ultimately, on April 22, 2016, the *Parties* executed the *Settlement Agreement.*

23.     My co-counsel and I are pleased to present for preliminary approval the proposed *Settlement* set forth in the *Settlement Agreement.*   Pursuant to its terms, a *Class Settlement Amount* of $9,700,000.00 will be deposited into an interest-bearing escrow account for the benefit of the *Settlement Class.*

24.     In our view the *Settlement* represents an excellent result that will provide significant benefits to the *Settlement Class* while removing the risk and delay associated with further litigation.

25.     The *Class Settlement Amount*, less the costs of notice and settlement administration, any *Case Contribution Awards* for the *Plaintiffs,* and *Court* approved attorneys' fees and expenses, shall be for the benefit of the *Settlement Class* members – the *Plans'* participants and beneficiaries.

26.     My co-counsel and I recommend the proposed *Settlement* as an excellent result in light of the factual and legal risks of continued litigation, including the risk that the *Settlement Class* would recover nothing should this case proceed to trial.  In recommending the *Settlement* as fair, reasonable and adequate, *Class Counsel* have considered, among other things, the events and transactions underlying *Plaintiffs'* claims as well as the possible defenses to those claims. We have also considered the information that we obtained from reviewing publicly available information about *Kodak.* and its business as well as information about the *Plans* and *Defendants.* We also considered the information that the parties exchanged through discovery

and during the mediation, *Defendants'* insurance coverage, and the relevant ERISA jurisprudence.

27.     All of this information provided us with a thorough understanding of the strengths and weaknesses of *Plaintiffs'* claims and the risks associated with further litigation.

28.     *Class Counsel* also relied upon their collective experience litigating and resolving other class actions, including ERISA class actions alleging that plan fiduciaries violated their duties by offering company stock as an investment in a company-sponsored retirement plan.

29.     In short, my co-counsel and I believe that this *Settlement* is fair and reasonable in light of the fact that it provides a substantial monetary recovery when weighed against the very real risk that the *Settlement Class* could recover nothing.

## THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

30.     As this *Court* has recognized, "Preliminary approval of a class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.' " *Davis v. J.P. Morgan Chase & Co.,* 775 F. Supp. 2d 601, 607-08 (W.D.N.Y. 2011) (quoting *Menkes v. Stolt–Nielsen S.A.,* 270 F.R.D. 80, 101 (D. Conn. 2010) and *In re Traffic Executive Association–Eastern Railroads,* 627 F.2d 631, 634 (2d Cir.1980)).

31.     Accordingly, preliminary approval is warranted where, as here, a proposed settlement is (a) the product of "serious, informed, non-collusive negotiations"; (b) has "no obvious deficiencies"; (c) does not "improperly grant preferential treatment to class representatives or segments of the class"; and (d) "falls within the range of possible approval." *Id.*

32.     As discussed above, the proposed settlement was reached only after years of contentious litigation, with the assistance of an able third-party mediator.  Collusion is not an issue.  There are, moreover, no obvious deficiencies in the *Settlement* – it is similar to the form and format of numerous ERISA settlements that have been approved over the course of the last several years.  In addition, the proposed *Settlement* is, in *Class Counsel's* view, favorable with respect to its terms and in light of the risks of continued litigation.

33.     Importantly, the *Plan of Allocation* is specifically designed to treat the losses of all members of the *Settlement Class* in exactly the same way, with no preferential treatment for class representatives or any segments of the *Settlement Class.*

34.     The $9.7 million comprising the *Class Settlement Amount* is well within the range of possible approval.  It represents more than 20 percent of *Plaintiffs'* damages estimate, and a *much* greater percentage of the *Kodak Defendants'* damages estimate.

35.     In light of the fact that continued litigation would have taken a very considerable amount of time, during which the *Settlement Class* (most of whom are retirees) would have had to wait for resolution of their claims, and the real risk that at the end of the day the *Settlement Class* might have recovered less, or might have recovered nothing at all, this proposed *Settlement* represents an outstanding result.

