# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

IN RE EASTMAN KODAK ERISA
LITIGATION

THIS DOCUMENT RELATES TO:
ALL ACTIONS

MASTER FILE NO. 6:12-CV-06051-DGL

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT (*"Settlement Agreement"*)[1] is entered into by and among (i) *Plaintiffs* individually and on behalf of the *Settlement Class* and the *Plans*, and (ii) various of the *Defendants* in the above-captioned action.

RECITALS

WHEREAS, *In re Eastman Kodak ERISA Litigation*, Civil Action No. 6:12-cv-06051-DGL, United States District Court for the Western District of New York (Hon. David Larimer), was commenced asserting various claims for relief under the Employee Retirement Income Security Act of 1974, as amended (*"ERISA"*), against *Defendants*;

WHEREAS, *Defendants* have contested *Plaintiffs'* claims from the outset, including filing motions to dismiss, which were fully briefed and argued by the *Parties*;

WHEREAS, the *Court* denied *Defendants'* motions to dismiss in their entirety on December 17, 2014, and thereafter the *Parties* engaged in significant discovery practice;

WHEREAS, *Defendants* continue to deny all liability with respect to any and all claims alleged in the *Action*;

WHEREAS, the *Parties* reached an agreement in principle for a settlement in this *Action*. This agreement was only reached after lengthy settlement negotiations and an all-day mediation, held on February 24, 2016, with David Geronemus of JAMS, who is experienced in mediating ERISA and other complex class actions; and

WHEREAS, the *Parties* desire to promptly and fully resolve and settle with finality the *Action* without further litigation;

---

[1] Italicized words are defined herein.

NOW, THEREFORE, the *Parties*, in consideration of the promises, covenants, and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

1. DEFINITIONS

As used in this *Settlement Agreement*, italicized and capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1. *"Action"* shall mean *In re Eastman Kodak ERISA Litigation*, Civil Action No. 6:12-cv-06051-DGL (W.D.N.Y.).

1.2. *"Affiliate"* shall mean any entity that owns or controls, is owned or controlled by, or is under common ownership with, a *Person*.

1.3. *"Agreed Expenses"* shall have the meaning set forth in Section 9.2.3 hereof.

1.4. *"Agreement Execution Date"* shall mean the date on which the final signature is affixed to this *Settlement Agreement*.

1.5. "*BNY Mellon Defendants*" shall mean collectively Boston Safe Deposit & Trust Company and The Bank of New York Mellon.

1.6. *"CAFA"* shall mean the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715.

1.7. *"CAFA Notice"* shall mean notice of this proposed *Settlement* to the appropriate federal and state officials.

1.8. *"Case Contribution Awards"* shall mean the monetary amount which may be awarded to *Plaintiffs* by the *Court* in recognition of the *Plaintiffs'* assistance provided in the prosecution of this *Action*.

1.9. *"Class Counsel"* shall mean Izard Nobel LLP and Connolly Wells & Gray, LLP.

1.10. *"Class Exemption"* means the Prohibited Transaction Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended.

1.11. *"Class Notice"* shall mean the following forms of notice appended to the form of *Preliminary Approval Order* attached hereto as *Exhibit I*.

1.11.1. *"Long-Form Notice"* shall mean the notice which is to be posted on the *Settlement Website* substantially in the form of *Exhibit B* to the form of *Preliminary Approval Order* attached hereto as *Exhibit I*.

1.11.2. *"Mail Notice"* means and refers to the notice which is to be mailed to

members of the *Settlement Class* substantially in the form of *Exhibit A* to the form of *Preliminary Approval Order* attached hereto as *Exhibit I*.

1.12. *"Class Period"* shall mean the period from January 1, 2010 to March 30, 2012.

1.13. *"Class Settlement Amount"* shall mean the aggregate sum of nine million, seven hundred thousand dollars in United States currency ($9,700,000.00).

1.14. *"Company"* shall mean the Eastman Kodak Company and its subsidiaries and *Affiliates*.

1.15. *"Company Stock"* shall mean any shares of stock in the Eastman Kodak Company.

1.16. *"Complaint"* shall mean the Consolidated Class Action Complaint filed in the *Action* on September 14, 2012.

1.17. *"Court"* shall mean the United States District Court for the Western District of New York.

1.18. *"Defendants"* shall mean, collectively, the *Kodak Defendants* and the *BNY Mellon Defendants*.

1.19. *"Effective Date"* shall mean the date on which the *Final Order* becomes *Final* or, in the event that the *Court* enters an order and final judgment in a form other than that provided as *Exhibit 2* (*"Alternative Judgment"*) and none of the *Parties* elect to terminate this *Settlement*, the date such *Alternative Judgment* becomes *Final*.

1.20. *"ERISA"* means the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.21. *"Escrow Agent"* shall be the same entity selected to serve as *Settlement Administrator*.

1.22. *"Fairness Hearing"* shall have the meaning set forth in Section 2.1.5 hereof.

1.23. *"Final"* shall mean, with respect to any judicial ruling or order approving this *Settlement*, that (i) the time has expired to file an appeal, motion for rehearing, or petition for writ of certiorari with respect to such judicial ruling or order with no timely appeal, motion for hearing or petition for writ of certiorari having been made, as the case may be; or (ii) a timely appeal has been taken from the judicial ruling or order and the judicial ruling or order has been affirmed with no further right of appeal or rehearing because the time has expired or a petition for rehearing and/or a writ of certiorari has been denied; or (iii) if, following an appeal, a timely petition for rehearing and/or a writ of certiorari has been granted, the judicial ruling or order has been affirmed.

1.24.   *"Final Order"* shall have the meaning set forth in Section 2.1.5 hereof and be substantially in the form attached hereto as *Exhibit 2.*

1.25.   *"Immediate Family Members"* shall consist of spouses and children.

1.26.   *"Independent Fiduciary"* means a fiduciary of the Plans retained by the *Kodak Defendants* that has no "relationship to" or "interest in" (as those terms are used in the *Class Exemption*) the *Plaintiffs* or *Defendants*, to evaluate the fairness of the *Settlement* to the *Plan* and to issue the release set forth in Section 3.1 on the *Plan's* behalf.

1.27.   *"Individual Defendants"* shall mean the seven former or current Kodak executives and/or employees who served on the *Investment Committees* during all or part of the *Class Period*:  Frank S. Sklarsky, Antoinette P. McCorvey, Robert L. Berman, William G. Love, Patricia A. Obstarczyk, Joyce P. Haag, and Laura G. Quatela.

1.28.   *"Investment Committees Defendants"* shall mean The Eastman Kodak Savings and Investment Plan Committee (*"SIPCO"*) and The Kodak Employee Stock Option Ownership Plan Committee (*"SOPCO"*).

1.29.   *"Kodak Defendants"* shall mean the *Individual Defendants* and the *Investment Committees Defendants*.

1.30.   *"Kodak Stock Fund"* shall mean the *Company Stock* investment option offered by the *SIP*.

1.31.   *"Parties"* shall mean *Plaintiffs* and *Defendants*.

1.32.   *"Person"* shall mean an individual, partnership, corporation, governmental entity, or any other form of entity or organization.

1.33.   *"Plaintiffs"* shall mean Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni, and Sue Toal.

1.34.   *"Plaintiffs' Counsel"* shall mean *Class Counsel* and Berger & Montague, P.C., Blitman & King LLP, Faruqi & Faruqi, LLP, Gainey McKenna & Egleston, Kessler Topaz Melzer & Check, LLP, and Wolf Haldenstein Adler Freeman & Herz LLP.

1.35.   *"Plans"* shall mean the Eastman Kodak Employees' Savings and Investment Plan (the *"SIP"*) and The Kodak Employee Stock Ownership Plan (the *"ESOP"*).

1.36.   *"Plan of Allocation"* shall mean the Plan of Allocation approved by the *Court* as contemplated by Article 2 hereof and described in Section 8.2.3 hereof.  A proposed Plan of Allocation is attached hereto as *Exhibit 3.*

1.37.   *"Preliminary Approval Order"* shall have the meaning set forth in Section 2.1.1 hereof and be in the form attached hereto as *Exhibit 1*.

1.38.   *"Released Defendants' Claims"* shall mean all claims relating to the institution or prosecution of the *Action*, or the settlement of any *Released Plaintiffs' Claims*.

1.39.   *"Released Parties"* shall mean each of the *Defendants* and each of the *Defendants'* respective past, present, and future directors, officers, fiduciaries, employees, employers, partners, principals, agents, members, independent contractors, registered *Representatives*, underwriters, issuers, insurers, co-insurers, insureds, reinsurers, controlling shareholders, attorneys, accountants, auditors, investment bankers, advisors, consultants, trustees, investment managers, fiduciaries, committee members, personal *Representatives*, predecessors, service providers, successors, *Successors-in-Interest*, parents, subsidiaries, divisions, assigns, heirs, executors, administrators, associates, related or *Affiliated* entities, and *Immediate Family Members*.  Also included in this definition is the *Company* and the *Plans'* trustees, *BNY Mellon Defendants*, T. Rowe Price, and any of their respective subsidiaries, affiliates, predecessor companies, affiliates and subsidiaries, as well as their respective directors, officers, employees, agents, attorneys and/or *Representatives*, and against anyone else who could be deemed a fiduciary of the *SIP* or the *ESOP*

1.40.   *"Released Plaintiffs' Claims"* shall mean any and all claims, demands, rights, liabilities, and causes of action of every nature or description whatsoever, fixed or contingent, known or unknown, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, asserted or that might or could have been asserted in any forum (i) by *Plaintiffs* individually, (ii) by *Plaintiffs* on behalf of the *Plans* or by their participants, fiduciaries, or beneficiaries, (iii) by the *Settlement Class*, and (iv) by the *Plans* themselves or by any participant, fiduciary, or beneficiary in or of the Plans on behalf of the Plans, against any or all of the *Released Parties* that: (a) were brought or could have been brought in the *Action* and arise out of the same or substantially similar facts, circumstances, situations, transactions, or occurrences as those alleged in the *Action* during the *Class Period*; or (b) were brought or could have been brought under *ERISA* with respect to the *Plans'* offering or holding of *Company Stock* during the *Class Period,* including, but not limited to the offering or retaining of the *Kodak Stock* Fund in the *SIP*, or *Company Stock* in the *ESOP* as an investment option, or the investment, acquisition, retention, or disposition of the *Kodak Stock Fund* (or the exercise of any right ancillary or appurtenant to ownership of the *Kodak Stock Fund*) in the *SIP* or *Company Stock* in the *ESOP* under the *Plans*, or at a participant's or beneficiary's direction by or through the *Plans*.

1.41.   *"Releases"* shall mean the releases and covenants not to sue set forth in Articles 3 and 4 hereof.

1.42.   *"Representatives"* shall mean attorneys, agents, directors, officers or employees.

1.43. *"Review Proceeding"* means an appeal, motion for reargument, motion for rehearing, petition for a writ of certiorari to the Supreme Court of the United States or other writ.

1.44. *"Settlement"* shall mean the settlement to be consummated under this *Settlement Agreement.*

1.45. *"Settlement Administrator"* means the firm retained by *Class Counsel*, after consultation with the *Kodak Defendants* who shall not unreasonably withhold approval of *Class Counsel's* selection, to administer the *Settlement*. The *Settlement Administrator* shall administer the *Settlement* subject to the jurisdiction of the *Court.*

1.46. *"Settlement Agreement"* shall mean this Class Action Settlement Agreement.

1.47. *"Settlement Class"* shall mean all *Persons* who were participants in or beneficiaries of the *SIP* at any time between January 1, 2010 to March 31, 2012, and whose accounts included investments in the *Kodak Stock Fund*, as well as all *Persons* who were participants in or beneficiaries of the *ESOP* at any time between January 1, 2010 to March 31, 2012. Excluded are *Defendants* and their *Immediate Family Members*, any entity in which a *Defendant* has a controlling interest, and their heirs, *Successors-in-Interest*, or assigns (in their capacities as heirs, *Successors-in-Interest*, or assigns).

1.48. *"Settlement Expenses"* shall have the meaning set forth in Section 8.1 hereof.

1.49. *"Settlement Fund"* shall mean the *Class Settlement Amount* deposited with the *Escrow Agent* and any interest earned thereon.

1.50. *"Settlement Proceeds"* shall mean the balance of the *Settlement Fund* after satisfaction of attorneys' fees and expenses pursuant to Section 10.1 hereof, *Case Contribution Awards* pursuant to Section 10.2 hereof, and any other *Settlement Expenses* pursuant to Section 8.1 hereof.

1.51. *"Settlement Website"* means the website to be established or maintained by the *Settlement Administrator* where the *Settlement Class* members can obtain copies of the *Long-Form Notice*, this *Settlement Agreement* and the *Plan of Allocation*, as described in the *Mail Notice.*

1.52. *"SIP Recordkeeper"* shall mean T. Rowe Price or any successor.

1.53. *"Successor-in-Interest"* shall mean a *Person's* estate, Representatives, heirs, successors, or assigns, including successors or assigns that result from corporate mergers or other structural changes.

1.54. *"XL Insurance"* shall mean XL Specialty Insurance Company.

6

2.    CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE *SETTLEMENT*

The *Parties* shall have the following obligations, and the *Settlement* is contingent on the following conditions in Sections 2.1 through 2.6 hereof, unless waived in writing by the *Parties*.

2.1.    <u>Condition #1: Court Approval.</u> The *Court* will be notified as soon as practicable of the execution of the *Settlement Agreement*, of the relevant terms regarding the effectuation of the *Settlement*. The *Parties'* rights and obligations under the *Settlement* are contingent upon and subject to prior *Final* approval of the *Court* and the *Final Order* becoming *Final*. The *Parties* shall seek from the *Court* (i) preliminary approval of the terms of the *Settlement*, (ii) preliminary certification of the *Settlement Class* pursuant to Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2), (iii) approval of the forms of *Class Notice* of the *Settlement*, and (iv) the scheduling of a hearing date for *Final* approval of the *Settlement* (including the *Plan of Allocation*) as fair, reasonable, and adequate, with appropriate time allowed for objection(s) from the *Settlement Class*.

2.1.1.    <u>Motion for Preliminary Approval of Settlement, Class Certification, and Notices.</u> The *Plaintiffs* shall seek an order preliminarily approving the *Settlement* and the *Parties* shall, in good faith, take reasonable steps to (i) secure expeditious *Court* entry of the *Preliminary Approval Order* and (ii) seek the scheduling of the *Fairness Hearing*, described in Section 2.1.5 hereof, no sooner than ninety (90) calendar days after the mailing of the *Mail Notice* in accordance with Section 2.1.4 hereof. The *Parties* agree that *Plaintiffs'* motion for preliminary approval shall be filed on or before April 22, 2016.

2.1.2.    <u>CAFA Notice.</u> Within five (5) business days after the filing of the motion for preliminary approval, the *Kodak Defendants* shall prepare and provide *CAFA Notices* to the U.S. Department of Labor and the Attorneys General of the United States and of all states in which members of the *Settlement Class* reside (the "*CAFA Notice Recipients*"). The cost and expense associated with providing *CAFA Notice* shall be borne solely by the *Kodak Defendants*. The *Preliminary Approval Order* shall require that any *CAFA Notice Recipient* who wishes to object to this *Settlement* or otherwise be heard concerning this *Settlement* shall timely inform the *Court* in writing of his, her or its intent to object to this *Settlement* and/or to appear at the *Final Approval Hearing* by following the procedures, including meeting all applicable deadlines, set forth in the *Class Notice* as to *Class Members*. Any *Person* objecting to the *Settlement* or any aspect thereof must set forth any and all objections to this *Settlement* (legal and/or factual) and include any supporting papers and arguments.

