**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE EASTMAN KODAK ERISA LITIGATION | **MASTER FILE NO. 6:12-CV-06051-DGL** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**DECLARATION OF GERALD D. WELLS, III IN SUPPORT OF**
**PLAINTIFFS' MOTIONS FOR APPROVAL OF CLASS ACTION SETTLEMENT AND**
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES**
**AND CLASS REPRESENTATIVE AWARDS**

I, Gerald D. Wells, III, declare as follows:

1.     I am a founding member of the law firm of Connolly Wells & Gray, LLP (the "Firm").  I am personally involved in all aspects of the prosecution of this matter.

2.     The Firm was founded in October, 2013.  Prior to this, I was with the law firm of Faruqi & Faruqi, LLP ("F&F").  I became a partner at F&F in January 2012.  While at F&F, I was either chair or co-chair of the firm's employment practices group.

3.     I have been involved in all aspects of this litigation from the initial investigation through its resolution.

4.     I make this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Approval Motion") and Motion for Approval of Attorneys' Fees,

Reimbursement of Expenses and Case Contribution Awards (the "Fee and Expense Motion").[1] The matters set forth herein are stated within my personal knowledge.

5.     I am submitting this declaration to put before the Court certain documents and facts supporting final approval of the Settlement.

6.     Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Christina Peters-Stasiewicz, detailing the dissemination of class notice and other work performed by the claims administrator in this matter.

7.     Attached hereto as Exhibit 2 is a true and correct copy of the firm resume of Connolly Wells & Gray, LLP.

8.      Attached hereto as Exhibit 3 is a true and correct copy of the firm resume of Izard, Kindall & Raabe, LLP.

9.     Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of Mark Gedek.

10.     Attached hereto as Exhibit 5 is a true and correct copy of the Declaration of Allen Harter.

11.     Attached hereto as Exhibit 6 is a true and correct copy of the Declaration of Sandy Paxton.

12.     Attached hereto as Exhibit 7 is a true and correct copy of the Declaration of Susan Toal.

---

[1] All capitalized, undefined terms not otherwise defined in this declaration shall have the same meaning ascribed to them in the Parties' Settlement Agreement previously filed with the Court at Dkt. No. 122-3.

13.     Attached hereto as Exhibit 8 is a true and correct copy of the Declaration of Thomas W. Greenwood.

14.     Attached hereto as Exhibit 9 is a true and correct copy of the Declaration of Mark J. Nenni.

15.     Attached hereto as Exhibit 10 is a true and correct copy of the Declaration of Katherine L. Bolger.

**FACTS AND PROCEDURAL BACKGROUND**

**Litigation History**

16.     On January 27, 2012, following Kodak's filing for Chapter 11 bankruptcy, Plaintiff Mark Gedek filed the initial class action against certain Defendants alleging violations of ERISA. Shortly thereafter, six additional complaints, all alleging violations of ERISA, were also filed against Defendants:   *Greenwood v. Perez,* No. 6:12-cv-06056, *Bolger v. Perez,* No. 6:12-cv-06067, *Coletta v. Perez,* No. 6:12-cv-06071, *Mauer v. The Eastman Kodak Savings & Investment Plan Committee,* No. 6:12-cv-06078, *Toal v. Perez,* No. 6:12-cv-06080, and *Hartter v. Perez,* No. 12-cv-06146.  Dkt. No. 40, at 2.

17.     On May 10, 2012, the Court entered an order consolidating the cases.  Dkt. No. 39.  Thereafter, on August 1, 2012, the Court entered an order appointing Izard, Kindall & Raabe, LLP (then known as Izard Nobel, LLP) and Faruqi & Faruqi interim co-lead counsel.   Dkt. No. 43.  On May 5, 2015, the Court entered an order substituting Connolly Wells & Gray, LLP for Faruqi & Faruqi, LLP as interim co-lead counsel.  Dkt. No. 92.

18.     Plaintiffs filed their operative complaint on September 14, 2012.  Dkt. No. 48.  In this Action, Plaintiffs allege that Defendants were the fiduciaries of the Eastman Kodak

Employees' Savings and Investment Plan (the "SIP") and/or the Kodak Employee Stock Ownership Plan (the "ESOP") (the SIP and ESOP are collectively referred to herein as the "Plans") who breached their ERISA-mandated duties by offering Kodak stock as a retirement investment when the stock was an imprudent retirement investment due to the company's dire financial condition and ultimate bankruptcy.

19.     Plaintiffs assert that the Plans' fiduciaries violated their statutory ERISA duties of prudence and care, through their management, oversight and administration of the Plans' continued investment in Kodak stock during the Class Period.

20.     Plaintiffs allege that Defendants knew or should have known that Kodak Stock was an imprudent retirement investment for the Plans during the Class Period because: (a) Kodak depended on a dying technology and the sale of antiquated products; (b) it was unable to generate sufficient cash-flow from its short term business strategy of initiating lawsuits that would garner settlements; (c) it was suffering from a severe lack of liquidity; and (d) its bonds – which take priority of stock in bankruptcy – had been downgraded to "junk" status, and it stock price collapsed due to these circumstances.

21.     Plaintiffs allege that the Defendants, who were obligated to prudently and loyally manage the Plans, violated ERISA Sections 409 and 502, 29 U.S.C. §§ 1109, 1132 when they breached these fiduciary duties.

22.     Defendants filed Motions to Dismiss the complaint on October 29, 2012.  After extensive briefing, including submissions regarding supplemental authority, and oral argument, the Court denied Defendants' motions on December 17, 2014.

23.   Hard-fought discovery commenced in February 2015.   Plaintiffs propounded Requests for Production and Interrogatories, and the Kodak Defendants served Requests for Production as well as three separate sets of interrogatories and Requests for Admissions over the course of the six months between April and October of 2015.  In response to said discovery, both sides engaged in multiple meet and confers and filed contested motions to compel production of documents and interrogatory responses.

24.   In November of 2015, Judge Payson heard oral argument on the Kodak Defendants' Motion to Compel, issuing a ruling the next day granting the motion in part, denying it in part, and reserving in part.  Dkt. Nos. 109-110.

