**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

IN RE EASTMAN KODAK ERISA
LITIGATION

**MASTER FILE NO. 6:12-CV-06051-DGL**

JURY TRIAL DEMANDED

THIS DOCUMENT RELATES TO:
ALL ACTIONS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................ iii

I.  INTRODUCTION ............................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

    A.  Factual Allegations ............................................................................... 2

    B.  Investigation and Commencement of Action ...................................... 3

    C.  Motions to Dismiss, Discovery and Discovery Disputes ...................... 3

    D.  The Parties' Mediation & Settlement .................................................. 5

III.  SUMMARY OF THE SETTLEMENT TERMS ....................................................... 5

    A.  The Class ............................................................................................... 5

    B.  The Settlement Fund and its Distribution ............................................ 6

    C.  Notice of the Settlement to Settlement Class Members ...................... 6

    D.  Dismissal and Release of Claims ......................................................... 8

IV.  ARGUMENT ..................................................................................................... 8

    A.  CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS  IS APPROPRIATE ............... 8

        1.  The Settlement Class is Sufficiently Numerous ......................... 8

        2.  The Settlement Class Seeks Resolution of Common Questions ................ 9

        3.  The Claims of the Proposed Class Representatives are Typical of the Settlement Class ................................................................... 10

        4.  The Proposed Class Representatives Have and Will Adequately Represent the Settlement Class ........................................ 10

        5.  The Requirements of Rule 23(b)(1) and/or (b)(2) Are Satisfied ............... 11

    B.  THE CLASS RECEIVED ADEQUATE NOTICE .......................................... 13

    C.  THE COURT SHOULD APPROVE THE SETTLEMENT ............................. 14

        1.  The Settlement Is Procedurally Fair ........................................ 15

        2.  The Substance of the Proposed Settlement is Fair, Reasonable and Adequate ................................................................... 18

            (a)  Litigation Through Trial Would be Complex, Costly & Long (*Grinnell* Factor 1) ............................................................... 18

            (b)  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)...... 19

            (c)  Sufficient Discovery Allows Responsible Case Resolution (Grinnell Factor 3) ................................................................. 20

(d)   *Plaintiffs* Face Real Risk if the Case Proceeded
(*Grinnell* Factors 4 &5) ............................................................................ 21

(e)   Maintaining the Class Through Trial ................................................. 22

(f)   Defendants' Ability to Withstand a Greater Judgment
(*Grinnell* Factor 7) .................................................................................. 23

(g)   The Settlement Fund is Substantial, Even in Light of the Best Possible
Recovery and the Attendant Risks of Litigation
(Grinnell Factors 8 & 9) ........................................................................... 23

D.   The Court Should Approve the Plan of Allocation ............................................... 25

V.   CONCLUSION ..................................................................................................... 26

**TABLE OF AUTHORITES**

**Cases**                                                                                   **Page(s)**

*In re 2014 RadioShack ERISA Litig.*, Master File No. 14-cv-959 (N.D. Tex.) ................................. 21

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ........................................................ 9

*In re AOL Time Warner ERISA Litig.*, No. 02-cv-8853, 2006 WL 2789862 (SDNY,
   Sept. 27, 2006) ........................................................................................................ 25

*In re Austrian & German Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................18, 19, 23

*Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002) ............................................................. 11

*In re Beacon Assocs. Litig.*, 282 F.R.D. 315 (S.D.N.Y. 2012) ........................................................ 11

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) .......................................11, 12

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423
   (E.D.N.Y. May 22, 1990) ........................................................................................ 23

*Chavarria v. New York Airport Serv., LLC, No.*10–cv–1930(MDG), 2012 WL
   2394797 (E.D.N.Y. June 25, 2012) .......................................................................... 24

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ..................................................17, 18

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 483 (2d Cir. 1995) .................................... 8

*D.S. v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59 (E.D.N.Y. 2008) .......................................................... 22

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................................................ 15

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001) ........................................................ 8

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ........................................................... 9

*In re Delphi Corp. Secs., Derivative & "ERISA" Litig.*, 248 F.R.D. 483
   (E.D. Mich. 2008) .................................................................................................... 25

*In re Drexel Burnham Lambert Group*, 960 F.2d 285 (2d Cir. 1992*)* .............................................. 9

*In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613 (E.D. Tex. 2004) ................................... 11

*Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014) ................................................…20, 21

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ..........................................14, 15, 23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)............................................................................................ 22

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982).......................................................... 8

*Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470 (E.D.N.Y. 2016)............................. 15

*Hayes v. Harmony Gold Mining Co.*, 509 Fed. Appx. 21 (2d Cir. 2013)........................................ 15

*In re IMAX Sec. Litig.*, 283 F.R.D. 178 (S.D.N.Y. 2012) .................................................... 24

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) .................................................. 20

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ......................................................14, 24

*Jones v. NovaStar Financial, Inc.*, 257 F.R.D. 181 (W.D. Mo. 2009)................................................ 11

*Krueger v. Ameriprise Financial, Inc.*, 304 F.R.D. 559 (D. Minn. 2014) ........................................ 11

*Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007) ................................ 11

*Maley v. Del Global Technologies Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................ 24

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .....................................................8, 9

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) .........................................................10, 11

*Matamoros v. Starbucks Corp.*, 699 F.3d 129 (1st Cir. 2012) ................................................ 10

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009) .................................................... 14

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993).................................... 14

*Neil v. Zell*, 275 F.R.D. 256 (N.D. Ill. 2011) .................................................................. 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................................ 23

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997).....................................20, 22

*Pashchal v. Child Development, Inc.*, No. 4:12-CV-0184, 2014 WL 112214
   (E.D. Ark. Jan. 10, 2014) ............................................................................................ 11

*Payment Card Interchange Fee & Merch. Discount Antitrust Litig.,* 986 F. Supp. 2d
   207 (E.D.N.Y. 2013) .................................................................................................... 15

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006) ................................................ 11

iv

*Rinehart v. Lehman Bros. Holdings Inc.*, No. 15-2229, 2016 WL 1077009      (2d
  Cir. Mar. 18, 2016) ........................................................................................ 21

