**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EASTMAN KODAK ERISA LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | **MASTER FILE NO. 6:12-CV-06051-DGL** |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR APPROVAL OF**
**ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND**
**CASE CONTRIBUTION AWARDS**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ...........................................................................................................ii

I.      INTRODUCTION ............................................................................................... 1

II.     PLAINTIFFS' FEE REQUEST IS FAIR AND REASONABLE ....................................... 3

        A.      THE SETTLEMENT CREATES A COMMON FUND FROM WHICH CLASS COUNSEL SHOULD BE COMPENSATED ......................................................................................... 4

        B.      PLAINTIFFS' REQUEST FOR THIRTY PERCENT OF THE SETTLEMENT FUND IS FAIR AND REASONABLE UNDER THE PERCENTAGE-OF-THE-FUND METHOD ........................................... 5

                1.      The Time and Labor Expended By Counsel................................................. 5

                2.      The Magnitude and Complexities of the Litigation ................................... 7

                3.      The Risk of the Litigation ......................................................................... 8

                4.      The Quality of Representation................................................................. 11

                5.      The Requested Fee in Relation to the Settlement................................... 13

                6.      Public Policy Considerations ................................................................... 15

        C.      FEE REQUEST IS REASONABLE WHEN "CROSS CHECKED" AGAINST CLASS COUNSEL'S LODESTAR 17

III.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFITS OBTAINED; THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES .................................................................................................. 19

IV.     THE COURT SHOULD APPROVE THE REQUESTED CASE CONTRIBUTION AWARDS TO PLAINTIFFS ...................................................................................................... 20

V.      CONCLUSION.................................................................................................. 22

i

**TABLE OF AUTHORITES**

**Cases**                                                                                          **Page(s)**

*In re 2014 RadioShack ERISA Litig.,*
    Master File No. 14-cv-959 (N.D. Tex.) ................................................................ 9

*Asare v. Change Grp. N.Y., Inc.,*
    2013 U.S. Dist. LEXIS 165935 (S.D.N.Y. Nov. 15, 2013) ........................................ 8

*Becher v. Long Island Lighting Co.,*
    64 F. Supp. 2d 174 (E.D.N.Y. 1999) .................................................................... 14

*Bolger v. Perez,*
    No. 6:12-cv-06067 ............................................................................................ 1

*Bredthauer v. Lundstrom, et al.,*
    No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013) ........................................................... 20

*Coletta v. Perez,*
    No. 6:12-cv-06071 ............................................................................................ 1

*In re Colgate-Palmolive Co. ERISA Litig.,*
    36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ............................................................ 18

*CourAcevedo v. Workfit Med. LLC,*
    No. 6:14-CV-06221 EAW, 2016 U.S. Dist. LEXIS 66828 (W.D.N.Y. May 20,
    2016) .................................................................................................... 13, 16

*Davis v. J.P. Morgan Chase & Co.,*
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................................... 3, 4, 16, 17

*deMunecas v. Bold Food, LLC,*
    2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) ................................ 6, 13, 15

*Denney v. Jenkins & Gilchrist,*
    230 F.R.D. 317 (S.D.N.Y. 2005) ........................................................................ 13

*In re Diebold ERISA Litig.,*
    No. 06-cv-170 (N.D. Ohio Feb. 11, 2011) ........................................................... 20

*Dornberger v. Metropolitan Life Insurance Co.,*
    203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................ 19

ii

*In re Dynegy, Inc. ERISA Litig.*,
   309 F. Supp. 2d 861 (S.D. Tex. 2004) ................................................................. 20

*Ellman v. Grandma Lee's Inc.*,
   No. 82-1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ........................................ 15

*In re Enron Corporation Securities and ERISA Litig.*,
   No. 02-13624 (S.D. Tex.) ..................................................................................... 11

*In re EVCI Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................................................... 17

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014) ....................................................................................... 7, 9

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................................... 14

*Gedek v. Perez*,
   No. 6:12-cv-06051 ............................................................................................... 1

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................... 11, 18

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ........................................................................... *passim*

*Greenwood v. Perez*,
   No. 6:12-cv-06056 ............................................................................................... 1

*Hartter v. Perez*,
   No. 12-cv-06146. ECF No. 40 ............................................................................... 1

*Hicks v. Morgan Stanley*,
   No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................. 13

*In re Household Int'l ERISA Litig.*,
   No. 02 Civ. 7921 Min. Entry Order (N.D. Ill. Nov. 22, 2004) ................................. 18

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96-cv-1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .............................. 17

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................ 14, 15, 17

iii

*In re Marsh ERISA Litig.,*
265 F.R.D. 128 (S.D.N.Y. 2012) ..................................................................... *passim*

*Mauer v. The Eastman Kodak Savings & Investment Plan Committee,*
No. 6:12-cv-06078 ................................................................................ 1

*McLellan v. E.I. Dupont de Nemours & Co., Inc.,*
2006 U.S. Dist. LEXIS 94233 (W.D.N.Y. Sep. 22, 2006) ............................ 7

*In re Medical X-Ray Film Antitrust Litig.,*
1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) ............................ 14

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
246 F.R.D. 156 (S.D.N.Y. 2007) ................................................................ 18

*Munter v. Hickey (In re CRM Holdings, Ltd. Secs. Litig.),*
634 F. App'x 59 (2d Cir. 2016) ................................................................ 5

*In re NASDAQ Market- Makers Antitrust Litig.,*
187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................ 17