### *CLASS COUNSEL* BELIEVES THAT THE PROPOSED SETTLEMENT WILL SATISFY THE APPLICABLE FACTORS CONSIDERED BY COURTS IN THIS CIRCUIT <u>WHEN REVIEWING PROPOSED CLASS ACTION SETTLEMENTS FOR FINAL APPROVAL</u>

36.     While preliminary approval involves a "probable cause" type inquiry, the ultimate test of a *Settlement's* merit is in relation to the factors that the *Court* must consider for final approval.  *Class Counsel* are confident that the *Settlement* meets those standards.

37.     Before agreeing to the proposed *Settlement*, *Class Counsel* assessed its merits using various factors typically used by counsel in this type of case including the factors used by

courts in the Second Circuit to assess proposed class action settlements. *Class Counsel* believes that the proposed Settlement is fair, reasonable, and adequate when the applicable factors are considered. Those factors, set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d at 463 (2d Cir. 1974), include the following: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and  (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

38.    While the *Court* need not engage in an extensive analysis of each factor at this stage of the proceedings, a cursory review of each factor demonstrates the propriety of the *Parties'* request to seek dissemination of notice to the *Settlement Class.*

39.    The complexity, expense, and likely duration of the litigation justify preliminary approval of the *Settlement*. This *Action* has gone on for more than four years and will require significant expense and additional litigation should the *Settlement* not be approved.

40.    Indeed, fact discovery is not yet complete (including deposition discovery), and expert discovery has yet to commence. Class certification and dispositive motions in these cases are typically time-consuming endeavors as would the trial.   Further, given the current state of ERISA jurisprudence, any trial would have – in all likelihood – resulted in appeals by the non-prevailing parties.  It would certainly take even more years to obtain a final judgment through litigation.

41.     The reaction of the class to the *Settlement* has not yet been determined as *Class Notice* has not yet been sent.   However, all surviving named *Plaintiffs* and proposed class representatives support the *Settlement*.

42.     The stage of the proceedings and the amount of discovery completed justifies approval of the *Settlement*.   The *Parties* have exchanged a significant amount of discovery and financial information, have engaged in extensive motion practice, and engaged in formal mediation.

43.     The risks of establishing liability and damages also counsel approval of the *Settlement*.   Liability would be hotly contested should this *Action* continue to be litigated in the absence of the *Settlement* reached by the *Parties*, and critical caselaw governing the applicable standards remains unsettled.   While the Supreme Court' recent decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), eliminated the so-called "presumption of prudence" argument, certain dicta in that decision raises issues regarding the proper pleading requirements of an ERISA action regarding claims of imprudent investment in company stock have lent support to arguments by defendant fiduciaries in similar circumstances.

44.     Indeed, the Second Circuit recently affirmed dismissal of a suit against the fiduciaries of the Lehman Brothers retirement plan based on the *Dudenhoeffer* dicta. <u>Rinehart v. Lehman Bros. Holdings Inc.,</u> No. 15-2229, 2016 WL 1077009, at *2 (2d Cir. Mar. 18, 2016). While the *Lehman* court agreed that this *Court's* denial of *Defendants'* motion to dismiss was distinguishable (*Id.* at *4, n. 3), the *Dudenhoeffer* and *Lehman* decisions would no doubt have provided some support for arguments that *Defendants* would advance at summary judgment, trial and appeal.

45.     The risks of maintaining the class action through the trial justifies approval of the *Settlement* as well.   Based on my experience litigating class action cases, *Defendants* likely would have vigorously opposed class certification in the absence of this *Settlement*.   Indeed, much of *Defendants'* discovery was focused on confirming that *Plaintiffs* were aware of the financial condition of Kodak.   Thus, although *Plaintiffs* remain convinced they would prevail on the issue of class certification, the risk, expense and delay inherent to the class certification is eliminated by this *Settlement*.   As such, *Class Counsel* believes this factor counsels in favor of granting preliminary approval.