2.1.3.    <u>Class Certification.</u> In connection with the proceedings on preliminary and *Final* approval of the proposed *Settlement*, *Plaintiffs*, through *Plaintiffs' Counsel*, will seek orders (preliminary and final, respectively) certifying the *Settlement Class* pursuant to Federal Rule of Civil Procedure

23(b)(1), and/or 23(b)(2), and *Defendants* shall consent to certification of the *Settlement Class* for purposes of this *Settlement* only and for no other purpose. The *Parties* agree that the *Settlement Class* should be treated as a mandatory or non-opt-out class. The *Parties* also agree that if the *Court* does not enter the *Final Order*, no *Settlement Class* will be deemed to have been certified by or as a result of this *Settlement Agreement*, and the *Action* will for all purposes with respect to the *Parties* revert to its status as of February 24, 2016. In such event, *Defendants* will not be deemed to have consented to the certification of any class, the agreements and stipulations in this *Settlement Agreement* concerning class definition or class certification shall not be used as evidence or argument to support class certification or class definition, and *Defendants* will retain all rights to oppose certification of the *Settlement Class.*

2.1.4.  <u>Issuance of *Class Notice*.</u>  As ordered by the *Court* in its *Preliminary Approval Order*, *Class Notice* shall be disseminated to the *Settlement Class*, which shall be provided with the opportunity to object to the certification of the *Settlement Class*, the *Settlement*, the *Case Contribution Awards*, and the attorneys' fees, costs and expenses sought by *Plaintiffs' Counsel*. On the timetable and in the manner set by the *Court* in the *Preliminary Approval Order*, the *Settlement Administrator* shall disseminate notice to the *Settlement Class*. The *Investment Committee Defendants* shall use best efforts (including, but not limited to, providing all such data in their own custody and control), to obtain and provide to the *Settlement Administrator* or other noticing agent retained by *Class Counsel* a list of the names and last known addresses of members of the *Settlement Class* in electronic format. All other costs relating to the issuance of *Class Notice* shall be paid out of the *Settlement Fund*. If the *Settlement* is not approved, the actual expended cost of notice shall not be refunded.

2.1.5.  <u>The *Fairness Hearing*.</u>  Upon entry of the *Preliminary Approval Order*, the *Parties* contemplate that the *Court* will schedule and then conduct a hearing at which it will consider whether the *Settlement* is fair, reasonable, and adequate ("*Fairness Hearing*") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, the *Plaintiffs* will request that the *Court* determine, on or after the *Fairness Hearing*: (i) whether to enter judgment finally approving the *Settlement* (which judgment is referred to herein as the "*Final Order*"); (ii) whether the distribution of the *Settlement Proceeds* as provided in the *Plan of Allocation* should be approved or modified; (iii) whether *Class Counsel* are entitled to an award of attorneys' fees, costs, and expenses, and the amount of those fees, costs, and expenses, as contemplated by Article 10 of this *Settlement Agreement*; and (iv) whether the Plaintiffs shall be awarded a *Case Contribution Award*. The *Parties* agree to support entry of a *Final Order*, including through any *Review Proceeding*, as contemplated by clause (i) of this Section 2.1.5 and as attached hereto as *Exhibit 2*. *Defendants* will not take

any position with respect to the matters described in clauses (ii), (iii) or (iv) of this Section 2.1.5, so long as disposition of those matters is in accordance with the provisions of Articles 8 and 10 of this *Settlement Agreement*.  The *Parties* covenant and agree that they will reasonably cooperate with one another in obtaining the *Final Order* as contemplated herein at the *Fairness Hearing* and will not do anything inconsistent with this *Settlement Agreement* in seeking to obtain the *Final Order*.

2.2.   <u>Condition #2: Dismissal of the *Action*.</u>  The *Final Order* will seek dismissal with prejudice of the *Action*.

2.3.   <u>Condition #3: Finality of *Final Order*.</u>  The *Final Order* must be *Final.*

2.4.   <u>Condition #4: *Independent Fiduciary*.</u>  Pursuant to Prohibited Transaction Exemption 2003-29, the *Kodak Defendants* intend to submit the *Settlement* to an *Independent Fiduciary* for approval, along with the agreement by the *Independent Fiduciary* to agree to and execute the releases set forth in this *Agreement* on behalf of the *Plans*.  The *Kodak Defendants* shall request that the *Independent Fiduciary* make any and all determinations necessary to assess the applicability of the *Class Exemption* and whether to issue the release set forth in Section 3.1 on behalf of the *Plans*.  The *Kodak Defendants* are responsible for all fees and expenses of the *Independent Fiduciary* except that Plaintiffs shall contribute the amount of two thousand, five hundred dollars ($2,500.00) for the *Independent Fiduciary's* costs, which contribution shall be considered a *Settlement Expense*.  All *Parties* shall cooperate in providing information to the *Independent Fiduciary* as requested.  The report of the *Independent Fiduciary's* review of the *Settlement* will be submitted to the *Parties* and shall be filed with the *Court* on the timetable and in the manner set by the *Court* in the *Preliminary Approval Order*.  The *Kodak Defendants* have the right to terminate the *Settlement* by providing to *Class Counsel* written notice of their election to do so within ten (10) business days after receiving the report of the *Independent Fiduciary* if (i) the *Independent Fiduciary* has not approved the *Settlement* in accordance with the *Class Exemption* or stated that, in the judgment of the *Independent Fiduciary*, the *Settlement* would constitute a prohibited transaction under Section 406 of *ERISA*; or (ii) the *Plans*, acting by and through the *Independent Fiduciary*, have not agreed in writing to grant the release set forth in Section 3.1 upon the *Effective Date*.  The *Kodak Defendants*, in their sole discretion, may waive this condition.

2.5.   <u>Condition #5: Funding of *Class Settlement Amount*.</u>  Within ten (10) business days after the date of entry of the *Preliminary Approval Order* and upon receipt by *XL Insurance* and the *BNY Mellon Defendants* from *Class Counsel* or the *Settlement Administrator* of wiring instructions for the *Settlement Funds*, (a) *XL Insurance* shall deposit the sum of nine million, six hundred twenty-five thousand dollars ($9,625,000), and (b) the *BNY Mellon Defendants* shall deposit the sum of seventy-five thousand dollars ($75,000), into the account established by the *Escrow Agent*, which payments shall together constitute full and complete satisfaction of any claims that were or could have been asserted in the *Action*.  If

for any reason either *XL Insurance* and/or the *BNY Mellon Defendants* do not make their respective payments, or do so in an untimely fashion, or not in the amount specified, none of the *Kodak Defendants* or the *Company* shall be liable to *Plaintiffs* and/or to the *Settlement Class* for any portion of that $9.7 million, or for any consequential loss due to failure of *XL Insurance* and the *BNY Mellon Defendants* to make such payment. And, if for any reason *XL Insurance* does not make its payments, or does so in an untimely fashion, or not in the amount specified, none of the *BNY Mellon Defendants* shall be liable to *Plaintiffs* and/or to the class for any portion of that $9.625 million, or for any consequential loss due to failure of *XL Insurance* to make such payment.

2.6.   Condition #6: Resolution of any *CAFA* objection.   In the event that any recipient of the *CAFA Notice* objects to and requests material modifications to the *Settlement*, *Plaintiffs* agree to cooperate and work with the *Kodak Defendants* to overcome such objection(s) and requested material modifications but have no obligation to alter any material term or condition of the *Settlement*.   In the event such objection(s) or requested material modifications are not overcome, *the Kodak Defendants* shall have the right to terminate the *Settlement Agreement* pursuant to its applicable procedures.

3.   RELEASES

3.1.   Release of *Released Parties.*   Upon occurrence of the *Effective Date*, the *Plaintiffs*, all *Settlement Class* members, the *Plans* and all participants, fiduciaries, and beneficiaries in or of the *Plans*, and all *Successors-in-Interest* of any of the foregoing shall be deemed to have, and by operation of the *Final Order* shall have, fully, finally, and forever released, and are forever barred from the prosecution of, any and all *Released Plaintiffs' Claims* against any and all of the *Released Parties*, except that the release shall not preclude any action or claim related to the implementation and/or enforcement of the *Settlement Agreement.*

3.2.   Reciprocal Releases among *Released Parties.*   Upon the *Effective Date*, each *Released Party* absolutely and unconditionally releases and forever discharges each and every other *Released Party* from any and all claims, including claims for contribution, subrogation, and/or indemnity, relating to *Released Defendants' Claims*, but excluding any claims for indemnity that any *Individual Defendant* may have against the *Company* that do not pertain or relate to the *Action*.

3.3.   Release of the *Plaintiffs*, the *Plans*, the *Settlement Class* and *Plaintiffs' Counsel.*   Upon the *Effective Date*, each *Released Party* shall be deemed to have, and by operation of the *Final Order* shall have, fully, finally, and forever released, and are forever barred from the prosecution of, any and all *Released Defendants' Claims* against any and all of the *Plaintiffs*, all *Settlement Class* members, the *Plans* and all participants, fiduciaries, and beneficiaries in or of the *Plans*, *Plaintiffs' Counsel*, and all *Successors-in-Interest* of any of the foregoing, except that the release shall not preclude any action or claim related to the implementation and/or enforcement of the *Settlement Agreement.*

10

3.4.    Scope of *Releases*.

    3.4.1.  The *Releases* set forth in this Article 3 hereof, and as approved by the *Court* as described herein, are not intended to include the release of any rights or duties arising directly out of this *Settlement Agreement*, including the express warranties and covenants contained herein.

    3.4.2.  The *Releases* set forth in this *Settlement Agreement*, and as approved by the *Court* as described herein, shall be effective as a bar to any and all currently unsuspected, unknown, partially known or known claims related to and within the scope of the express terms and provisions of the *Released Plaintiffs' Claims* and *Released Defendants' Claims*. Accordingly, *Plaintiffs* hereby expressly waive, on their own behalf and on behalf of the *Plans* and all participants, fiduciaries, and beneficiaries in or of the *Plans*, *Defendants* and the *Released Parties* hereby expressly waive, on their own behalf and on behalf of the *Released Parties*, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code, or by any similar, comparable, or equivalent law of any state or territory of the United States with regard to *Released Plaintiffs' Claims* and *Released Defendants' Claims.* Section 1542 reads in pertinent part:

        **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The *Parties* hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and any similar, comparable, or equivalent law of any state or territory of the United States, was separately bargained for and that neither *Plaintiffs*, nor *Defendants*, nor the *Released Parties* would consent to this *Settlement Agreement* unless it included a broad release of all unknown claims. Each expressly agree that all release provisions in the *Settlement Agreement* shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected or future claims, demands, and causes of action. *Plaintiffs* assume for themselves on their own behalf and on behalf of the *Plans* and the participants, fiduciaries, and beneficiaries in or of the *Plans*, the risk of his, her, or its respective subsequent discovery or understanding of any matter, fact, or law, that, if now known or understood, would in any respect have affected his, her, or its entering into this *Settlement Agreement*.

4.      COVENANTS

Upon the occurrence of the *Effective Date*, the *Parties* covenant and agree as follows:

    4.1.    Covenants Not To Sue.

4.1.1.  *Plaintiffs*, *Settlement Class* members, *Plaintiffs' Counsel*, and their *Successors-in-Interest*, individually and on behalf of all *Settlement Class* members, the *Plans*, and all participants, fiduciaries, and beneficiaries in or of the *Plans*, covenant and agree (i) not to file or maintain against any *Released Parties* or the *Plans* any claim released under Article 3 hereof; and (ii) that the covenants and agreements herein shall be a complete defense to any such claims against any of the respective *Released Parties* and the *Plans*.  Nothing in this *Settlement Agreement* precludes *Settlement Class* members from receiving any benefits under the terms of the *Plans* to which they are otherwise entitled.

4.1.2.  *Released Parties* covenant and agree (i) not to file or maintain against any other *Released Party* any claim released under Article 3 and (ii) that the covenants and agreements herein shall be a complete defense to any such claims against any of the respective *Released Parties* with respect to the released claims.

4.1.3.  *Defendants*, and their *Successors-in-Interest*, covenant and agree (i) not to file or maintain against any *Plaintiff(s)*, *Plaintiffs' Counsel*, or *Class Counsel* any claim arising from or related to the prosecution or resolution of this *Action* and stipulate and agree that the covenants and agreements herein shall be a complete defense to any such claims against any *Plaintiff(s)*, *Plaintiffs' Counsel*, or *Class Counsel*.

4.2.  <u>Cooperation</u>.  *The Kodak Defendants* shall use reasonable best efforts to provide the *Settlement Administrator* or other noticing agent retained by *Class Counsel*, within twenty-one (21) calendar days of the execution of the *Settlement Agreement*, the names and last known addresses of the *Settlement Class* in electronic format (including, but not limited to, providing all such data in their own custody and control), and shall timely respond to any reasonable written requests for accessible data in the custody or control of the *Company* or the trustees or recordkeepers (past or present) of the *Plans* necessary to effectuate notice and implement, enforce, or determine the administrability of a plan of allocation.  *The Kodak Defendants* shall take reasonable steps to ensure the data provided is complete as it exists and is retrievable on the applicable systems.  Neither *Plaintiffs* nor *Plaintiffs' Counsel* will be responsible or liable in any way for the content or accuracy of any information provided by the *Kodak Defendants*.  The *Parties* shall in good faith attempt to address any timely-filed objection to the *Settlement*, any objection or concern raised by the *Independent Fiduciary*, and any objection or concern raised by the Department of Labor, including, to the extent reasonably necessary and practicable, by promptly supplying any non-privileged information in their possession that has been reasonably requested.

4.3.  <u>Taxation of *Class Settlement Amount*</u>.  *Plaintiffs* acknowledge on their own behalf, and on behalf of the *Settlement Class*, that the *Released Parties* have no responsibility for any taxes due on funds once deposited in the *Settlement Fund* or that *Plaintiffs' Counsel* receive from the *Settlement Fund*, should any be awarded

pursuant to Article 10 hereof.  Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the *Settlement Fund*.

5.     REPRESENTATIONS AND WARRANTIES

5.1.     *Plaintiffs*' Representations and Warranties.

      5.1.1.     *Plaintiffs* represent and warrant that they have not assigned or otherwise transferred any interest in any *Released Plaintiffs' Claims* against any *Released Party*, and further covenant that they will not assign or otherwise transfer any interest in any *Released Plaintiffs' Claims*; and

      5.1.2.     Pursuant to Articles 3 and 4 hereof, *Plaintiffs* represent and warrant that upon the occurrence of the *Effective Date* they shall have no surviving claim or cause of action against any of the *Released Parties* or the *Plans* with respect to *Released Plaintiffs' Claims*.

5.2.     *Parties*' Representations and Warranties.  The *Parties*, and each of them, represent and warrant:

      5.2.1.     That they are voluntarily entering into this *Settlement Agreement* as a result of arm's-length negotiations among their counsel, that in agreeing to this *Settlement Agreement* they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and that, except as expressly provided herein, they have not been influenced to any extent whatsoever in executing this *Settlement Agreement* by any representations, statements, or omissions pertaining to any of the foregoing matters by any *Party* or by any *Person* representing any *Party* to this *Settlement Agreement*.  Each of the *Parties* assumes the risk of mistake as to facts or law; and

      5.2.2.     That they have had the opportunity to carefully read the contents of this *Settlement Agreement*, and have freely agreed to the *Settlement*. The *Parties* and each of them further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the *Settlement*, this *Settlement Agreement*, and all of the matters pertaining thereto, as he, she, or it deems necessary; and

      5.2.3.     That the *Action* was filed by *Plaintiffs* and defended by the *Released Parties* in good faith, in accordance with Federal Rule of Civil Procedure 11.

5.3.     Signatories' Representations and Warranties.  Each individual executing this *Settlement Agreement* on behalf of any *Party* does hereby personally represent

and warrant to the other *Parties* that he or she has the authority to execute this *Settlement Agreement* on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

6.      NO ADMISSION OF LIABILITY

The *Parties* understand and agree that this *Settlement Agreement* embodies a compromise settlement of disputed claims, and that nothing in this *Settlement Agreement*, including the furnishing of consideration for this *Settlement Agreement*, shall be deemed to constitute any finding of fiduciary status under *ERISA* or wrongdoing by any of the *Released Parties*, or give rise to any inference of fiduciary status under *ERISA* or wrongdoing or admission of wrongdoing or liability in this or any other proceeding.  This *Settlement Agreement* and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual.  Moreover, *Defendants* specifically deny any such liability or wrongdoing.  Neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence, in any action or proceeding for any purpose, except (i) in an action or proceeding arising under this *Settlement Agreement* or arising out of or relating to the *Preliminary Approval Order* or the *Final Order*, or (ii) in an action or proceeding where the *Releases* or the Covenants Not to Sue provided pursuant to this *Settlement Agreement* may serve as a bar to the prosecution of such action or proceeding as well as to any recovery in such action or proceeding.