25.   Plaintiffs' Motion to Compel was fully briefed (Dkt. Nos. 111, 114 & 116), but prior to the scheduled oral argument in December of 2015, the Plaintiffs and the Kodak Defendants agreed to formal mediation in an attempt to amicably resolve this matter.

**Bankruptcy Proceedings**

26.   As this Court is well aware, Kodak's downward spiral into bankruptcy help precipitate this Action.

27.   Prior to consolidation, counsel for Plaintiffs worked together to ensure that their client's and the Plans' claims were not adversely affected in Kodak's bankruptcy proceeding.

28.   To further these efforts, Plaintiffs retained experienced bankruptcy counsel, Lowenstein Sandler LLP ("Lowenstein Sandler"), in order to assist counsel in ensuring that the Plans' (and concomitantly their participants) claims survived Kodak's bankruptcy petition.

29.   At the direction of Class Counsel, Lowenstein Sandler engaged in hard-fought negotiations within the bankruptcy framework.  Through these efforts, Plaintiffs were able to

achieve a carve-out of Plaintiffs' claims brought on behalf of the Plans thereby ensuring that *Kodak's* bankruptcy would not diminish or abolish Plaintiffs' ability to recover in this Action.

30.     While Lowenstein Sandler contributed significantly to this effort, Class Counsel recognized that their efforts were taking place in a separate forum and involved specialized expertise.  Accordingly, Class Counsel paid them at their normal hourly rate, treating their bills as an expense as opposed to lodestar.  The total amount of fees paid to Lowenstein Sandler for their work on behalf in the Class in the bankruptcy proceeding was $83,063.30.

**Mediation**

31.     When the Parties agreed to mediation in December 2015, they agreed to utilize David Geronemus, Esq., a well-respected mediator with significant experience mediating and resolving complex class actions, including ERISA cases.

32.     The Parties scheduled their mediation for February 2016, one of the earliest possible date that all Parties and Mr. Geronemus were available.

33.     Documents produced by Defendants in response to Plaintiffs' discovery requests, including data on the purchase and sale of Kodak stock on a Plan-wide level as well as data concerning the performance of other investment options in the 401k plan, permitted Plaintiffs to make an informed decision regarding the relative strength of their claims, and to assist Plaintiffs in calculating damages.

34.     To prepare for the mediation, Class Counsel retained Cynthia Jones, CFA, a Vice President of Management Planning, Inc., to perform an analysis of class-wide damages, taking into account transactional information on the daily purchases and sales of Kodak stock by the Plans as well as the performance of all of the other investment options.

35.     Prior to mediating with Mr. Geronemus, Plaintiffs submitted a detailed presentation of the best evidence supporting Plaintiffs' claims and engaged in a telephonic pre-mediation session.

36.     The Plaintiffs and the Kodak Defendants engaged in an all-day mediation before Mr. Geronemus on February 24, 2016.

37.     At the end of that all-day mediation session, the Plaintiffs and the Kodak Defendants had an agreement in principle and executed an initial term sheet.  Thereafter, BNY Mellon was contacted to determine whether it wished to participate in the proposed settlement.  Ultimately, after several weeks of further discussion, including multiple iterations of proposed revisions to the term sheet, a formal, finalized term sheet was executed by the parties on March 14, 2016.

38.     Thereafter, the Parties began to work on preparing a formal Settlement Agreement and its ancillary documents.  These discussions led to conference calls and drafts being circulated by both sides.

39.     Ultimately, on April 22, 2016, the Parties executed the Settlement Agreement.

40.     Pursuant to its terms, a Class Settlement Amount of $9,700,000.00 will be deposited into an interest-bearing escrow account for the benefit of the Settlement Class.

41.     The Class Settlement Amount, less the costs of notice and settlement administration, any Case Contribution Awards for the Plaintiffs, and Court approved attorneys' fees and expenses, shall be for the benefit of the Settlement Class members – the Plans' participants and beneficiaries.

42.     In our view the Settlement represents an excellent result that will provide significant benefits to the Settlement Class while removing the risk and delay associated with further litigation.

43.     On April 27, 2016, the Court granted preliminary approval to proposed Settlement.

### THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

44.     As this Court has recognized, a class action settlement should be approved when it is "'fair, adequate, and reasonable, and not a product of collusion.'"  *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138–39 (2d Cir. 2000).

45.     As discussed above, the proposed settlement was reached only after years of contentious litigation, with the assistance of an able third-party mediator.   Accordingly, collusion is not an issue.  Moreover, there are no obvious deficiencies in the Settlement – it is similar to the form and format of numerous ERISA settlements that have been approved over the course of the last several years.  In addition, the proposed Settlement is, in Class Counsel's view, favorable with respect to its terms and in light of the risks of continued litigation.

46.     Importantly, the Plan of Allocation is specifically designed to treat the losses of all members of the Settlement Class in exactly the same way, with no preferential treatment for class representatives or any segments of the Settlement Class.

47.     The $9.7 million comprising the Class Settlement Amount is well within the range of possible approval.  It represents more than 20 percent of Plaintiffs' damages estimate, and a *much* greater percentage of the Kodak Defendants' damages estimate.

48.     In light of the fact that continued litigation would have taken a very considerable amount of time, during which the Settlement Class (most of whom are retirees) would have had to wait for resolution of their claims, and the real risk that at the end of the day the Settlement Class might have recovered less, or might have recovered nothing at all, this proposed Settlement represents an outstanding result.

### CLASS COUNSEL BELIEVES THAT THE PROPOSED SETTLEMENT SATISFIES THE APPLICABLE FACTORS CONSIDERED BY COURTS IN THIS CIRCUIT WHEN REVIEWING PROPOSED CLASS ACTION SETTLEMENTS FOR FINAL APPROVAL

49.     Before agreeing to the proposed Settlement, Class Counsel assessed its merits using various factors typically used by counsel in this type of case including the factors used by courts in the Second Circuit to assess proposed class action settlements.  Class Counsel believes that the proposed Settlement is fair, reasonable, and adequate when the applicable factors are considered.  Those factors, set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d at 463 (2d Cir. 1974), include the following: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and  (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

50.     A review of each factor justifies final approval of the Settlement.

51.     The complexity, expense, and likely duration of the litigation justify final approval of the Settlement.  This Action has gone on for more than four years and will require significant expense and additional litigation should the Settlement not be approved.