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................................ 9

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ........................ 11

*Sierra v. Spring Scaffolding LLC*, No. 12-CV-05160 (JMA), 2015 WL 10912856,
  (E.D.N.Y. Sept. 30, 2015) .......................................................................... 15

*In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249 (D. Kan. 2006)............................ 25

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610
  (D. Conn. Aug. 20, 2012) ............................................................................ 24

*In re Train Derailment Near Amite Louisiana*, MDL No. 1531,                2006
  WL 1561470 (E.D. La. May 24, 2006) .................................................... 22

*Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003)...................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).............................14, 15, 17

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ............................ 19

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,              No.
  11-cv-864, 2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) .......................... 15

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181  (S.D.N.Y.
  Apr. 30, 2013)............................................................................................. 14

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*...................... *passim*

**Court Rules**

Fed. R. Civ. P. 23(a)............................................................................................8, 9

Fed. R. Civ. P. 23(b)............................................................................................8, 11, 12

Fed. R. Civ. P. 23(c)(3)........................................................................................ 13

Fed. R. Civ. P. 23(c)(2)(B)..................................................................................... 14

Fed. R. Civ. P. 23(e)............................................................................................1, 8

Fed. R. Civ. P. 23(g)............................................................................................ 13

**Other Authorities**

Manual for Complex Litigation, Third, § 30.42 (1995) .................................................................. 15

By Order dated April 27, 2016, the Court granted preliminary approval of a proposed $9.7 million Class Action Settlement,[1] conditionally certified a Settlement Class, appointed members of the Settlement Class and their counsel to represent the Settlement Class, approved the form and content of notice to be given to the Settlement Class, and set a date for a Fairness Hearing (the "PA Order") [Dkt. No. 124]. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Interim Class Representatives Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni, Sue Toal and Sandy Paxton (hereinafter "the Class Representatives") respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Settlement.

## I.     INTRODUCTION

This case has been vigorously litigated for over four years. At every stage of the litigation, Defendants have asserted aggressive defenses and expressed their belief that Plaintiffs could not prevail on the claims asserted. Prior to reaching the Settlement, Class Counsel: (a) defeated Defendants' motion to dismiss; (b) reviewed and analyzed thousands of pages of documents either produced by Defendants or available in the public domain; (c) worked with Class Representatives to respond to multiple discovery requests propounded by Defendants; (d) both filed and defended Motions to Compel concerning the proper scope of discovery; (e) retained a highly experienced expert to analyze damages; (f) agreed to a mediation process overseen by a respected third-party mediator with extensive experience in ERISA class action litigation; (g) prepared a detailed mediation submission; and (h) engaged in an in-person mediation session in New York.

---

[1] All capitalized, undefined terms herein shall have the meaning ascribed to them in the Parties' Settlement Agreement previously filed with the Court at Dkt. No. 122-3.

In reaching the Settlement, Class Counsel considered the numerous risks and uncertainties Plaintiffs would face if this litigation continued.  Even though Class Counsel believes that the claims asserted have substantial merit, this action involved complex issues and involved substantial risks with respect to issues of both liability and damages.  Based on an evaluation of these risks, Class Counsel concluded that the Settlement is a fair and reasonable result for the Settlement Class.

The Settlement Class has received notice of the Settlement and the Plan of Allocation in accordance with the PA Order.  As of the date of this submission, no member of the Settlement Class has objected to the Settlement.  The final deadline for filing objections is August 1, 2016.

For these reasons, and all of the reasons further discussed herein, Plaintiffs respectfully request that the Court: (a) certify the proposed Settlement Class; (b) determine that the Settlement Class was provided adequate notice of the Settlement and the lawsuit; and (c) grant final approval to the Settlement and the Plan of Allocation.

II.   **FACTUAL AND PROCEDURAL BACKGROUND**

A.   **Factual Allegations**

The Class Representatives and the members of the Settlement Class were participants in the Eastman Kodak Employees' Savings and Investment Plan (the "SIP") and/or the Kodak Employee Stock Ownership Plan (the "ESOP") (the SIP and ESOP are collectively referred to herein as the "Plans"), retirement plans sponsored by the Eastman Kodak Company ("Kodak"). The Consolidated Complaint for Breach of ERISA's Fiduciary Duties (Dkt. No. 48) (the "Complaint") alleges that the fiduciaries of the Plans violated their duties under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") by permitting the Plans to offer Kodak stock as an investment option after information revealed that Kodak was in

2

extreme financial distress and that Kodak stock was a risky and imprudent investment option for retirement savings. *See* Declaration of Gerald D. Wells, III in Support of Plaintiffs' Motion for Approval of Class Action Settlement and Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Class Representative Awards ("Wells Decl."), at ¶¶ 19-21. Plaintiffs allege that Defendants failed to act to protect the Plans and their participants from inevitable losses.[2]

      **B.**     **Investigation and Commencement of Action**

Before filing this case, Plaintiffs' Counsel conducted extensive legal, factual, financial and corporate research on the underlying merits of the claims. On January 27, 2012, Plaintiff Mark Gedek initiated these proceedings by filing his complaint (Dkt. No. 1) and additional individuals who were participants in the Plans subsequently filed similar complaints. Wells Decl., ¶ 16. On May 10, 2012, the Court designated the Gedek action as the lead case and consolidated it with the similar cases against the same Defendants. (Dkt. No. 39). The Court appointed Izard, Kindall & Raabe, LLP (then known as Izard Nobel LLP) and Faruqi and Faruqi LLP as Interim Co-Lead Counsel on August 29, 2012 (Connolly Wells & Gray, LLP took the place of Faruqi and Faruqi in the leadership structure on April 10, 2015). On September 14, 2012, Plaintiffs filed their Complaint. (Dkt. No. 48).