*In re Prudential Sec. Inc. Ltd. Partnerships. Litigation.,*
985 F. Supp. 410 (S.D.N.Y. 1997) ............................................................ 12

*Rinehart v. Lehman Bros. Holdings Inc.,*
No. 15-2229, 2016 WL 1077009 (2d Cir. Mar. 18, 2016) ........................ 9

*In re Rite Aid Corp. Sec. Litig.,*
396 F.3d 294 (3rd Cir. 2005) ................................................................ 16

*Spann v. AOL Time Warner,*
No. 02-8238, 2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005) ........................ 15

*In re Sumitomo Copper Litig.,*
74 F. Supp. 2d 393 (S.D.N.Y. 1999) ............................................................ 4, 9, 17

*Taft v. Ackermans,*
2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ............................................................ 13

*Toal v. Perez,*
No. 6:12-cv-06080 ................................................................................ 1

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
396 F.3d 96 (2d Cir. 2005) ............................................................ 4, 13, 17

iv

*In re Warner Communications Sec. Litigation*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ...................................... 12

*In re WorldCom, Inc. ERISA Litig.*,
2005 WL 3116188 (S.D.N.Y. Nov. 22, 2005) ............................................................................. 5

*Yuzary v. HSBC Bank USA, N.A.*,
No. 12-cv-3603, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ................................................... 17

**Statutes**

Employee Retirement Income Security Act of 1974 ............................................................. *passim*

**Other Authorities**

Rule 23(h) of the Federal Rules of Civil Procedure ................................................................... 1, 18

Supreme Court's *Dudenhoffer* ...................................................................................................... 10

Class Counsel[1] respectfully submit this memorandum in support of their motion pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, for an award of attorneys' fees equal to thirty percent (30%) of the Settlement Fund; for reimbursement of $119,100.88 in litigation expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action; and for $5,000 to be awarded to each of the Class Representatives in this action in recognition of their contributions to the successful prosecution of this case.

I.    INTRODUCTION

The proposed $9,700,000 Settlement with Defendants represents a very favorable result for the Settlement Class in light of the risks of litigating alleged violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") premised on ownership of company stock.  This significant recovery was obtained through the skill and effective advocacy of Class Counsel, who litigated this case on a fully contingent fee basis against highly skilled defense counsel for more than four years.  The Settlement has been preliminarily approved, and a final fairness hearing has been scheduled by the Court for August 22, 2016.

In undertaking this litigation, Plaintiffs' Counsel,[2] who possess significant experience in

---

[1] All capitalized, undefined terms not otherwise defined herein shall have the same meaning ascribed to them in the Parties' Settlement Agreement previously filed with the Court at Dkt. No. 122-3.

[2] The Court's August 1, 2012 Order consolidated seven related actions alleging that fiduciaries of the Eastman Kodak Employees' Savings and Investment Plan (the "SIP") and/or the Kodak Employee Stock Ownership Plan (the "ESOP"):  *Gedek v. Perez,* No. 6:12-cv-06051, *Greenwood v. Perez,* No. 6:12-cv-06056, *Bolger v. Perez,* No. 6:12-cv-06067, *Coletta v. Perez,* No. 6:12-cv-06071, *Mauer v. The Eastman Kodak Savings & Investment Plan Committee,* No. 6:12-cv-06078, *Toal v. Perez,* No. 6:12-cv-06080, and *Hartter v. Perez,* No. 12-cv-06146.  ECF No. 40, at 2.  The

ERISA-based class actions, faced substantial challenges in proving liability and damages. Due to the nature of this litigation and the ever-evolving case law, Plaintiffs' Counsel faced the very real risk that the substantial time and expense they dedicated to this case would result in no recovery for the Settlement Class. This risk was enhanced due to the financial condition of the Company, which entered bankruptcy before the litigation commenced. There was no way to know, at the outset of the case, what assets might be available to fund either a settlement or a judgment in favor of the Class. Further, due to Kodak's bankruptcy petition, Plaintiffs' Counsel had to retain bankruptcy counsel in order to ensure that the Plaintiffs' and the Plans' claims were not wiped out in the bankruptcy proceeding. Despite these challenges and overall uncertainty in ERISA-jurisprudence, Plaintiffs' Counsel successfully fought for and achieved a significant recovery for the Settlement Class. This recovery was a direct result of the continuing efforts of all of Plaintiffs' Counsel, spearheaded by Class Counsel, that began before the filing of the initial complaint in this matter and continued throughout the litigation process. Plaintiffs' Counsel's skill, creativity, perseverance and hard work allowed them to successfully resolve this case, subject to the Court's final approval.[3]

In light of the recovery obtained, the time and effort devoted to this case by Plaintiffs' Counsel, the skill and expertise required, and the risks that counsel undertook, Plaintiffs' fee

---

Order appointed Class Counsel and empowered them to coordinate and supervise the work of all Plaintiffs' Counsel in the consolidated action. ECF No. 40, at 4.

[3] Plaintiffs hereby incorporate by reference the factual and procedural background of this Action set forth in the memorandum of law filed in support of final approval of the Settlement. Plaintiffs also rely on the Declaration of Gerald D. Wells, III in Support of Plaintiffs' Motion for Approval of Class Action Settlement and Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Class Representative Awards ("Wells Decl."), which is also incorporated herein by reference.

request is fair and reasonable. As discussed below, the 30% fee requested is well within the range of percentage fees that courts in this Circuit and others have awarded in similar ERISA class actions with comparable recoveries.  The requested fee represents a modest multiplier of 2.86 compared to Class Counsel's lodestar alone, and an even smaller multiplier of only 1.94 when the post-appointment time of other Plaintiffs' Counsel is considered in the lodestar calculation as well.  *See* Wells Decl. ¶¶123, 130.  This request is fundamentally supported by the case law in this Circuit and analogous ERISA class actions.