46.     *Defendants*' ability to withstand a greater judgment was not a factor in *Plaintiffs'* determination to agree to the *Settlement*.   Individually, the available insurance here exceeded *Plaintiffs'* damage estimates.   However, *Defendants* have asserted that should this case proceed, their damage analysis would be significantly lower than *Plaintiffs.*

47.     Nevertheless, the *Class Settlement Amount* of $9.7 million represents over 20% of *Plaintiffs'* damages calculation.   Had *Defendants* been successful in establishing that the date of imprudence (if any) was considerably closer to the bankruptcy filing, the maximum amount of damages that could have been established, even using *Plaintiffs'* methodology, would have been much lower.

48.     The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation strongly counsels in favor of approval of the *Settlement*.   As noted above, the $9.7 million to the *Settlement Class* as a result of this *Settlement* represents a significant recovery of the damages *Plaintiffs* might obtain after a trial on the merits, based on *Plaintiffs'* internal damage calculation.   Of course, this assumes that *Plaintiffs* would

have prevailed on liability completely, successfully defeated *Defendants'* affirmative defenses,

and convinced the *Court* to accept their damages model in full.

49.       Given the substantial risk of recovering less, or nothing at all, should the *Action*

proceed to trial, the *Settlement* represents an outstanding result.

50.       In addition, as discussed above, this *Settlement* was the product of extensive

negotiations between experienced counsel under the supervision of a respected mediator.

Certainly there was nothing collusive about it.

51.       Further, *Class Counsel* have developed a comprehensive understanding of the

merits of the case through our work on the case and had obtained sufficient information about the

strengths and weaknesses of the claims and defenses to make a reasoned judgment about the

desirability of settling the case the terms proposed.     In *Class Counsel's* view, the stage of

litigation and amount of discovery weigh in favor of preliminarily approving the *Settlement*.

### THE *COURT* SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES

52.       *Plaintiffs* seeks preliminary certification of the following *Settlement Class*:

> All Persons who were participants in or beneficiaries of the SIP at any
> time between January 1, 2010 to March 30, 2012, and whose accounts
> included investments in the Kodak Stock Fund, as well as all Persons
> who were participants in or beneficiaries of the ESOP at any time
> between January 1, 2010 to March 30, 2012.  Excluded are Defendants
> and their Immediate Family Members, any entity in which a Defendant
> has a controlling interest, and their heirs, Successors-in-Interest, or
> assigns (in their capacities as heirs, Successors-in-Interest, or assigns).

### THE PROPOSED *SETTLEMENT CLASS* MEETS THE REQUIREMENTS OF RULE 23(A)

53.       In *Class Counsel's* view the proposed *Settlement Class* satisfies the requirements

of Rule 23 for class certification.  Federal Rule of Civil Procedure 23(a) requires that (1) the

class is so numerous that joinder of all members is impracticable; (2) there are questions of law

11

or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

54.     In *Class Counsel's* view, the class is so numerous that joining all members is impracticable.   The ESOP alone had over 15,000 participants in 2011.   As a result, *Class Counsel* suggests that the *Action* satisfies the numerosity requirement.

55.     Second, there are questions of law or fact common to the *Settlement Class* because the issues presented in this case are about the *Defendants'* fiduciary responsibilities owed to all the *Plans'* participants who held Kodak stock as a retirement investment in the *Plans*. Thus, in *Class Counsel's* view, the commonality requirement is met.

56.     Third, *Plaintiffs'* claims are typical of the proposed *Settlement Class* because *Plaintiffs* and the *Settlement Class* seek to prove *Defendants'* breaches of fiduciary duty through an identical legal theory -- imprudently offering *Company Stock* as retirement investment in violation of ERISA.

57.     Fourth, in *Class Counsel's* view, *Plaintiffs* are adequate representatives because their interests are not in conflict with the *Settlement Class*.   Instead, *Plaintiffs* and members of the *Settlement Class* share the common goal of maximizing their recovery from *Defendants*.

### THE PROPOSED *SETTLEMENT CLASS* MEETS THE REQUIREMENTS OF RULE 23(B)

58.     *Class Counsel* also suggest that this *Action* meet the requirements of either Rule 23(b)(l) or 23(b)(2) for purposes of certifying a *Settlement Class*.