7.      THE *SETTLEMENT FUND* AND DELIVERIES INTO THE *SETTLEMENT FUND*

7.1.    The *Settlement Fund*.

7.1.1.  The *Settlement Fund* shall be created as set forth in Section 2.5 hereof.

7.1.2.  The *Settlement Fund* shall include interest earned thereon, for the benefit of *Plaintiffs* and the *Settlement Class*, and shall be invested only in short-term United States Agency or Treasury securities (and/or mutual funds or money market accounts that invest exclusively in such securities) or in a fully U.S. Government-insured account.  The *Parties* agree that the *Settlement Fund* is intended to be a Qualified Settlement Fund under Section 468B of the Internal Revenue Code and Treasury regulations promulgated thereunder.  It is intended that the *Settlement Fund* be structured and administered to preserve, to the maximum degree possible, the tax benefits associated with *ERISA*-qualified plans.  The *Parties* agree that the *Settlement Fund* will not make, and *Class Counsel* will not make on the *Settlement Fund*'s behalf, an election under Treasury Regulation § 1.468B-1(k), pursuant to which the *Settlement Fund* would be treated as a grantor trust for federal income tax purposes.  Accordingly, all taxes on the income of the *Settlement Fund* and tax-related expenses incurred in connection with the taxation of the *Settlement Fund* shall be paid out of the *Settlement Fund*.

7.1.3.  All fees and expenses, including fees and expenses incurred by the

*Settlement Administrator* or any other third-party vendor for calculation, allocation, and distribution pursuant to the *Plan of Allocation*, and providing support, such as the hosting of a website and call line, will be paid from the *Settlement Fund*, subject to the provisions of Article 8 hereof.

7.1.4.   All fees and expenses, including (i) expenses associated with the preparation and filing of all tax reports and tax returns required to be filed by the *Settlement Fund*; (ii) payment of any taxes owed by the *Settlement Fund*; (iii) expenses associated with the preparation and issuance of any required Forms 1099 associated with payments from the *Settlement Fund*; and (iv) fees charged and expenses incurred by the *Escrow Agent* associated with administration of the *Settlement Fund*, will be paid from the *Settlement Fund*, subject to the provisions of Article 8 hereof.

7.2.   <u>Sole Monetary Contribution.</u>   Except as provided in Sections 2.4 and 7.2.1, the *Class Settlement Amount* shall be the full and sole monetary contribution made by or on behalf of *Defendants* in connection with the *Settlement* effected between *Plaintiffs* and *Defendants* under this *Settlement Agreement*.  *Defendants* and the *Company* shall not make any other monetary contribution for any costs, expenses, attorneys' fees or other amount associated with or related to the *Action* or *Settlement*.

7.2.1   Notwithstanding Section 7.2, *XL Insurance*, as the *Kodak Defendants'* insurer, shall be solely responsible for the payment of any and all fees and expenses incurred by the *Kodak Defendants'* attorneys arising from or related to effectuating this *Settlement* and/or defending the *Action*, including the cost and expense associated with providing *CAFA Notice*. Notwithstanding Section 7.2, *BNY Mellon Defendants* shall be solely responsible for the payment of any and all fees and expenses incurred by the *BNY Mellon Defendants* attorneys arising from or related to effectuating this *Settlement* and/or defending the *Action*.

7.3.   All funds held by the *Escrow Agent* shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed or returned to the party or parties paying the same pursuant to this *Agreement* and/or further order(s) of the Court.

7.4.   In the event that (a)(i) a case is commenced under Title 11 of the United States Code as to any *Defendant* that contributed to the *Class Settlement Amount* or any insurer that did so on any *Defendant's* behalf; or (ii) a trustee, receiver, conservator, or other fiduciary is appointed with respect to any such *Defendant* or insurer under any similar law; and (b) a court of competent jurisdiction enters a final order finding such contribution or any portion thereof to be a preference, voidable transfer, fraudulent transfer or similar transaction and requiring such contribution or portion thereof to be returned; and (c) such amount is not promptly deposited into the *Settlement Fund* by others, then, at the election of

15

*Class Counsel*, the *Parties* shall jointly move the *Court* to terminate this *Settlement Agreement* and to vacate any *Releases* given or judgment entered in favor of the *Defendants*. Upon the granting of such motion, the *Action* will for all purposes with respect to the *Parties* revert to its status as of February 24, 2016. *Plaintiffs' Counsel* shall return any attorneys' fees and costs paid to them pursuant to this *Settlement*, and any cash amounts in the *Settlement Fund* shall be returned as provided in Section 9.2.3.

8.     PAYMENTS FROM THE *SETTLEMENT FUND*

Except as otherwise described or provided for herein, all costs relating to the *Settlement* shall be borne by the *Party* that incurred them.

8.1.     <u>Settlement Expenses</u>. *Settlement Expenses* are (i) any and all reasonable costs and expenses borne by the *Settlement Administrator* charged to the *Settlement Fund* that are related to the administration of the *Settlement* and not otherwise expressly provided for herein; (ii) the reasonable costs and expenses borne by the *Settlement Administrator* regarding the administration of carrying out the plan of allocation incident to this *Settlement*, as well as the expenses borne by Trustee or Trustees of the Plans, to administer the allocation of the *Settlement Proceeds* received by the *Plans* to the members of *Settlement Class*; and (iii) any reasonable costs relating to the issuance of *Class Notice*, excluding the expenses borne by *Defendants* or the *Company* of providing the *Settlement Administrator* or other noticing agent retained by *Class Counsel* with a list of the names and last known addresses of members of the *Settlement Class* in electronic format. All *Settlement Expenses* (including those described in Section 7.1.3) shall be paid from the *Settlement Fund* prior to the distribution of the *Settlement Proceeds*. With respect to taxes after remittance of the *Settlement Proceeds* to the *Plans* (*i.e.*, when taking distributions from the *Plans*), the *Settlement Class* members are responsible for any and all tax liabilities arising from each of their distributions or withdrawals. All other fees and costs relating to the *Settlement* shall be borne by the *Party* that incurred them, or his, her, or its insurer or indemnitor, and shall not be paid from the *Settlement Fund*.

8.1.1     No *Defendant(s), Plaintiff(s), Plaintiffs' Counsel,* or *Class Counsel* makes any representation or warranty with respect to the tax treatment of any distribution or withdrawal of the *Settlement Proceeds* received by any *Plaintiff* or *Settlement Class* member. *Settlement Class* members are specifically directed to seek tax advice from their tax advisor.

8.2.     <u>Disbursements from the *Settlement Fund.*</u>  *Class Counsel* shall direct the disbursement of money from the *Settlement Fund*, which shall be the sole source of all awards for the *Settlement Class*, *Plaintiffs*, and fees and expenses for *Plaintiffs' Counsel*, as follows:

8.2.1.     For *Case Contribution Awards.*  As provided in Section 10.2 hereof, after the *Effective Date*, *Class Counsel* may direct payment from the *Settlement Fund* to *Plaintiffs* of any *Court*-approved *Case Contribution Award*.

8.2.2.   <u>For Taxes and Expenses of the *Settlement Fund.*</u>   As provided in Section 7.1.2 hereof.

8.2.3.   <u>For the *Plan of Allocation.*</u>   *Class Counsel* shall propose to the *Court* a *Plan of Allocation.* To the extent they were participants or beneficiaries of the *Plan* at any time during the *Class Period*, *Defendants* and their *Immediate Family Members*, any entity in which a *Defendant* has a controlling interest, and their heirs, *Successors-in-Interest*, or assigns (in their capacities as heirs, *Successors-in-Interest*, or assigns) will be excluded from the *Plan of Allocation*.  The *Plan of Allocation* is a matter separate and apart from the *Settlement* between the *Parties*, and no decision by the *Court* concerning the *Plan of Allocation* shall affect the validity of the *Settlement Agreement* or finality of the *Settlement* in any manner.  The *Investment Committees Defendants* shall make best efforts to ensure that the *Company* and/or the *Settlement Administrators* or *SIP Recordkeeper* will, at the request of *Class Counsel* and without charge, review the proposed *Plan of Allocation* to determine whether sufficient data exists to effectuate it.  *Defendants,* the *Company*, *XL Insurance*, and their *Successors-in-Interest* shall have no liability in the event of any action or failure to act by the *Settlement Administrator* or by any other entity with respect to the creation, calculation, or implementation of the *Plan of Allocation*.   The *Settlement Administrator* shall be solely responsible for the calculation of the amount of the *Settlement Proceeds* to be distributed to qualified *Settlement Class* members, and for the issuance of any tax notices arising from the payments made pursuant to the *Plan of Allocation*.

8.2.4.   <u>For Attorneys' Fees and Expenses.</u>   As provided in Section 10.1 hereof, *Class Counsel* will direct payment to *Plaintiffs' Counsel* of any *Court*-approved award of attorneys' fees and expenses from the *Settlement Fund*, which shall be *Plaintiffs' Counsel's* sole source of recourse for payment of its attorneys' fees and expenses.

9.   TERMINATION

9.1.   *Defendants* and *Plaintiffs* shall each have the right to terminate the *Settlement* and this *Settlement Agreement* by providing written notice of their election to do so to the others within thirty (30) days after any of the following occurs:

9.1.1.   If the *Court* refuses to approve this *Settlement Agreement* or any material part of it;

9.1.2.   If the *Court* declines to enter the *Preliminary Approval Order* in any material respect;

9.1.3.   If the *Court* declines to enter the *Final Order* in any material respect;

9.1.4.   The date upon which the *Final Order* is modified or reversed in any

material respect by the United States Court of Appeals for the Second Circuit or the Supreme Court of the United States;

9.1.5. The date upon which an *Alternative Judgment* is modified or reversed in any material respect by the United States Court of Appeals for the Second Circuit or the Supreme Court of the United States; or

9.1.6. If any of the conditions of Article 2 of this *Settlement Agreement* are not fully satisfied or waived in accordance with their terms and on the timetables set forth in that Article; provided, however, that as provided in Section 8.2.3, no decision by the *Court* concerning the *Plan of Allocation* (including under Section 2.1.5) shall affect the validity of the *Settlement Agreement* or finality of the *Settlement* in any manner.

9.1.7. Notwithstanding anything in this Section, the *Parties* agree not to oppose any *Review Proceeding* by either *Plaintiffs* or *Defendants* of the Court's decision(s) (if any) to not finally approve the *Settlement*, including *Class Counsel's* request for an award of attorneys' fees, litigation costs, and *Case Contribution Awards* for the *Plaintiffs*, unless the *Party* seeking such *Review Proceedings* is asserting a position or positions in the *Review Proceedings* that is/are inconsistent with this *Settlement Agreement.*

9.2.   <u>Consequences of Termination of the *Settlement Agreement*.</u>   If the *Settlement Agreement* is terminated and rendered null and void for any reason specified in Section 9.1 hereof, the following shall occur:

9.2.1. The *Action* shall for all purposes with respect to the *Parties* revert to its status as of February 24, 2016.

9.2.2. All provisions of this *Settlement Agreement* and any subsequently related documents shall be null and void having no effect and no *Settlement Class* will be deemed to have been certified by or as a result of this *Settlement Agreement*, and the *Action* will for all purposes with respect to the *Parties* revert to its status as of February 24, 2016, as provided in Section 2.1.3. Neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence in any action or proceeding for any purpose.

9.2.3. Upon receipt of written notice that the *Settlement Agreement* has been terminated, the *Escrow Agent* will return the *Settlement Fund* to *XL Insurance* and to the *BNY Mellon Defendants*, in proportion to their respective contributions to the *Settlement Fund*, within ten (10) business days, together with interest thereon and less any *Agreed Expenses*. *Agreed Expenses* are any taxes on the *Settlement Fund* as described in Section 7.1.2 and the costs of notice as described in Section 2.1.4 of this *Settlement Agreement* incurred up to and including the date of receipt of written notice from the *Defendants* by the *Escrow Agent*. It is expressly understood and agreed that *Agreed Expenses* do not include any *Plaintiff*

18

*Case Contribution Awards* or attorneys' fees and expenses under Sections 8.2.1 and 8.2.4, respectively, or anything else other than taxes and costs of notice as described in Sections 7.1.2 and 2.1.4, respectively.

10.   ATTORNEYS' FEES AND EXPENSES

10.1.   Application for Attorneys' Fees and Expenses.   *Plaintiffs* and their counsel may apply to the *Court* for, and shall be entitled to receive, reimbursement of costs and expenses from the *Settlement Fund* after entry of the *Final Order* and before or simultaneously with any determination or award of attorneys' fees.   *Plaintiffs' Counsel* shall petition the *Court* for reimbursement of reasonable costs and expenses and payment of any *Case Contribution Awards* and for an award of attorneys' fees, not to exceed one-third of the *Settlement Fund.  Defendants* will not take any position on any fee motion submitted by *Class Counsel*, provided that *Class Counsel* does not move for an award of attorneys' fees in excess of one-third of the *Settlement Fund*, and *Defendants* will not take any position on any motion for reimbursement of litigation expenses reasonably incurred in prosecuting the *Action.*   Fees or expenses awarded to *Plaintiffs' Counsel* by the *Court* shall not be payable to *Class Counsel* before the *Effective Date* except as follows.   *Class Counsel* may, at their sole discretion, receive payment of fees and expenses at any point subsequent to the *Court's* entry of a judgment awarding such fees and expenses regardless of the existence of any objection to or appeal of the *Settlement* or the award of attorneys' fees or expenses, so long as *Class Counsel* provides a letter of credit in favor of the *Settlement Fund* on terms mutually agreed upon by *XL Insurance* and *Class Counsel.  XL Insurance,* at its sole discretion, may waive the letter of credit requirement.   In the event that attorneys' fees and expenses are paid before the *Settlement* becomes *Final* and the *Settlement* fails to become *Final* or does not become *Final* as originally awarded for any reason, *Class Counsel* will be jointly and severally liable to repay to the *Settlement Fund* the attorneys' fees and expenses originally deducted from the *Settlement Fund* plus interest accrued for the period of payment from the *Settlement Fund* to *Class Counsel* at a rate equal to the rate of the interest earned by the *Settlement Fund* earned during the same period.   Such a repayment will be due within thirty (30) days of the *Kodak Defendants* requesting such repayment.  .

10.2.   Application for *Case Contribution Awards.   Class Counsel* may apply to the *Court* for a *Case Contribution Award* for each *Plaintiff* and/or Court-appointed representative of the *Settlement Class,* payable solely from the *Settlement Fund*, and each *Plaintiff and/or Court-appointed representative of the Settlement Class* shall be entitled to receive such compensation from the *Settlement Fund* to the extent awarded by the *Court* (or as modified, if necessary, following any appeal).   *Defendants* expressly agree to take no position with respect to the *Case Contribution Award(s).* No *Case Contribution Award* may be paid before the *Effective Date.*

10.3.   Post-Award Expenses.   *Class Counsel* may make a supplemental application to the *Court* for an award of expenses with respect to post-*Settlement* proceedings

and administration, and any such award shall be payable from the *Settlement Fund*.

11.    MISCELLANEOUS PROVISIONS

11.1.   Governing Law.  This *Settlement Agreement* shall be governed by the laws of the State of New York without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

11.2.   Severability.  The provisions of this *Settlement Agreement* are not severable, except that in the event that any court with original or appellate jurisdiction over this *Action* issues a *Final* determination that any portion of Section 3.1 hereof is not enforceable, the *Parties* may (but shall not be required to) jointly agree in writing to modify Section 3.1 to conform with such determination.  Further, in the event that the *Court* or any court with appellate jurisdiction over this *Action* fails to award attorneys' fees and expenses pursuant to Section 10.1 hereof or to award Plaintiffs a *Case Contribution Award* pursuant to Section 10.2 hereof, or fails to awards attorneys' fees and expenses in the amount sought by *Class Counsel* or to award any *Case Contribution Award* in the amount sought by *Plaintiffs*, such decision shall not provide cause for *Plaintiffs* to withdraw, void or nullify this *Settlement Agreement*.

11.3.   Amendment.  Before entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed by or on behalf of all *Parties* with notice to be given to the *Court* of the agreed modification or amendment.  Following entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed on behalf of all *Parties*, and approved by the *Court*.

11.4.   Waiver.  The provisions of this *Settlement Agreement* may be waived only by an instrument in writing executed by the waiving *Party*.  The waiver by any *Party* of any breach of this *Settlement Agreement* shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this *Settlement Agreement*.

11.5.   Construction.  None of the *Parties* hereto shall be considered to be the drafter of this *Settlement Agreement* or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

11.6.   Principles of Interpretation.  The following principles of interpretation apply to this *Settlement Agreement*:

11.7.   Headings.  The headings of this *Settlement Agreement* are for reference purposes only and do not affect in any way the meaning or interpretation of this *Settlement Agreement*.