52.     Indeed, fact discovery (including deposition discovery) has not yet been completed, and expert discovery has yet to commence.  Class certification and dispositive motions in these cases are typically time-consuming endeavors, as would the trial.   Further, given the current state of ERISA jurisprudence, any trial would have – in all likelihood – resulted in appeals by the non-prevailing parties.  It would certainly take even more years to obtain a final judgment through litigation.   Accordingly, all of these facts weigh in favor of the Settlement.

53.     The reaction of the class to the Settlement has been positive.  Because the deadline for Class Members to object to the Settlement is August 1, 2016, it is too soon to make a definitive statement with respect to this *Grinnell* factor.  However, to date, no objections to any aspect of the Settlement have been filed. Further, all surviving named Plaintiffs and Class Representatives support the Settlement.  Therefore, this factor appears to weigh in favor of the Settlement.

54.     The stage of the proceedings and the amount of discovery completed justifies approval of the Settlement.  The Parties have exchanged a significant amount of discovery and financial information, have engaged in extensive motion practice, and engaged in formal mediation.

55.     Hence, Class Counsel have developed a comprehensive understanding of the merits of the case through our work on the case.  In Class Counsel's view, when agreeing to the

Settlement, we had obtained sufficient information about the strengths and weaknesses of the claims and defenses to make a reasoned judgment about the desirability of settling the case on the terms proposed.  Therefore, the state of litigation and amount of discovery weigh in favor of approving the Settlement.

56.     The risks of establishing liability and damages also counsel approval of the Settlement.  Liability would be hotly contested should this Action continue to be litigated in the absence of the Settlement reached by the Parties, and critical case law governing the applicable standards remains unsettled.  While the Supreme Court' recent decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), eliminated the so-called "presumption of prudence" argument, certain dicta in that decision raises issues regarding the proper pleading requirements of an ERISA action regarding claims of imprudent investment in company stock have lent support to arguments by defendant fiduciaries in similar circumstances.

57.     Indeed, the Second Circuit recently affirmed dismissal of a suit against the fiduciaries of the Lehman Brothers retirement plan based on the *Dudenhoeffer* dicta.  *Rinehart v. Lehman Bros. Holdings Inc.,* No. 15-2229, 2016 WL 1077009, at *2 (2d Cir. Mar. 18, 2016).  While the *Lehman* court agreed that this Court's denial of Defendants' motions to dismiss was distinguishable (*Id.* at *4, n. 3), the *Dudenhoeffer* and *Lehman* decisions would no doubt have provided some support for arguments that Defendants would advance at summary judgment, trial and appeal.

58.     The risks of maintaining the class action through the trial justifies approval of the Settlement as well.  Based on my experience litigating class action cases, Defendants likely would have vigorously opposed class certification in the absence of this Settlement.  Indeed,

much of Defendants' discovery was focused on confirming that Plaintiffs were aware of the financial condition of Kodak.  Thus, although Plaintiffs remain convinced they would prevail on the issue of class certification, the risk, expense and delay inherent to the class certification is eliminated by this Settlement.  As such, Class Counsel believes this factor counsels in favor of granting final approval.

59.     Defendants' ability to withstand a greater judgment was not a factor in Plaintiffs' determination to agree to the Settlement.  Individually, the available insurance here exceeded Plaintiffs' damage estimates.  However, Defendants have asserted that should this case proceed, their damage analysis would be significantly lower than Plaintiffs.

60.     Nevertheless, the Class Settlement Amount of $9.7 million represents over 20% of Plaintiffs' damages calculation.  Had Defendants been successful in establishing that the date of imprudence (if any) was considerably closer to the bankruptcy filing, the maximum amount of damages that could have been established, even using Plaintiffs' methodology, would have been much lower.

61.     The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation strongly counsels in favor of approval of the Settlement.  As noted above, the $9.7 million to the Settlement Class as a result of this Settlement represents a significant recovery of the damages Plaintiffs might obtain after a trial on the merits, based on Plaintiffs' internal damage calculation.  Of course, this assumes that Plaintiffs would have prevailed on liability completely, successfully defeated Defendants' affirmative defenses, and convinced the Court to accept their damages model in full.

62.     Given the substantial risk of recovering less, or nothing at all, should the Action proceed to trial, the Settlement represents an outstanding result.

63.     In addition, as discussed above, this Settlement was the product of extensive negotiations between experienced counsel under the supervision of a respected mediator. Certainly there was nothing collusive about it.

64.     Further, Class Counsel have developed a comprehensive understanding of the merits of the case through our work on the case and had obtained sufficient information about the strengths and weaknesses of the claims and defenses to make a reasoned judgment about the desirability of settling the case on the terms proposed.   In Class Counsel's view, the stage of litigation and amount of discovery weigh in favor of preliminarily approving the Settlement.

### THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES

65.     In granting preliminary approval, the Court certified the following Settlement Class:

> All Persons who were participants in or beneficiaries of the SIP at any time between January 1, 2010 to March 30, 2012, and whose accounts included investments in the Kodak Stock Fund, as well as all Persons who were participants in or beneficiaries of the ESOP at any time between January 1, 2010 to March 30, 2012.  Excluded are Defendants and their Immediate Family Members, any entity in which a Defendant has a controlling interest, and their heirs, Successors-in-Interest, or assigns (in their capacities as heirs, Successors-in-Interest, or assigns).

66.     As set forth below, there is no sound basis for not granting final certification of the Settlement Class.

## THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23(A)

67.     In Class Counsel's view the proposed Settlement Class satisfies the requirements of Rule 23 for class certification.  Federal Rule of Civil Procedure 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

68.     In Class Counsel's view, the class is so numerous that joining all members is impracticable.  The list of Class Members provided to the Notice Administrator included 19,485 names.  As a result, the Action satisfies the numerosity requirement.

69.     Second, there are questions of law or fact common to the Settlement Class because the issues presented in this case are about the Defendants' fiduciary responsibilities owed to all the Plans' participants who held Kodak stock as a retirement investment in the Plans.  Thus, in Class Counsel's view, the commonality requirement is met.