      **C.**     **Motions to Dismiss, Discovery and Discovery Disputes**

---

[2] Defendants in the suit were fiduciaries of the Plans. Defendant SIPCO was the Plan Administrator and named fiduciary of the SIP Plan. Defendant SOPCO was the Plan Administrator and named fiduciary of the ESOP. The members of both SIPCO and SOPCO were some of Kodak's highest ranking executives. Kodak's Chief Financial Officer ("CFO"), Defendant Sklarsky, chaired the SIPCO for a portion of the Class Period, and his replacement as CFO, Defendant McCorvey, later served as SIPCO chair. Defendants Berman (Chief Human Resource Officer), Love (Treasurer), Obstarczyk, (Director of Kodak's Global Benefits and Vice President of Human Resources), Haag (General Counsel pre-2011), Quatela (General Counsel for 2011), all served on both the SIPCO and SOPCO during the Class Period. BNY Mellon Defendants were the trustees of the SIP. *See* Complaint, Dkt. No. 48, ¶¶ 24-35.

From the start, the Parties engaged in highly adversarial litigation.  Defendants filed Motions to Dismiss the Complaint on October 29, 2012, which, following extensive briefing and oral argument, the Court denied on December 27, 2014.  (Dkt. No. 75).  On February 16 and 17, 2015, Defendants answered the Complaint (Dkt. Nos. 80 and 81), after which discovery commenced in earnest.  Discovery in this case was particularly hard fought and contentious. Both Plaintiffs and Defendants served detailed document requests and interrogatories.  In addition, the Kodak Defendants propounded requests for admissions.  Although all Parties produced a significant amount of documents during discovery, both Plaintiffs and the Kodak Defendants objected to the opposing side's discovery requests, resulting in each of these parties filing a motion to compel discovery responses.  *See* Wells Decl., ¶ 23.  The Court heard oral argument on the Kodak Defendants' motion on November 5, 2015 and Plaintiffs' motion was fully briefed and scheduled for oral argument before the Action was stayed pending mediation between the Parties.  Wells Decl., ¶¶ 24-25.

Despite these discovery disputes, Defendants produced numerous key documents, including information regarding the inner workings of the Plans and transactional data regarding the Plans' purchases and sales of Company Stock during the Class Period.  As such, Plaintiffs had sufficient information necessary in order to ascertain a comprehensive and thorough understanding of the strengths and weaknesses of their case, as well as develop a comprehensive damages model.  Wells Decl., ¶ 33.

### D.     The Parties' Mediation & Settlement

After receiving and analyzing detailed information from Defendants concerning the investment performance of all of the SIP Plan investment alternatives, Plaintiffs were in a position to discuss possible resolution of the litigation with counsel for Defendants.   In December 2015, counsel for Plaintiffs and the Kodak Defendants met and conferred and agreed to pursue private mediation, and after further discussion agreed to retain David Geronemus of JAMS, a highly experienced mediator.  After an initial conference with the mediator, the Parties exchanged detailed mediation statements.  *See* Wells Decl., ¶¶ 31-35. In preparation for the mediation, Plaintiffs' Counsel also retained Cynthia Jones, CFA, a Vice President of Management Planning, Inc., to perform an analysis of class-wide damages, taking into account transactional information on the daily purchases and sales of Kodak stock by the Plans as well as the performance of all of the other investment options.  *Id.*, ¶ 34.

On February 24, 2016, counsel for Plaintiffs and the Kodak Defendants participated in a full-day, in-person mediation session in New York City.  *Id.*, ¶ 36.  After extensive arms' length negotiations, and with the assistance of the mediator, the Parties agreed to a preliminary term sheet.  Over the several weeks that followed, the BNY Mellon Defendants agreed to participate in the proposed settlement and all Parties negotiated modifications to the term sheet, a revised version of which was executed on March 14, 2016.  *Id.*, ¶ 37.  Then the Parties negotiated the terms of the final Class Action Settlement Agreement ("Settlement Agreement"), which was executed by all Parties on April 22, 2016.  *Id.,* ¶¶ 38-39.

### III.     SUMMARY OF THE SETTLEMENT TERMS

### A.     The Class

The Settlement Agreement provides that the Settlement Class includes all Persons who, at any time during the Class Period, (a) were participants in or beneficiaries of the ESOP, and/or (b) were participants in or beneficiaries of the SIP, and whose SIP Plan accounts included investments in the Kodak Stock Fund.  Settlement Agreement ¶ 1.47.  Defendants are excluded from the Settlement Class.   As discussed below in Section III.C, there are over 19,000 class members, each of whom were fully advised of this Settlement through the Class Notice, which included direct mail and publication notice, both on May 18, 2016.  These forms of notice are attached to the Settlement Agreement.

### B.    The Settlement Fund and its Distribution

The Settlement Agreement creates a common fund of $9.7 million ($9,700,000.00). Settlement Agreement ¶¶ 1.13, 2.5.  This is an all-in Settlement, with a portion of the $9.7 million fund intended to cover the costs of notice and settlement administration, any Court-approved service payments to the Class Representatives,[3] and Court-approved attorneys' fees and costs.  In general terms, net of these costs, the balance of the fund will be allocated to Settlement Class members based upon the losses attributable to their holdings of Kodak stock in the ESOP and SIP.  Importantly, Settlement Class members do not need to do anything in order to receive their portion of the proceeds of the Settlement.  Rather, their portion of the Settlement will be based on individual transactional data provided by the Plans.

### C.    Notice of the Settlement to Settlement Class Members

A.B.  Data, Ltd.  ("A.B. Data"), which was approved to serve as the Settlement Administrator in the PA Order, provided notice of the litigation and Settlement to the

---

[3] The Class Representatives include the Plaintiffs (Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni) as well as Susan Toal and Sandy Paxton.