In addition, Plaintiffs request reimbursement of Plaintiffs' Counsel's out-of-pocket expenses, which were reasonable and necessary to protect the interests of the Class in this litigation.  Finally, Plaintiffs request a Case Contribution Award for each Class Representative for their time and effort devoted to this Action on behalf of the Settlement Class.  As with Plaintiffs' other requests, this request is also supported by applicable case law.  Importantly, to date, no objections to any of these requests have been filed even though the Notice approved by the Court indicated that Plaintiffs would be seeking approval of these requests from the Court.  *See Davis v. J.P. Morgan Chase & Co*., 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011) (noting that the lack of any objections is "a factor that weighs in favor of approval of the award").

## II.    PLAINTIFFS' FEE REQUEST IS FAIR AND REASONABLE

Plaintiffs' Counsel are entitled to compensation based upon the benefits conferred on the Settlement Class.  Class Counsel respectfully requests the Court award attorneys' fees in the amount of $2,910,000.00, which represents 30% of the $9.7 million Settlement Fund.  This request is fair and reasonable, and consequently appropriate, given the work performed, the excellent result achieved and the significant risks undertaken by Plaintiffs' Counsel.

Importantly, the requested fee amount is below the amount the Settlement Class was notified Class Counsel may seek – and to which no one has objected.  Finally, as explained below, the requested fee is consistent with awards in common fund class actions in the Second Circuit.

### A. THE SETTLEMENT CREATES A COMMON FUND FROM WHICH CLASS COUNSEL SHOULD BE COMPENSATED

In a common fund case such as this, "the attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000), *citing Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980).  "The rationale for this rule is an equitable one: it prevents unjust enrichment of those benefiting from a lawsuit without contributing to its costs." *Goldberger*, 209 F.3d at 47.  Here, the efforts of Plaintiffs' Counsel successfully created a common fund of $9.7 million and, accordingly, are entitled to a reasonable share of that fund as a fee.

In determining the reasonableness of a requested fee, courts in this Circuit are free to choose between the lodestar method – which multiplies the attorneys' billable hours by their billable rate – and the percentage of recovery method.  However, the trend in the Second Circuit is toward the percentage of recovery method for awarding fees.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) ("Courts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation.").  The percentage method is favored because, among other things, "it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by

4

individual clients to compensate their attorneys." *Davis,* 827 F. Supp. 2d at 183-84. Additionally, the percentage method "spares the court and the parties the 'cumbersome, enervating, and often surrealistic process of lodestar computation.'" *Id.* at 184, *quoting In re Air Cargo Shipping Services Antitrust Litigation*, 2011 WL 2909162, at *5.

Regardless of which method is ultimately used, "the ultimate question is whether the fees awarded exceed what is 'reasonable' under the circumstances." *Munter v. Hickey (In re CRM Holdings, Ltd. Secs. Litig.),* 634 F. App'x 59, 60 (2d Cir. 2016), *citing Goldberger*, 209 F. 3d at 47. Here, the requested fee award clearly does not exceed what is reasonable in this ERISA class action.

**B.    PLAINTIFFS' REQUEST FOR THIRTY PERCENT OF THE SETTLEMENT FUND IS FAIR AND REASONABLE UNDER THE PERCENTAGE-OF-THE-FUND METHOD**

In determining whether a request for a percentage of a settlement fund is a fair and reasonable fee, courts in the Second Circuit consider the six factors identified in *Goldberger*, which are:  (1) The time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F. 3d at 50; *see also In re WorldCom, Inc. ERISA Litig.*, 2005 WL 3116188, at *7 (S.D.N.Y. Nov. 22, 2005), *citing Wal-Mart*, 396 F.3d at 121.

As set forth below, each of these factors supports the fee requested by Class Counsel.

### 1.    The Time and Labor Expended By Counsel

*Goldberger* factor number one requires consideration of the time and labor expended by Class Counsel in this case.  *Goldberger*, 209 F.3d at 50.  Given the significant time and

5

resources expended by Plaintiffs' Counsel in litigating this matter, this factor strongly supports approval of the fee request.

Plaintiffs' Counsel investigated and litigated this matter thoroughly over the past four years and aggressively pursued Plaintiffs' claims. Among other things, Plaintiffs' Counsel investigated the legal claims available to Plaintiffs; drafted and filed the initial complaint; requested and analyzed complex plan documents; drafted and filed the consolidated amended complaint; fully briefed, argued, and defeated Defendants' motions to dismiss; conducted written discovery; briefed and argued motions to compel production of discovery; reviewed thousands of documents produced by Defendants as well as other relevant documents; retained a damages expert; prepared a mediation statement and engaged in a full day mediation; negotiated and finalized the Settlement Agreement; and prepared motions for preliminary and final approval of the Settlement..  In addition, Plaintiffs' Counsel worked to ensure that the rights of the Class in the claims involved in this litigation would not be impacted or extinguished by the Kodak bankruptcy proceeding.