59.     Under Rule 23(b)(1)(B), a class may be certified if separate actions would create a risk of adjudications that would, as a practical matter, be dispositive of the other members who are not party to the proceedings or substantially impair or impede their ability to protect their

12

interests.  In *Class Counsel's* experience, this case is appropriate for class certification under Rule 23(b)(1)(B) because that rule is meant to cover cases in which participants and beneficiaries allege, on behalf of the whole, that a fiduciary has breached its duties.  That is exactly what *Plaintiffs* allege here.

60.     This *Action* is also appropriate for treatment under Rule 23(b)(l)(A) because separate actions would create a risk of incompatible standards of conduct for the defendants. Differing judgments regarding *Defendants'* fiduciary misconduct with respect to the *Plans* would hold *Defendants* to incompatible standards of conduct.

61.     Alternatively, this *Action* is also appropriate for treatment under Rule 23(b)(2) because *Defendants* have acted or refused to act on grounds that apply generally to the *Settlement Class.*  Indeed, *Defendants'* alleged fiduciary breaches affected the *Plans* as a whole and thus, invariably, affected each of the *Plans'* participants who held *Company Stock* during the *Class Period* – effectively the *Settlement Class* members.

## RULE 23(G) IS SATISFIED

62.     Finally, certifying a class requires the *Court*, under Rule 23(g), to examine the capabilities and resources of counsel for the class to determine whether they will provide adequate representation to the class.  Here, *Class Counsel* have substantial experience handling class actions and other complex litigation, including numerous similar ERISA class actions.

63.     For example, my Firm was recently appointed to the executive committee prosecuting the claims in the consolidated action styled *In re 2014 RadioShack ERISA Litig.*, Master File No. 4:14-cv-959-O (N.D. Tex.) and served as class counsel in the action styled *Hellmann v. Cataldo, et al.,* No. 12-cv-2177 (E.D. Mo.)(in ERISA action, obtaining final approval for $800,000 settlement class).

13

64.     Izard Nobel LLP, the other firm comprising *Class Counsel,* has served as lead or co-lead counsel in numerous ERISA class actions, including *In re AOL Time Warner, Inc. Sec. and ERISA Litig.,* No. 02-CV-1500 (S.D.N.Y.)(obtaining $100 million recovery for settlement class) and *In re Merck & Co., Inc. Securities, Derivative & ERISA Litig.,* No. 05 1157 (D. N.J.)(serving as chair of lead counsel committee and obtaining $49.5 million settlement).

65.     Indeed, the *Court* has already made a preliminary determination that *Class Counsel* meet or exceed the requirements of Fed.R.Civ.P. 23(g).  *See* Dkt. No. 43, Dkt. No. 92.[2]

66.     Importantly, *Class Counsel* have been involved in all aspects of the prosecution and resolution of this *Action.*  Indeed, I was the point person at F&F regarding the pre-suit investigation of *Defendants.*

67.     In short, *Class Counsel* have done substantial work to investigate potential claims in the *Action* and have vigorously pursued the interests of the *Settlement Class* throughout the litigation.

68.     For these reasons, the *Court* should conditionally certify the *Settlement Class* for settlement purposes.

### THE *COURT* SHOULD APPROVE THE PROPOSED *CLASS NOTICE*, THE *PLAN OF ALLOCATION* AND THE CLAIMS PROCEDURE

69.     Submitted contemporaneously herewith is a true and correct copy of the proposed *Class Notice* to be sent to members of the *Settlement Class* and published on a website maintained by the *Settlement Administrator*.

---

[2] Of course, should the *Court* deem such submissions necessary, *Class Counsel* are happy to provide the *Court* with complete firm resumes.

70.     The proposed *Class Notice* provides detailed information about the *Settlement*, including a comprehensive summary of its term and the terms of the releases of claims as well as the attorneys' fees, expenses and the *Case Contribution Award* sought by *Plaintiffs*.