11.8.   <u>Singular and Plural.</u>   Definitions apply to the singular and plural forms of each term defined.

11.9.   <u>Gender.</u>   Definitions apply to the masculine, feminine, and neuter genders of each term defined.

11.10.   <u>References to a *Person.*</u>   References to a *Person* are also to the *Person*'s permitted successors and assigns.

11.11.   <u>Terms of Inclusion.</u>   Whenever the words "include," "includes," or "including" are used in this *Settlement Agreement*, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

11.12.   <u>Further Assurances.</u>   Each of the *Parties* agrees, without further consideration and as part of finalizing the *Settlement* hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this *Settlement Agreement*.  The *Parties* shall in good faith attempt to address any timely-filed objection to the *Settlement*, any objection or concern raised by the *Independent Fiduciary*, and any objection or concern raised by the Department of Labor, the U.S. Attorney General, or the Attorneys General of any State, including, to the extent reasonably necessary and practicable, by promptly supplying any non-privileged information in their possession that has been reasonably requested.

11.13.   <u>Survival.</u>   All representations, warranties, and covenants set forth in this *Settlement Agreement* shall be deemed continuing and shall survive the *Effective Date* of this *Settlement Agreement*.

11.14.   <u>Notices.</u>   Any notice, demand, or other communication under this *Settlement Agreement* (other than the *Class Notice*, or other notices given at the direction of the *Court*) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and delivered, by registered or certified mail (postage prepaid), by confirmed facsimile or email, or by reputable express overnight courier:

If to the *PLAINTIFFS*:

> Gerald Wells III
> Stephen E. Connolly
> CONNOLLY WELLS & GRAY, LLP
> 2200 Renaissance Boulevard, Suite 308
> King of Prussia, PA 19406
> Telephone:  (610) 822-3700
> Facsimile:  (610) 822-3800
> Email: gwells@cwg-law.com
>             sconnolly@cwg-law.com

21

Mark P. Kindall
Robert A. Izard
IZARD NOBEL LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone:  (860) 493-6292
Email: mkindall@izardnobel.com
          rizard@izardnobel.com


If to the *INVESTMENT COMMITTEE DEFENDANTS* and/or the *INDIVIDUAL DEFENDANTS*:

GIBSON, DUNN & CRUTCHER LLP
William J. Kilberg, P.C.
Paul Blankenstein
Rachel E. Mondl
1050 Connecticut Avenue NW
Suite 900
Washington, DC 20036
Telephone:  (202) 887-3567
Facsimile:  (202) 530-9688
Email: wkilberg@gibsondunn.com
          pblankenstein@gibsondunn.com
          rmondl@gibsondunn.com


If to the *BNY MELLON DEFENDANTS*:

GOODWIN PROCTER LLP
James O. Fleckner
Alison V. Douglass
Exchange Place
53 State Street
Boston, MA 02109
Telephone:  (617) 570-1676
Facsimile:  (617) 523-1231
Email: jfleckner@goodwinprocter.com
          adouglass@goodwinprocter.com

11.15.  Entire Agreement.  This *Settlement Agreement* contains the entire agreement among the *Parties* relating to this *Settlement*.

11.16.  Counterparts.  This *Settlement Agreement*, and any amendments thereto, and waivers of conditions, may be executed by exchange of faxed or electronically mailed executed signature pages, and any signature transmitted by facsimile or electronic mail for the purpose of executing this *Settlement Agreement* shall be

22

deemed an original signature for purposes of this *Settlement Agreement*.   This *Settlement Agreement* may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

11.17.  <u>Binding Effect.</u>  This *Settlement Agreement* binds and inures to the benefit of the *Parties* hereto, their assigns, heirs, administrators, executors, and successors.

11.18.  <u>Communications Regarding Settlement and this *Action*.</u>  The *Parties* agree that they will not issue any press releases that are not mutually agreed upon. The *Parties* further agree not to engage in disparagement of the *Settlement*.

IN WITNESS WHEREOF, the *Parties* have executed this *Settlement Agreement* on the dates set forth below.

[Execution Pages Follow]

ON BEHALF OF THE *INDIVIDUAL DEFENDANTS* and the *COMMITTEE DEFENDANTS*

Dated: 4/22/16

William J. Kilberg
Paul Blankenstein
Rachel E. Mondl
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue NW
Suite 900
Washington, DC 20036
Telephone: (202) 887-3567
Facsimile: (202) 530-9688
Email: wkilberg@gibsondunn.com
pblankenstein@gibsondunn.com
rmondl@gibsondunn.com

Dated: 4/22/16

Chad W. Flansburg
PHILLIPS LYTLE LLP
28 East Main Street
1400 First Federal Plaza
Rochester, NY 14614
Telephone: (585) 238-2000
Facsimile: (585) 232-3141 (fax)
Email: cflansburg@phillipslytle.com

*Counsel for The Eastman Kodak Savings and Investment Plan Committee, The Kodak Employee Stock Option Ownership Plan Committee, Antoinette P. McCorvey, Frank S. Sklarsky, Joyce P. Haag, Laura G. Quatela, Patricia A. Obstarczyk, Robert L. Berman and William G. Love*

ON BEHALF OF THE BNY MELLON
DEFENDANTS

Dated: 4/22/16

James O. Fleckner
Alison V. Douglass
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Telephone: (617) 570-1676
Facsimile: (617) 523-1231
Email: jfleckner@goodwinprocter.com
        adouglass@goodwinprocter.com

ON BEHALF OF THE *PLAINTIFFS*

Dated: 4/22/2016

Robert A. Izard
Mark P. Kindall
IZARD NOBEL LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
Email: rizard@izardnobel.com
        mkindall@izardnobel.com

Dated: 4/22/16

Gerald D. Wells, III
Stephen E. Connolly
CONNOLLY WELLS & GRAY, LLP
2200 Renaissance Boulevard, Suite 308
King of Prussia, PA 19406
Telephone:  (610) 822-3700
Facsimile:  (610) 822-3800
Email: gwells@cwg-law.com
        sconnolly@cwg-law.com

*Interim Co-Lead Class Counsel*

25

Dated: _April 22, 2016_

Jules L. Smith
BLITMAN & KING LLP
The Powers Building, Suite 500
16 West Main Street
Rochester, New York 14614
Telephone: (585) 232-5600
Facsimile: (585) 232-7738
Email: jlsmith@bklawyers.com

_Interim Liaison Class Counsel_


Dated: _____

Shanon J. Carson
Todd C. Collins
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: scarson@bm.net

_Counsel for Thomas W. Greenwood and Allen E. Hartter_


Dated: _____

Edward Ciolko
Mark K. Gyandoh
Julie Siebert-Johnson
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email:  eciolko @ktmc.com
          mgyandoh@ktmc.com
          jmaro@ktmc.com
          jsjohnson@ktmc.com

_Counsel for Sue Toal_

Dated: _____

_____
Jules L. Smith
BLITMAN & KING LLP
The Powers Building, Suite 500
16 West Main Street
Rochester, New York 14614
Telephone: (585) 232-5600
Facsimile: (585) 232-7738
Email: jlsmith@bklawyers.com

*Interim Liaison Class Counsel*

Dated: 4-22-16

_____
Shanon J. Carson
Todd C. Collins
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: scarson@bm.net

*Counsel for Thomas W. Greenwood and
Allen E. Hartter*

Dated: 4/22/16

_____
w/express permission
Edward Ciolko
Mark K. Gyandoh
Julie Siebert-Johnson
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile:  (610) 667-7056
Email:  eciolko @ktmc.com
       mgyandoh@ktmc.com
       jmaro@ktmc.com
       jsjohnson@ktmc.com

*Counsel for Sue Toal*

Dated: _April 22, 2016_

_Thomas J. McKenna_
Thomas J. McKenna
Gregory M. Egleston
GAINEY, McKENNA & EGLESTON
440 Park Avenue South
New York, NY 10016
Telephone: 212-983-1300
Facsimile: 212-983-0383
Email: tjmckenna@gme-law.com
        gegleston@gme-law.com


Dated: _____

Mark C. Rifkin
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
11th Floor
New York, NY 10016
Telephone: 212-545-4762
Facsimile: 212-545-4653
Email: rifkin@whafh.com

*Counsel for Katherine L. Bolger*

27

Dated: _____

Thomas J. McKenna
Gregory M. Egleston
GAINEY, McKENNA & EGLESTON
440 Park Avenue South
New York, NY 10016
Telephone: 212-683-3400
Facsimile: 212-683-3402
Email: maelawny@gmail.com
      egleston@gme-law.com

Dated: 4/22/16

Mark C. Rifkin
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
11th Floor
New York, NY 10016
Telephone: 212-545-4762
Facsimile: 212-545-4653
Email: rifkin@whafh.com

*Counsel for Katherine L. Bolger*

27

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EASTMAN KODAK ERISA LITIGATION | **MASTER FILE NO. 6:12-CV-06051-DGL** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT, PRELIMINARILY CERTIFYING A CLASS FOR SETTLEMENT
PURPOSES, APPROVING FORM AND MANNER OF CLASS NOTICE,
PRELIMINARILY APPROVING PLAN OF ALLOCATION, AND
SETTING DATE FOR FAIRNESS HEARING**

This Action involves claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), with respect to the Eastman Kodak Employees' Savings and Investment Plan (the "SIP") and The Kodak Employee Stock Ownership Plan (the "ESOP") (collectively, the "Plans").

The terms of the Settlement are set out in the Class Action Settlement Agreement ("Settlement Agreement") dated _____, 2016 (the "Settlement"), executed by counsel on behalf of the Plaintiffs and the Defendants.[1]

The Court preliminarily considered the Settlement to determine, among other things, whether the Settlement is sufficient to warrant the issuance of notice to members of the proposed Settlement Class. Upon reviewing the Settlement Agreement, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

---

[1] Capitalized terms not otherwise defined in this Order shall have the same meaning as ascribed to them in the Settlement Agreement.

1.     **Class Findings:**  Solely for the purposes of the Settlement, the Court finds that the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of the Court and any other applicable law have been met as to the Settlement Class defined below, in that:

(a)     The Court preliminarily finds for purposes of settlement only, as required by FED. R. CIV. P. 23(a)(1), that the Settlement Class is ascertainable from records kept with respect to the Plan and from other objective criteria, and the members of the Settlement Class are so numerous that their joinder before the Court would be impracticable.

(b)     The Court preliminarily finds for purposes of settlement only, as required by FED. R. CIV. P. 23(a)(2), that there are one or more questions of fact and/or law common to the Settlement Class.

(c)     The Court preliminarily finds for purposes of settlement only, as required by FED. R. CIV. P. 23(a)(3), that the claims of the Plaintiffs are typical of the claims of the Settlement Class.

(d)     The Court preliminarily finds, for purposes of settlement only, as required by FED. R. CIV. P. 23(a)(4), that the Plaintiffs will fairly and adequately protect the interests of the Settlement Class in that:  (i) the interests of the Plaintiffs and the nature of their alleged claims are consistent with those of the members of the Settlement Class; (ii) there appear to be no conflicts between or among the Plaintiffs and the Settlement Class; and (iii) the Plaintiffs and the members of the Settlement Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated ERISA class actions.

(e)     The Court preliminarily finds for purposes of settlement only, as required by FED. R. CIV. P. 23(b)(1) and (b)(2), that the prosecution of separate actions by individual

members of the Settlement Class would create a risk of: (i) inconsistent or varying adjudications as to individual Settlement Class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in this Action; or (ii) adjudications as to individual Settlement Class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede the ability of such persons to protect their interests; and that the Plaintiffs allege that the Defendants have acted on grounds that apply generally to the Settlement Class and the declaratory relief is appropriate.

(f)     The Court preliminarily finds for purposes of settlement only, as required by FED. R. CIV. P. 23(g), that Class Counsel are capable of fairly and adequately representing the interests of the Settlement Class, in that Class Counsel: (i) have done appropriate work identifying or investigating potential claims in the action; (ii) are experienced in handling class actions and (iii) have committed the necessary resources to represent the Settlement Class.

2.     **Class Certification**: The Court, in conducting the settlement approval process required by FED. R. CIV. P. 23, certifies solely for purposes of settlement the following class under FED. R. CIV. P. 23(b)(1) and (b)(2) (the "Settlement Class"):

> All Persons who, at any time during the period from January 1, 2010 through March 31, 2012 (the "Class Period"), (a) were participants in or beneficiaries of The Kodak Employee Stock Ownership Plan (the "ESOP"), and/or (b) were participants in or beneficiaries of the Eastman Kodak Employees' Savings and Investment Plan (the "SIP"), and whose SIP Plan accounts included investments in the Kodak Stock Fund. Excluded are Defendants and their Immediate Family Members, any entity in which a Defendant has a controlling interest, and their heirs, Successors-in-Interest, or assigns (in their capacities as heirs, Successors-in-Interest, or assigns).

The Court appoints Settlement Class members Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni, Sandy Paxton, and Sue Toal as representatives

for the Settlement Class and appoints Izard Nobel LLP and Connolly Wells & Gray, LLP as Class Counsel for the Settlement Class.

Preliminary certification of a Settlement Class pursuant to the terms of the Settlement Agreement shall not constitute and does not constitute, and shall not be construed or used as an admission, concession, or declaration by or against Defendants that (except for the purposes of the Settlement) this Action or any other action is appropriate for litigation class treatment under FED. R. CIV. P. 23, or any similar federal or state class action statute or rule.

3. **Preliminary Findings Regarding Proposed Settlement**: The Court preliminarily finds that (i) the proposed Settlement resulted from extensive arm's-length negotiations, including mediation, (ii) the Settlement Agreement was executed only after Class Counsel had conducted appropriate investigation and discovery regarding the strengths and weaknesses of Plaintiffs' claims, (iii) Class Counsel have concluded that the proposed Settlement is fair, reasonable, and adequate, and (iv) the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Settlement Class. Having considered the essential terms of the Settlement under the recommended standards for preliminary approval of settlements as set forth in relevant case law, the Court finds that those whose claims would be settled, compromised, dismissed, and/or released pursuant to the Settlement should be given notice and an opportunity to be heard regarding final approval of the Settlement and other matters.

4. **Fairness Hearing**: A hearing is scheduled for _____, 2016 at _____ ____.m. (the "Fairness Hearing") to determine, among other things:

- Whether the Settlement merits final approval as fair, reasonable and adequate;

- Whether the Action should be dismissed with prejudice pursuant to the terms of the Settlement;

- Whether Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement;

- Whether the proposed Plan of Allocation should be approved; and

- Whether any application(s) for attorneys' fees and expenses and Case Contribution Awards to the Plaintiffs are fair and reasonable and should be approved.

5.     **Class Notice**:  The Court hereby approves the selection of A.B. Data, Ltd. as the Settlement Administrator.

6.     The Plaintiffs have presented to the Court a proposed form of Mail Notice, appended hereto as Exhibit A, Long-Form Notice, appended hereto as Exhibit B, and Summary Notice, appended hereto as Exhibit C.

7.     The Court hereby approves, as to form and content, the Mail Notice, the Long-Form Notice, and the Summary Notice.

8.     The Court finds that such forms fairly and adequately:  (a) describe the terms and effect of the Settlement and the Plan of Allocation; (b) notify the Settlement Class that Plaintiffs' Counsel will seek attorneys' fees and reimbursement of expenses from the Settlement Fund, and for Case Contribution Awards for each of the Plaintiffs for their service in such capacity; (c) give notice to the Settlement Class of the time and place of the Fairness Hearing; and (d) describe how the recipients of the Notice and Summary Notice may object to any of the relief requested. The Plaintiffs have proposed the following manner of communicating the notice to members of the Settlement Class, and the Court finds that such proposed manner is (i) the best notice

practicable under the circumstances, (ii) constitutes notice reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Fairness Hearing, (iii) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to notice and (iv) meets all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law.  Accordingly, the Court directs that:

- Within ten (10) business days after entry of this Order, the Parties shall provide the Settlement Administrator, in an electronic format requested by the Settlement Administrator, the names and last known addresses of the Settlement Class members and shall make best efforts to timely respond to any reasonable written requests for data necessary to effectuate notice and implement, enforce or determine the administrability of a Plan of Allocation (as described and/or provided for herein), where such data is in the custody or control of Defendants or their present or former agents.  The names and addresses that Class Counsel and the Settlement Administrator obtain pursuant to this Order shall be used solely for the purpose of providing notice of this Settlement and for no other purpose.