70.     Third, Plaintiffs' claims are typical of the proposed Settlement Class because Plaintiffs and the Settlement Class seek to prove Defendants' breaches of fiduciary duty through an identical legal theory -- imprudently offering Company Stock as retirement investment in violation of ERISA.

71.     Fourth, in Class Counsel's view, Plaintiffs are adequate representatives because their interests are not in conflict with the Settlement Class.  Instead, Plaintiffs and members of the Settlement Class share the common goal of maximizing their recovery from Defendants.

### THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23(B)

72.     Class Counsel also suggest that this Action meet the requirements of either Rule 23(b)(l) or 23(b)(2) for purposes of certifying a Settlement Class.

73.     Under Rule 23(b)(1)(B), a class may be certified if separate actions would create a risk of adjudications that would, as a practical matter, be dispositive of the other members who are not party to the proceedings or substantially impair or impede their ability to protect their interests.  In Class Counsel's experience, this case is appropriate for class certification under Rule 23(b)(1)(B) because that rule is meant to cover cases in which participants and beneficiaries allege, on behalf of the whole, that a fiduciary has breached its duties.  That is exactly what Plaintiffs allege here.

74.     This Action is also appropriate for treatment under Rule 23(b)(l)(A) because separate actions would create a risk of incompatible standards of conduct for the defendants. Differing judgments regarding Defendants' fiduciary misconduct with respect to the Plans would hold Defendants to incompatible standards of conduct.

75.     Alternatively, this Action is also appropriate for treatment under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Settlement Class.  Indeed, Defendants' alleged fiduciary breaches affected the Plans as a whole and thus, invariably, affected each of the Plans' participants who held Company Stock during the Class Period – effectively the Settlement Class members.

### RULE 23(G) IS SATISFIED

76.     Finally, certifying a class requires the Court, under Rule 23(g), to examine the capabilities and resources of counsel for the class to determine whether they will provide

adequate representation to the class.  Here, Class Counsel have substantial experience handling class actions and other complex litigation, including numerous similar ERISA class actions.

77.     For example, my Firm was recently appointed to the executive committee prosecuting the claims in the consolidated action styled *In re 2014 RadioShack ERISA Litig.*, Master File No. 4:14-cv-959-O (N.D. Tex.) and served as class counsel in the action styled *Hellmann v. Cataldo, et al.,* No. 12-cv-2177 (E.D. Mo.)(in ERISA action, obtaining final approval for $800,000 settlement class).

78.     Izard, Kindall & Raabe, LLP, the other firm comprising Class Counsel, has served as lead or co-lead counsel in numerous important ERISA company stock cases, with successes including settlements against AOL Time Warner ($100 million), Tyco International ($70.5 million), Merck ($49.5 million), Cardinal Health ($40 million), AT&T ($29 million) and JP Morgan Chase ($23 million). Moreover, IKR was on the Executive Committee in *In re Enron Corporation Securities and ERISA Litig.*, No. 02-13624 (S.D. Tex.), which resulted in a recovery in excess of $250 million.

79.     Further information regarding the qualifications of the firms and attorneys comprising Class Counsel can be found in the firm resumes of Connolly, Wells & Gray and Izard, Kindall & Raabe, which are attached hereto.

80.     Notably, the Court has already made a preliminary determination that Class Counsel meet or exceed the requirements of Fed. R. Civ. P. 23(g).  *See* Dkt. No. 43, Dkt. No. 92. Importantly, Class Counsel have been involved in all aspects of the prosecution and resolution of this Action.  Indeed, I was the point person at F&F regarding the pre-suit investigation of Defendants.

81.     In short, Class Counsel have done substantial work to investigate potential claims in the Action and have vigorously pursued the interests of the Settlement Class throughout the litigation.

82.     For these reasons, the Court should certify the Settlement Class for settlement purposes.

### THE CLASS RECEIVED ADEQUATE NOTICE

83.     In Class Counsel's view, class notice met or exceeded the standards for due process and Rule 23.  AB Data, whom the Court approved as Notice Administrator, has fully complied with the Preliminary Approval Order's notice requirements.

84.     AB Data provided notice to 99% of the Settlement Class via direct first-class mail.

85.     Based on my experience in analogous ERISA class actions, this notice rate meets or exceeds the notice rate other courts have found acceptable for due process considerations.

86.      Nevertheless, and to ensure maximum notice dissemination, and as required by the Preliminary Approval Order, AB Data also implemented publication notice through *PR Newswire*.  AB Data also established an informational website and a toll-free informational phone number for Settlement Class Members.

87.     Further detail regarding AB Data's work and details regarding the notice process can be found in the Declaration of Christina Peters-Stasiewicz.

88.     Accordingly, based on Class Counsel's experience, we believe that notice provided to the Settlement Class met the mandates of due process and the requirements of Rule 23.

## THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

89.     Class Counsel modeled the proposed Plan of Allocation on the plans that were used and approved in similar ERISA cases involving claims about losses from holding stock in a company-sponsored retirement plan.   Courts around the country have repeatedly approved similar plans of allocation in this type of ERISA case.

90.     Indeed, the Plan of Allocation calls for the automatic deposit of the Settlement's proceeds into eligible Settlement Class members account for all current participants in the SIP, and for former participants in the SIP whose allocation is $5000 or more (former participants whose allocations are below $5000 will receive checks).

91.     Importantly, the Plan of Allocation does not require any individual complete claim forms or otherwise produce documents in order to benefit from the Settlement.   In effect, the Plan of Allocation calls for the expeditious distribution of the Settlement's funds.

92.     Finally, no Settlement Class Member or group of Settlement Class Members is singled out for either disproportionately favorable or unfavorable treatment; all participate in recoveries pursuant to the Plan of Allocation in the same manner.

93.     In short, based on our collective experience, Class Counsel believes that final approval of the Settlement should be granted, as it is fair, reasonable and adequate, and confers a substantial benefit on the Settlement Class.

## ATTORNEYS' FEES, EXPENSES, AND THE CASE CONTRIBUTION AWARDS

94.     Class Counsel requests fees in the amount of $2,910,000.00, representing thirty percent (30%) of the $9,700,000.00 common fund created by the Settlement.