Settlement Class in accordance with the terms of the Settlement Agreement and the PA Order. On April 27, 2016, the Settlement Administrator was provided a list of the names, last known addresses of all of the Settlement Class members for the purpose of providing notice of the proposed Settlement.   Declaration of Christina Peters-Stasiewicz ("Peters-Stasiewicz Decl."), attached to the Wells Declaration as Exhibit 1, at ¶ 5; PA Order, ¶ 8.  A.B. Data sent notices to nearly all Class Members by U.S. Mail on May 18, 2016.  Peters-Stasiewicz Decl., ¶ 9.  Notices to 625 individuals were returned as undeliverable.  *Id.*  A.B. Data re-mailed 6 notices to addresses that were corrected through the Postal Service, and conducted an address update search utilizing LexisNexis to obtain updated addresses used to re-mail 465 additional notices.  *Id.*  As of July 7, only 186 mailings appear to still be undeliverable.  *Id.*  In all, 99% of the Class received notice through first-class mail.  In addition, the Settlement Administrator provided publication notice through *PR Newswire* on June 1, 2016, in accordance with Paragraph 8 of the PA Order. *Id.* ¶ 18.

        In addition to the mail and publication notices, A.B. Data established an informational website (www.KodakERISASettlement.com) which contained documents and other information regarding the Settlement.  This website allowed Class Members to review detailed information about the litigation and the Settlement, including the long-form notice, the Settlement Agreement, the Preliminary Approval Order, and answers to frequently asked questions. Peters-Stasiewicz Decl., ¶ 17.  As of July 7, 2016, there have been 1250 unique visits to the website.  *Id.* Furthermore, the Settlement Administrator established a toll-free informational phone number for Settlement Class Members, which has received 26 calls as of July 7, 2016. *Id.,* ¶ 15-16. Accordingly, the Settlement Class has received "the best notice practicable under the circumstances . . . ."  PA Order, ¶ 8.

Settlement Class members will have more than ten weeks from the time the notice was mailed before the August 1, 2016 deadline for filing objections to the Settlement.  Settlement Class members do not need to submit a claim form to participate and will automatically receive their portion of the Settlement Proceeds if the Settlement is approved.

### D.    Dismissal and Release of Claims

Upon the Effective Date, the Court will dismiss the Complaint against the Defendants with prejudice and will forever release all claims that were or could have been asserted under ERISA against all Defendants.  All of the applicable releases for both Plaintiffs and Defendants are set forth in Section 3 of the Settlement Agreement.

## IV.    ARGUMENT

### A.    Certification of the Rule 23 Settlement Class Is Appropriate

The Court's April 27, 2016 Order preliminarily certified a Settlement Class.  PA Order, ¶ 1.  Plaintiffs respectfully request that the Court ratify that preliminary determination and certify the proposed Settlement Class under Rule 23(e) for settlement purposes only.  The proposed Settlement Class satisfies the requirements of Rules 23(a) and 23(b)(1) or (b)(2) of the Federal Rules of Civil Procedure.

### 1.    The Settlement Class is Sufficiently Numerous

The proposed Settlement Class satisfies the numerosity requirement of Rule 23(a)(1) because it is composed of thousands of persons, in numerous locations.  The list of Settlement Class members provided to the Settlement Administrator included over 19,400 names.  Peters-Stasiewicz Decl., ¶ 6.  The number of Settlement Class members is so large that joinder of all its members is impracticable and thus, the numerosity element easily satisfied.  *See Consolidated*

*Rail Corp. v. Town of Hyde Park*, 47 F.3d 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

**2.      The Settlement Class Seeks Resolution of Common Questions**

The proposed Settlement Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claim are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). It is also satisfied where the injuries complained of by the plaintiffs allegedly resulted from the same practice or policy that allegedly injured or will injure the proposed class members. *See Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001). Courts construe the commonality requirement liberally, and generally hold that a single question of law or of fact will suffice. *See, e.g.*, *Marisol*, 126 F.3d at 376.

This case involves numerous questions of law or fact common to the Settlement Class and central to the case, including, but not limited to:

a. Whether Defendants caused the Plans to offer, or failed to monitor or remove, the Kodak stock funds at issue;

b. Whether Defendants were fiduciaries responsible for monitoring and making decisions with respect to the investments in the Plans;

c. Whether Defendants were or should have been aware that Kodak was facing severe financial difficulties that were unlikely to be resolved, thereby rendering Kodak stock to be an imprudent retirement plan investment option;

d. Whether Defendants breached their fiduciary duties to the Plans by causing the Plans to continue to invest assets in Kodak stock after it knew that Kodak was in serious financial troubles and on the brink of bankruptcy;

e. Whether the Plans suffered losses as a result of Defendants' fiduciary breaches.

9

### 3. The Claims of the Proposed Class Representatives Are Typical of the Settlement Class

Rule 23(a)(3) "requires that the claims of the class representatives be typical of those of the class and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Marisol A.*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir. 1992)).  "The burden is 'fairly easily met so long as other class members have claims similar to the named plaintiff.'"  *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).  Where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented," typicality is satisfied "irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "The typicality requirement is often met in putative class actions brought for breaches of fiduciary duty under ERISA."  *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 143 (S.D.N.Y. 2010).

All members of the proposed Settlement Class were participants in at least one of the Plans and invested retirement assets in Kodak stock.  Thus, Defendants' alleged misconduct harmed all Settlement Class members in the same way – they lost retirement savings because the Defendants breached their fiduciary duties.  Thus, all Settlement Class members' claims arise from the same course of conduct.

### 4. The Proposed Class Representatives Have and Will Adequately Represent the Settlement Class

The adequacy requirement encompasses two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  *Valley Drug Co. v.*

10

*Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) (internal citations omitted). Moreover, "[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012).

The proposed Class Representatives all suffered losses as participants in one or more of the Plans and have no interests that are antagonistic to the interests of any of the members of the proposed Settlement Class. *See* Wells Decl., ¶ 71. All Settlement Class members shared a common goal: participating in a well-run retirement plan that provided them with an array of prudent investment options. Here, all Settlement Class members will benefit from the substantial relief obtained by the Settlement. The proposed Class Representatives thus stand in the same shoes as the other members of the proposed Settlement Class with the same incentives to pursue and consummate a fair and reasonable settlement.