In carrying out these efforts, Plaintiffs' Counsel collectively expended 2,200 hours prosecuting this case on behalf of Plaintiffs and the Settlement Class, resulting in a lodestar amount of over $1.5 million, based on current billing rates.  *See* Wells Decl. ¶129.[4] This total does not include the time that Class Counsel expended drafting this fee petition or

---

[4] The work performed by Plaintiffs' Counsel was supervised by Class Counsel as called for in the Court's consolidation order.  ECF No. 40, at 4.  The efforts undertaken by counsel not comprising Class Counsel were critical to further the litigation effort and protect the interests of the Class and included such tasks as drafting initial versions of certain briefs, keeping track of the bankruptcy proceeding, and working with their clients to respond to Defendants' (numerous) discovery requests.  *See* Wells Decl. ¶125, 127.  This work was done at Class Counsel's request and direction.

accompanying declaration, nor does it include the hours Class Counsel anticipates spending in the future on matters relating to the administration of the Settlement of this matter. Indeed, it is important to note that even if the Court grants final approval of the Settlement, Class Counsel will continue to expend time and resources overseeing the Settlement administration, assisting Settlement Class Members, and tending to any other issues that may arise related to the Settlement. *See deMunecas v. Bold Food, LLC,* 2010 U.S. Dist. LEXIS 87644, at *25 (S.D.N.Y. Aug. 23, 2010)(recognizing that "Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward").

### 2.    The Magnitude and Complexities of the Litigation

*Goldberger* factor number two requires consideration of the magnitude and complexities Class Counsel faced in litigating this case. *Goldberger*, 209 F.3d at 50. This factor also supports the approval of Plaintiffs' fee request.

By its very nature, ERISA litigation presents complex factual and legal issues which must be navigated by the parties, often with little in the way of judicial guidance to assist them. *See e.g. McLellan v. E.I. Dupont de Nemours & Co., Inc.*, 2006 U.S. Dist. LEXIS 94233, at *24 (W.D.N.Y. Sep. 22, 2006) (commenting on "ERISA's complex nature"). As discussed further below, the governing law is often in flux, and litigating within this ever changing legal landscape presents undeniable complexity, and the real risk that in such cases spanning several years the law may change significantly before judgment.

In this case, the complex legal and factual issues faced by Class Counsel were many, and arose at every stage of the litigation. Although Class Counsel believes strongly in the merits of

Plaintiffs' claims that Defendants had breached their fiduciary duty and had not acted prudently regarding the retention and acquisition of Kodak stock by the Plans, counsel for Defendants skillfully prepared and argued motions to dismiss those claims.  Adding to the already complex nature of the case, while Defendants' motions to dismiss were pending, the Supreme Court decided a case directly impacting the prudence standard in ERISA cases.[5]  This required supplemental submissions by the Parties.  Additionally, as the Court is well aware, discovery in this case was particularly adversarial between the Parties.  Both sides objected to numerous discovery requests, with Defendants' steadfastly refusing to produce the overwhelming majority of documents sought by Plaintiffs on the novel basis that they were not relevant to claims based on publicly-available documents.  Unable to reach an accord, the Parties filed cross motions to compel production, which were fully briefed and – in the case of Defendants' motion – argued before the Court prior to the parties agreeing to mediation and requesting a stay.

Mediation raised new complexities in the form of dueling damage models, including one by Defendants that would have severely reduced the damages period, thereby severely reducing any recovery by Plaintiffs in the event the case continued.

By any standard, the complexities in this case arose early and often.  Class Counsel's ability to navigate those complexities and procure a substantial Settlement of behalf of the Settlement Class clearly supports the reasonableness of the requested fee.

**3.     The Risk of the Litigation**

---

[5] *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014).

*Goldberger* factor number three analyzes the risk of litigation, and is "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Asare v. Change Grp. N.Y., Inc.,* 2013 U.S. Dist. LEXIS 165935, at *53 (S.D.N.Y. Nov. 15, 2013) (internal quotation omitted).  A review of the significant risk taken on by Class Counsel in this matter clearly satisfies this factor.

ERISA class actions are inherently risky, in large part due to the lack of jurisprudential guidance.  Unlike the antitrust laws and the federal securities laws, the ERISA statute is relatively new, having only been enacted in 1974.  Correspondingly, relevant case law – particularly in the context of company stock actions involving 401(k) plans – is quite limited when compared to the legal guidance enjoyed by attorneys litigating antitrust and securities cases.  What governing ERISA case law there is can be best described as unsettled and changing.  *See, e.g., In re Marsh ERISA Litig.,* 265 F.R.D. 128, 147 (S.D.N.Y. 2012)(in approving fee request, noting relative infancy of ERISA jurisprudence and finding the "unsettled nature of the law" only "increases the risks for Plaintiffs' Counsel").  For instance, prior to the recent Supreme Court decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), several lower courts had dismissed ERISA cases based application of the so-called "presumption of prudence" argument.  Yet far from reducing the inherent risks of ERISA litigation, particularly to plaintiffs, *Dudenhoeffer* has in some ways increased the risk for plaintiffs by muddying the waters with respect to other issues.  While *Dudenhoeffer* eliminated once and for all the "presumption of prudence" argument, certain language in that decision raises issues regarding the viability of an ERISA action regarding claims of imprudent investment in company stock based upon publicly available information, and thus has lent support to arguments by

defendant-fiduciaries in similar circumstance in other cases.  Indeed, the Second Circuit recently affirmed dismissal of a suit against the fiduciaries of the Lehman Brothers retirement plan based on the *Dudenhoeffer* language.  *Rinehart v. Lehman Bros. Holdings Inc.,* No. 15-2229, 2016 WL 1077009, at *2 (2d Cir. Mar. 18, 2016).  *Lehman* would no doubt feature prominently in Defendants' briefs and arguments should this case continue.