71.     In *Class Counsel's* view, *Plaintiffs'* proposed means of class notice meets or exceeds the standards for due process and Rule 23.  *Class Counsel* believe that a direct first-class mailing to each *Settlement Class* member's last known address in addition to an Internet website presence will result in a very high percentage of actual notice to the *Settlement Class* members, ensuring that the proposed *Class Notice* and overall notice plan meet the mandates of due process and the requirements of Rule 23(e)(l)(B).

72.     *Class Counsel* also modeled the proposed *Plan of Allocation* on the plans that were used and approved in similar ERISA cases involving claims about losses from holding stock in a company-sponsored retirement plan.   Courts around the country have repeatedly approved similar plans of allocation in this type of ERISA case.

73.     Indeed, the *Plan of Allocation* calls for the automatic deposit of the *Settlement's* proceeds into eligible *Settlement Class* members account for all current participants in the SIP, and for former participants in the SIP whose allocation is $5000 or more (former participants whose allocations are below $5000 will receive checks).

74.     Importantly, the *Plan of Allocation* does not require any individual complete claim forms or otherwise produce documents in order to benefit from the *Settlement*.  In effect, the *Plan of Allocation* calls for the expeditious distribution of the *Settlement's* funds.

75.     In order to facilitate administration of the *Settlement*, including dissemination of *Class Notice,* the *Settlement Agreement* provides for the appointment of a *Settlement Administrator.*

15

76.     After seeking and receiving bids from multiple experienced claims administrators, *Class Counsel* determined that A.B. Data, Ltd. would be the most appropriate claims administrator to assist in the administration of this *Settlement*.

77.     This selection was based on their quote and experience in administering analogous ERISA actions, as well as their familiarity with *Class Counsel* in administering other ERISA class actions.

78.     The *Kodak Defendants* do not oppose this selection.

79.     In short, based on our collective experience, *Class Counsel* believes that preliminary approval of the *Settlement* should be granted, as it is fair, reasonable and adequate, and confers a substantial benefit on the *Settlement Class*. Further, *Class Counsel* believes that A.B. Data should be appointed as the *Settlement Administrator*.

### ATTORNEYS' FEES, EXPENSES, AND THE *CASE CONTRIBUTION AWARDS*

80.     As set forth in the *Settlement Agreement*, *Class Counsel* shall petition the *Court* for reimbursement of expenses, an award of attorneys' fees, and *Plaintiffs' Case Contribution Awards*.  Pursuant to the *Settlement Agreement*, *Class Counsel* shall not seek more than one-third of the *Settlement* as an award for attorneys' fees, plus reimbursement of out-of-pocket expenses.

81.     The *Class Notice* will specifically inform *Settlement Class* members that such a request for fees and expenses will be made.  Under the briefing schedule proposed by *Class Counsel,* the motion for award of fees, expenses, and *Plaintiffs' Case Contribution Awards,* and all supporting papers, must be filed 45 days prior to the *Fairness Hearing,* giving class members ample time to review them prior to the scheduled date for filing objections (21 days prior to the hearing).

82.     All of the motion papers will be available to *Settlement Class members* on the dedicated website that will be established by the *Settlement Administrator*.

<u>**CONCLUSION**</u>

83.     *Plaintiffs* and *Class Counsel* respectfully submit that the *Settlement* is an excellent result for the *Settlement Class* in this ERISA *Action*.  *Class Counsel* recommend the *Settlement* as fair, reasonable, and adequate, and they request that this *Court*: (1) preliminarily approve the *Settlement Agreement*, (2) conditionally certify the proposed class and appoint *Class Counsel* (3) approve *Plaintiff's Class Notice* and related notice plan, and (4) set a date for a *Fairness Hearing* at least 121 days after entry of the *Preliminary Approval Order*.

I declare under penalty of perjury that the foregoing is true and correct.  This Declaration was executed on April 22, 2016, in King of Prussia, Pennsylvania.


                                        */s/ Gerald D. Wells, III*
                                        Gerald D. Wells, III