- Within twenty-one (21) days after entry of this Order, the Settlement Administrator will (a) cause the mail notice ("Mail Notice"), with such non-substantive modifications thereto as may be agreed upon by the Parties, to be mailed, by first-class mail, postage prepaid, to the last known address of each member of the Settlement Class who can be identified by reasonable effort, and (b) post the Long-Form Notice, with such non-substantive modifications thereto as may be agreed upon by the Parties, the Settlement Agreement and its Exhibits,

and this Order on the dedicated settlement website, which shall be accessible to the public.

- Within thirty-five (35) days after entry of this Order, the Settlement Administrator will cause the Summary Notice, with such non-substantive modifications thereto as may be agreed upon by the Parties, to be transmitted over *PR Newswire*.

9.      At or before the Fairness Hearing, Class Counsel shall file with the Court proof of timely compliance with the foregoing mailing and publication requirements.

10.     **Notice Expenses**:   The expenses of printing and mailing and publishing all notices required hereby shall be paid from the Settlement Fund.

11.     **Objections to Settlement**:   The Court will consider written comments and/or objections to the Settlement, to the Plan of Allocation, to the proposed award of attorneys' fees and expenses, or to the request for Case Contribution Awards for the Plaintiffs so long as such written comments or objections are filed with the Court Clerk on or before twenty-one (21) days before the date of the Fairness Hearing, comply with the requirements of Paragraph 12 below, and are served on the Parties at the following addresses:

*For Filing with the Court:*

Clerk of the U.S. District Court for the Western District of New York
2120 Kenneth B. Keating Federal Building
100 State Street
Rochester, NY 14614
Re:  *In re Eastman Kodak ERISA Litigation*, Civil Action No. 12-06051-DGL

*To Class Counsel:*

Gerald Wells III
**CONNOLLY WELLS & GRAY, LLP**
2200 Renaissance Boulevard
King of Prussia, PA 19406

Mark P. Kindall
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107

*To Counsel for the Kodak Defendants:*

William J. Kilberg
Paul Blankenstein
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

*To Counsel for the BNY Mellon Defendants:*

James O. Fleckner
Alison V. Douglass
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, MA 02109

12.     The Court will consider written comments and objections to the Settlement that are signed by the Settlement Class member and are timely filed with the Court and include all of the following:  (a) the Settlement Class member's full name, address, and telephone number; (b) a statement that the objector is a Settlement Class member and an explanation of the basis upon which the objector claims to be a Settlement Class member; (c) all grounds for the objection; (d) a statement as to whether the Settlement Class member or his or her counsel intends to personally appear and/or testify at the Fairness Hearing; (e) a list of any persons the objector or his or her counsel may call to testify at the Fairness Hearing in support of the objection; and (f) the signature of the objector or the signature of a duly authorized attorney or other duly authorized representative for the objector.  Any member of the Settlement Class or other person who does not timely file and serve a written objection complying with the terms of this

paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred absent an Order from the Court.

13.      **Appearance at Fairness Hearing**:   Anyone who files and serves a timely, written comment or objection in accordance with this Order may also appear at the Fairness Hearing either in person or through qualified counsel retained at their own expense.   Those persons or their attorneys intending to appear at the Fairness Hearing must effect service of a notice of intention to appear setting forth, among other things, the name, address, and telephone number of the Settlement Class member (and, if applicable, the name, address, and telephone number of that Settlement Class member's attorney) on Class Counsel and Defendants' counsel (at the addresses set out above) and file it with the Court Clerk by no later than twenty-one (21) days prior to the date of the Fairness Hearing.   Anyone who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except by Order of the Court for good cause shown. Any comment or objection that is timely filed will be considered by the Court even in the absence of a personal appearance by the Settlement Class member or that Settlement Class member's counsel.

14.      **Report of Independent Fiduciary**:   The report of any Independent Fiduciary retained to review the Settlement shall be filed with the Court at least thirty (30) days prior to the date of the Fairness Hearing.

15.      **Papers in Support of Settlement, Plan of Allocation, Attorneys' Fees and Expenses, and Case Contribution Awards**:   Class Counsel shall submit their papers in support of final approval of the Settlement, the proposed Plan of Allocation, and Plaintiffs' Counsel's applications for attorneys' fees, expenses, and case contribution awards at least forty-five (45) days prior to the date of the Fairness Hearing.   The Parties may submit papers in response to any

timely-filed objections and/or to the report of the Independent Fiduciary by no later than ten (10) days prior to the Fairness Hearing.

16.     **Service of Papers**:   Defendants' counsel and Class Counsel shall promptly furnish each other with copies of any and all objections that come into their possession.

17.     **Termination of Settlement**:   This Order shall become null and void, *ab initio*, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions as of the day immediately before the Parties executed the Settlement Agreement, if the Settlement is terminated in accordance with the terms of the Settlement Agreement.

18.     **Use of Order**:   This Order is not admissible as evidence for any purpose against Defendants in any pending or future litigation involving any of the Parties.   This Order shall not be construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing, breach, or liability and Defendants specifically deny any such fault, breach, liability or wrongdoing.   This Order shall not be construed or used as an admission, concession, or declaration by or against Plaintiffs or the Settlement Class that their claims lack merit or that the relief requested in the Action is inappropriate, improper or unavailable. This Order shall not be construed or used as an admission, concession, declaration or waiver by any party of any arguments, defenses, or claims he, she, or it may have, including, but not limited to, any objections by Defendants to class certification, in the event that the Settlement Agreement is terminated.   Moreover, the Settlement Agreement and any proceedings taken pursuant to the Settlement Agreement are for settlement purposes only.   Neither the fact of, nor any provision contained in the Settlement Agreement or its exhibits, nor any actions taken thereunder shall be construed as, offered into evidence as, received in evidence as, and/or deemed to be evidence of

a presumption, concession, or admission of any kind as to the truth of any fact alleged or validity

of any defense that has been, could have been, or in the future might be asserted.

19.     **Jurisdiction**:  The Court hereby retains jurisdiction for purposes of implementing

the Settlement, and reserves the power to enter additional orders to effectuate the fair and orderly

administration and consummation of the Settlement as may from time to time be appropriate, and

to resolve any and all disputes arising thereunder.

20.     **Continuance of Hearing**:  The Court reserves the right to continue the Fairness

Hearing without further written notice.


SO ORDERED this _____ day of _____, 2016.



_____
DAVID G. LARIMER
UNITED STATES DISTRICT JUDGE

11

# EXHIBIT A

**If, between January 1, 2010 and March 31, 2012, you had an account in the Eastman Kodak Employees' Savings and Investment Plan and your Plan account included investments in the Kodak Stock Fund, and/or you had an account in the Kodak Employee Stock Ownership Plan, you could be entitled to a payment under a proposed class action Settlement.**

***THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS. PLEASE READ IT CAREFULLY.***

This is an official court notice from the United States District Court for the Western District of New York *In re Eastman Kodak ERISA Litigation*, Civil Action No. 12-06051-DGL

*Kodak ERISA Litigation Settlement*
c/o A.B. Data, Ltd.
Settlement Administrator
PO Box 170500
Milwaukee, WI 53217

«Barcode»

Postal Service: Please do not mark barcode

«ClaimID»  «MailRec»

«First1» «Last1»
«CO»
«Addr2»
«Addr1»
«City», «ST» «Zip» «Country»

***This notice has been delivered to you to notify you of a
proposed $9.7 million cash settlement of an ERISA class action.***

Records show that, between January 1, 2010 and March 31, 2012, you are or were a participant in the Kodak Employee Stock Ownership Plan (the "ESOP"), and or you are or were a participant in the Eastman Kodak Employees' Savings and Investment Plan (the "SIP") and that your SIP Plan account held investments in the Kodak Stock Fund.  As a result, you may be entitled to a payment pursuant to a proposed class action settlement in *In re Eastman Kodak ERISA Litigation,* Civil Action No. 12-06051-DGL.

In this case, the Plaintiffs claim that certain individuals and entities (collectively the "Defendants") breached their fiduciary duties owed the ESOP and the SIP (together, the "Plans"), under the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with their administration of the Plans by continuing the Plans' investment in the Kodak stock when Defendants knew or should have known based solely on publicly available information that Kodak stock was an imprudent investment option for the Plans.  The Defendants deny any and all wrongdoing and have asserted many defenses, which they believe would have been ultimately successful.  However, the Parties have reached agreement to settle the dispute and the proposed Settlement is under review by the Court. As part of the proposed Settlement, qualified class members who are current participants in the SIP and who show a loss under the proposed Plan of Allocation will receive payment to their account(s) in the Plan(s). (Former participants will either receive payments directly or will have a new SIP Plan account established for receipt of their share of the Settlement, depending on the total amount of their net loss.)  ***You do not need to do anything to receive a payment under the Settlement but your rights will be affected.  The Settlement includes a release of claims related to the administration of the Plans and the selection of investment options under the Plans.***

The Court will hold a Fairness Hearing on ***[MONTH & DAY], 2016***, at **XX:XX** to consider whether to approve the Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's application for up to one third of the Settlement Fund in attorneys' fees and approximately $_____ in expenses, and Case Contribution Awards for each of the plaintiffs who have been appointed by the Court to represent the class, which award shall not exceed $5,000 each.  You cannot exclude yourself from the Settlement.  You can, however, file written comments or objections with the Court and appear and speak at the Fairness Hearing at your own expense.  To do so, you must submit your comments no later than ***[MONTH & DAY], 2016***. Detailed instructions can be found on the settlement website at **www._____.com**, where you can also obtain a more detailed notice about the terms of the Settlement and how the payments will be calculated, as well as the Settlement Agreement and related materials. Additional information, including Plaintiffs' Counsel's application for attorneys' fees, will be posted on the Settlement Website as they are filed with the Court.  You may also write to *Kodak ERISA Litigation Settlement*, c/o A.B. Data, Ltd., Settlement Administrator, PO Box 170500, Milwaukee, WI 53217 to request copies of these materials. This notice is only a summary.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

IN RE EASTMAN KODAK ERISA
LITIGATION

THIS DOCUMENT RELATES TO:
ALL ACTIONS

MASTER FILE NO. 6:12-CV-06051-DGL

<u>**NOTICE OF CLASS ACTION SETTLEMENT**</u>

To all members of the following class:

> *All Persons who, at any time between January 1, 2010 and March 31, 2012 (the "Class Period"), (a) were participants in or beneficiaries of the Kodak Employee Stock Ownership Plan (the "ESOP"), and/or (b) were participants in or beneficiaries of the Eastman Kodak Employees' Savings and Investment Plan (the "SIP"), and whose SIP Plan accounts included investments in the Kodak Stock Fund.*

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.
A FEDERAL COURT AUTHORIZED THIS NOTICE.
THIS IS NOT A SOLICITATION.**

- If you are a member of the Settlement Class, your legal rights will be affected by a proposed settlement in a class action lawsuit entitled *In re Eastman Kodak, Inc. ERISA Litigation*, Civil Action No. 12-06051-DGL, in the United States District Court for the Western District of New York (the "Action").

- The Settlement resolves a class action lawsuit over whether certain entities and individuals alleged to be fiduciaries of the ESOP and/or the SIP (together, the "Plans") breached their fiduciary duties by violating the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") with respect to the Plans' investment of assets in Kodak Stock.

- The proposed Settlement will result in the creation of a $9.7 million settlement fund.

- The Court has scheduled a hearing on _____, 2016 to consider whether to approve the Settlement and certain other related matters.  If approved, the Settlement would result in payments to qualifying members of the Settlement Class.  *See* Question [11] below.

- This Notice is intended to provide information about how this lawsuit and the proposed Settlement may affect your rights and what steps you may take in that regard.  This Notice does not express the Court's opinion on the merits of the claims or the defenses asserted in the lawsuit.

**QUESTIONS? CALL (___) ___-____ TOLL FREE, OR VISIT www._____.com
Do not call the Court or Kodak with your questions.**

- If the Settlement is approved, your legal rights will be affected whether you act or not. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **DO NOTHING** | You do not need to do anything in response to this Notice. If the Settlement is approved by the Court and you are a member of the Settlement Class, you will receive whatever payment you may be entitled to under the Settlement without having to file a claim or take any other action. |
| **FILE AN OBJECTION** | If you want to submit comments or objections to any aspect of the Settlement, you may write to the Court and the parties' attorneys. *See* Question [16] below. |
| **GO TO A HEARING** | If you submit comments or objections to the Settlement to the Court, you and/or your attorney may appear at the Fairness Hearing and ask to speak to the Court. *See* Question [19] below. |

- These rights and options – **and the deadlines you must comply with to exercise them** – are explained in detail in this Notice.

- The Court will decide whether to approve the Settlement.  Payments to Settlement Class Members will be made only if the Court approves the Settlement and only after any appeals are resolved and calculations under the Plan of Allocation are completed. Please be patient.

## GENERAL INFORMATION

| |
|---|
| 1.      Why did I get this notice? |

This Notice provides a summary of a class action lawsuit, the terms of a proposed Settlement of that lawsuit, and the ways in which that settlement will affect the legal rights of those individuals who are members of the Settlement Class.

You are receiving this Notice because you are a potential member of the Settlement Class.  This means that you or someone in your family is or was a participant in either or both of the ESOP or the SIP at any time between January 1, 2010 and March 31, 2012 (the "Class Period").  In the case of SIP participants, their SIP account(s) must have included investments in the Kodak Stock Fund.

The Court directed that this Notice be sent to potential members of the Settlement Class because they have a right to know about the proposed Settlement of this lawsuit, and about all of their options before the Court decides whether to approve the Settlement.  If the Court approves the

2

Settlement, and after any appeals are resolved, the net settlement proceeds will be distributed pursuant to a Court-approved "Plan of Allocation."

| 2. | What is this lawsuit about? |
|---|---|

This class action lawsuit is called *In re Eastman Kodak ERISA Litigation*, Civil Action No. 12-06051-DGL (the "Action"). It is pending in the United States District Court for the Western District of New York before U.S. District Judge David G. Larimer.

The people who brought the lawsuit are called the Plaintiffs. The Plaintiffs in this case are Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni and Sue Toal. For purposes of the proposed Settlement, they have been appointed to represent the Settlement Class.

The people and entities the Plaintiffs sued are called the Defendants. In this case, investment committees for the Plans, the members of the committees during the Class Period and the Trustee for the SIP are the Defendants.

The Action claims that the Defendants were fiduciaries of the Plans and violated the fiduciary duties of loyalty, care and prudence under ERISA that they owed to participants in the Plans regarding investment of the assets of the Plans in Kodak stock. In the Complaint, Plaintiffs asserted causes of action for the losses they allege were suffered by the Plans as the result of the alleged breaches of fiduciary duties by the Defendants.

Participants in the SIP (but not the ESOP) were able to allocate their account balances among various investment funds. The investment funds included a fund invested in Kodak common stock ("Kodak Stock Fund"). Participants in the ESOP were invested solely in shares of Kodak stock. This Action concerns only SIP investments in the Kodak Stock Fund, as well as the ESOP's investment in Kodak stock.

The case has been litigated for several years. The Consolidated Class Action Complaint was filed on September 14, 2012. The Consolidated Class Action Complaint asserts claims under ERISA for breaches of fiduciary duties by Defendants for failing to prudently and loyally manage the Plans and the Plans' assets (Counts I and II) and also alleges co-fiduciary liability against all the Defendants (Count III). By this Action, Plaintiffs sought to recover the alleged losses due to investment of Plan assets in Kodak stock, as well as equitable, injunctive and other monetary relief, including attorneys' fees. The Defendants have denied beach of any fiduciary duty, violation of ERISA, or any other wrongdoing, and have asserted various defenses which they believe would have been ultimately successful.

On October 29, 2012, Defendants moved to dismiss Plaintiffs' claims on the grounds that Plaintiffs failed to state a viable legal claim. All Parties filed legal briefs and supporting documents with the Court, which held a hearing on the motion in 2013. On December 17, 2014, the Court issued a ruling denying the Motion to Dismiss, finding that Plaintiffs had adequately

pleaded claims for breach of fiduciary duties of prudence and co-fiduciary liability based on those breaches.  *See Gedek v. Perez*, 66 F. Supp. 3d 368 (W.D.N.Y. Dec. 17, 2014).