95.     Importantly, this fee request is below the amount Class Counsel could seek pursuant to the Settlement Agreement and is less than the amount set forth in the notice distributed to the Settlement Class Members.

96.     To date, not a single objection to the fee request has been filed, though Class Members still have additional time to file objections should they choose to do so.[2]

97.     Because this is a common fund case, Class Counsel is "entitled to a reasonable fee – set by the court – to be taken from the fund."  *Goldberger v. Integrated Res., Inc*., 209 F.3d 43, 47 (2d Cir. 2000), *citing Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980).

98.     In determining a reasonable fee, the trend in the Second Circuit is to use the percentage of the recovery method because, among other things, it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund.

### *GOLDBERGER* FACTORS ARE MET

99.     In making their fee request, Class Counsel has analyzed the factors relied on by courts in the Second Circuit to determine whether a fee requests is fair and reasonable.  These factors, set forth in *Goldberger v. Integrated Res., Inc*., 209 F.3d 43, 47 (2d Cir. 2000) are: (1) The time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

---

[2] In the event that any Settlement Class Member files an objection to any aspect of the Settlement or the motions before the Court, Class Counsel will address it in accordance with Paragraph 15 of the Preliminary Approval Order, Dkt. No. 124.

100.    A review of each factor confirms that Class Counsel's fee request is fair and reasonable and should be approved by the Court.

101.    The time and labor expended by Class Counsel clearly justifies their fee request. Over the past four years, Class Counsel investigated and litigated this matter thoroughly.

102.    Class Counsel collectively expended 1580 hours carrying out the efforts which led to this Settlement, and other Plaintiffs' Counsel have spent an additional 666.55 hours since August 1, 2012, when the Court appointed Class Counsel as interim co-lead counsel for the Class.

103.    Among other things, Class Counsel and other Plaintiffs' Counsel: (i) investigated the legal claims available to Plaintiffs; (ii) drafted and filed the initial complaint; (iii) requested and analyzed complex plan documents; (iv) drafted and filed the consolidated amended complaint; (v) fully briefed and argued the motion to dismiss; (vi) conducted written discovery; (vii) briefed and argued motions to compel production of discovery; (viii) reviewed thousands of documents produced by Defendants; (ix) retained a damages expert; prepared a mediation statement and engaged in a full day mediation; (x) negotiated and finalized the Settlement Agreement; (xi) prepared motions for preliminary and final approval of the Settlement; (xii) retained and supervised bankruptcy counsel to ensure that the claims at issue in this case were in no way extinguished by Kodak's bankruptcy.

104.    Analysis of the magnitude and complexities of this litigation also supports approval of Class Counsel's fee request.

105.    ERISA litigation, by its nature, presents complex factual and legal issues with limited judicial precedent for guidance.  This case was no exception.

20

106.    Defendants vigorously opposed Plaintiffs' claims alleging breach of fiduciary duty, and skillfully presented a motion to dismiss all claims.

107.    While the Court's ruling on Defendants' motion to dismiss was pending, the Supreme Court decided *Dudenhoeffer*, a case which directly impacted the prudence standard in ERISA cases, thereby adding even more complexity to this case.

108.    Combined with thorny issues relating to discovery, which was hotly contested, and damages, the magnitude and complexities of this litigation support Class Counsel's fee request.

109.    The risk of the litigation was also very high in this case and supports approval of Class Counsel's fee request.

110.    The ERISA case law, particularly in the context of company stock actions involving 401(k) plans, is limited, unsettled and changing.

111.    It was with full knowledge of this unsettled legal landscape and its inherent risks that Class Counsel accepted this case on a contingent basis and chose to file and litigate this matter.

112.    Further, given the financial condition of Kodak, which had filed for bankruptcy protection, Class Counsel had no way of knowing at the time of filing whether Defendants would have sufficient funds to satisfy a successful outcome for Plaintiffs.

113.    The Court, of course, is best qualified to determine the quality of representation displayed by Class Counsel in this case.  Class Counsel submit that the quality of representation is evidenced by the pleadings, briefs and arguments made to the Court over the course of the

litigation, as well as the ultimate result achieved on behalf of the Class in a challenging legal environment.

114. Class Counsel is comprised of attorneys and law firms that are national leaders in class action litigation, including those involving ERISA matters. As noted above, Class Counsel have been lead- or co-lead counsel in numerous large ERISA class actions around the country involving the imprudence of various company stock funds in 401(k) plans. Combined, the attorneys comprising Class Counsel have achieved many notable successes in ERISA class action cases, resulting in the recovery of hundreds of millions of dollars for settlement class members in those cases. Counsel's firm resumes are attached as Exhibits 2 and 3.

115. The quality of Class Counsel's representation is also evident when considering that they achieved this favorable result against Defendants who were represented by attorneys from Gibson Dunn & Crutcher, LLP, and Goodwin Procter, LLP, firms that are nationally recognized for excellence, including within the field of ERISA litigation.

116. The requested fee in relation to the settlement is a fair percentage and supports Class Counsel's fee request.

117. The requested fee of $2,910,000.00 is 30% of the $9,700,000.00, which compares favorably to fee awards in other common fund class actions in the Second Circuit.

118. Finally, public policy considerations strongly support approval of Class Counsel's fee request.

119. ERISA was enacted in recognition of the important public interest of protecting workers' retirement funds from abuse, and the statute itself encourages enforcement through private actions like the one brought here by Class Counsel on behalf of Plaintiffs.

120.    Further, it is an important, as courts in the Second Circuit have found, to award reasonable fee awards in cases like this one in order to encourage private attorneys to continue to bring contingency fee class actions representing the public interest.

121.    Thus, application of the *Goldberger* factors to this case clearly supports approval of Class Counsel's fee request.

### LODESTAR CROSS CHECK

122.    The fee request here is also supported by a cross check of Class Counsel's lodestar.  Pursuant to the Court's August 1, 2012 Order, Izard, Kindall & Raabe, LLP and my firm (originally Faruqi & Faruqi and, subsequent to my move and the Court's May 5, 2015 Order, Connolly, Wells & Gray LLP) acted as co-lead counsel throughout the litigation, with Blitman & King, LLP serving as liaison counsel.  As set forth below, these firms collectively spent 1580 hours prosecuting this case, with a combined lodestar of $1,015,659.20.