### 5.    The Requirements of Rule 23(b)(1) and/or (b)(2) are Satisfied

Rule 23(b)(1) authorizes certification of a class where "prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." FED. R. CIV. P. 23(b)(1). "[T]he Advisory Committee Notes to the 1966 Amendment of Rule 23(b)(1)(B) specifically state that certification is especially appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010). Courts

11

routinely certify class actions alleging breach of ERISA fiduciary duties pursuant to Rule 23(b)(1).[4]

Further, because Defendants have acted or refused to act on grounds applicable to the Settlement Class as a whole, certification is also appropriate under FED. R. CIV. P. 23(b)(2).  In *In re Elec. Data Sys. Corp. "ERISA" Litig.*, the court certified plaintiffs' prudence claim under Rule 23(b)(2) because "the monetary relief is for the Plan's losses" and was, thus, "in the nature of a group remedy."   224 F.R.D. 613, 629 (E.D. Tex. 2004), *vacated on other grounds sub nom. Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007).   Similarly, in approving a settlement in an analogous case, the court in *Broadwing* held that certification was appropriate under Rule 23(b)(2) "because it cannot reasonably be disputed that the conduct was 'generally applicable to the class.'"  *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 379 (S.D. Ohio 2006) (quoting FED. R. CIV. P. 23(b)(2)); *see also Neil v. Zell,* 275 F.R.D. 256, 269 (N.D. Ill. 2011) (finding certification also appropriate under Rule 23(b)(2) because "incidental damages sought can be calculated mechanically").

As an ERISA breach of fiduciary duty action such as this Action is a typical 23(b)(1) or (b)(2) class action.  Prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications.  Thus, a class-wide settlement is the superior method for the fair and efficient resolution of this controversy.  Joinder of all members of the proposed

---

[4] *See, e.g.*, *Krueger v. Ameriprise Financial, Inc.*, 304 F.R.D. 559, 575-578 (D. Minn. 2014); *Pashchal v. Child Development, Inc.*, No. 4:12-CV-0184, 2014 WL 112214, at *6 (E.D. Ark. Jan. 10, 2014); *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 341-42 (S.D.N.Y. 2012); *Jones v. NovaStar Financial, Inc.*, 257 F.R.D. 181, 192-194 (W.D. Mo. 2009); *In re Marsh ERISA Litig.*, 265 F.R.D. at 142-44; *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74-77 (S.D.N.Y. 2006); *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002) (same).  *See generally In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ("breach of fiduciary claims brought under 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held").

Settlement Class is impracticable.  Moreover, Defendants, as alleged fiduciaries of the Plans, were obligated to treat all Settlement Class members similarly as the Plans' participants pursuant to written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Given the nature of these allegations, no Settlement Class member has an interest in individually controlling the prosecution of the case, and Plaintiffs are not aware of any difficulties likely to be encountered in the management of the case as a class action.  Finally, it cannot be credibly disputed that Defendants' conduct was "generally applicable to the class," nor can it be argued that damages cannot be mechanically calculated.

Accordingly, Plaintiffs respectfully request that the Court certify the Settlement Class for settlement purposes and appoint Interim Class Representatives Katherine Bolger, Mark Gedek, Thomas W. Greenwood, Allen E. Hartter, Mark J. Nenni, Sue Toal and Sandy Paxton as representatives of the Settlement Class.  Furthermore, the Court should confirm co-lead counsel for Plaintiffs Izard, Kindall & Raabe, LLP and Connolly, Wells & Gray, LLP, together with liaison counsel Blitman & King, as Class Counsel pursuant to Federal Rule 23(g).  As attested by their four years spearheading this litigation from its inception to the present, these firms possess the requisite skill, experience and resources to represent the Settlement Class. [5]

### B.    The Settlement Class Received Adequate Notice

The Preliminary Approval Order approved the selection of A.B. Data as Settlement Administrator and approved both the process for notifying the Settlement Class as well as the

---

[5] The firm resumes of Izard, Kindall & Raabe and Connolly, Wells & Gray are attached to the Wells Declaration as Exhibits 2 and 3.  The firms' experience and credentials are also described in more detail in both the Wells Declaration at paragraphs 77 and 28, and in Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards to Class Representatives, filed concurrently.

substance of that notice.  PA Order, ¶¶ 5-8.  A.B. Data has fully complied with the Preliminary Approval Order's notice requirements, having provided notice to ninety-nine percent of the Settlement Class by first-class mail as well as timely publication notice through *PR Newswire*. *See* Peters-Stasiewicz Decl., ¶¶ 9-14 & 18.  Moreover, as discussed above, A.B. Data established an informational website (www.KodakERISASettlement.com) and a toll-free informational phone number for Settlement Class Members.  *Id.*, ¶¶ 15-17. Accordingly, the Settlement Class has received "the best notice practicable under the circumstances . . . ."  PA Order, ¶ 8.

The Class Notice approved by the Court complied fully with due process and Federal Rule of Civil Procedure 23, which requires that notice provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (viii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B).  The Class Notice described the claims and defenses at issue in the case and the terms of the Settlement, informed the Settlement Class about attorneys' fees and Case Contribution Awards, provided the date, time, and place of the Fairness Hearing, and described the process for filing an objection.  Peters-Stasiewicz Decl., Exhs. A-C.  While courts have approved class notices even when they only provided general information about a settlement (*see, e.g.*, *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally")), the detailed information in the Class Notice goes far beyond this bare minimum.  Accordingly, the Court should determine that the Class received proper notice of the Settlement.

14

### C.        The Court Should Approve the Settlement

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-177 (2d Cir. 2005) (noting the strong judicial policy in favor of settlements, particularly in the class action context); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (there is a "strong judicial policy in favor of settlements, particularly in the class action context").   Although approval of a class action settlement is a matter of discretion, "[i]n exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks."  *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).

A class action settlement should be approved when it is "'fair, adequate, and reasonable, and not a product of collusion.'"  *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138–39 (2d Cir. 2000)).   This determination requires an examination of the procedural and substantive fairness of the proposed settlement, considering both the process by which the settlement was achieved and the actual terms of the agreement.  *Id.*; *see also Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 116 (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)); *Graff v. United Collection Bureau, Inc*., 132 F. Supp. 3d 470, 478 (E.D.N.Y. 2016) (citing *Hayes v. Harmony Gold Mining Co.*, 509 Fed. Appx. 21, 22 (2d Cir. 2013)).    For the reasons set forth below, the Settlement here is procedurally and substantively fair and should be approved.