Given the fact that several other courts have relied on *Dudenhoffer* in determining that defendants in analogous actions are not liable under ERISA, *see, e.g., In re 2014 RadioShack ERISA Litig.,*[6] it can be fairly said that the new legal landscape of a post-*Dudenhoffer* world has likely increased the significant risk of maintaining an ERISA class action like the instant matter. At a minimum, Plaintiffs' faced the very real possibility that Defendants' would likely appeal any favorable ruling by this Court, especially had Plaintiffs' survived Defendants' invariable motion for summary judgment.

It was with full knowledge of this unsettled legal landscape and its inherent risks that Plaintiffs' Counsel accepted this case on a contingent basis and chose to file and litigate this matter.[7]  In addition to the uncertainties relating to the substantive ERISA jurisprudence discussed above, Plaintiffs' Counsel also accepted the risks of litigating against formidable, and well-funded, defense counsel.  Indeed, through their attorneys, Defendants in this case refused to produce responses to the overwhelming majority of Plaintiffs' discovery requests, raising

---

[6] *In re 2014 RadioShack ERISA Litig.,* Master File No. 14-cv-959 (N.D. Tex.) (Dkt. No. 153) (opinion and order granting dismissal of plaintiffs' complaint based on *Dudenhoffer* but allowing plaintiffs to replead).

[7] It is important to note that "litigation risk must be measured as of when the case is filed." *Goldberger,* 209 F.3d at 55.  This also bolsters Class Counsel's position that the *Goldberger* risk factor has been satisfied, since Plaintiffs filed their cases prior to the Supreme Court's *Dudenhoffer* decision affecting the prudence standard.

certain novel legal theories in response to Plaintiffs' motion to compel, which was fully briefed and scheduled for oral argument before the parties agreed to mediation. Had the Court denied their motion to compel, Plaintiffs would have faced the very real prospect of attempting to prosecute this case successfully without access to discovery that would have likely bolstered their claims.

Finally, this case was particularly risky even by ERISA standards, given the financial condition of Kodak which had declared bankruptcy prior to the filing of Plaintiffs' initial class action complaints. Until Defendants produced insurance documents in response to Plaintiffs' written discovery requests – well after the parties had fully briefed and argued Defendants' motion to dismiss – Plaintiffs simply did not know whether sufficient funds existed to support any recovery even if they prevailed in the litigation.

Because Class Counsel accepted all of the significant risks inherent in this case, this factor is satisfied and supports approval of Class Counsel's fee request.

### 4.    The Quality of Representation

*Goldberger* factor number four requires an analysis of the quality of the representation provided by Class Counsel in this litigation. *Goldberger*, 209 F.3d at 50. "[T]he quality of the representation is best measured by the results." *Id.*, at 55. In this case, the results are very favorable for the Class, and, therefore, the quality of representation by Class Counsel more than satisfies this factor.

As an initial matter, Plaintiffs' Counsel in this case is comprised of attorneys and law firms that are national leaders in class action litigation generally, and ERISA matters in particular. Moreover, Class Counsel have been appointed lead counsel or co-lead counsel in

numerous ERISA fiduciary breach cases, as well as other class action matters, both in the Second Circuit and in courts nationwide. *See* Wells Decl. ¶¶77, 78, 114. The attorneys comprising Class Counsel have achieved many notable successes, including settlements against Bristol-Myers Squibb ($41.22 million plus structural plan changes valued at up to $52 million); Westar Energy Inc. ($9.25 million cash settlement); Federal Home Loan Mortgage Corp. (settlement of ERISA claims for $4.65 million plus additional ameliorative measures); AOL Time Warner ($100 million), Tyco International ($70.5 million), Merck ($49.5 million), Cardinal Health ($40 million), AT&T ($29 million) and JP Morgan Chase ($23 million).[8]

The quality of Class Counsel's representation is also evident when considering the equally high quality defense attorneys against whom they successfully litigated this case. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004)(noting that "'the quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work'")(citation omitted). From the outset, and throughout the entire process, Class Counsel engaged in hard fought and contentious litigation with highly capable attorneys from Gibson Dunn & Crutcher LLP, and Goodwin Procter, LLP, many of whom are recognized experts in the field of ERISA litigation.

---

[8] Indeed, Izard, Kindall & Raabe, LLP served on the executive committee in the matter styled *In re Enron Corporation Securities and ERISA Litig.*, No. 02-13624 (S.D. Tex.), which resulted in a recovery in excess of $250 million. A more fulsome description of the experience of the attorneys comprising Class Counsel is set forth in the firm resumes attached to the Wells Decl. as Exhibits 2 and 3.

Furthermore, the absence, to date, of any objection so the Settlement by Settlement Class members, also supports approval of Class Counsel's fee request.[9] *See, e.g., In re Prudential Sec. Inc. Ltd. Partnerships. Litigation.*, 985 F. Supp. 410, 416 (S.D.N.Y. 1997) ("In determining the reasonableness of a requested fee, numerous courts have recognized that 'the lack of objection from members of the class is one of the most important reasons'") (citation omitted).

Class Counsel both possesses and utilized the necessary skill to ably provide the legal services which led to a favorable settlement.  Class Counsel's ability to obtain a favorable settlement for the Class Members despite all the risks and complexity discussed above, and in the face of formidable legal opposition speaks to the quality of Class Counsel.  This *Goldberger* factor is clearly satisfied.