Plaintiffs' Counsel have conducted an extensive investigation of the allegations in the Action and of the losses allegedly suffered by participants and/or beneficiaries of the Plan.  In addition, through that investigation and through discovery of information in the Action, Plaintiffs' Counsel have obtained and reviewed documents from Defendants, including Plan governing documents and materials, communications with Plan participants, internal Kodak documents regarding the Plan, SEC filings, press releases, public statements, news articles and other publications, and other documents regarding the underlying issues that the Plaintiffs allege made investment of the Plans' assets in the Kodak stock and the Kodak Stock Fund imprudent.

The proposed Settlement is the product of hard-fought negotiations between Plaintiffs' Counsel and the Defendants' Counsel, with the assistance of an experienced mediator. Throughout the negotiations, Plaintiffs' Counsel and Defendants' Counsel were advised by individuals with expertise in the estimation of potential losses or damages in cases involving ERISA fiduciary liability.

All Defendants deny the claims in the Action and have vigorously defended the litigation.  The Defendants have expressly denied any wrongdoing or liability of any kind, and believe that they would have been ultimately successful.

Plaintiffs do not concede in settling this Action that their claims lack merit.

| 3. | Why is the Action a class action? |
|---|---|

In a class action, one or more people called class representatives (in this case Plaintiffs Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni and Sue Toal), sue on behalf of other people who have similar claims.  All of the people who have similar claims make up a "class" and are referred to individually as "class members". Bringing a lawsuit as a class action allows the court to consider and resolve all at once many similar individual claims that might be economically too small to bring individually.  The Action at issue here alleges wrongful conduct that affects a large group of people in a similar way. Accordingly, the Plaintiffs filed this action as a class action.

| 4. | Why is there a Settlement? |
|---|---|

By agreeing to a settlement, both sides avoid the risks and costs of a trial, and the Settlement Class will benefit from the creation of a $9.7 million Settlement Fund.  *See* Question [9] below. The terms of the proposed Settlement will be reviewed by the Court.

The Plaintiffs and their attorneys think the settlement is fair, reasonable, and adequate. They also believe that the significant monetary benefits of the proposed Settlement are a good result for the Settlement Class – especially given the possibility that Plaintiffs and the proposed class could

otherwise recover nothing if the claims were dismissed by the Court, the uncertainty of the law surrounding Plaintiffs' legal theories, the disputed issues of fact, and the likelihood that litigation of the Action would continue for many years.

| |
|---|
| 5.      How do I know if I am affected by the Settlement? |

All Persons who, at any time during the period from January 1, 2010 through March 31, 2012, (a) were participants in or beneficiaries of the ESOP, and/or (b) were participants in or beneficiaries of the SIP, and whose SIP Plan accounts included investments in the Kodak Stock Fund are members of the Settlement Class and are therefore affected by the Settlement.

| |
|---|
| 6.      Are any Plan participants excluded from the Settlement Class? |

Yes.  Excluded from the Settlement Class are Defendants and their Immediate Family Members, any entity in which a Defendant has a controlling interest, and their heirs, Successors-in-Interest, or assigns (in their capacities as heirs, Successors-in-Interest, or assigns).  Additionally, SIP participants who did not hold an investment in the Kodak Stock Fund at some time between January 1, 2010 and March 31, 2012 are not members of the Settlement Class.

| |
|---|
| 7.      What if I am still not sure if I am included? |

If you are still not sure whether you are a member of the Settlement Class, you can consult with an attorney of your own choosing or you can call 1-(___) ___-____ or visit *www._____.com* for more information. Please do not call the Court or Kodak.

| |
|---|
| 8.      Can I exclude myself from the Settlement Class? |

No. You will be bound by any judgments or orders that are entered in the Action, whether favorable or unfavorable.

## THE SETTLEMENT BENEFITS

| |
|---|
| 9.      What does the proposed Settlement provide? |

As part of the proposed Settlement, Defendants have agreed to create a $9.7 million Settlement Fund.  After payment of the costs associated with administering the Settlement Fund, associated taxes, any award to Plaintiffs' Counsel for attorneys' fees and expenses, and any awards to the Settlement Class Representatives for their contributions to the Action, as decided by the Court, the

5

balance of the Settlement Fund will be distributed to the Plan accounts of qualifying Settlement Class Members in accordance with a Court-approved "Plan of Allocation." The proposed Plan of Allocation is discussed in Question [11] below. If necessary, a Plan account will be created for qualifying Settlement Class Members who no longer have Plan accounts.

---

**10.    How do I get a payment?**

---

You do **not** need to file a claim or take any other action to receive a payment in connection with the proposed Settlement. All necessary calculations will be made using the Plan's records.

Payments to Settlement Class Members who are current SIP participants will be credited to their existing SIP Plan accounts and allocated in their entirety to the Plan's current default investment option. Current SIP Plan participants may reallocate their Settlement payment if and as permitted by the Plan.

Payments to Settlement Class Members who liquidated their SIP Plan accounts before the "Effective Date" of the proposed Settlement will be processed in one of two ways. For such Settlement Class Members whose Final Individual Dollar Recovery under the Plan of Allocation, as described in Section 11 below, is greater than or equal to $5000, their share of the Settlement will be credited to a new Plan account established for them by the SIP Recordkeeper and allocated in their entirety to the Plan's current default investment option. Such accounts will be subject to all of the SIP Plan's rules. Former Plan participants will receive notice that the new SIP Plan account has been established along with further instructions and options. Settlement Class members who liquidated their SIP Plan accounts before the Effective Date of the Proposed Settlement whose Final Individual Dollar Recovery under the Plan of Allocation is less than $5000 will receive their share of the Settlement by check. Settlement Class members who receive a check are urged to promptly consult with their financial advisor regarding any tax consequences of such payment and/or how to rollover such payment to your current retirement account.

The ESOP was liquidated in 2012. With respect to Settlement Class Members who were ESOP Participants during the Class Period and are Participants in the SIP as of the date that the Settlement becomes Final, any payment they are entitled to receive for their ESOP account will be added to any payment they may be due for the SIP account and deposited into their existing SIP account. With respect to Settlement Class Members who were ESOP Participants during the Class Period and are *not* Participants in the SIP as of the date that the Settlement becomes Final, any payment they are entitled to receive for their ESOP account will be treated in the same manner as payments for former SIP Plan participants as described in the preceding paragraph.

All payments to Settlement Class Members will be made as promptly as possible after all costs, taxes and other required disbursements are taken out of the Settlement Fund and the balance is transferred to the SIP Plan. Please be patient.

If any of the following applies to you, please contact the Settlement Administrator as soon as possible: (1) your status as a current Plan participant has recently changed or may change in the

near future; (2) your mailing address has recently changed or may change in the near future; or (3) you did not receive a mailed notice of the proposed Settlement but believe that you are a Settlement Class Member.  The Settlement Administrator can be contacted at:

Kodak ERISA Litigation Settlement
c/o  A.B. Data, Ltd.
Settlement Administrator
PO Box 170500
Milwaukee, WI 53217

| |
|---|
| 11.     How much will my payment be? |

Your share of the Settlement Fund will be calculated as part of the implementation of the Settlement pursuant to a Court-approved Plan of Allocation summarized herein and available at **www._____.com**.  The amount of your payment, if any, will depend on the amount of your "Net Loss," as calculated pursuant to the Plan of Allocation, and how that amount compares to the Net Losses of the other qualifying Settlement Class Members.  Whether you have a Net Loss under the Plan of Allocation depends on whether and when you bought and/or sold shares of the ESOP or the Kodak Stock Fund in your SIP account between January 1, 2010 and March 31, 2012.  You are not responsible for calculating the amount you may be entitled to receive under the proposed Settlement.  This calculation will be done by the Settlement Administrator as part of the implementation of the Settlement.

The summary below is not intended to be either an estimate of the amount that a qualifying Settlement Class Members might have been able to recover from Defendants after a trial of the Action.  Given the factors above, and because the Court may require changes to the proposed Plan of Allocation before the Settlement is approved, it is also not intended to be an estimate of the amount that will be paid to qualifying Settlement Class Members pursuant to the Settlement if the Settlement is approved by the Court.

**<u>Summary of the Proposed Plan of Allocation</u>**

The formula summarized below is the proposed basis upon which the balance of the Settlement Fund (after payment of costs, taxes, attorneys' fees and expenses) will be proportionately allocated to qualifying Settlement Class Members.  Your payment, if any, will be equal to your proportionate share of the total Net Losses of all qualifying Settlement Class Members multiplied by the Net Settlement Fund (subject to certain limitations, also described below).  Your payment will be calculated as follows:

The Settlement Administrator shall determine each Settlement Class Member's Net Loss with respect to each Settlement Class Member's account in each of the Plans.  The Net Loss for each Settlement Class Member's account in each Plan account (SIP Kodak Stock Fund or ESOP) is equal to $A + B - C - D$, where:

7

A =     the dollar value of his or her investment in the relevant Plan account at the opening of trading on the first day of the Class Period, January 1, 2010;

B =     the dollar value of his or her new investments in the relevant Plan account during the period between January 1, 2010 and March 31, 2012, valued at the time of transaction;

C =     the dollar value of his or her dispositions of shares in the relevant Plan account during the period between January 1, 2010 and March 31, 2012, valued at the time of transaction; and

D =     the dollar value of his or her investment in the relevant Plan account at the close of trading on the last day of the Class Period, March 31, 2012.

To the extent a Settlement Class Member has a zero Net Loss or a market gain in the relevant Plan account, the total Net Loss will be $0.00 for that account.

For Settlement Class Members that had accounts in both the SIP-Kodak Stock Fund and in the ESOP, the Net Loss for each account will be separately determined, and gains in one will not be offset against losses in the other.

The Settlement Administrator shall determine each Settlement Class Member's Preliminary Individual Dollar Recovery for each relevant Plan Account. The sum of all Settlement Class Members' total Net Losses is the loss of each of the Plans as a whole over the Class Period (the "Plan's Net Loss"). The ratio of each Settlement Class Member's total Net Loss to the Plan's Net Loss equals his or her Net Loss Percentage. Each Settlement Class Member's Preliminary Individual Dollar Recovery equals the product of his or her Net Loss Percentage and the Net Settlement Fund.

The Settlement Administrator shall then identify all Former Plan Participants whose Preliminary Individual Dollar Recovery is less than or equal to $25.00 (the "*De Minimis* Amount"), who shall be deemed to have a Final Individual Dollar Recovery of $0.00.[1]

The Settlement Administrator shall then recalculate the Net Loss Percentages of the remaining Settlement Class Members by omitting from the calculation of the Plan's Net Loss the total Net Losses of all Former Plan Participants whose Preliminary Individual Dollar Recoveries are equal to or less than the *De Minimis* Amount. Each remaining Settlement Class Member's Final Individual Dollar Recovery equals the product of his or her Net Loss Percentage and the Net Settlement Fund.

---

[1]     Subject to Court approval, the Parties may agree to modify the *De Minimis Amount* at any time before entry of the Final Order based on information they may receive from the Plan's recordkeepers, the Trustee and/or the Settlement Administrator.

The foregoing is subject to applicable Plan provisions and procedures regarding inactive accounts, participants who cannot be located, deceased participants and Qualified Domestic Relations Orders.

| 12. | When would I get my payment? |
|---|---|

The Court has scheduled a hearing on _____, **2016**, to decide whether to approve the Settlement.  If the Court approves the Settlement, there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  It also takes time to make all the required calculations.  For these reasons, a payment date cannot be provided at this stage.  Please be patient.  If for any reason the Settlement is terminated, there will be no payments.

| 13. | What am I giving up in exchange for the Settlement payment? |
|---|---|

Upon the "Effective Date" of the Settlement, all Settlement Class Members will release and forever discharge, and be forever enjoined from prosecuting, any "Released Plaintiffs' Claims" (as defined below) against any of the "Released Parties" (as defined below).

"Released Plaintiffs' Claims" is defined in the proposed Settlement Agreement to mean any and all claims, demands, rights, liabilities, and causes of action of every nature or description whatsoever, fixed or contingent, known or unknown, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, asserted or that might or could have been asserted in any forum (i) by *Plaintiffs* individually, (ii) by *Plaintiffs* on behalf of the *Plans* or by their participants, fiduciaries, or beneficiaries, (iii) by the *Settlement Class*, and (iv) by the *Plans* themselves or by any participant, fiduciary, or beneficiary in or of the Plans on behalf of the Plans, against any or all of the *Released Parties* that: (a) were brought or could have been brought in the *Action* and arise out of the same or substantially similar facts, circumstances, situations, transactions, or occurrences as those alleged in the *Action* during the *Class Period*; or (b) were brought or could have been brought under *ERISA* with respect to the *Plans'* offering or holding of *Company Stock* during the *Class Period,* including, but not limited to the offering or retaining of the *Kodak Stock* Fund in the *SIP*, or *Company Stock* in the *ESOP* as an investment option, or the investment, acquisition, retention, or disposition of the *Kodak  Stock Fund* (or the exercise of any right ancillary or appurtenant to ownership of the *Kodak Stock Fund*) in the *SIP* or *Company Stock* in the *ESOP* under the *Plans*, or at a participant's or beneficiary's direction by or through the *Plans*.

"Released Parties" is defined in the proposed Settlement Agreement to mean each of the *Defendants* and each of the *Defendants'* respective past, present, and future directors, officers, fiduciaries, employees, employers, partners, principals, agents, members, independent contractors, registered *Representatives*, underwriters, issuers, insurers, co-insurers, insureds, reinsurers, controlling shareholders, attorneys, accountants, auditors, investment bankers, advisors, consultants, trustees, investment managers, fiduciaries, committee members, personal

*Representatives*, predecessors, service providers, successors, *Successors-in-Interest*, parents, subsidiaries, divisions, assigns, heirs, executors, administrators, associates, related or *Affiliated* entities, and *Immediate Family Members*. Also included in this definition is the *Company* and the *Plans'* trustees, *BNY Mellon Defendants*, T. Rowe Price, and any of their respective subsidiaries, affiliates, predecessor companies, affiliates and subsidiaries, as well as their respective directors, officers, employees, agents, attorneys and/or *Representatives*, and against anyone else who could be deemed a fiduciary of the *SIP* or the *ESOP*.

The "Effective Date" will occur when the order entered by the Court approving the Settlement becomes Final and not subject to appeal.

The above definitions include certain other terms that are separately defined in the proposed Class Action Settlement Agreement ("Settlement Agreement") but are not reproduced here. For more information, please see the Settlement Agreement dated _____, 2016, available on the Settlement website at *www._____.com*.

## THE LAWYERS REPRESENTING YOU

| |
|---|
| 14.     Do I have a lawyer in this case? |

In its order directing distribution of Class Notice to the Class Members and scheduling the final Settlement hearing, the Court appointed the law firms of Connolly, Wells & Gray, LLP and Izard Nobel LLP to represent the Settlement Class. These lawyers are called Class Counsel. If you want to be represented by your own attorney, you may hire one at your own expense.

| |
|---|
| 15.     How will the lawyers be paid? |

The Court will determine the amount of any award to Plaintiffs' Counsel, to compensate them for their work on the Action and to reimburse them for associated expenses. Plaintiffs' Counsel intend to ask the Court to award them up to one third of the Settlement Fund in attorneys' fees, plus reimbursement of approximately $_____ in expenses. Any award by the Court will be paid out of the Settlement Fund. You are ***not*** responsible for paying Plaintiffs' Counsel.

Plaintiffs' Counsel also intend to ask the Court to award Case Contribution Awards of up to $5,000 each for the Settlement Class representatives for their contributions to the prosecution and Settlement of the Action. Any such awards will be paid out of the Settlement Fund.

Copies of Plaintiffs' Counsel's applications for attorneys' fees, expenses, and Case Contribution Awards will be available on the Settlement website at *www._____.com* before the objection deadline.

10

## <u>OBJECTING TO THE SETTLEMENT</u>

**You can tell the Court that you do not agree with the settlement or some part of it.**

| |
|---|
| 16.      How do I tell the Court that I do not like the proposed Settlement? |

If you are a Settlement Class Member, you can tell the Court that you do not agree with the proposed Settlement or some part of it, including the proposed Plan of Allocation, the request for attorneys' fees and reimbursement of expenses, and/or the request for case contribution awards.