123.    Looking solely at Class Counsel's lodestar, the fee request represents a lodestar multiplier of 2.86, which is well below lodestar multipliers approved by this Court.  *See, e.g., Davis v. J.P. Morgan Chase & Co.,* 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (approving lodestar multiplier of 5.3 in employment litigation matter).

124.    However, looking only at Class Counsel's lodestar would present an inaccurate view in this case.  As the Court recognized in its August 1, 2012 Order, Class Counsel are required to direct, coordinate and supervise the prosecution of the litigation, but may delegate to other plaintiffs' counsel, assigning work "as necessary and appropriate under the circumstances."  Dkt. No. 40, at ¶ 7.  In accordance with this directive, Class Counsel requested that counsel for each named Plaintiff in the litigation assume primary responsibility for keeping

their client or clients informed about the progress of the litigation and ensuring compliance with discovery requests.   In addition, counsel for each Plaintiff reviewed and provided comments on the Consolidated Complaint and participated in the mediation session to ensure maximum transparency and effective communication with all Plaintiffs.

125.    Two firms representing Plaintiffs in this action, Kessler, Topaz, Meltzer & Check LLP ("KTMC") and Berger & Montague, LLP ("Berger & Montague") were given additional tasks by Class Counsel.   KTMC had primary responsibility for monitoring the work of bankruptcy counsel during the lengthy proceedings in bankruptcy court, as well as drafting Plaintiffs' Opposition to Defendants' Motion to Compel Discovery (Dkt. No. 100), and providing valuable input into the mediation submission and other briefs filed with the Court.   At the direction of Class Counsel, Berger & Montague performed specific tasks including the initial drafting of the opposition to the motion to dismiss (Dkt. No. 60), Plaintiffs' motion to compel discovery (Dkt. No. 111), and the motion for preliminary approval (Dkt. No. 122).

126.    Subsequent to the August 1, 2012 Order appointing Class Counsel, KTMC and Berger & Montague spent a combined total of 486.55 hours on the litigation, for a combined lodestar of $374,451.50.

127.    Firms representing additional Plaintiffs spent over 180 hours subsequent to the appointment of Class Counsel, with lodestar in excess of $110,000.   These firms acted as the primary client contact for each of the respective Plaintiffs/Class Representatives, helping to ensure proper coordination of responses to voluminous discovery requests propounded by Defendants.

128.    In addition, one representative of each Plaintiff/Class Representative attended the mediation, while two individuals from each of the two firms comprising Class Counsel attended.

129.    Combined, Class Counsel and all other Plaintiffs' Counsel spent over 2,200 hours, with lodestar in excess of $1.5 million.  This time was expended by or at the direction of Class Counsel in order to ensure the efficient and expedient prosecution of this complex matter.

130.    Therefore, the requested fee of $2.91 million provides a modest 1.94 multiple over the lodestar for all of Plaintiffs' Counsel.

131.    Notably, this time does not include any time subsequent to June 30, 2016, devoted by Plaintiffs' counsel for preparing and filing Plaintiffs' memorandum in support of Class Counsel's fee request, or the instant declaration,

132.    Class Counsel's lodestar also does not include any estimated time for providing anticipated future assistance to Settlement Class Members with respect to the administration of the Settlement.

133.    Based on my experience in analogous ERISA class-actions, Class Counsel can reasonably expect to receive numerous inquiries from Settlement Class Members both subsequent to final approval and post distribution of the Settlement's proceeds.

134.    Thus, when the Court takes into consideration all time that has been expended in the prosecution of this matter (including time spent by non-Class Counsel prior to August 1, 2012 and time still to be expended in stewarding this Action to conclusion), the total lodestar is well below the requested 1.94 multiplier.

**Connolly Wells & Gray, LLP**

135.    Connolly Wells & Gray, LLP, is the firm I co-founded with Robert J. Gray and Stephen E. Connolly after I left F&F at the end of August 2013.

136.    CWG succeeded F&F as co-lead counsel in this case in May 2015.

137.    CWG incurred a total lodestar of $290,301.00, which is based on 527.82 hours of work by its attorneys.  The rates listed below are the current hourly rates regularly charged by each of the attorneys who assisted in the prosecution of the Litigation.  The hourly rates for the attorneys are the same as the regular current rates charged for their services.

| Name | Position | Hours Billed | Hourly Rate | Total Lodestar |
|------|----------|--------------|-------------|----------------|
| Gerald D. Wells, III | Partner | 384.32 | $550 | $211,376.00 |
| Gerald D. Wells, III (Document Review) | Partner | 5.5 | $300 | $3,025.00 |
| Robert J. Gray | Partner | 22.75 | $550 | $12,512.50 |
| Stephen E. Connolly | Partner | 115.25 | $550 | $63,387.50 |
| **Total** | | **527.82** | | **$290,301.00** |

138.    The hourly rates charged here are the same rates that have been accepted by courts in other complex class actions.

139.    As a member of Class Counsel, CWG was involved in all aspects of prosecuting this Action.  Nevertheless, I conferred with my co-counsel, Mark Kindall of Izard, Kindall & Raabe, LLP, to ensure that tasks were appropriately assigned between our firms so as to avoid a duplication of effort.  For example, tasks regarding propounding and responding to discovery was divided amongst our firms.

**Faruqi & Faruqi, LLP**

140.    Faruqi & Faruqi, LLP ("F&F") formerly served as co-lead counsel in this case, prior to substitution by CWG.

141.    F&F incurred a total lodestar of $169,271.25 based on a total of 286.49 hours of work by its attorneys and paralegals.  The rates listed below are the current hourly rates regularly charged by each of the attorneys who assisted in the prosecution of the Action.  The hourly rates for the attorneys are the same as the regular current rates charged for their services.

| Name | Position | Hours Billed | Hourly Rate | Total Lodestar |
|---|---|---|---|---|
| Nadeem Faruqi | Partner | 10 | $950 | $9,500.00 |
| Gerald D. Wells, III | Partner | 151.39 | $625 | $94,618.75 |
| Jacob Goldberg | Partner | 3.2 | $725 | $2,320.00 |
| Robert Gray | Associate | 93.50 | $585 | $54,697.50 |
| Derek Behnke | Paralegal | 2.5 | $375 | $937.5 |
| Jessica Jenks | Paralegal | 18.9 | $275 | $5,197.50 |
| Joy Williams | Paralegal | 5.5 | $275 | $1,512.50 |
| Daniela Mercado | Paralegal | 1.5 | $325 | $487.50 |
| **Total** | | **286.49** | | **$169,271.25** |

142.    The hourly rates charged here are the same rates that have been accepted by courts in other complex class actions.