### 1.        The Settlement Is Procedurally Fair

The procedural fairness inquiry "requires the court to scrutinize the negotiation process 'in light of the experience of counsel, the vigor with which the case was prosecuted, and the

coercion or collusion that may have marred the negotiations themselves.'"  *Graff*, 132 F. Supp. 3d at 478 (quoting *Payment Card Interchange Fee & Merch. Discount Antitrust Litig.,* 986 F. Supp. 2d 207, 221 (E.D.N.Y. 2013)).   Where settlement has been reached "in arm's-length negotiations between experienced, capable counsel after meaningful discovery," the Court may presume that the settlement is fair, reasonable and adequate.   *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)); *accord Frank*, 228 F.R.D. at 184; *Sierra v. Spring Scaffolding LLC*, No. 12-CV-05160 (JMA), 2015 WL 10912856, at *4 (E.D.N.Y. Sept. 30, 2015).   Importantly, "the Second Circuit has noted that a 'mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.'"   *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 11-cv-864, 2015 U.S. Dist. LEXIS 73276, at *19 (E.D.N.Y. Apr. 17, 2015) (citing *D'Amato*, 236 F.3d at 85).

The lengthy and sometimes contentious history of this four-year litigation should dispel any concern that the Settlement resulted from collusion.   The litigation commenced through the filing, by different plaintiffs, of several complaints, each of which was the result of many hours of extensive and careful research and analysis.   Following consolidation of the actions and appointment of interim lead counsel, Plaintiffs prepared and filed the Complaint, which provided extensive detail, through hundreds of paragraphs and citations to original source material, concerning the condition of Kodak and the Plans throughout the Class Period.   The Parties then prepared, briefed and thoroughly argued motions to dismiss the Complaint filed by both BNY Mellon and the Kodak Defendants.   Following this Court's decision denying the Motion to Dismiss, the Parties engaged in substantial discovery, including the production of thousands of pages of documents by Defendants and the exchange of interrogatory responses

and requests for admissions.  Indeed, the Kodak Defendants alone served three different sets of interrogatories and requests for admissions on Plaintiffs as well as requests for documents.  As the Court is well aware, this discovery was, at times, contentious, and both Plaintiffs and the Kodak Defendants briefed motions to compel.  Wells Decl., ¶¶ 23-25, 33, 103, 169.

Settlement discussions did not occur at all until after significant discovery had been produced and analyzed.  Moreover, the Settlement was achieved through extensive, arm's length settlement negotiations under the guidance of David Geronemus, a long-time JAMS mediator, who is experienced in mediating complex class actions, including several ERISA class actions involving fiduciary breach claims.[6]  Prior to the mediation, Plaintiffs retained a damages expert who, utilizing plan-wide transactional data provided by Defendants detailing the purchases and sales of Kodak stock during the Class Period, prepared a comprehensive damages model that considered the price of Kodak stock at numerous dates, including dates prior to, and after Kodak had retained counsel specializing in bankruptcy.  Plaintiffs' damages model considered, inter alia, Defendants' arguments with respect to what, if any, effect the announcement of forced liquidation might have on stock price.  In addition to the expert's analysis, Plaintiffs' counsel prepared a detailed mediation submission setting out the facts and law supporting their claims and their damages analysis.  Counsel for Plaintiffs and the Kodak Defendants attended a full day of mediation with Mr. Geronemus where their respective positions and arguments were subjected to vigorous questioning and analysis by the mediator.  Eventually, they reached an agreement in principle.  After the agreement was reached, the Parties continued to engage in extensive negotiations about the Settlement's terms, finalizing and executing the Settlement Agreement on April 22, 2016.   Wells Decl., ¶¶ 31-39.

---

[6] Mr. Geronemus' biography is available at:  https://www.jamsadr.com/geronemus/.

17

There can be no question, accordingly, that the settlement resulted from "arm's-length negotiations . . . after meaningful discovery." *Wal-Mart Stores*, 296 F.3d at 116.  Moreover, all parties were represented by "experienced, capable counsel." *Id.*  Defendants were represented by Gibson, Dunn & Crutcher and by Goodwin Procter LLP, both top-notch defense firms with national reputations.  Plaintiffs were represented by Co-Lead Counsel Izard, Kindall & Raabe, LLP ("IKR") and Connolly, Wells & Gray, LLP ("CWG"), whose counsel have long and substantial experience in ERISA class actions involving company stock funds in 401(k) plans. *See* Wells Decl., Exhibits 2-3 (firm resumes of IKR and CWG).  Accordingly, the Settlement has all of the indicia of procedural fairness needed to support a presumption that it is fair, reasonable and adequate.

### 2.      The Substance of the Proposed Settlement is Fair, Reasonable and Adequate

In evaluating the substantive fairness of a class action settlement, courts in the Second Circuit consider the nine factors[7] set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).  The *Grinnell* analysis supports approval of the Settlement here.

### (a)      Litigation Through Trial Would Be Complex, Costly & Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to summary judgment and trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the Settlement Class.  "Most class actions are inherently complex and settlement avoids the costs,

---

[7] The *Grinnell*  factors are:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 462.

delays and multitude of other problems associated with them." *In re Austrian & German Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This ERISA case with thousands of *Settlement Class* members, complex corporate, financial and fiduciary issues is no exception.

Further litigation here would cause massive amounts of additional expense, delay and uncertainty. *See* Wells Decl., ¶¶ 42, 58. The Parties were on the precipice of engaging in voluminous deposition discovery. Moreover, given the cross-motions to compel discovery, it is likely that had this case proceeded, every step forward would have been hard fought and contentious. The Parties would have likely expended considerable additional resources establishing liability and proving and contesting damages. Indeed, during the mediation, the Kodak Defendants apprised Plaintiffs that their damage model varied significantly from Plaintiffs, asserting that their damage model demonstrated significantly less damages suffered by the proposed Settlement Class.