### 5.    The Requested Fee in Relation to the Settlement

This factor requires the Court to determine whether the fee requested is a fair percentage of the settlement amount.  *Goldberger*, 209 F.3d at 50.  This factor supports Class Counsel's fee request.

The requested fee of $2,910,000.00, representing 30% of the $9,700,000.00 million Settlement Amount is fair and reasonable in relation to the recovery and compares favorably to fee awards in other common fund class actions in the Second Circuit.  *See* Wells Decl. ¶117.

"Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions."  *In re Warner Communications Sec. Litigation*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In *Wal-mart Stores, Inc. v. Visa, Inc.*, the

---

[9] The Class Notice, which was approved by the Court prior to being mailed to every member of the Settlement Class, discloses both the Settlement Amount and the fact that it would be reduced by Class Counsel's legal fees of up to one-third of that amount, along with Class Counsel's associated expenses.

Second Circuit held that "the percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." 396 F.3d 96, 122 (2d Cir. 2005), *quoting In re Independent Energy Holdings PLC*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003).  Courts within this district have applied that sliding-scale principle when determining fee awards.  *E.g., Denney v. Jenkins & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005) (percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement); *In re AOL Time Warner Sec. Litig*., N2006 WL 3057232 (S.D.N.Y. Oct 25, 2006) (noting, in the context of a $100 million common fund, "the now generally accepted principle that fee percentages should decline as the mega fund recovery increases").   Here, because the common fund does not represent a mega fund recovery, the sliding-scale standard supports a fee award of 30% of the Settlement Amount.  *See In re Marsh Erisa Litigation*, 265 F.R.D. 128, 149 (S.D.N.Y. 2009) (finding that a $35 million settlement did not constitute a "mega fund," which supported the reasonableness of a fee equal to one third of the recovery).

Indeed, common fund recoveries of 30% and higher have been routinely approved in class action cases within the Second Circuit.  *See CourAcevedo v. Workfit Med. LLC*, No. 6:14-CV-06221 EAW, 2016 U.S. Dist. LEXIS 66828, at *20 (W.D.N.Y. May 20, 2016) (approving fee request of one-third of total settlement fund); *deMunecas,* at *19 ("Class Counsel's request for 33 percent of the Fund is reasonable under the circumstances of this case and is consistent with the norms of class litigation in this circuit."); *Taft v. Ackermans*, 2007 WL 414493 *10 (S.D.N.Y. Jan. 31, 2007) (awarding 30% in attorneys' fees and noting that 30% of $15.17 million settlement presents no danger of a windfall); *Hicks v. Morgan Stanley*, No. 01-cv-10071, 2005

WL 2757792 (S.D.N.Y. Oct. 24, 2005) (awarding 30% of $10 million settlement); *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (awarding 38.26%); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33-1/3% and finding that a "modest multiplier of 4.65 is fair and reasonable"); *Becher v. Long Island Lighting Co*., 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding 33-1/3% of common fund); *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888 at *20 (E.D.N.Y. Aug. 7, 1998) (determining that 33.33% fee award was "reasonable and is well within the range accepted by courts in this circuit.").

As the *Marsh* court aptly noted, "Courts have also awarded percentage fees of one-third or higher in ERISA company stock cases . . . especially when, as here, the fund is not a 'mega' recovery." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010). Respectfully, the fee request here is below what the *Marsh* court found appropriate and this settlement, while substantial, is certainly not a "mega" recovery.

Class Counsel's fee request of thirty percent is a fair percentage of the Settlement Amount, and is well within the range of fee awards approved by courts in the Second Circuit and elsewhere. Moreover, as noted above, it is below the amount that Class Counsel put in the Notice to the Class, and at least as of the date of this filing, no Settlement Class Member has objected to it. Therefore, this *Goldberger* factor is met, and supports approval of Class Counsel's request.

6.      **Public Policy Considerations**

The final *Goldberger* factor requires an analysis of all public policy considerations when determining the fees to be awarded to Class Counsel. *Goldberger*, 209 F.3d at 50. Here, public policy strongly supports approval of Class Counsel's fee request.

In this case, public interest is undeniable. In passing ERISA, Congress confirmed that the protection of workers' retirement funds from abuse was an important public interest that would require private enforcement to be effective. *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149-150 (S.D.N.Y. 2010) (Noting that "Congress passed ERISA to promote the important goals of protecting and preserving the retirement savings of American workers" and that the statute "itself specifically encourages private enforcement"). Much like this case, in *Marsh,* the Department of Labor took no action to protect the plan participants, which the *Marsh* Court found highly relevant in deciding the fee petition. The court concluded that "[w]ithout the efforts of Plaintiffs' Counsel, the participants in [the] Plan would not have obtained any relief at all." *In re Marsh ERISA Litig.*, 265 F.R.D. at 150. Accordingly, the court found that public policy supported the fee award. *Id.*

Relatedly, regardless of the specific statute in question, courts in the Second Circuit have routinely stressed the importance of reasonable fee awards in encouraging private attorneys to bring contingency fee class actions representing the public interest. *See, e.g. deMunecas,* 2010 U.S. Dist. LEXIS 87644, at *21 (S.D.N.Y. Aug. 23, 2010)("Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts") (internal citations omitted); *Maley,* 186 F. Supp. 2d at 373 (S.D.N.Y. 2002) ("Courts have recognized the importance that fair and reasonable fee

awards have in encouraging private attorneys to prosecute class actions on a contingent basis . . . on behalf of those who otherwise could not afford to prosecute.");  *Spann v. AOL Time Warner,* No. 02-8238, 2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005), at *26 (awarding 33-1/3% fee in an ERISA fiduciary breach case, noting that lawyers are unlikely to pursue this type of litigation "without resort to the class action device."); *Ellman v. Grandma Lee's Inc.*, No. 82-1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986)("To make certain that the public [interest] is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding").