To object, you must send a letter or other writing stating that you object to the settlement in *In re Eastman Kodak, Inc. ERISA Litigation*, Civil Action No. 12-06051-DGL.  Be sure to include the following:  (i) the name of the Action; (ii) the case number; (iii) your full name, address, and telephone number; (iv) a statement that you are a Settlement Class Member and an explanation for the basis for your being a Settlement Class Member (for example, that you were a participant in the SIP and had some of your SIP account assets invested in the Kodak Stock Fund in 2011 and early 2012); (v) all grounds for your objection; (vi) a statement as to whether you or your counsel intends to appear and would like to speak at the Fairness Hearing; and (vii) a list of any persons you or your counsel may call to testify at the Fairness Hearing in support of your objection. **Your objection must be signed by you or your attorney and must be submitted to the Court and sent to all the following counsel at the following addresses on or before _____, 2016**:

**TO THE COURT:**

Clerk of the U.S. District Court for the Western District of New York
2120 Kenneth B. Keating Federal Building
100 State Street
Rochester, NY 14614
Re:  *In re Eastman Kodak. ERISA Litigation*, Civil Action No. 12-06051-DGL

**TO CLASS COUNSEL:**

Gerald Wells III
Connolly, Wells & Gray, LLP
2200 Renaissance Boulevard |
King of Prussia, PA 19406

Mark P. Kindall
Izard Nobel LLP
29 South Main Street, Suite 305
West Hartford, CT 06107

11

**TO COUNSEL FOR THE KODAK
DEFENDANTS**

William J. Kilberg
Paul Blankenstein
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

**TO COUNSEL FOR THE BNY MELLON
DEFENDANTS**

James O. Fleckner
Alison V. Douglass
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109

You do not need to go to the Fairness Hearing to have your written objection considered by the Court. If you do file an objection with the Court, however, you may appear in person or arrange, at your expense, for a lawyer to represent you at the hearing in accordance with the instructions at Question [19] below. If you intend to appear at the Fairness Hearing, or have an attorney appear on your behalf, please confirm with Class Counsel that the time and date of the Fairness Hearing have not changed. If you do file an objection, you may be subject to discovery by the Parties to the Action on the issues related to your objection, including having your deposition taken.

## THE COURT'S FAIRNESS HEARING

| 17. When and where will the Court decide whether to approve the proposed Settlement? |
|---|

The Court will hold a hearing to decide whether to approve the proposed Settlement. This hearing is called a "Fairness Hearing." The Fairness Hearing is scheduled to take place at ___:_____ __.m. on _____, 2016, at the U.S. District Court for the Western District of New York, Kenneth B. Keating Federal Building, 100 State Street, Rochester, NY 14614. At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also consider the proposed Plan of Allocation and the applications for attorneys' fees, expenses and case contribution awards. The Court will take into consideration any written objections filed in accordance with the instructions at Question [16]. The Court may also allow any person who has objected and timely filed a Notice of Appearance to speak at the Fairness Hearing. After the Fairness Hearing, the Court will decide whether to approve the Settlement and whether to award any attorneys' fees, expenses and/or case contribution awards. We do not know how long these decisions will take.

The Court may change the date and time of the Fairness Hearing.  If that happens, the Settlement Administrator will post the new date and time for the Fairness Hearing on the Settlement website at ***www._____.com*** and will notify any Settlement Class Members who have filed objections to the proposed Settlement *as of that date*, but will not notify any other Settlement Class Members, including those who file objections after the Fairness Hearing is rescheduled.  Accordingly, if you submit an objection to the Court and you or your counsel intends to attend the Fairness Hearing, please be sure to check the Settlement website regularly to confirm the date and time.

| | |
|---|---|
| 18. | Do I have to come to the Fairness Hearing? |

No.  Class Counsel will answer any questions the Court may have about the proposed Settlement, the proposed Plan of Allocation and the applications for attorneys' fees, expenses and case contribution awards.  You and/or your counsel are welcome to attend the Fairness Hearing at your own expense, but you do not have to, even if you filed an objection.  The Court will consider every timely-filed objection even if the objectors are not present at the Fairness Hearing.

| | |
|---|---|
| 19. | May I speak at the Fairness Hearing? |

If you are a Settlement Class Member and you file an objection to the proposed settlement or any of its terms before the deadline and in accordance with the instructions at Question [16], you and/or your counsel may ask the Court for permission to speak at the Fairness Hearing. To do so, you must state in your written objection that you intend to appear and would like to speak at the Fairness Hearing. See Question [16] above.

## IF YOU DO NOTHING

| | |
|---|---|
| 20. | What happens if I do nothing at all? |

You do not have to take any action in response to this Notice in order to participate in the Settlement.  If the Settlement is approved by the Court, you will receive any payment to which you are entitled under the Court-approved Plan of Allocation.  *See* Questions [9] through [12] above.

## GETTING MORE INFORMATION

| | |
|---|---|
| 21. | Where can I get more details about the proposed Settlement? |

This Notice summarizes the proposed Settlement.  The actual terms and conditions of the proposed Settlement are set forth in the Settlement Agreement dated _____, 2016.  You can get a copy of

13

the Settlement Agreement, as well as the Court's Preliminary Approval Order, and Plaintiffs' Counsel's applications for attorneys' fees, expenses and case contribution awards (after they are filed) at *www._____.com* or by writing to Class Counsel at the address above.  All other papers that have been filed in the Action may be inspected at the office of the Clerk of the Court, U.S. District Court for the Western District of New York, 2120 Kenneth B. Keating Federal Building, 100 State Street, Rochester, NY 14614, during regular business hours.

Dated:          Rochester, New York
                _____, 2016


                              By Order of the Court
                              CLERK OF THE COURT

14

# EXHIBIT C

**Connolly Wells & Gray, LLP and Izard Nobel LLP announce a proposed $9.7 million cash Settlement of an ERISA class action on behalf of certain participants in The Kodak Employee Stock Ownership Plan and the Eastman Kodak Employees' Savings and Investment Plan**

NEW YORK – (PR Newswire) – _____, 2016

In the United States District Court for the Western District of New York, in *In re Eastman Kodak ERISA Litigation*, Civil Action No. 12-06051-DGL, a summary notice has been mailed as well as published on the settlement website at www.____.com as follows:

### Summary Notice of Proposed Class Action Settlement and Scheduling of Fairness Hearing

To:    *All Persons who, at any time during the period from January 1, 2010 through March 31, 2012 (the "Class Period"), (a) were participants in or beneficiaries of The Kodak Employee Stock Ownership Plan (the "ESOP"), and/or (b) were participants in or beneficiaries of the Eastman Kodak Employees' Savings and Investment Plan (the "SIP"), and whose SIP Plan accounts included investments in the Kodak Stock Fund.*

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO A PAYMENT FROM THE SETTLEMENT FUND.  PLEASE READ CAREFULLY.

**YOU ARE HEREBY NOTIFIED**, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the Court, that the above-referenced action has been certified as a class action for purposes of a proposed $9.7 million cash settlement, subject to review and final approval by the Court.  As part of the proposed Settlement, Settlement Class members who show a loss under the proposed Plan of Allocation may be entitled to a payment under the terms of the Settlement. *You do not need to do anything to receive a payment under the Settlement if you are entitled to one, but your rights will be affected.  The Settlement includes a release of claims related to the administration of the Plan and the selection of investment options under the Plan.*

A Fairness Hearing has been scheduled before Judge David Larimer of the United States District Court for the Western District of New York in the Kenneth B. Keating Federal Building, 100 State Street, Rochester, NY 14614, at ___:_____  __.m, **on _____, 2016** to determine whether the proposed Settlement should be approved by the Court as fair, reasonable, and adequate, and to consider the proposed Plan of Allocation and Plaintiffs' Counsel's applications for attorneys' fees, expenses and Case Contribution Awards.

You cannot exclude yourself from the Settlement.  You can, however, file written comments or objections with the Court.  You or your lawyer may also appear and request the opportunity to speak at the Fairness Hearing at your own expense.  To do so, *you must send your comments and objections to the Court and the Parties' attorneys no later than _____, 2016.  Detailed instructions can be found on the Settlement Website at www._____.com*, where you can also obtain a more detailed Class Notice about the terms of the Settlement, how the existence of a qualifying loss will be determined and how the payments will be calculated, along

with the Settlement Agreement and related materials. Additional information and materials, including Class Counsel's application for attorneys' fees, will be posted on the Settlement Website as they are filed with the Court. You may also write to Kodak ERISA Litigation Settlement, c/o A.B. Data, Ltd., Settlement Administrator, PO Box 170500, Milwaukee, WI 53217 to request copies of these materials.

All other inquiries may be made by writing to Class Counsel at:

Gerald Wells III
Connolly Wells & Gray, LLP
2200 Renaissance Boulevard |
King of Prussia, PA 19406
gwells@cwg-law.com
Tel: 610-822-3700

Mark P. Kindall
Izard Nobel LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
mkindall@izardnobel.com
Tel: 860-493-6294

Published by Order of the U.S. District Court for the Western District of New York

CONTACT:    Gerald Wells III, (610) 822-3700
            Mark Kindall, (860) 493-6294

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EASTMAN KODAK ERISA LITIGATION | **MASTER FILE NO. 6:12-CV-06051-DGL** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**[PROPOSED] ORDER AND FINAL JUDGMENT**

On the ___ day of _____, 2016, this Court held a hearing to determine:  (1) whether the terms and conditions of the class action Settlement Agreement dated _____, 2016 are fair, reasonable and adequate for the settlement of all claims asserted by all members of the Settlement Class against Defendants in the class action captioned *In re Eastman Kodak ERISA Litigation*, Civil Action No. 12-06051-DGL, including the Releases, and should be approved; (2) whether final judgment should be entered dismissing the Complaint against Defendants with prejudice; (3) whether to approve the proposed Plan of Allocation as a fair and equitable method to allocate the Settlement Fund among all Settlement Class members; (4) whether and in what amount to award Plaintiffs' Counsel attorneys' fees and expenses; and (5) whether and in what amount to award each of the proposed Plaintiffs a Case Contribution Award in recognition of the time and effort they contributed while representing the members of the Settlement Class.  All initial capitalized terms used herein have the meanings set forth in the Settlement Agreement.

The Court having considered all matters submitted to it at the hearing and otherwise, and it appearing that a notice of the Fairness Hearing substantially in the form approved by the Court was mailed to all persons reasonably identifiable as Settlement Class members and that a summary Notice substantially in form approved by the Court was published on the *PR Newswire* and a

dedicated Settlement Website has been maintained by a notice administrator; and the Court having considered and determined the fairness, reasonableness and adequacy of the Settlement, the proposed Plan of Allocation, and the fairness and reasonableness of the award of attorneys' fees and expenses requested as well as the requested Case Contribution Awards; the Court on this __ (date), enters this Order and Final Judgment on the terms set out below.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.      The Court has jurisdiction over the subject matter of the Action and Settlement Agreement and over all Parties to it (including all members of the Settlement Class) and the Released Parties.

2.      The Court finds for the purposes of the Settlement only that the prerequisites for certification of this Action as a class action under FED. R. CIV. P. 23(a), (b)(1), and (b)(2) have been satisfied in that in this Action:  (a) the number of Settlement Class members herein is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the members of the Settlement Class herein; (c) the claims of the Plaintiffs designated herein are typical of the claims of the Settlement Class sought to be represented; (d) the Plaintiffs have fairly and adequately represented, and will fairly and adequately represent, the interests of the Settlement Class herein.  The Court also finds for purposes of the Settlement only, as required by FED. R. CIV. P. 23(b)(1) and (b)(2), that the prosecution of separate actions by individual members of the Settlement Class would create a risk of:  (i) inconsistent or varying adjudications as to individual Settlement Class members that would establish incompatible standards of conduct for the Parties opposing the claims asserted in this Action; or (ii) adjudications as to individual Settlement Class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially

impair or impede the ability of such persons to protect their interests, and that the allegations of the Plaintiffs indicate that the Defendants acted on grounds that apply generally to the Settlement Class, and that declaratory relief would be appropriate.

3.       Pursuant to FED. R. CIV. P. 23 and for purposes of Settlement only, the Court hereby finally certifies this Action as a class action, with the Settlement Class being defined as follows:

> All Persons who, at any time during the period from January 1, 2010 through March 31, 2012 (the "Class Period"), (a) were participants in or beneficiaries of The Kodak Employee Stock Ownership Plan (the "ESOP"), and/or (b) were participants in or beneficiaries of the Eastman Kodak Employees' Savings and Investment Plan (the "SIP"), and whose SIP Plan accounts included investments in the Kodak Stock Fund. Excluded are Defendants and their Immediate Family Members, any entity in which a Defendant has a controlling interest, and their heirs, Successors-in-Interest, or assigns (in their capacities as heirs, Successors-in-Interest, or assigns).

4.       Pursuant to FED. R. CIV. P. 23 and for the purposes of the Settlement only, the Court appoints Settlement Class members Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni, Sandy Paxton, and Sue Toal as class representatives for the Settlement Class and Izard Nobel LLP and Connolly Wells & Gray, LLP as Class Counsel for the Settlement Class.  Class Counsel who seek to represent the Settlement Class in the Action have done sufficient work and are sufficiently experienced in ERISA class action litigation to represent the interests of the Settlement Class.

5.       The Court determines that the Class Notice transmitted to the Settlement Class and the published Summary Notice provided pursuant to the Preliminary Approval Order concerning the Settlement and the other matters set forth therein are the best notice practicable under the circumstances and, in the form of the Class Notice, included individual notice to all members of the Settlement Class who could be identified through reasonable efforts.  Such Notice provided valid, due, and sufficient notice of these proceedings and of the matters set forth therein, including

the terms of the Settlement set forth in the Settlement Agreement and the Plan of Allocation, to all persons entitled to such notice, and such Notice has fully satisfied the requirements of FED. R. CIV. P. 23 and the requirements of due process.

6.     The Court determines that the Settlement Agreement was negotiated vigorously and at arm's-length by Plaintiffs and their counsel on behalf of the SIP and the ESOP (collectively, the "Plans") and the Settlement Class and further finds that, at all times, Plaintiffs have acted independently and that their interests are identical to the interests of the Plans and the Settlement Class.  If settlement of Plaintiffs' claims had not been achieved, both Plaintiffs and Defendants would have faced the expense, risk, and uncertainty of extended litigation.  The Court further finds that the Settlement complies with the terms of the Department of Labor's Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation PTE 2003-39, and is supported by a determination from an Independent Fiduciary that the Settlement is appropriate for each Plan.  Accordingly, the Court determines that the negotiation and consummation of the Settlement by the Plaintiffs on behalf of the Plan and the Settlement Class do not constitute "prohibited transactions" as defined in ERISA §§ 406(a) or (b).

7.     Pursuant to FED. R. CIV. P. 23(e), the Court hereby approves and confirms the Settlement embodied in the Settlement Agreement as being a fair, reasonable, and adequate Settlement and compromise of the Action and in the best interests of the Settlement Class.  The Court orders that the Settlement Agreement shall be consummated and fully implemented in accordance with its terms and conditions.

8.     The Court hereby finds that the Plan of Allocation provides a fair and equitable basis upon which to allocate the proceeds of the Settlement Fund among the Settlement Class members.  A full and fair opportunity was accorded to all Settlement Class members to be heard

with respect to the Plan of Allocation. Accordingly, the Court hereby approves the Plan of Allocation.

9.      The Action is hereby dismissed with prejudice, each party to bear its own costs, except as provided herein.

10.     The Court having certified the Action as a non-opt-out class action under FED. R. CIV. P. 23(a) and 23(b)(1) and (b)(2), Settlement Class members shall be bound by the Settlement.

11.     Upon the Effective Date of the Settlement, the Plans, by and through the Independent Fiduciary retained pursuant to Section 2.4 of the Settlement Agreement, and by operation of this Order, both on the behalf of each Plan, and on behalf of the Plans' participants who are members of the Settlement Class, absolutely and unconditionally release and forever discharge each and all of the Released Parties from the Released Plaintiffs' Claims. Nothing herein, however, is intended to include a release of any rights or duties arising directly out of the Settlement Agreement, including the express warranties and covenants contained therein.

12.     Upon the Effective Date of the Settlement, Plaintiffs and Settlement Class members, the Plans and all participants, fiduciaries, and beneficiaries in or of the Plans, and all Successors-in-Interest of any of the foregoing, absolutely and unconditionally release and forever discharge the Released Parties from the Released Plaintiffs' Claims. Each Released Party also releases each of the other Released Parties from any and all claims, including claims for contribution, subrogation, and/or indemnity, relating to Released Defendants' Claims, but excluding any claims for indemnity that any Individual Defendant may have against the Company that do not pertain or relate to the Action. Nothing herein, however, is intended to include a release of any rights or duties arising directly out of the Settlement Agreement, including the express warranties and covenants contained therein.