143.    A review of F&F's time records demonstrates that the vast majority of time incurred by F&F was prior to my leaving the firm to form CWG in the Fall of 2013.

144.    Nevertheless, subsequent to my departure, F&F remained committed to the Action and conferred regularly with the me.  Indeed, F&F contributed to the overall expenses of this Action including the payment of fees incurred by bankruptcy counsel.

**Izard, Kindall & Raabe, LLP**

145.    Izard, Kindall & Raabe, LLP (formerly known as Izard Nobel, LLP at the time of the filing of the consolidated complaint in this case) is co-lead counsel in this case.

146.    Izard, Kindall & Raabe, LLP incurred a total lodestar of $513,012.50, which is based on 765.75 hours of work by its attorneys.  The rates listed below are the current hourly rates regularly charged by each of the attorneys who assisted in the prosecution of the Litigation.  The hourly rates for the attorneys are the same as the regular current rates charged for their services.

| Name | Position | Hours Billed | Hourly Rate | Total Lodestar |
|---|---|---|---|---|
| Robert Izard | Partner | 219 | $775.00 | $169,725.00 |
| Mark Kindall | Partner | 435.5 | $700.00 | $304,850.00 |
| Mark Kindall (Document Review) | Partner | 17.5 | $300.00 | $5,250.00 |
| Jeff Nobel | Partner | 1.25 | $650.00 | $812.50 |
| Wayne Boulton | Associate | 21.25 | $350.00 | $7437.50 |
| Nancy Kulesa | Associate | 70.5 | $350.00 | $24,675.00 |
| Nicole Veno | Associate | 0.75 | $350 | $262.50 |

| Total | | 765.75 | | $513,012.50 |
|-------|--|--------|--|-------------|

147.    The hourly rates charged here are the same rates that have been accepted by courts in other complex class actions.

148.    As a member of Class Counsel, Izard, Kindall & Raabe, LLP was involved in all aspects of prosecuting this Action.  To avoid the duplication of efforts, Mark Kindall of Izard Kindall & Raabe, LLP and I coordinated regularly so as to ensure that tasks were appropriately assigned between our firms.

**Blitman and King, LLP**

149.    Blitman and King, LLP served as liaison counsel in this case.

150.    Blitman and King, LLP incurred a total lodestar of $43,074.50 based on a total of 114.45 hours of work by its attorneys.  The rates listed below are the current hourly rates regularly charged by each of the attorneys who assisted in the prosecution of the Litigation. The hourly rates for the attorneys are the same as the regular current rates charged for their services.

| Name | Position | Hours Billed | Hourly Rate | Total Lodestar |
|------|----------|--------------|-------------|----------------|
| Jules Smith | Partner | 103 | $390.00 | $40,170.00 |
| Brian LaClair | Partner | 10.55 | $250.00 | $2,637.50 |
| Daniel Brice | Partner | 0.3 | $390.00 | $117.00 |
| Nolan Lafler | Associate | 0.6 | $250.00 | $150.00 |
| **Total** | | **114.45** | | **$43,074.50** |

151.    The hourly rates charged here are the same rates that have been accepted by courts in other complex class actions.

152.    The work performed by Blitman and King, LLP included such tasks as the review and filing of motions and other memoranda.

### Kessler Topaz Meltzer & Check, LLP

153.    Kessler Topaz, Meltzer & Check, LLP ("KTMC") is a member of Plaintiffs' Counsel in this case.

154.    KTMC incurred a lodestar of $214,037, which is based on 410.75 hours of work by its attorneys and paralegals.  The rates listed below are the current hourly rates regularly charged by each of the attorneys who assisted in the prosecution of the Action.  The hourly rates for the attorneys are the same as the regular current rates charged for their services.

| Name | Position | Hours Billed | Hourly Rate | Total Lodestar |
|---|---|---|---|---|
| Edward Ciolko | Partner | 52.4 | $725.00 | $37,990.00 |
| Peter Muhic | Partner | 15.6 | $750.00 | $11,700.00 |
| Virginia Chentis-Stevens | Associate | 15.6 | $345.00 | $5,382.00 |
| Julie Siebert-Johnson | Associate | 158.20 | $475.00 | $75,145.00 |
| Mark Gyandoh | Associate | 97.8 | $650.00 | $63,570.00 |
| Donna Siegel Moffa | Of Counsel | 3.8 | $650.00 | $2,470.00 |
| Tracey Shrieve | Staff Attorney | 6.5 | $395.00 | $2,567.50 |
| Ron Muchnick | Paralegal | 8.05 | $250.00 | $2,012.50 |

| Susan Neis | Paralegal | 11.3 | $250.00 | $2,825.00 |
| Lacey Russo | Paralegal | 12 | $250.00 | $3,000.00 |
| Julie Wotring | Paralegal | 29.5 | $250.00 | $7,375.00 |
| Total | | 410.75 | | **$214,037.00** |

155.    The hourly rates charged here are the same rates that have been accepted by courts in other complex class actions.