Had this Action not settled, the Parties would have likely filed additional motions for discovery and merits determinations, and Plaintiffs would have filed a motion for class certification. There is no certainty as to the outcome of those motions for either side. And had the case not been resolved at the summary judgment stage, a fact-intensive trial, requiring numerous expert witnesses, would have likely followed, as well as an appeal. The proposed Settlement, on the other hand, makes monetary relief available to Settlement Class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor heavily favors approval.

**(b)     The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)**

The deadline for Class Members to object to the Settlement is August 1, 2016, to permit Class Members to review this Motion, as well as Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards to Class Representatives before

taking a position on the Settlement.  Accordingly, it is too soon to make a definitive statement with respect to this *Grinnell* factor.  However, as of this point in the litigation, over seven weeks after the Settlement Class received notice of the Settlement, no objections to the Settlement have been filed.  Moreover, the seven members of the Settlement Class who have been driving the litigation, including all of the surviving named Plaintiffs or their heirs or successors in interest, have expressed their approval of the Settlement terms. *See* Declarations of Mark Gedek, Sandy Paxton, Mark Nenni, Sue Toal, Thomas Greenwood, Allen Harter and Katherine Bolger, attached to the Wells Decl. as Exhibits 4-10.  To date, therefore, it appears that this factor should weigh in favor of the Settlement.

### (c)    Sufficient Discovery Allows Responsible Case Resolution (*Grinnell* Factor 3)

The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian & German Bank*, 80 F. Supp. 2d at 176.  The Parties' discovery meets this standard.  As discussed above, the Parties have engaged in substantial adversarial litigation, exchanging thousands of pages of discovery and financial information and moving to compel additional information.  The Parties have also conducted analysis of the claims based on publicly-available materials.  The Complaint in this case was not based on allegations that Defendants fraudulently concealed negative inside information about the Company or misrepresented its condition to the Plans' participants and beneficiaries (the very individuals comprising the Settlement Class); instead, it was based solely on the claim that

Kodak stock was an objectively imprudent investment for the Plans in light of publicly-available information.  *See generally* Complaint, Dkt. No. 48. During the course of the mediation process, the Kodak Defendants provided Plaintiffs with significant material that countered their claims that all analysts and market participants objectively thought Kodak was doomed from the start of the Class Period.  As such, the Parties were well-equipped to evaluate the strengths and weaknesses of the case.  This factor also favors final approval of the Settlement.

**(d)**      *Plaintiffs* **Face Real Risk if the Case Proceeded
(*Grinnell* Factors 4 &5)**

Although Plaintiffs believe that their case is strong, "[l]itigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).  Plaintiffs' Counsel are experienced and realistic, and understand that the substantive and damage issues either at summary judgment or at trial and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The instant settlement alleviates these concerns as Settlement Class members would all be compensated proportionally for their losses.

Although the facts in the case are largely a matter of public record, the governing law is unsettled and changing.  While the Supreme Court' recent decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), eliminated the so-called "presumption of prudence" argument, certain language in that decision raises issues regarding the viability of an ERISA action regarding claims of imprudent investment in company stock based upon publicly available information, and thus have lent support to arguments by defendant-fiduciaries in similar circumstance in other cases.  Indeed, the Second Circuit recently affirmed dismissal of a

21

suit against the fiduciaries of the Lehman Brothers retirement plan based on the *Dudenhoeffer* language. *Rinehart v. Lehman Bros. Holdings Inc.*, No. 15-2229, 2016 WL 1077009, at *2 (2d Cir. Mar. 18, 2016).  *Lehman* would no doubt feature prominently in Defendants' briefs and arguments at summary judgment and trial in this case.  Consequently, had this Action proceeded, the Parties would have engaged in significant briefing regarding the precise parameters of *Dudenhoffer* and *Lehman*.

Further, given the fact that several other courts have relied on *Dudenhoffer* to find that defendants in analogous actions are not liable under ERISA,[8] it is likely that the relatively new legal landscape of a post-*Dudenhoffer* world would have meant the inevitable appeal.  Of course, this assumes that Plaintiffs would have been victorious at trial.  Class Counsel are aware of at least four analogous cases where plaintiffs have lost at trial where their claims were based on breaches of fiduciary duty under ERISA.  This Settlement alleviates these concerns as well.

### (e)       Maintaining the Class Through Trial

Plaintiffs are convinced that they would prevail on the issue of class certification. Nevertheless, Plaintiffs anticipate that Defendants would dispute class certification, should the case continue, and that the Court would make a determination on class certification only after extensive briefing and, possibly, interlocutory appeal.  Indeed, there is no guarantee that any favorable class certification decision would be for the entire period proposed in the Complaint, and a significantly shorter Class Period could dramatically cut Plaintiffs' claim for damages.  *See*

---

[8] *See, e.g., In re 2014 RadioShack ERISA Litig.*, Master File No. 14-cv-959 (D. Tex.) (Dkt. No. 153) (opinion and order granting dismissal of plaintiffs' complaint based on *Dudenhoffer* but allowing plaintiffs to replead).

*infra* subsection (g).   The proposed Settlement eliminates all of the risks and delays that permeate that process. Therefore, this factor also favors approval.

### (f)   *Defendants'* Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

This factor can be relevant to a court's decision to approve a settlement.   *In re PaineWebber*, 171 F.R.D. 104.   However, "a defendant's ability to pay more than provided through the settlement cannot undercut the overall assessment of fairness, reasonableness, and adequacy of a proposed settlement."   *D.S. v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59, 78 (E.D.N.Y. 2008) (*citing In re PaineWebber*, 171 F.R.D. at 129).   While there is no dispute that Defendants had significant insurance coverage available to settle any claim, that fact is not dispositive.   As noted above, Plaintiffs faced numerous hurdles (including demonstrating imprudence from the inception of the Class Period).   Given the changing and uncertain nature of ERISA litigation, the recovery of a substantial amount of damages for the Class is an excellent result.   As one court aptly noted, a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."   *In re Train Derailment Near Amite Louisiana*, MDL No. 1531, 2006 WL 1561470, at *24 (E.D. La. May 24, 2006) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)).