Thus, public policy concerns support the fee award requested in this case.

### C.   FEE REQUEST IS REASONABLE WHEN "CROSS CHECKED" AGAINST CLASS COUNSEL'S LODESTAR

Although, as discussed above, the Second Circuit generally uses the percentage method for awarding fees in class actions, it is also the trend for courts to use the lodestar method to "cross-check" that the percentage sought by the plaintiff's counsel is fair and reasonable.  *See CourAcevedo*, 2016 U.S. Dist. LEXIS 66828, at *23.  The lodestar analysis is simply a function of multiplying the number of hours Class Counsel spent litigating this matter times the hourly billable rate.  *Goldberger*, 209 F.3d at 47.   The purpose of a lodestar cross-check is to determine whether  a proposed fee award is within some reasonable multiple of the lodestar. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 309 (3rd Cir. 2005).  "Where the lodestar method is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Davis v. J.P. Morgan Chase & Co*., 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011). When courts employ the lodestar analysis to cross-check the reasonableness of the percentage of recovery award, counsel may be entitled to a "multiplier,"

which "'attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work.'"  *Davis*, 827 F. Supp. 2d at 185, *quoting Rite Aid Corp.*, 396 F. 3d at 305-306.

In this case, Plaintiffs' Counsel's lodestar amount exceeds $1.5 million and arises from over 2,200 hours prosecuting this matter.  *See* Wells Decl. ¶129.  A fee award of 30% of the Settlement Fund, therefore, yields a modest multiplier of 1.94.  *See* Wells Decl. ¶130.[10] Courts in this Circuit adjudicating class action cases, including ERISA company stock cases, have awarded fees resulting in multipliers significantly higher than the one generated in this case. *See, e.g., Davis*, 827 F.Supp 2d at 185 (finding a multiplier of 5.3 to be "not atypical for similar fee-award cases")[11]; *Yuzary v. HSBC Bank USA, N.A.,* No. 12-cv-3603, 2013 WL 5492998 *11 (S.D.N.Y. Oct. 2, 2013) (finding 7.6 multiplier to "fall[] within the range granted by courts."); *Wal-Mart*, 396 F.3d at 123 ("multiplier of 3.5, which has been deemed reasonable under analogous circumstances."); *In re Lloyd's Am. Trust Fund Litig*., No. 96-cv-1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (citing fee awards of up to 12 times lodestar); *Maley*, 186 F. Supp. 2d 369, 371 (citing multipliers in S.D.N.Y. up to 7.7; awarding multiplier of 4.65); *In*

---

[10] As set forth in detail in the Wells Decl., this lodestar multiplier is based on the collective lodestar of all of Plaintiffs' Counsel (but only including the work non-Class Counsel performed post consolidation).  *See* Wells Decl. ¶¶124-130.  Should the Court only consider the lodestar of Class Counsel, the lodestar multiplier is 2.86.  *See* Wells Decl. ¶123.

[11] As this Court noted when approving a lodestar multiplier of 5.3 in *Davis*, "had this case not settled, class counsel's hours, and hence the lodestar figure, would almost certainly have been greater, although it is by no means certain that the class's recovery would have also been larger . . ."  827 F. Supp 2d at 185.  The same is true here.  Given that significant discovery, class certification and summary judgment have yet to be completed, it is certain that Class Counsel's lodestar would increase absent this Settlement, but without any corresponding certainty that the recovery by the Class would follow suit.  Indeed, had Defendants prevailed in convincing the Court to accept their damages model, the Class's recovery might well have been lower.

*re EVCI Sec. Litig.*, 2007 WL 2230177, at *17 & n.6 (S.D.N.Y. July 27, 2007) (noting that "multipliers of nearly 5 have been deemed 'common' by courts in this District" and collecting cases with multipliers of up to 6.96); *In re NASDAQ Market- Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approving multiplier of 3.97, and noting that lodestar multiples of between 3 and 4.5 are common); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399 (finding multipliers of 3 to 4.5 to be common).

Indeed, in ERISA cases, courts within this Circuit have repeatedly awarded lodestar multipliers well above the one requested here.  For example, in *Global Crossing,* the court found that a lodestar multiplier of 2.6 was "certainly justified" due to novelty and risk involved regarding ERISA claims.  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004).  More recently, another court within this Circuit found that a lodestar multiplier of 5.2 was "large, but not unreasonable" given the relative novelty of ERISA class actions.  *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). Courts outside of this Circuit have awarded multipliers also well above Class Counsel's request.  *See, e.g., In re Household Int'l ERISA Litig..,* No. 02 Civ. 7921 Min. Entry Order (N.D. Ill. Nov. 22, 2004)(awarding 30% of common fund, resulting in a lodestar multiplier of 4.8).

Here, then, a lodestar cross-check confirms that Class Counsel's fee request is fair and reasonable.