13.     Upon the Effective Date of the Settlement, Defendants and the other Released Parties absolutely and unconditionally release and forever discharge the Plaintiffs, the Plan, the Settlement Class, Plaintiffs' Counsel, and all Successors-in-Interest of any of the foregoing from the Released Defendants' Claims.

14.     Nothing herein, however, is intended to include a release of any rights or duties arising directly out of the Settlement Agreement, including the express warranties and covenants contained therein.  The Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could have been asserted by Plaintiffs, the Settlement Class, the Plan, and Plaintiffs' Counsel against the Released Parties with respect to the Released Plaintiffs' Claims.  Accordingly, Plaintiffs and Defendants shall not assert in any forum that the claims asserted in the Action were brought or defended in bad faith or without a reasonable basis.  The Parties shall not assert any contention regarding a violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Action.  Except as expressly set forth in the Settlement Agreement, each party shall bear his, her or its own costs and expenses, including attorneys' fees.

15.     In the event that the Settlement does not become effective in accordance with the terms of the Settlement Agreement, the Final Order shall be rendered null and void and shall be vacated *nunc pro tunc*, and the Action shall proceed in the manner provided in the Settlement Agreement and the Preliminary Approval Order.

16.     Upon the Effective Date of the Settlement, Plaintiffs, the Plans, and all Settlement Class members are permanently enjoined and barred from commencing or prosecuting any action asserting any of the Released Plaintiffs' Claims against any of the Released Parties, and each of the Released Parties is permanently enjoined and barred from commencing or prosecuting any action

relating to any of the Released Defendants' Claims against the Plaintiffs, the Plans, Settlement Class members, and the other Released Parties.

17.     The Settlement Agreement and this Final Order, whether or not consummated, do not and shall not be construed, argued, or deemed in any way to be (a) an admission or concession by Defendants with respect to any of the Released Plaintiffs' Claims or evidence of any violation of any statute or law or other wrongdoing, fault, or liability by Defendants, or (b) an admission or concession by Plaintiffs or any member of the Settlement Class that their claims lack merit or that the defenses that have been or may have been asserted by Defendants have merit.  Absent written agreement of the Parties, in the event this Order and Final Judgment approving the Settlement is reversed, vacated, or modified in any respect by the Court or any other court, the certification of the Settlement Class shall be vacated, the Action shall proceed as though the Settlement Class had never been certified, and no reference to the prior Settlement Class or any documents related thereto shall be made for any purpose.  Nothing herein shall be deemed to preclude Defendants from contesting class certification for any other purpose if the Settlement is reversed, vacated, or modified in any respect by the Court or any other court.

18.     The Settlement Agreement and the Final Order shall not be offered or received in evidence by any Settlement Class member or Party to this Action in any civil or administrative action or proceeding other than proceedings necessary to approve or enforce the terms of the Settlement Agreement and this Order and Final Judgment.

19.     Class Representatives Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni, Sandy Paxton, and Sue Toal are each awarded $_____ as a Case Contribution Award, as defined in the Settlement Agreement, in recognition of their

contributions to this Action, to be paid from the Settlement Fund in accordance with the Settlement Agreement.

20.     The attorneys' fees sought by Plaintiffs' Counsel are fair and reasonable in light of the successful results achieved by Plaintiffs' Counsel, the monetary benefits obtained in this Action, the substantial risks associated with the Action, Plaintiffs' Counsel's skill and experience in class action litigation of this type, and the fee awards in comparable cases.  Accordingly, attorneys' fees are awarded in the amount of _____% of the gross Settlement Fund to be paid in accordance with the Settlement Agreement.

21.     The litigation expenses incurred by Plaintiffs' Counsel in the course of prosecuting this action are fair and reasonable.  Accordingly, expenses are awarded in the amount of $_____, to be paid from the Settlement Fund in accordance with the Settlement Agreement.

22.     As required by FED. R. CIV. P. 23(h)(3), the Court has considered and finds as follows in making this award of attorneys' fees and expenses:

a.     The Settlement created a gross Settlement Fund of $9.7 million in cash, plus interest earned after deposit, for distribution to the Plan, and numerous Settlement Class members will benefit from the Settlement pursuant to the Plan of Allocation;

b.     More than _____ copies of the Mail Notice were sent to putative Settlement Class members notifying them that Plaintiffs' Counsel would be applying to the Court for up to one-third of the gross Settlement Fund in attorneys' fees and approximately $_____ in expenses;

c.     The Mail Notice advised Settlement Class members that more information would be made available on the Settlement Website.  Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel's filing in support of final approval of the Settlement, the proposed Plan of

Allocation, and the applications for attorneys' fees, expenses, and case contribution awards was posted to the Settlement Website at least three weeks prior to the deadline for Settlement Class members to review and serve objections thereto;

      d.      _____ objections were filed against the terms of the Settlement, the proposed Plan of Allocation, or Plaintiffs' Counsel's applications for attorneys' fees, expenses and Case Contribution Awards;

      e.      The Action involved complex factual and legal issues, was actively prosecuted for more than three years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

      f.      Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the class they sought to represent would recover less or nothing from the Defendants;

      g.      Plaintiffs' Counsel's fee and expense application indicates that they devoted over _____ hours, with a lodestar value of approximately $_____, to achieve the Settlement; and

      h.      The amount of attorneys' fees and expenses awarded by the Court is fair and reasonable and consistent with such awards in similar cases.

23.      The Court finds the fees and expenses incurred by the Settlement Administrator to be just and proper and hereby orders the Settlement Administrator to be be paid in conformity with the Settlement Agreement.

24.      Without affecting the finality of this Order and Final Judgment, the Court retains jurisdiction for purposes of implementing the Settlement Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the

Settlement Agreement and the Settlement, as may from time to time be appropriate, and resolution

of any and all disputes arising thereunder.

      **SO ORDERED** this _____ day of_____, 2016.


_____
DAVID G. LARIMER
UNITED STATES DISTRICT JUDGE

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

IN RE EASTMAN KODAK ERISA
LITIGATION

_____

THIS DOCUMENT RELATES TO:
ALL ACTIONS

**MASTER FILE NO. 6:12-CV-06051-DGL**

## [PROPOSED] PLAN OF ALLOCATION

### I.      Definitions

A.      Except as indicated in this Plan of Allocation, the capitalized terms used herein shall have the meanings ascribed to them in the Class Action Settlement Agreement dated _____, 2016 ("Settlement Agreement").

B.      "Settlement Proceeds" shall mean the balance of the "Settlement Fund" after payment of attorneys' fees and expenses, Case Contribution Awards and any other Settlement Expenses, as described in Sections 1.48, 8.1, 10.1, and 10.2 of the Settlement Agreement.

C.      The "Plans" shall mean the Eastman Kodak Employees' Savings and Investment Plan (the "SIP") and the Kodak Employee Stock Ownership Plan (the "ESOP").

D.      "Person" shall mean an individual, partnership, corporation, governmental entity, or any other form of entity or organization.

E.      The "Class Period" shall mean the period from January 1, 2010 to March 31, 2012.

F.      The "Settlement Class" shall mean all Persons who, at any time during the Class Period, (a) were participants in or beneficiaries of the ESOP, and/or (b) were participants in or beneficiaries of the SIP, and whose SIP Plan accounts included investments in the Kodak Stock Fund.  Excluded are Defendants and their Immediate Family Members, any entity in which a Defendant has a controlling interest, and their heirs, Successors-in-Interest, or assigns (in their capacities as heirs, Successors-in-Interest, or assigns).

G.      "Preliminary Individual Dollar Recovery" means the amount calculated pursuant to Parts II.A-II.C below.

H.      "Final Individual Dollar Recovery" means the amount calculated pursuant to Part II.D below.

I.      The "SIP Recordkeeper" means T. Rowe Price, or any successor.

## II.      Calculation of Allocation

A.     Calculating Aggregate Losses in the SIP

1.  For each Class Member that had a SIP account during the Class Period, the third party retained to perform the calculations under this Plan of Allocation (the "Settlement Administrator") shall determine the alleged net loss ("Net Loss") for that Class Member's SIP Account in accordance with the formula:  Net Loss = A + B - C - D, where, for each Participant's SIP account:

(a) A = the total dollar value, if any, of the balances in the Kodak Stock Fund in the SIP at the beginning of the Class Period, January 1, 2010;

(b) B = the total dollar value, if any, of all purchases of interests in the Kodak Stock Fund in the SIP during the Class Period, valued at the time of transaction(s);

(c) C = the total dollar value, if any, of all dispositions of interests in the Kodak Stock Fund in the SIP during the Class Period, valued at the time of transaction(s); and

(d) D = the total dollar value, if any, of the balances in the Kodak Stock Fund in the SIP remaining at the end of the Class Period, March 31, 2012.

2.  The Net Losses of the Participants as calculated in Section II.A.1 will be totaled to yield the loss of the SIP as a whole over the Class Period (the "SIP Plan's Loss").

B.     Calculating Aggregate Losses in the ESOP

1.  For each Class Member that had an ESOP account during the Class Period, the Settlement Administrator shall determine the alleged Net Loss for that Class Member's ESOP Account in accordance with the formula: Net Loss = A + B - C - D, where, for each Participant's ESOP account:

(a) A = the total dollar value, if any, of the balances in the ESOP at the beginning of the Class Period, January 1, 2010;

(b) B = the total dollar value, if any, of all purchases of interests in the ESOP during the Class Period, valued at the time of transaction(s);

(c) C = the total dollar value, if any, of all dispositions of interests in the ESOP during the Class Period, valued at the time of transaction(s); and

(d) D = the total dollar value, if any, of the balances in the ESOP remaining at the end of the Class Period, March 31, 2012.

2.  The Net Losses of the Participants as calculated in Section II.A.2 will be totaled to yield the loss of the ESOP as a whole over the Class Period (the "ESOP's Loss").

2

C.   Calculating Preliminary Individual Dollar Recovery

1.   The Settlement Administrator shall aggregate the SIP Plan's Loss and the ESOP's Loss to determine the Plans' Total Losses.

2.   The Settlement Administrator shall calculate a Loss Recovery Percentage by dividing the Settlement Proceeds by the Plans' Total Losses.

3.   The Settlement Administrator shall calculate the "Preliminary Individual SIP Account Dollar Recovery" for each Class Member's SIP account by multiplying their Net Loss in that account (calculated in accordance with Section II.A.1 above) by the Loss Recovery Percentage.  Where the calculation shown in Section II.A.1 shows a net gain rather than a Net Loss, that Class Member's Preliminary Individual SIP Account Dollar Recovery shall be considered as $0.0.  For Class Members who were *only* Participants in the SIP during the Class Period, the Preliminary Individual SIP Account Dollar Recovery will be their Preliminary Individual Dollar Recovery.

4.   The Settlement Administrator shall calculate the "Preliminary Individual ESOP Account Dollar Recovery" for each Class Member's ESOP account by multiplying the Net Loss in that account (calculated in accordance with Section II.A.2 above) by the Loss Recovery Percentage.  Where the calculation shown in Section II.A.2 shows a net gain rather than a Net Loss, that Class Member's Preliminary Individual ESOP Account Dollar Recovery shall be considered as $0.00.  For Class Members who were *only* Participants in the ESOP during the Class Period, the Preliminary Individual ESOP Account Dollar Recovery will be their Preliminary Individual Dollar Recovery.

5.   The Preliminary Individual Dollar Recovery of Class Members who participated in both the SIP *and* the ESOP during the Class Period will be the sum of their Preliminary Individual SIP Account Dollar Recovery and their Preliminary Individual ESOP Account Dollar Recovery.

D.   Calculating Final Individual Dollar Loss Recoveries

1.   The Settlement Administrator shall identify all Participants whose Preliminary Individual Dollar Recovery under Parts II.C above is less than or equal to twenty-five dollars ($25.00) (the "*De Minimis* Amount").  All Participants whose Preliminary Individual Dollar Recovery is less than or equal to the *De Minimis* Amount shall be deemed to have a Final Individual Dollar Recovery of zero.[1]

2.   The Settlement Administrator shall then re-allocate *pro rata* the Preliminary Dollar Recovery of the Participants identified in Part II.C among the Participants whose Preliminary Individual Dollar Recovery was greater than the *De Minimis* Amount, so

---

[1] Subject to Court approval, the Parties may agree to modify the *De Minimis* Amount at any time before entry of the Judgment based on information they may receive from the Plans' recordkeepers, the Trustee and/or the Settlement Administrator.

as to arrive at each such Participant's "Final Individual Dollar Recovery." The sum of the Final Individual Dollar Recoveries must equal the Settlement Proceeds.

E.   If any Participant with a Final Individual Dollar Recovery greater than zero cannot be located despite reasonable efforts, such Participant's Final Individual Dollar Recovery shall be administered in accordance with the existing procedures of the relevant Plan(s) regarding un-locatable participants. If any Participant with a Final Individual Dollar Recovery greater than zero is deceased, such Participant's Final Individual Dollar Recovery shall be administered in accordance with the existing procedures of the relevant Plan(s) regarding deceased participants.

F.   Fourteen (14) days prior to the distribution of the Settlement Proceeds to Settlement Class members, the Settlement Administrator shall determine the portion of the Settlement Proceeds to be paid to qualified Settlement Class members who are current participants in the SIP, and that portion of any Settlement Proceeds to be paid to qualified Settlement Class members who are former participants of the SIP or the ESOP. At the same time, the Settlement Administrator shall provide Class Counsel and Counsel for the Kodak Defendants and Counsel for the BNY Mellon Defendants the proposed allocation described herein (or otherwise modified) as well as a sampling of the summaries, compilations, calculations, or tabulations of the claims and amounts described herein, including a complete listing setting out the amount of allocations to each Participant.

## III.   Distribution of the Settlement Proceeds to the Settlement Class

A.   Pursuant to the Settlement Agreement, once the Settlement becomes final, Class Counsel shall direct the Escrow Agent to disburse to the SIP that portion of the Settlement Proceeds that the Settlement Administrator has determined is payable to qualified Settlement Class members who are current participants in the SIP.

B.   *Current Participants*. As promptly as reasonable after deposit of the Settlement Proceeds into the SIP, the SIP Recordkeeper shall allocate into each current SIP Plan Participant's account his or her Final Individual Dollar Recovery, in the exact amount determined by the Settlement Administrator, less any expenses or administrative charges approved by the Court. Each current Participant's Final Individual Dollar Recovery shall be allocated in its entirety to the investment option that the existing procedures of the relevant Plan designate as the default option for current participants and treated thereafter for all purposes under the SIP Plan as assets of the SIP properly credited to that Participant's account.

C.   *Former SIP or ESOP Participants*.

1.   With respect to former SIP or ESOP Participants whose SIP or ESOP Plan accounts have closed as of the date that the Settlement becomes Final, and whose Final Individual Dollar Recovery is less than five thousand dollars ($5000), the Settlement Administrator shall by check or other payment method, pay each such qualified Settlement Class Member the amount of his or her Final Individual Dollar Recovery, less any expenses or administrative charges approved by the Court.

4

2. With respect to former SIP or ESOP Participants whose SIP or ESOP Plan accounts have closed as of the date that the Settlement becomes Final, and whose Final Individual Dollar Recovery is greater than or equal to five thousand dollars ($5000), the SIP Recordkeeper shall establish a SIP account for each such Class Member, and each such Class Member will be notified of such account along with further instructions. As promptly as possible after deposit of the Net Proceeds into the Plan, the SIP Recordkeeper shall deposit into each former Participant's newly established account his or her Final Individual Dollar Recovery, less any expenses or administrative charges approved by the Court. Each former Participant's Final Individual Dollar Recovery shall be allocated in its entirety to the investment option that the existing procedures of the relevant Plan designate as the default option for current participants and treated thereafter for all purposes under the SIP Plan as assets of the SIP properly credited to that Participant's account.

## IV.   Qualifications and Continuing Jurisdiction

A. In light of the manner in which the data is kept and the ease with which it can be manipulated, it may be appropriate to simplify some of the features of these calculations. Such simplifications are acceptable as long as the two basic features of the distribution are preserved: (1) that each Participant receives a share of the Net Proceeds in proportion to that Participant's Plan losses; and (2) that the distribution take place through the SIP so as to realize the tax advantage of investment in a retirement plan. Any such changes will be presented to the Court for approval pursuant to section IV.B below.

B. The Court will retain jurisdiction over the Plan of Allocation to the extent necessary to ensure that it is fully and fairly implemented.