### Berger & Montague, P.C.

156.    Berger & Montague, P.C. serves as a member of Class Counsel in this case.

157.    Berger & Montague, P.C. incurred a total lodestar of $160,414.50 based on a total of 275.80 hours of work by its attorneys and paralegals.  The rates listed below are the current hourly rates regularly charged by each of the attorneys who assisted in the prosecution of the Litigation.  The hourly rates for the attorneys are the same as the regular current rates charged for their services.

| Name | Position | Hours Billed | Hourly Rate | Total Lodestar |
|------|----------|--------------|-------------|----------------|
| Todd Collin | Managing Shareholder | 8.8 | $925 | $8,140.00 |
| Shanon Carson | Managing Shareholder | 47.90 | $750 | $37,122.50 |
| Michael Dell'Angelo | Shareholder | 1.80 | $700 | $1,260.00 |
| Ellen Noteware | Senior Counsel | 137.00 | $625 | $85,625.00 |
| Patrick Madden | Associate | 17.60 | $465 | $8,184.00 |
| Alexandra Koropey | Associate | .20 | $405 | $81.00 |

| | | | | |
|---|---|---|---|---|
| Adreinne Beatty | Associate | 53.60 | $330 | $17,688.00 |
| Deanna Kemler | Paralegal | 8.90 | $260 | $2,314.00 |
| **Total** | | **275.80** | | **$160,414.50** |

158.    The hourly rates charged here are the same rates that have been accepted by courts in other complex class actions.

159.    The time and services provided by Plaintiffs' Counsel for which fees are sought in the petition are reflected in contemporaneously maintained records of the firms.  All of the services performed by Plaintiffs' Counsel in connection with this Action were reasonable and necessary in the prosecution of this case.[3]   Class Counsel allocated work in this case to maximize efficiency, assigning tasks both amongst the firms and within each of their respective firms with the goal of minimizing duplication of effort.  Throughout the litigation, Class Counsel balanced resources – again within each of their firms themselves – to ensure that the matter was litigated in the most efficient manner.  Had such efforts not been made, the number of hours devoted to the prosecution of the Action would have been significantly higher.

EXPENSES

160.    Plaintiffs' Counsel incurred a total of $119,100.88 in unreimbursed expenses while prosecuting this Action.   These expenses consist of filing fees, service fees, expert expenses, travel expenses, and expenses incurred related to the Parties' mediation.

---

[3] As noted above, several other firms retained by individual Plaintiffs in the consolidated action provided valuable assistance to the litigation, particularly with respect to coordinating discovery responses from Plaintiffs.  In the interests of brevity, Class Counsel has not provided a detailed breakout of the time and lodestar for each of these firms, but they can be provided if the Court believes that the additional detail would be helpful.

161.    Class Counsel reviewed the expense reimbursement requests of Plaintiffs'
Counsel to ensure that no firm expense reimbursement request included requests for (i) office
staff, (ii) computer-assisted legal research, (iii) in-house copying/printing, (iv)
telephone/facsimile, or (v) transportation/meals not connected with intercity travel.

162.    All of the expenses listed below are reflected on the books and records of each
of the law firms.

163.    Below is a summary of the expenses incurred by all firms in the litigation, as
reviewed and approved by Class Counsel.

| Category | Amount |
| --- | --- |
| Bankruptcy Counsel | $83,063.30 |
| Expert Expenses | $11,316.30 |
| Court Fees/Service fees | $6,230.79 |
| Mediation Fees | $8,048.33 |
| Out-of-Town Meals/Hotels/Transportation | $4,450.04 |
| Postage & Delivery | $3,644.10 |
| eDocument Hosting | $1,879.90 |
| Transcripts | $286.15 |
| Outside Photocopies | $181.90 |
| **Total** | **$119,100.88** |

164.    Each of the expenses for which Class Counsel is seeking reimbursement were
reasonable and necessary to prosecute this class action.

165.     Notably, over 85 percent of the total expenses incurred relate to (i) the payment of bankruptcy counsel (which, as noted above, was necessary to ensure the claims were not adversely affected by the bankruptcy proceeding), (ii) experts regarding the computation of applicable damages models, and (iii) mediation fees.

166.     Finally, pursuant to the Settlement Agreement, the Class Notice indicated that Plaintiffs' Counsel would seek reimbursement of litigation expenses not to exceed $175,000. The total amount for which counsel seeks reimbursement is significantly below the ceiling in the Notice.  As of the date of this filing, at least, no Class Member has objected to the amount sought for litigation expenses.

### CASE CONTRIBUTION AWARDS

167.     As set forth in greater detail in the accompanying memorandum, Plaintiffs also respectfully request that the Court grant an award of $5,000.00 to each of the Class Representatives, as Case Contribution Awards in recognition of their time and efforts expended in order to help achieve this Settlement.

168.      Federal courts often exercise their discretion under Rule 23(d) and (e) to approve enhancement awards to plaintiffs who institute and prosecute an action on the theory that there would be no class-wide benefit absent their suit.  The trial court has discretion to recognize the benefit of the plaintiff's actions with such an award.

169.     Throughout this litigation, the surviving Plaintiffs, as well as Class Representatives Sandy Paxton and Susan Toal (on behalf of the estate of her late husband, lead plaintiff Dale Toal), remained fully informed of the details of the litigation, and provided invaluable input, information, and assistance at every stage.  *See* Declaration of Mark Gedek;

Declaration of Allen Harter ¶¶ 6-9; Declaration of Sandy Paxton ¶¶ 6-9; Declaration of Susan Toal ¶¶ 8-11; Declaration of Thomas W. Greenwood ¶¶ 6-9; Declaration of Mark J. Nenni ¶¶ 6-9; Declaration of Katherine L. Bolger ¶¶ 7-12.  Significantly, the Kodak Defendants propounded requests for production as well as three separate sets of requests for admissions and interrogatories.  Plaintiffs and the Class Representatives diligently worked with Plaintiffs' Counsel to respond to the requests, as well as working to schedule depositions (which ultimately were postponed as a result of settlement discussions).

170.   The favorable result achieved by Class Counsel here would likely not have been possible without the assistance of the Plaintiffs and Class Representatives.

171.   Accordingly, I believe the requested Case Contribution Awards are eminently appropriate.

<u>CONCLUSION</u>

172.   Plaintiffs and Class Counsel respectfully submit that the Settlement is an excellent result for the Settlement Class in this case.  Class Counsel recommend the Settlement as fair, reasonable, and adequate, and they request that this Court: (1) finally approve the Settlement Agreement, (2) certify the proposed class, (3) approve Class Counsel's requested fees and expenses, and (4) award the requested Case Contribution Awards to the Class Representatives.

I declare under penalty of perjury that the foregoing is true and correct.  This Declaration was executed on July 8, 2016, in King of Prussia, Pennsylvania.

 /s/ Gerald D. Wells, III
Gerald D. Wells, III