### (g)   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 & 9)

Defendants have agreed to pay a substantial amount, $9.7 million to the Settlement Class.   This amount represents considerable value given the attendant risks of establishing damages.   Based on Plaintiffs' damage model and depending on the alleged date of imprudence, the Settlement represents a recovery of between approximately twenty to fifty

percent of the total damages suffered.   Stated another way, had Plaintiffs been able to demonstrate imprudence from the start of the Class Period, the Settlement represents approximately twenty percent (20%) of the total damages suffered.   *See* Wells Decl., ¶ 47. However, had Plaintiffs been able to prove imprudence only a few months before Kodak filed for bankruptcy, then the Settlement represents a much greater percentage of the total damages suffered.   *Id.*

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"   *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).   "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"   *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).   "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423 at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Consequently, these *Grinnell* factors weigh heavily in favor of granting final approval of the Settlement.   In light of the substantial risk that the Settlement Class would have recovered less, or potentially nothing at all, this is an outstanding result.   Because the Settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d at 138-39), the Court should grant final approval.

**D.      The Court Should Approve the Plan of Allocation**

The standard governing approval of a plan of allocation is ultimately the same as the

one that governs approval of a settlement:

> "To warrant approval, the plan of allocation must also meet the
> standards by which the settlement was scrutinized – namely, it must be
> fair and adequate." *Maley v. Del Global Technologies Corp.,* 186 F. Supp.
> 2d 358, 367 (S.D.N.Y. 2002) (internal citation and quotations omitted).
> "An allocation formula need only have a reasonable, rational basis,
> particularly if recommended by experienced and competent class
> counsel." *Id.* "In determining whether a plan of allocation is fair, courts
> look primarily to the opinion of counsel. That is, as a general rule, the
> adequacy of an allocation plan turns on whether counsel has properly
> apprised itself of the merits of all claims, and whether the proposed
> apportionment is fair and reasonable in light of that information."
> *Chavarria v. New York Airport Serv., LLC, No.*10–cv–1930(MDG), 2012 WL
> 2394797, at *8 (E.D.N.Y. June 25, 2012) (internal quotations marks and
> citations omitted). "Courts also consider the reaction of the class to a
> plan of allocation." *Id.*

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610, at *8 (D.

Conn. Aug. 20, 2012); *accord, In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).

Here, Class Counsel drafted a Plan of Allocation that reflects their damage theory of the

case in a simple and straightforward manner and that prorates damages among Settlement

Class members according to loss incurred.  The Net Settlement Amount will be allocated to

Settlement Class Members on a *pro rata* basis such that the amount received by each

Settlement Class member will depend on his or her Class Period loss in either the ESOP or in the

Kodak Stock Fund in the SIP (or both, in the case of employees who had losses in both).  Those

who suffered a loss less than $25 (the "*de minimis* amount") do not receive a recovery.  (The *de*

*minimis* amount is proposed in order to limit the costs of administration in relation to the

Settlement benefits to be distributed).

25

The Plan of Allocation provides a recovery to Settlement Class members, net of administrative expenses, attorneys' fees and other expenses that the Court may choose to award, on a *pro rata* basis according to their recognized claims of damages.  No Settlement Class member or group of Settlement Class members is singled out for either disproportionately favorable or unfavorable treatment; all participate in recoveries pursuant to the Plan of Allocation in the same manner.  This is substantially the same plan of allocation approved and used in the vast majority of company stock fund ERISA cases.[9]  Accordingly, the Court should approve the Plan of Allocation as fair and reasonable.

V.     **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the Settlement Class, find that the Settlement Class has received proper notice, appoint Class Representatives and Class Counsel, and give final approval to the Settlement and the Plan of Allocation.

---

[9] *See*, *e.g.*, *In re Delphi Corp. Secs., Derivative & "ERISA" Litig*., 248 F.R.D. 483, 491-93 (E.D. Mich. 2008) (approving a materially similar plan of allocation); *In re AOL Time Warner ERISA Litig*., No. 02-cv-8853, 2006 WL 2789862, at *10 (S.D.N.Y. Sep. 27, 2006) (approving materially identical plan of allocation where "Class members will have their recovery calculated according to the decrease in value of their Plan holdings during the Class Period. All Class members are treated equally under the formula, and all members qualifying for recovery will have their share of the funds automatically distributed to their Plan accounts or, if they are no longer Plan members, an account created for them under the terms of the Settlement."); *In re Sprint Corp. ERISA Litig*., 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006) (approving plan of allocation virtually identical to that here where the plan administrator would calculate "each participant's and former participant's net loss, then exclude those with a net gain, calculate each participant's and former participant's preliminary fractional share, use that to calculate the preliminary dollar recovery, exclude those with a *de minimis* preliminary dollar recovery of less than twenty-five ($25), then recalculate as many times as necessary so as to arrive at a final fractional share and final dollar recovery for each participant and former participant who is entitled to receive more than a *de minimis* amount until the sum of the final dollar recoveries equals the cash settlement fund.").

Dated: July 8, 2016

BLITMAN & KING, LLP

By: ___/s/ Jules L. Smith____
Jules L. Smith
The Powers Building, Suite 500
16 West Main Street
Rochester, New York 14614
Tel: (585) 232-5600
Fax: (585) 232-7738
jlsmith@bklawyers.com

*Interim Liaison Counsel for the Class*

Robert A. Izard
Mark P. Kindall
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile:  (860) 493-6290
Email: rizard@ikrlaw.com
         mkindall@ ikrlaw.com

Gerald D. Wells, III
CONNOLLY WELLS & GRAY, LLP
2200 Renaissance Boulevard, Suite 308
King of Prussia, PA 19406
Telephone:  (610) 822-3700
Facsimile:  (610) 822-3800
Email:  gwells@cwg-law.com

*Interim Co-Lead Counsel for the Class*