III.   **PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFITS OBTAINED;    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES**

Complex class action litigation almost always results in significant expenses incurred by counsel, and this case is no exception.  It is axiomatic that counsel should be reimbursed for all

expenses that are reasonable and necessarily incurred in creating a common fund.  FED. R. CIV. P. 23(h); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010) (it is "well-established that counsel who create a common fund ... are entitled to the reimbursement of [all reasonable] litigation costs and expenses"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 178 (S.D.N.Y. 2007) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses.").  In prosecuting this action, Class Counsel incurred $119,100.88 for which it respectfully requests reimbursement from the Settlement Amount.   See Wells Decl. ¶160.  All of the expenses were reasonable and necessary to the prosecution of this matter, represent standard litigation costs and expenses, and are itemized in further detail in the Wells Decl. ¶¶163, 164.  Such expenses include reimbursement for bankruptcy counsel[12], mediation fees, travel expenses for hearings and mediation, transcripts, and court filing fees.  *See* Wells Decl. ¶163.  All of these are reimbursable expenses.  *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. at 150 (approving reimbursement for "ordinary and necessary costs such as court reporters, expert fees, computer-assisted document organization, travel and copying").  As such, the Court should not hesitate in approving this request.

## IV.   THE COURT SHOULD APPROVE THE REQUESTED CASE CONTRIBUTION AWARDS TO PLAINTIFFS

---

[12] Because bankruptcy counsel were hired for their specialized expertise, and for the purpose of protecting the Class's interests in the claims at issue in this litigation in a separate forum, Class Counsel determined at the outset that bankruptcy counsel should be paid upfront on an hourly basis, and treated their fees as an expert expense rather than lodestar. *See* Wells Decl. ¶30. The amount sought for reimbursement of bankruptcy counsel's fees was included in the estimated amount of expenses included in the Notice disseminated to the Settlement Class Members. *Id.* at ¶¶165, 166.  No objection was filed to Class Counsel's expense reimbursement request.  *Id.* at ¶166.

Plaintiffs request that the Court approve Case Contribution Awards of $5,000.00 for each Class Representative.  Awards like the ones requested here, promote the important public policy of encouraging individuals to undertake the responsibility of representative lawsuits.  The favorable result achieved by Class Counsel in this case would likely not have been possible without the assistance of the Plaintiffs.  Throughout the entire four-year process, Plaintiffs remained fully informed of the details of the litigation, and provided invaluable input, information, and assistance at every stage.

In this Circuit and others, incentive awards may be awarded by the court as compensation to named plaintiffs for their efforts on behalf of a class which has benefitted from them.  *See generally Dornberger v. Metropolitan Life Insurance Co*., 203 F.R.D. 118, 124-25 (S.D.N.Y. 2001)(discusses cases supporting awards from $2,500.00 to $85,000.00).  The $5,000.00 amount sought in this case is at or below case contribution awards in analogous ERISA actions.  *See e.g., In re Marsh ERISA Litig., 265 F.R.D. at 151 (*awarding case contribution awards in the amount of $15,000 to each of the three Named Plaintiffs*); Bredthauer v. Lundstrom, et al.,* No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013)(awarding case contribution award of $5,000 to each of seven named plaintiffs); *In re Dynegy, Inc. ERISA Litig.,* 309 F. Supp. 2d 861 (S.D. Tex. 2004) (awarding $10,000 to the named plaintiff); *In re Diebold ERISA Litig.,* No. 06-cv-170 (N.D. Ohio Feb. 11, 2011) (awarding $10,000 to each of the four named plaintiffs).

The amount sought by the Plaintiffs for their Case Contribution Awards is modest given the dollar amount of the Settlement and the instrumental role the Class Representatives played in helping to achieve that amount for the Class.  *See* Wells Decl. ¶169.  The work each Class Representative performed is set forth in their respective declarations. *See* Wells Decl., Exhibits

21

4-10.  In short, each Class Representative contributed to achieving this Settlement.  *See* Wells

Decl. ¶170.  Accordingly, Case Contribution Awards of $5,000.00 to each Class Representative

are entirely appropriate.[13]

## V.      CONCLUSION

For all of the aforementioned reasons, Plaintiffs respectfully request the Court award (i)

attorneys' fees in the amount of 30% of the Settlement Fund, or $2,910,000.00, (ii)

reimbursement of expenses in the amount of $119,100.88, and (iii) Case Contribution Awards in

the amount of $5,000.00 to each of the Class Representatives.


Dated: July 8, 2016                          BLITMAN & KING, LLP

                                             By:    /s/ Jules L. Smith
                                             Jules L. Smith
                                             The Powers Building, Suite 500
                                             16 West Main Street
                                             Rochester, New York 14614
                                             Telephone: (585) 232-5600
                                             Facsimile: (585) 232-7738
                                             Email: jlsmith@bklawyers.com

---

[13] The Class Notice clearly stated that Class Counsel would ask the Court for Case Contribution Awards of up to $5,000.00 for each of the six Class Representatives.  To date, no objections by members of the Settlement Class have been received.  Should any Settlement Class Member file an objection subsequent to this submission, Class Counsel respectfully reserves the right to file a supplemental submission addressing said objection.

Robert A. Izard
Mark P. Kindall
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile:  (860) 493-6290
Email: rizard@ikrlaw.com
mkindall@ikrlaw.com


Gerald D. Wells, III
CONNOLLY WELLS & GRAY, LLP
2200 Renaissance Boulevard, Suite 308
King of Prussia, PA 19406
Telephone:  (610) 822-3700
Facsimile:   (610) 822-3800
Email: gwells@cwg-law.com


*Interim Co-Lead Counsel for Plaintiffs*